## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **NOEL HALL** and **CHRISTINA HALL** | ) | |
| | ) | |
| | ) | **CIVIL ACTION FILE NO:** |
| **Plaintiffs,** | ) | _____ |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CITY OF ATLANTA,** | ) | |
| **a municipal corporation of the State** | ) | |
| **of Georgia; GEORGE N. TURNER,** | ) | |
| **in his individual capacity as former** | ) | |
| **Chief of Police of the City of Atlanta** | ) | |
| **Police Department and MATHIEU** | ) | |
| **CADEAU, in his individual capacity** | ) | |
| **as a former Police Officer of the City** | ) | |
| **of Atlanta Police Department** | ) | |
| | ) | |
| **Defendants**. | ) | |

## COMPLAINT FOR DAMAGES

**NOW COMES** Plaintiffs, NOEL HALL AND CHRISTINA HALL, and

hereby files their *Complaint for Damages*, as follows:

## JURISDICTION AND VENUE

1.

This is an action brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the

Fourth and Fourteenth Amendments of the Constitution of the United States as

applied to the State of Georgia and its entities, officials, and employees, as well as the statutes and common law of the State of Georgia.

2.

Venue is proper in the Northern District of Georgia, Atlanta Division, as all acts complained of occurred in Fulton County, Georgia. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, 1343, and 1391.

## IDENTIFICATION OF PARTIES

3.

Plaintiffs NOEL HALL AND CHRISTINA HALL are, and at all relevant times were citizens of the United States and residents of Morganton, North Carolina and bring this action under Georgia law for all general, special, compensatory, punitive and permissible damages.

4.

Defendant CITY OF ATLANTA is, and at all relevant times, was a municipal corporation organized and existing under the laws of the State of Georgia and is responsible for the policies, practices, customs and regulations of the City of Atlanta Police Department (sometimes referred to as "APD"); and for the hiring, training, supervision and discipline of agents, employees and police officers of the APD.  Defendant CITY OF ATLANTA may be served by serving

Mayor Keisha Lance Bottoms, through the City of Atlanta Department of Law, 55 Trinity Avenue, Suite 5000, Atlanta, Georgia 30303.

5.

Defendant GEORGE N. TURNER (hereinafter referred to as "Defendant TURNER") was the Chief of Police for the city of Atlanta Police Department from January 2010 through December 2016, with supervisory and managerial authority over all city of Atlanta police officers.  In his role as Chief of Police, Defendant TURNER was ultimately responsible for the management and operation of Atlanta Police Department, and specifically responsible for ensuring that APD officers complied with the color and pretense of federal and state laws, as well as the ordinances, regulations, customs, usages of the State of Georgia and the City of Atlanta, and the policies of the Atlanta Police Department.

6.

The actions of Defendant TURNER that are the subject of this Complaint were undertaken under color of law in the regular course of his employment as a police officer of the City of Atlanta and/or the City of Atlanta Police Department. Defendant TURNER was ultimately responsible for the polices, practices, customs and regulations of APD; for the hiring, training, supervision and discipline of APD officers; and for promulgating all orders, rules, instructions, and standard operating

3

procedures for citizen encounters with police officers acting in their official capacity. Said Defendant is sued in his individual capacity and is a resident and citizen of the State of Georgia and may be served with process at his place of residence at 1115 Wallington Ct., NW, Conyers, Rockdale County, Georgia 30012. Jurisdiction and venue are proper.

7.

Defendant MATHIEU CADEAU (hereinafter referred to as "Defendant CADEAU") is, and at all relevant times was, a sworn police officer of the City of Atlanta and/or the City of Atlanta Police Department. In his capacity as a police officer, said Defendant was responsible for policing the City of Atlanta under the color and pretense of the federal and state laws as well as the ordinances, regulations, customs, and usages of the State of Georgia and the City of Atlanta Police Department.

8.

The actions of Defendant CADEAU that are the subject of this Complaint were undertaken in the regular course of his employment as a police officer of the City of Atlanta and/or the city of Atlanta Police Department. Said Defendant is sued in his individual capacity and is a resident and citizen of the State of Georgia and may be served with process at his personal of residence, 4574 Carriage Park,

Dr., Lithonia, Dekalb County, Georgia 30038.  Jurisdiction and venue are proper.

9.

Defendant CITY OF ATLANTA and their agents and employees, including but not limited to the Atlanta Police Department, Defendant CADEAU and Defendant TURNER, have acted willfully, wantonly, and recklessly towards NOEL HALL and CHRISTINA HALL, proximately causing their injuries. Therefore, no immunity applies in this matter.

10.

Defendant CITY OF ATLANTA and their agents and employees, including the Atlanta Police Department and Defendant TURNER, have exhibited a pattern and practice of ignoring and violating the rights of the citizens, by negligently hiring, training, supervising, and disciplining their employees, which proximately caused the injuries of Plaintiffs.

11.

Defendant TURNER individually, and Defendant CITY OF ATLANTA can be held liable for the violation of NOEL HALL and CHRISTINA HALL'S federal constitutional rights, pursuant to 42 U.S.C. §§ 1983 and *Montell v. Dept. of Soc. Serv.,* 436 U.S. 658 (1978).

## FACTUAL ALLEGATIONS

### 12.

At all relevant times, Defendant CADEAU was a sworn member of the City of Atlanta Police Department and was acting under the color and pretense of the statutes, ordinances, regulations, customs, and usages of the State of Georgia and the City of Atlanta Police Department and under the authority of their office and within the scope of his employment as a police officer.

