

Atlanta Police Department — Office of Professional Standards

Internal Correspondence — Internal Affairs Unit

# MEMORANDUM

TO: Major Celeste Murphy

FROM: Lieutenant Hajredin Zenelaj

DATE: April 27, 2017

RE: Investigation and Disposition
OPS File # 17-I-0110-PS

**PLAINTIFF'S EXHIBIT 2**

An investigation of the allegations of this complaint and any other allegations, which arose during the investigation, has been completed.

The following represents the findings of this investigation:

## I. INVESTIGATIVE DISPOSITION

Of the Complaint against:   Sergeant Mathieu Cadeau

[X]   Sustained   **4.2.50 Maltreatment or Unnecessary Force**

*4.2.50 Maltreatment or Unnecessary Force*

*1. Employees are expressly prohibited from the unnecessary or unreasonable use of force against any person or property.*

*2. Employees shall only use that force which is reasonable and necessary to affect an arrest, prevent an escape, necessarily restrict the movement of a prisoner, defend himself/herself or another from physical assault, or to accomplish other lawful objectives. The reasonableness inquiry refers to whether the employee's actions are "objectively reasonable" in light of the facts and circumstances confronting him or her, without regard to their underlying intent or motivation. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, and its calculus must*


*embody an allowance for the fact that police officers are often forced to make split second decisions about the amount of force necessary in a particular situation (Graham v. Connor, 490 U.S. 386 (1989).*

## POLICY OR PROCEDURAL CHANGES, TRAINING, RECOMMENDATIONS, AND/OR COMMENTS

The Department requires an investigation into the on-duty firearms discharge by Sergeant Mathieu Cadeau on February 27, 2017.

A review of the complaint file indicates the following:

Sergeant Cadeau was off-duty and working an approved extra-job for a motocross event at the Georgia Dome on February 27, 2017. His assignment for this event involved traffic direction and control; at the time of his firearms discharge, he was working outbound traffic after the event's conclusion at Northside Drive and Ivan Allen Jr. Blvd. Officer Nathan Evans was present at the scene, also working the same traffic detail and was the first officer to interact with Mr. Noel Hall, who was eventually shot and wounded by Sergeant Cadeau.

Officer Evans stated he was working the southbound traffic at Northside and Ivan Allen while Sergeant Cadeau worked the same intersection on the northbound side. When Mr. Hall approached the intersection, he attempted to make a left to turn travel eastbound on Ivan Allen. Officer Evans stated he told Mr. Hall he could not do so, per their instructed traffic plan; Mr. Hall disagreed and began to "inch" his van forward around their traffic cones into the northbound lanes of Northside, causing a disruption. At this point, Officer


Evans stated Sergeant Cadeau came over to see what was going on and the two of them engaged Mr. Hall verbally. Officer Evans described Mr. Hall as "extremely belligerent and using a lot of profanity"; he stated "all of the sudden, the driver (Hall) floored it and a shot rang out." He stated he did not see Sergeant Cadeau draw his weapon, but stated he was near the driver's side rear tire and Sergeant Cadeau was approximately ten feet away near the driver's door.

Captain Elbert Carter of the Fulton County Sheriff's Office (Retired) was also working traffic for the event at the same intersection. His responsibilities were to control the pedestrian traffic using the crosswalk. Captain Carter confirmed their instructions were not to allow turns from Northside on to Ivan Allen. He stated he observed Sergeant Cadeau "having words" with the driver of the van (Mr. Hall), and described Mr. Hall as "very irate". He stated he had turned his attention back to the crosswalk when he heard a gunshot, and the white van sped past him up Ivan Allen. He stated he saw Sergeant Cadeau pursue the van a short distance on foot with his weapon drawn.

Sergeant Cadeau stated once he engaged Mr. Hall he issued "loud verbal commands" instructing Mr. Hall to continue straight on Northside; according to Sergeant Cadeau, Mr. Hall continued to "advance his vehicle", so he drew his weapon and held it at the low-ready position. He stated Mr. Hall "posed a threat" in doing so. As he continued to issue loud verbal commands accompanied by hand gestures, Sergeant Cadeau stated Mr. Hall moved his vehicle suggesting a right turn before turning left and accelerating suddenly. From a position he described as arm's length from the driver's door, he fired his weapon.