### 13.

On the evening of February 25, 2017, NOEL HALL and CHRISTINA HALL were citizens and residents of Morganton, North Carolina, in the State of Georgia and in the United States of America.  At all times relevant herein, NOEL HALL and CHRISTINA HALL had legal rights established by the Constitution of the United States, the Constitution of the State of Georgia, and laws set forth by state and federal statutes.

### 14.

On the evening of February 25, 2017, Defendant CADEAU was performing an authorized extra job where he was providing traffic direction and control detail at the intersection of Northside Drive and Ivan Allen Jr. Boulevard, following an annual moto-cross event held at the Georgia Dome.

15.

Defendant CADEAU'S extra job assignment was for a moto-cross event and was approved by the City of Atlanta Police Department officers, which provides as follows: "Employees will comply with all Atlanta Police Department rules, regulations, orders, and policies and procedures while working extra jobs." Atlanta Police Department Policy Manual, Standard Operating Procedure, APD.SOP.2060, Extra Jobs, Section 4.1.1, attached as **Exhibit 1**.

16.

NOEL HALL and CHRISTINA HALL, along with a friend of the family Conner Hamby, then age 20, son Dylan Hall, then age 17, grandson Abshur Hall, then age 2, and son, Michael Hall, then age 22, traveled from Morganton, North Carolina to Atlanta to attend the moto-cross event in which their son Michael was a participant.

17.

On the evening of February 25, 2017, after the moto-cross event, the HALL family left the Georgia Dome and walked to their van in the parking lot.  After obtaining their van, NOEL HALL drove back towards the Georgia Dome and approached the intersection of Northside Drive and Ivan Allen Jr. Boulevard where APD officer, Nathan Evans, who was also working off-duty and directing traffic.

18.

After a brief verbal exchange between NOEL HALL and officer Nathan Evans, Defendant CADEAU approached the HALL vehicle and confronted NOEL HALL, who was in the process of making a left turn.  HALL was attempting to turn because he had a pass allowing him entry into a designated pit area, but Defendant CADEAU refused to look at his pass.

19.

As NOEL HALL was driving, Defendant CADEAU fired his weapon into the van being driven by NOEL HALL, striking him in his left arm, shoulder and chest area. NOEL HALL was rushed to Grady Hospital for treatment of his injuries from being shot by Defendant CADEAU.

20.

Prior to and at the time Defendant CADEAU discharged his firearm, NOEL HALL was unarmed and posed no significant threat of death or serious injury to Defendant CADEAU, any other officers on the scene, or to members of the public.

21.

Prior to and at the time Defendant CADEAU discharged his firearm, NOEL HALL had not engaged in any illegal or criminal activity that justified Defendant CADEAU'S use of his firearm.

8

22.

The Atlanta Police Department's investigation into this shooting determined that "[t]he evidence and circumstances in this matter do not satisfy the objective reasonableness standard as set forth in *Graham v. Conner*, 490 U.S. 386 (1989), nor does the evidence in this incident support any articulable threat of physical violence or deadly force toward Sergeant Cadeau or anyone else present." Memorandum, Atlanta Police Department Office of Professional Standards (OPS), Investigation and Disposition OPS File #17-I-0110-PS, Page 5, attached as **Exhibit 2.**

23.

In *Graham v. Connor*, the United States Supreme Court determined that all claims that law enforcement officials have used excessive force during an arrest, investigatory stop or other "seizure" of a person, should be analyzed under the "objective reasonableness, standard of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. *Graham*, 490 U.S. 386, 392-399 (1989).

24.

As shown herein, NOEL HALL and CHRISTINA HALL'S clearly established constitutional rights to be free from the use of excessive and unreasonable force, as guaranteed by the Fourth Amendment.

25.

The City of Atlanta Police Department has a use of force policy that applies to all sworn officers of the Atlanta Police Department, which proves, in pertinent part, as follows:

The Atlanta Police Department recognizes and respects the value of human life and the right of people to be secure in their persons and property. Sworn employees in the performance of their duties, encounter situations where the use of force reasonably appears necessary to affect an arrest or detention, overcome resistance, control a subject, or protect themselves or others from injury or death will only use that force which is reasonable and necessary in order to accomplish lawful objectives.

Atlanta Police Department Policy Manual, Standard Operating Procedure, APD.SOP.2010, Use of Force, Sections 2.2, 3.1 and 3.2, attached as **Exhibit 3.**

26.

The City of Atlanta Police Department's use of force policy provides that all supervisors within the department "are responsible for ensuring that all employees within their chain of command comply with the requirements of this directive" <u>Id.</u>

27.

The City of Atlanta Police Department's investigation determined that NOEL HALL "had not been informed that he was under arrest and there is no evidence indicating he was resisting arrest or fleeing arrest" – and that "Sergeant Cadeau's assertion he was in fear for his safety and that of others as a reason for firing his weapon is unreasonable in that neither of the other two officers present asserted any such fear." <u>Id.</u>

28.

The City of Atlanta Police Department's investigation concluded that the actions of Defendant CADEAU by shooting into the HALL's vehicle violated the policies of the Atlanta Police Department relating to maltreatment or unnecessary force. <u>Atlanta Police Department Policy Manual, Standard Operating Procedure, APD.SOP.2010, Work Rules, Sections 4.2.50, Maltreatment or Unnecessary Force, Page 12</u>, attached as **Exhibit 4.**

29.

The City of Atlanta Police Department's policy regarding use of force states that "[e]mployees are expressly prohibited from the unnecessary or unreasonable use of force against person or property" and "[e]mployees shall only use that force which is reasonable and necessary to affect and arrest, prevent an escape, necessarily restrict the movement of a prisoner, defend himself/herself or another from physical assault, or to accomplish other lawful objectives." Id.