MEMORANDUM 

OPS File # 17-I-0110-PS, Sergeant Mathieu Cadeau

Sergeant Cadeau contends Mr. Hall's actions placed himself as well as Officer Evans and Captain Carter in danger.

Sergeants Darren Barr and Zachary Kramer were on-duty for Zone 5 and both responded to the incident. Sergeant Kramer went to the scene, and Sergeant Barr went to Grady Hospital where Mr. Hall was transported for medical treatment after sustaining gunshot wounds to the shoulder and chest. Sergeant Kramer stated upon his arrival at the scene, he asked Sergeant Cadeau what happened and Sergeant Cadeau replied he had shot into a vehicle. Sergeant Kramer did not pursue any further line of questioning. While at Grady, Sergeant Barr contacted Sergeant Kramer and inquired as to what charges were going to be placed on Mr. Hall. Sergeant Kramer made the same inquiry to Sergeant Cadeau, who advised "Improper Left Turn" and "Failure to Obey an Officer Directing Traffic".

Two additional civilian witnesses were located through 911 records and interviewed. Mr. Austin Gunn and Mr. Rodney Mitchell of Tennessee were in the same vehicle after having attended the motocross. Both Mr. Gunn and Mr. Mitchell witnessed the interaction between the officers and Mr. Hall. Mr. Gunn stated the first officer (Officer Evans) told the driver of the white van (Mr. Hall) he could not turn left, noting the van had its left turn signal activated. He stated an argument ensued with the officers and the van driver screaming at each other. Mr. Gunn stated the argument lasted a "minute or two" before the driver of the van "just decided to go **around** the officer and the officer drew his weapon and shot him." Mr. Gunn further stated "The officer that fired was standing **alongside the**

**driver's door."** Mr. Mitchell confirmed the two officers and the van driver were arguing about him turning left, and both men stated the van driver was trying to show the officers some papers about retrieving equipment. Mr. Mitchell stated as the driver drove around the two officers, one officer ran alongside the van and "popped a shot off". According to Mr. Mitchell, neither officer was directly in front of the van, but both were on the driver's side of the van.

The evidence and circumstances in this matter do not satisfy the objective reasonableness standard as set forth in *Graham v. Connor, 490 U.S. 386 (1989)*, nor does the evidence in this incident support any articulable threat of physical violence or deadly force toward Sergeant Cadeau or anyone else present. Sergeant Cadeau was within his legal right to instruct Mr. Hall when and where to turn his vehicle; Mr. Hall clearly disobeyed Sergeant Cadeau's lawful order. However, Mr. Hall had not been informed he was under arrest and there is no evidence indicating he was resisting arrest or fleeing arrest. By Sergeant Cadeau's own statements at the scene, Mr. Hall was only facing traffic citations for an improper turn and failing to obey an officer directing traffic, therefore the severity of the crime does not rise to the level of using deadly force. Lastly, Sergeant Cadeau's assertion he was in fear for his safety and that of others as a reason for firing his weapon is unreasonable in that neither of the other two officers present asserted any such fear. Officer Evans was standing in close proximity to Mr. Hall's van and Sergeant Cadeau, as he was the first officer to engage with Mr. Hall. Officer Evans made no such assertion under questioning. Both Sergeant Cadeau and Officer Evans state they were

MEMORANDUM 

OPS File # 17-I-0110-PS, Sergeant Mathieu Cadeau

positioned alongside the van as opposed to in front of the van's path. The two civilian witnesses indicate Mr. Hall drove **around** the officers and not at them.

Based upon my review of this file, I recommend the allegation as related to Work Rule **4.2.50 Maltreatment or Unnecessary Force be Sustained against Sergeant Mathieu Cadeau.**

Lieutenant Hajredin Zenelaj
Commander, Internal Affairs Unit

This Investigation is: [ ✓ ] Approved   [ ] Disapproved

By: Maj. Celeste Murphy       4/27/17
Major Celeste Murphy          Date
Commander, Office of Professional Standards

Comments: _____