30.

From January 2010 through December 2016, Defendant TURNER, as Chief of Police of the City of Atlanta Police Department, was responsible for "establishing the organizational structure of the Department" and was "the chief executive officer of the Department" with "the authority and responsibility to manage, direct and control the operations and administration of the Department." Atlanta Police Department Policy Manual, Standard Operating Procedure, APD.SOP.1010, Mission and Organization of the Department, Section 4.2.50 Mission and Organization of the Department, Page 4, attached as **Exhibit 5**.

31.

The City of Atlanta Police Department's Office of Professional Standards (OPS) reported directly to Defendant TURNER as Chief of Police.  OPS is "responsible for the disciplinary process of the Atlanta Police Department" with

the duty to "ensure the integrity of the Department." Id. At Page 4.

32.

The City of Atlanta Police Department has a disciplinary process for its officers, administered through OPS, that is designed with the purpose to "provide the Department with a disciplinary system that responds to the needs and concerns of the community" with the intent to "prevent and correct inappropriate behavior" of its officers "[t]hrough an effective disciplinary system." Atlanta Police Department Policy Manual, Standard Operating Procedure, APD.SOP.2010, Disciplinary Process, Page 2, attached as **Exhibit 6.**

33.

The stated goal of the City of Atlanta Police Department's disciplinary process is to provide "thorough, impartial investigations of all allegations of employee misconduct and imposes appropriate disciplinary actions for all sustained work rule of City ordinance violations."  Id.

34.

During his tenure, Defendant TURNER, as Chief of Police of the City of Atlanta Police Department, was "responsible for the effective and professional administration of the disciplinary process" for the Department, including "the authority to review, revoke, or modify any disciplinary actions taken by any

supervisor in the Department" including oral admonishment, written reprimand, suspension without pay, demotion and dismissal.   Id. at Pages 2, 22-23.

35.

The City of Atlanta Police Department's disciplinary process provides that the "designated authority [OPS] investigating alleged employee misconduct will contact, interview, and obtain written statements from all complaints, witnesses, and other employees who are involved in the complaint."  Furthermore, OPS is vested with the authority to "obtain any documents or other materials which are relevant to the alleged incident."  If during an investigation, OPS investigators "uncovers evidence of additional allegations or violations, he or she will investigate them also." Id.

36.

As part of its disciplinary process for its officers, the City of Atlanta Police Department has equipped and authorized OPS to use polygraph and Computer Voice Stress Analyzer (CVSA) exams for the detection of deception in administrative investigations of its officers relating to allegations of work rule violations, including maltreatment and unnecessary force. Atlanta Police Department Policy Manual, Standard Operating Procedure, APD.SOP.3120, Polygraph and Computer Voice Stress Analyzer, Page 1, attached as **Exhibit 7**.

37.

The Atlanta Police Department "considers the polygraph and Computer Voice Stress Analyzer (CVSA) to be useful investigative tools combined with other evidence in establishing the innocence or guilt of an accused employee." Id. However, the City of Atlanta Police Department rarely uses investigative tools such as the CVSA and polygraph examinations as part of use of force investigations, thereby allowing officers accused of improper use of force to avoid complete accountability, and to avoid termination of an officer for being untruthful.

38.

The work rules of the Atlanta Police Department require that "[e]mployees shall be truthful in their written and spoken words at all times." Atlanta Police Department Policy Manual, Standard Operating Procedure, APD.SOP.2010, Work Rules Section 4.1.3, Truthfulness, Page 3, attached as **Exhibit 4.**

39.

The Atlanta Police Department's disciplinary rules subject an officer to dismissal if it is determined that they have been untruthful in their written or spoken word. Atlanta Police Department Policy Manual, Standard Operating Procedure, APD.SOP.2010, Disciplinary Process, Page 18, attached as **Exhibit 6**.

40.

The Atlanta Police Department's policy regarding use of CVSA and polygraph examinations states that "[e]mployees can be required to submit to a CVSA or polygraph examination during and administrative investigation" and that "[a]n employee who refuses to take a polygraph or CVSA examination will be subject to further disciplinary action."  Atlanta Police Department Policy Manual, Standard Operating Procedure, APD.SOP.3120, Polygraph and Computer Voice Stress Analyzer, Page 1, attached as **Exhibit 7**.

41.

The Atlanta Police Department policies and procedures referenced above and attached to this lawsuit (Work Rules, Disciplinary Process, Polygraph and Computer Voice Stress Analyzer, Mission and Organization of the Department, and Extra Jobs), were all enacted, promulgated and implemented by Defendant TURNER in his role as Chief of Police of the Atlanta Police Department.

42.

In 2007, Defendant CITY OF ATLANTA established the Atlanta Citizen Review Board (ACRB) by ordinance as an independent agency.  The purpose of the ACRB is to ensure that city departments directly responsible for public safety, particularly the Atlanta Police Department, have the proper support of the

government and its various agencies.  It is designed to provide citizen oversight of misconduct accusations against sworn members of the police and corrections departments in the City of Atlanta.

43.

The ACRB was designed to provide a credible, independent forum where complainants and accusations can be addressed.  It is also designed to help prevent future incidents of police misconduct and abuses of civil rights and to reduce the amount of money needed to satisfy judgments based on allegations of police misconduct.   The ACRB was designed to promote public confidence in law enforcement and lessen the possibility that future incidents of urban unrest will occur.

44.

Defendant CITY OF ATLANTA requires its police officers and the Atlanta Police Department to "cooperate fully with the ACRB in the investigation and adjudication of a complaint" and that "[i]f an employee refuses to report before the ACRB when requested to do so, he or she will be subject to disciplinary actions." Atlanta Police Department Policy Manual, Standard Operating Procedure, APD.SOP.2300, Department Employees Cooperation with the Atlanta Citizen Review Board (ACRB), attached as **Exhibit 8**.

45.

The ACRB "has full access to the Department's personnel for interviews and to relevant documents" and "at its discretion, may make specific recommendations on a citizen complaint at any time, and will issue a public report summarizing its activities and recommendations not less than once a year to the Chief of Police" and "semi-annually to the City of Atlanta Public Safety committee." Id. at Page 3.

46.

The ACRB "has the power to recommend that the Chief of Police take certain actions; including, but not limited to recommending general reforms (such as hiring, firing, demotion, punishment, or commendation). Id. at Page 4.

47.

Despite the role and authority of the ACRB, "the Chief of Police will retain full and ultimate authority, power, discretion, right privilege, and responsibility to set disciplinary policies, or take other lawful actions he or she deems appropriate relative to the Department (under the provisions of the City of Atlanta Code of Ordinances)." ID. at Page 4.

48.

In a March 2016 press release, the ACRB made the public aware of concerns regarding the Chief of Police's responses to citizen complaints: "One of the most

significant challenges facing the ACRB is the Atlanta Police Department's lack of discipline on ACRB sustained complaints *(complaints filed by citizens, discussed and reviewed by the ACRB and deemed credible or true based on the evidence obtained by experience investigators)*. While that in itself is a major criticism of APD, the failure to provide a response that has a legal or factual basis for the disagreements compounds, frustrates and weakens the intent of the ACRB ordinance." ACRB Executive Director, Lee Reid Speaks Out on Chiefs Responses to Citizens Complaints, March 3, 2016, attached as **Exhibit 9**.

49.

Due to the concerns of the ACRB, Defendant CITY OF ATLANTA passed an ordinance that expands the ACRB's jurisdiction, clarifies the authority of the ACRB, and requires the Chief of Police to provide a more detailed response when rejecting recommendations from the ACRB that action be taken against an officer. City of Atlanta Code of Ordinance 16-O-1072, attached as **Exhibit 10.**

50.

Under the current ACRB ordinance, within 30 days of receiving an ACRB recommendation for action, the Chief of Police must respond "in writing regarding which recommendations are accepted, rejected, held due to a pending OPS investigation or will be implanted with modifications."  The new ordinance also

19

requires that in response to an ACRB recommendation, the Chief of Police "shall provide a legal and factual justification, or indicate a managerial prerogative that clearly states the reason for the acceptance, rejection or implementation with modification of the board's recommendations." City of Atlanta Code of Ordinance 16-O-1072, Sec. 2-2213 (o), attached as **Exhibit 10.**

51.

The ACRB's 2016 Annual Report addresses and illustrates the problems with Defendant CITY OF ATLANTA and Defendant TURNER'S deliberate indifference to use of force by APD officers.  Specifically, the report addressed disciplinary decisions from Defendant TURNER, as Chief of Police:

"After collecting the data for the 2016 APD responses to ACRB sustained complaints, the result is a dismal 18% rate of agreement, up from 11% in 2015.  As new decisions from the APD are received, at the end of each year, the rate of agreement changes to account for the newly received complaints.  Over the past five years, the APD has agreed with 24% of ACRB sustained complaints, as shown in the chart below representing the 5-year history of APD decisions.  This percentage rate is disappointing to the agency and more importantly to the citizens of Atlanta.  As one citizen stated during an outreach event.  'It appears to me that getting redress for

what an officer did to me is like rolling dice, you know the rules, the dice should be the same, but you never know if you will be the lucky one, odds are you won't be.'  This is the unfortunate view of reality that many citizens have expressed in different terms across the nation and Atlanta when it comes to seeking officer accountability."

ACRB 2016 Annual Report, 2016 Chief's Discipline, attached as **Exhibit 11**.

52.

According to the ACRB, the "board's actions through thorough investigations and robust community outreach and education are all blunted by APD's actions on ACRB sustained complaints."  Further, the report states that "the APD's responses to the board's work is troublesome and a direct cause to citizen's angst over the level and sincerity of the APD's commitment to holding officers accountable for their actions."  Moreover, the report concludes that "the APD responses to ACRB complaints cause citizens to question where is the integrity and fairness."  ACRB 2016 Annual Report, 2016 Chief's Discipline, attached as **Exhibit 11.**

53.

According to the ACRB, "[w]ords of commitment to holding officers accountable appear hollow when the statistical evidence reveals actions that are

contradictory" such that "responses to ACRB decisions is a grave concern of citizens" and "reduce[es] the trust and faith in the APD's ability to appropriately handle citizen complaints" which "has a direct impact on the ACRB and the leadership of the City."   ACRB 2016 Annual Report, 2016 Chief's Discipline, attached as **Exhibit 11.**

54.

Under the leadership of Defendant TURNER as Chief of Police of the Atlanta Police Department, he engaged in a widespread and persistent pattern and practice, from 2010 through 2016, of routinely rejecting recommendations of the ACRB that action be taken against officers which the ACRB found to have used improper and excessive force.   In rejecting the ACRB recommendations, Defendant TURNER would provide insufficient factual or legal justifications for rejecting the ACRB's recommendation, thereby allowing these officers to avoid discipline and accountability.

55.

In the case of Vincenzo Palazzola, a citizen complainant who alleged to the ACRB that on July 29, 2015, he was the victim of excessive force by APD Officers Theodore Travis, John Harwell and Jonathan Janke, Defendant TURNER rejected the recommendations of the ACRB that the complaint against Jonathan Janke be

sustained as to excessive force, and that Janke receive a 15-day suspension as a penalty.  See Letter from ACRB, File #16-004, and response from Chief of Police, attached as **Exhibit 12.**

56.

In the case of Raymond Washington, a citizen complainant who alleged to the ACRB that on March 28, 2015, he was the victim of false imprisonment and excessive force by APD Officer David Holleman, Defendant TURNER rejected the recommendation of the ACRB that the complaint against David Holleman be sustained for false imprisonment and excessive force, and that Holleman receive a written reprimand.  See Letter from ACRB, File #15-078, and response from Chief of Police, attached as **Exhibit 13**; see also *Citizen Review Board to APD: Reprimand officer for excessive force, false imprisonment,* Atlanta Creative Loafing, February 26, 2016, attached as **Exhibit 14** ("It's unclear what impact the Citizen's Review Board findings have on actually changing APD practices.  Of the 10 allegations of excessive force sustained by the ACRB against officers last year, none have been accepted by the department.").

57.

In the case of John Ruch, a citizen complainant who alleged to the ACRB that on November 25, 2014, he was the victim of excessive force and false arrest

by APD Officer David Holelman, Defendant TURNER rejected the recommendation of the ACRB that the allegation of false arrest be sustained, and that a penalty be imposed on the officer to include an oral admonishment and counseling on professional conduct.  See Letter from ACRB, File #15-018, and response from Chief of Police, attached as **Exhibit 15**.

58.

In the case of Kenney Quarterman, a citizen complainant who alleged to the ACRB that on October 2, 2014, he was the victim of excessive force by APD Officer Sergeant Thomas Apple, Defendant TURNER rejected the recommendation of the ACRB that the complaint of excessive force against Sergeant Apple be sustained and that he receive a 7-day suspension and training on the APD's approved restraint techniques.  See Letter from ACRB, File #14-114, and response from Chief of Police from May 27, 2015 stating that the4 ACRB recommendation was being rejected pending the results of an OPS investigation, attached as **Exhibit 16**.

59.

In the case of Bailey Cato, a citizen complainant who alleged to the ACRB that on September 14, 2014, he was the victim of excessive force by APD Officers Matthew Johns and Michael Soprano, Defendant TURNER rejected the

24

recommendation of the ACRB that the excessive force complaint against Matthew Johns and Michael Soprano be sustained, and that both officer receive a 5-day suspension without pay and training on use of force.  See Letter from ACRB, File #14-80, and response from Chief of Police, attached as **Exhibit 17**.

60.

In the case of Joseph Bryant, a citizen complainant who alleged to the ACRB that on September 3, 2014, he was the victim of unnecessary and excessive force by APD Officers Brian Carswell and Robert Daniels, Defendant TURNER rejected the recommendation of the ACRB that the complaint against Robert Daniels and Brian Carswell for false arrest be sustained, and that Daniels receive a one day suspension, and Carswell receive a reprimand and training on the proper procedures and protocols for searches in the field.  See Letter from ACRB, File #14-090, and response from Chief of Police, attached as **Exhibit 18**.

61.

In the case of Ericka Tucker, a citizen complainant who alleged to the ACRB that on February 7, 2014, she was the victim of false arrest, excessive force and abusive language by APD Officer Denis Joseph, Defendant TURNER rejected the recommendation of the ACRB that the false arrest complaint be sustained against Denis Joseph and that he receive a 5-day suspension and psychological

counseling; and that the excessive force complaint against Joseph also be sustained, and that Joseph be given a 5-day suspension and psychological counseling.  The ACRB further recommended to the Atlanta Police Department that dash cam video footage be saved in all incident that result in the arrest of a citizen and noted that the use of force report required by APD policy was not prepared until 8 months after the incident, and only after the ACRB inquired of its existence. <u>See</u> Letter from ACRB, File #14-018, and response from Chief of Police, attached as **Exhibit 19**.

62.

In the case of Tara Jackson, a citizen complainant who alleged to the ACRB that on September 12, 2013, she was the victim of excessive force by APD Officer Antwan Denson, Defendant TURNER rejected the recommendation of the ACRB that the complaint of excessive force against Antwan Denson be sustained, and that he receive a 4-day suspension, training on the use of Tasers on juveniles and on Fourth Amendment rights of citizens.  <u>See</u> Letter from ACRB, File #13-97, and response from Chief of Police, attached as **Exhibit 20**.

63.

In the case of Regina Watts, a citizen complainant who alleged to the ACRB that on September 12, 2013, she was the victim of false arrest and excessive force

by APD Officer Denis Joseph, Defendant TURNER rejected the recommendation of the ACRB that the complaints of false arrest and excessive force be sustained against Denis Joseph, and that he receive an oral reprimand on the false arrest complaint, and a 15-day suspension on the excessive force complaint.  See Letter from ACRB, File #14-002, and response from Chief of Police, attached as **Exhibit 21**.

64.

In the case of Amon Kirk and Tracy Bouapheng, a citizen complainants who alleged to the ACRB that on May 27, 2013, they were the victims of false imprisonment and excessive force by APD Officer Aqueelah James, Defendant TURNER rejected the recommendation of the ACRB that the complaint of false arrest against Officer James be sustained, and that she receive a written reprimand and training on what constitutes "reasonable suspicion" and "probable cause."  See Letter from ACRB, File #13-49, and response from Chief of Police, attached as **Exhibit 22**.

65.

In the case of Tremaine Malcolm, a citizen complainant who alleged to the ACRB that on December 16, 2012, he was the victim of verbal abuse and excessive force by APD Officers Sergeant Eddie Smith and Reginald Burks,

Defendant TURNER rejected the recommendation of the ACRB that the complaint against Sergeant Smith be sustained as to both allegations of verbal abuse and excessive force, and that a Sergeant Smith receive a 5-day suspension for use of excessive force and one day suspension for use of abusive language.  <u>See</u> Letter from ACRB, File #13-10, and response from Chief of Police, attached as **Exhibit 23**.

66.

In the case of Daniel Wolcott, a citizen complainant who alleged to the ACRB that on May 10, 2012, he was the victim of excessive force by APD Officer Christopher Thornton, Defendant TURNER rejected the recommendation of the ACRB that the complaint against Thornton be sustained for excessive force and that he receive a 10-day suspension.  <u>See</u> Letter from ACRB, File #12-11, and response from Chief of Police, attached as **Exhibit 24**.

67.

In the case of Ezoeke Parks, a citizen complainant who alleged to the ACRB that on August 23, 2011, he was the victim of excessive force by APD Officers Jose Vidal and Norattam Holden, Defendant TURNER rejected the recommendation of the ACRB that the complaints against Vidal be sustained for excessive force and abusive language, and that he receive a 4-day suspension and

psychological evaluation regarding the use of force claim, and a written reprimand for the use of abusive language  The ACRB recommended that the complaint against APDS Officer Holden be sustained as to excessive force and the he receive a 4-day suspension and a psychological evaluation.  See Letter from ACRB, File #11-53, and response from Chief of Police, attached as **Exhibit 25**.

68.

In the case of Abraham Malobe, a citizen complainant who alleged to the ACRB that on August 9, 2011, he was the victim of false imprisonment and excessive force by APD Officer Lonnie Character, Defendant TURNER rejected the recommendation of the ACRB that the complaint against Office Character for excessive force and false imprisonment be sustained, and that Officer Character receive a written reprimand with a refresher on Fourth Amendment Training on the false imprisonment finding, and that he receive a 9-day suspension on the excessive force finding.  See Letter from ACRB, File #11-74, and response from Chief of Police, attached as **Exhibit 26**.

69.

In the case of Rodney Daniel, a citizen complainant who alleged to the ACRB that on April 25, 2011, he was the victim of excessive force and false imprisonment by APD Officers Nicholas Mercado, Lyle Moore, and Richard

Ramirez, Defendant TURNER rejected the recommendation of the ACRB that the complaint against Moore and Ramirez be sustained, and that each receive a 5-day suspension. See Letter from ACRB, File #11-27, and response from Chief of Police, attached as **Exhibit 27**.

70.

In the case of Jeffrey Cash, a citizen complainant who alleged to the ACRB that on November 18, 2010, he was the victim of excessive force by APD Officer Luca Amarena, Defendant TURNER rejected the recommendation of the ACRB that the complaint against Officer Amarena be sustained for excessive force, and that this officer receive a 15-day suspension. See Letter from ACRB, File #10-66, and response from Chief of Police, attached as **Exhibit 28**.

71.

In the case of Melvin Burns, a citizen complainant who alleged to the ACRB that on September 10, 2010, he was the victim of excessive force by APD Officers Victor Guevara, Rodney Johnson and Darnell Perry, Defendant TURNER rejected the recommendation of the ACRB that the complaint against each be sustained for excessive force, and that Officer Perry receive a 10-day suspension, that Officer Jefferson receive a 4-day suspension, and Officer Guevara a 4-day suspension without pay. See Letter from ACRB, File #10-57, and response from Chief of

Police, attached as **Exhibit 29**.

72.

In the case of Bluette Hector a citizen complainant who alleged to the ACRB that on July 2, 2010 he was the victim of excessive force by APD Officer Brian Thomas, Defendant TURNER rejected the recommendation of the ACRB that the complaint against Officer Thomas be sustained for excessive force and that a 15-day suspension be imposed.  <u>See</u> Letter from ACRB, File #13-10, and response from Chief of Police, attached as **Exhibit 30**.

73.

In the case of Brian Kidd and Shawn Venagas, a citizen complainants who alleged to the ACRB that on June 30, 2010, they were the victims of excessive force by APD Officers Cayenne Mayes, Travis Britt and Dion Meredith, Defendant TURNER rejected the recommendation of the ACRB that the complaints of false imprisonment against all officers be sustained, recommending the termination of Officer Meredith, and that Officer Britt receive a 20-day suspension.  The ACRB also recommended that the complaint of excessive force be sustained against Officer Mayes, and that he be terminated.  <u>See</u> Letter from ACRB, File #10-72, and response from Chief of Police, attached as **Exhibit 31**.

**<u>COUNT ONE</u>**

31

**(*42 U.S.C. § *1983 Claims and State Law Claims)**

**(Defendant Matthew Cadeau, in his Individual Capacity)**

74.

Plaintiffs hereby incorporate the allegations in paragraphs 1-73 above, as if fully set forth herein.

75.

At the time of their injuries, NOEL HALL and CHRISTINA HALL had legal rights established by the Constitution of the United States, the Constitution of the State of Georgia, and laws set forth by state and federal statutes.

76.

Defendant CADEAU'S actions of shooting into the HALL van was a violation of NOEL HALL and CHRISTINA HALL'S civil rights under both the United States Constitution and the United States Code, including the use of excessive and deadly force in violation of due process.

77.

Under the Fourth Amendment to the United States Constitution, NOEL HALL was seized when he was shot by Defendant CADEAU, which through the application of the Fifth and Fourteenth Amendment of the United States Constitution, is also a violation of the Constitution of the State of Georgia.

78.

Under federal law, pursuant to 42 U.S.C. § 1983, the intentional shooting by Defendant CADEAU into the HALL van, striking NOEL HALL and nearly striking CHRISTINA HALL was unreasonable and without legal justification, since NOEL HALL and CHRISTINA HALL did not pose a threat of death or serious bodily harm to Defendant CADEAU, or any others.  Since Defendant CADEAU had no lawful authority to use deadly force, this shooting violated the civil rights of NOEL HALL and CHRISTINA HALL, as guaranteed by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, for which Defendant CADEAU is individually liable.

79.

Based on Defendant CADEAU'S intentional unjustified shooting into the HALL van, which resulted in NOEL HALL being shot and placed in fear, Defendant CADEAU'S conduct towards NOEL HALL gives rise to state law claims and liability against him for assault and battery.  In addition, because the actions of Defendant CADEAU were intentional, extreme, outrageous, and reckless, causing NOEL HALL to experience severe emotional distress, Defendant CADEAU'S conduct gives rise to liability to NOEL HALL for intentional infliction of emotional distress.

80.

Based on Defendant CADEAU'S intentional unjustified shooting into the HALL van, where CHRISTINA HALL was a passenger in the front seat, his conduct resulted in CHRISTINA HALL being placed in fear. Defendant CADEAU'S conduct towards CHRISTINA HALL gives rise to state law claims and liability against him for assault. In addition, because the actions of Defendant CADEAU were intentional, extreme, outrageous, and reckless, causing CHRISTINA HALL to experience extreme emotional distress, Defendant CADEAU'S conduct gives rise to liability to CHRISTINA HALL for intentional infliction of emotional distress.

81.

Due to the personal injuries suffered by NOEL HALL from being shot by Defendant CADEAU, his wife CHRISTINA HALL has lost the society, companionship and consortium of her spouse, which is the direct and proximate cause of the personal injury suffered by NOEL HALL.

82.

The actions of Defendant CADEAU in shooting into the HALL van, was not only without legal justification, but was done with actual malice, toward NOEL HALL and CHRISTINA HALL, and with willful and wanton indifference, and

deliberate disregard for their constitutional rights, entitling them to exemplary damaged, pursuant to O.C.G.A. § 51-12-5.1.

83.

Defendant CADEAU is not entitled to qualified immunity, because his actions were malicious, reckless, and callously indifferent to clearly established and well-settled federal and state constitutional and statutory law, which a reasonable person in his position would have known.

84.

As a direct and proximate result of the actions of Defendant CADEAU, he is liable to NOEL HALL and CHRISTINA HALL for all damages allowed under Georgia and federal law, including damages for physical and emotional pain and suffering, medical expenses, and punitive damages.

## COUNT TWO

### (*42 U.S.C. § 1983* Supervisor Liability Claims)

### (Defendant George Turner, in his Individual Capacity)

85.

Plaintiffs hereby incorporate the allegations in paragraphs 1 – 84 above, as if fully set forth herein.

86.

The claims against Defendant TURNER in his individual capacity, are based on his actions and omissions in his former role as Chief of Police of APD, including his role in the enactment and promulgation of APD policies and procedures relating to training, discipline, supervision and use of force by APD officers.

87.

While the shooting incident giving rise to this lawsuit occurred in February 2017, following Defendant TURNER's retirement as Chief of Police in December 2016, after serving in this position since 2010, as shown herein, Defendant TURNER'S actions were a contributing cause and driving force behind the actions of Defendant CADEAU, who was under the supervision of Defendant TURNER from January 2010 through December 2016.  Defendant CADEAU was hired by the Atlanta Police Department in July 2007.

88.

Defendant TURNER is liable in his individual capacity for the violation of NOEL HALL and CHRISTINA HALL'S constitutional rights as described herein, due to his knowledge, participation and ratification, in his role as Chief of Police, of a history of widespread abuses by APD officers involving the use of force and

violation of APD policies, including Defendant CADEAU.

89.

Defendant TURNER is liable in his individual capacity for the violation of NOEL HALL and CHRISTINA HALL'S constitutional rights as described herein, due to his failure as Chief of Police to take the necessary corrective action to resolve issues relating to obvious, flagrant, and rampant violations of use of force within the Atlanta Police Department during the time he served as Chief of Police.

90.

Defendant TURNER is liable in his individual capacity for the violation of NOEL HALL and CHRISTINA HALL'S constitutional rights as described herein by creating and allowing, through his actions and omissions as Chief of Police, a policy or custom of widespread and persistent abuses by APD officers involving the use of force and violation of APD policies, to include a failure to adequately investigate and discipline APD officers, including Defendant CADEAU.

91.

Defendant TURNER is liable in his individual capacity for the violation of NOEL HALL and CHRISTINA HALL'S constitutional rights as described herein due to his deliberate indifference to APD officers violating the constitutional rights of citizens through the improper use of force, including deadly force.

92.

Prior to this shooting, Defendant TURNER, in his role as Chief of Police, was aware that Defendant CADEAU had a history of violating the constitutional right of citizens, including five prior claims for maltreatment or unnecessary force none of which resulted in a lawsuit (<u>Carr et al. v. Mathieu Cadeau et al.</u>, N/D.G., Civil Acton No. 1:15-cv-3837-CAP) being filed against defend that CADEAU, defendant City of Atlanta and Defendant TURNER, individually.  <u>See Atlanta Police Department OPS disciplinary history</u>, attached as **Exhibit 32**.

93.

Prior to this shooting defendant TURNER in his role as Chief of Police, was aware that Defendant CADEAU had a history of violating the work rules of the Atlanta Police Department. In 2014, following an investigation by OPS, a determination was made by OPS that defendant CADEAU was untruthful when he reported a supervisor that he had not used his OC spray on a citizen.  Further following a command review of the OPS finding that Defendant CADEAU had violated APDS's policy requiring truthfulness, his command recommended to Defendant TURNER that Defendant CADEAU be terminated.  However, Defendant TURNER rejected the finding of OPS that defendant CADEUA was untruthful and should be terminated, instead Defendant TURNER reversed this

finding and allowed Defendant CADEAU to remain on the force. *See* OPS Complaint File, attached as **Exhibit 33**.

94.

Defendant TURNER, in his role as Chief of Police permitted, maintained, condoned and ratified as system at review and investigations of police misconduct allegations involving the use of force, that is so cursory and lacking in honesty and thoroughness, that it ineffective and biased in favor of officers over citizen complainants, and to which has led to the foreseeable result of tolerating and contributing to the improper use of force by APD officers.

95.

The custom, policies and practices described herein, and attributed to the actions and omissions a Defendant TURNER in his role as Chief of Police, were a direct contributing cause and driving force leading to the violation of NOEL HALL and CHRISTINA HALL'S civil and constitutional rights.

96.

Defendant TURNER in his individual capacity, is not entitled to qualified immunity, because his actions as shown herein, were reckless and deliberately indifferent, with knowledge and acquiescence, and grossly negligently regarding clearly established and well-settled federal and state constitutional and statutory

law, which a reasonable person in his position would have known.

97.

As a direct and proximate result of the actions of Defendant TURNER, he is liable to NOEL HALL and CHRISTINA HALL for all damages allowed under Georgia and federal law, including damages for physical and emotional pain and suffering, medical expenses, and punitive damages.

## COUNT THREE

### (*42 U.S.C. § 1983* Municipal Liability Claims)

### (Defendant City of Atlanta)

98.

Plaintiffs hereby incorporate the allegations and paragraphs 1 – 97 above as if fully set forth herein.

99.

As shown herein, the actions, omissions, systemic flaws, policies, and customs of Defendant CITY OF ATLANTA, through the Atlanta Police Department and City Lawmakers, have caused police officers of the City of Atlanta to believe that the use of excessive, deadly, or in reasonable force would not be properly, aggressively and honestly investigated, which has led to the foreseeable result that officers were likely to use excessive deftly one reasonable

force against citizens in the future to win clue and the NOEL HALL and CHRISTINA and HALL.

100.

Years before this shooting, Defendant CITY OF ATLANTA, through the Atlanta Police Department and City Lawmakers, allowed a persistent and widespread practice of condoning, ratifying, and authorizing certain officers, including Defendant CADEAU, to cover up and justify the use of excessive force despite the lawful authority to use such force.

101.

Years before this shooting, Defendant CITY OF ATLANTA, through the Atlanta Police Department and City Lawmakers, were aware of, and deliberately indifferent to widespread and systemic corruption and work rule violations within the Atlanta Police Department, including violations relating to the use of force and other violations of the constitutional rights of citizens.

102.

Years before this shooting, Defendant CITY OF ATLANTA, through the Atlanta Police Department and City Lawmakers, were deliberately indifference to this practice and custom within the Atlanta Police Department, by failing to enforce policies; failing to properly train; failing to properly discipline, and thus,

creating a culture within the City Atlanta Police Department wherein violating citizen's civil rights is not only tolerated, but also encouraged; thereby allowing the deprivation of NOEL HALL and CHRISTINA HALL'S civil and constitutional rights, as described herein.

103.

Years before this shooting, Defendant CITY OF ATLANTA, through the Atlanta Police Department and City Lawmakers, were engaged in a persistent and widespread practice of ratifying and condoning the unlawful in illegal activity of the Atlanta Police officers including Defendant CADEAU thereby allowing the deprivation of NOEL HALL and CHRISTINA HALL'S civil and constitutional rights, as described herein.

104.

The custom, policies and practices described herein, and attributed to Defendant CITY OF ATLANTA, were a contributing cause and driving force leading to the violation of NOEL HALL and CHRISTIAN HALL'S civil and constitutional rights.

**COUNT FOUR**

**(Claim for Attorney's Fees Against all Defendants)**

105.

Plaintiffs had a hereby incorporate the allegations and paragraphs 1 – 104 above, as if fully set forth herein.

106.

Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to an award of reasonable attorneys' fees, expert costs, and other costs of litigation.

**WHEREFORE**, Plaintiff's, NOEL HALL AND CHRISTINA HALL pray for a judgment against Defendants as follows:

a)   That process issue and that Defendants be served according to the law;

b)   That Plaintiffs have a trial by jury;

c)   That Plaintiffs have and recover a verdict and judgment against Defendant for all compensatory general, and punitive damages, and for reasonable attorney fees pursuant to 42 U.S.C. § 1988, and for all such amounts as may be proven before the trier of fact; and

d)   That Plaintiffs have such other and further relief as this Court deems just and proper under the circumstances.

Respectfully submitted this 10th day of October, 2018.

THE COCHRAN FIRM ATLANTA

/s/SHEAN D. WILLIAMS
Shean D. Williams, Esq.
Georgia State Bar No.: 764139
Samuel L. Starks, Esq.
Georgia State Bar No.: 676515
Mecca S. Anderson, Esq.
Georgia State Bar No. 624622
swilliams@cochranfirmatl.com
sstark@cochranfirmatl.com
manderson@cochranfirmatl.com
*Attorneys for Plaintiffs*

100 Peachtree Street, NW
Suite 2600
Atlanta, Georgia 30303
Telephone: (404) 222-9922
Fax: (404) 222-0170