UNITED STATES DISTRICT COURT

for the

Northern District of Georgia

Atlanta Division



Hall et al

Plaintiff,

         V.         Case Number:  1:18CV4710

City of Atlanta et al

Defendant

# MOTION FOR RECONSIDERATION
# TO APPOINT COUNSEL

US DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Defendant Mathieu Cadeau is filing this Motion of Reconsideration to Appoint Counsel, ***Pro Bono*** for:

Civil Action Case – 1:18CV4710

Case Name Hall et al V. City of Atlanta et al.

## INTRODUCTION

The Eleventh Circuit Court of Appeals used the case of *Bass v. Perrin* to state that a court should appoint counsel only in exceptional circumstances. Then further quoting *Dean v. Barber* that a civil litigant has no absolute constitutional right to the appointment of counsel. The appointment of counsel is instead a privilege that is justified only by the exceptional circumstances. Where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner. Defendant Cadeau's Motion to Appoint Counsel has been denied.

US DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

## ARGUMENT

**I.**

Defendant Cadeau will establish the characteristics of this complaint using the Five-factor *Maclin* Test, pursuant to which a court would consider (1) whether the Defendant's claim is colorable; (2) the Defendant has the ability to investigate crucial facts; (3) whether the nature of the evidence indicated that the truth would more likely be exposed where both sides were represented by counsel- particularly "where the only evidence to be presented to the factfinder consists of conflicting testimony"; (4) the Defendant's ability to present his/her case; and (5) the complexity of the legal issues raised by the complaint.

As a City of Atlanta Police Officer with 10years of service, outstanding service, and having been promoted to Sergeant in 2014, Defendant, Mathieu Cadeau, was involved in an Officer- Involved Shooting in February 2017. Defendant Cadeau was working an approved extra job for the Georgia Dome. Cadeau along with two other officers were assigned to conduct traffic at the intersection of Northside Dr and Ivan Allen Jr Blvd. Their objective was to ensure the safety and security of the pedestrians walking through the intersection in addition to monitoring vehicular traffic. A white van advanced into the intersection going around fluorescent cones

3

demanding to make an unauthorized left turn. Despite Atlanta Police Officer Evan's repeated loud verbal commands of "NO LEFT TURN, KEEP STRAIGHT The driver refused to comply to the directives given, being belligerent using profanity, yelled at Ofc Evans saying "I'M FUCKING NEED TO GO THIS WAY! I'M FUCKING GOING THIS WAY!" while advancing his vehicle. The driver lunged out of the driver side window still yelling at Ofc Evans. I was able to see the driver and obtain a description. I also gave the same loud verbal commands as Ofc Evans did also adding; STOP MOVING YOUR VEHICLE! STOP MOVING YOUR VEHICLE!, TURN TO THE RIGHT! TURN TO THE RIGHT! "GO DOWN, MAKE THE U-TURN, AND COME BACK UP!" It was necessary to unholster my duty weapon to the low ready position to get the driver to stop advancing his vehicle towards my direction to bully his way to making the left turn. All the assigned officers put their attention to the aggressive driver. I gave the driver an alternate direction to lead him to his destination; TURN TO THE RIGHT! TURN TO THE RIGHT! GO DOWN, MAKE THE U-TURN, AND COME BACK UP! The driver turned his back towards me and looked away to the right to make the right turn. I continued to observe the driver to ensure that the driver and vehicle cleared the area. Then driver then made a sudden hard left turn

4

in my direction and towards others in the crosswalk. The driver gunned his vehicle with acceleration making the left turn. I got scared and discharged my city issued weapon while trying to get out of the way. My greatest fear was not for myself but for Capt. Carter and/or the pedestrians that were in the crosswalk. As I discharged my city issued weapon, the driver was speeding eastbound on Ivan Allen Jr. Blvd. I chased the vehicle on foot in an attempt to get vehicle tag information. The vehicle was driving too fast and weaving in-between lanes at a high speed. I was able to hear the engine of the vehicle at a high acceleration as it was moving away. The vehicle continued down Ivan Allen Jr. Blvd. I returned to the intersection to check for injuries and to make notifications. There were no injuries. Traffic was still heavy. I advised Capt. Carter and Ofc Evans to continue moving traffic. I stayed out from the intersection.

Before I discharged my city issued weapon, the driver of the white van demonstrated extreme belligerent behavior and reckless disregard for the safety of all those in the immediate area by bullying his way through the intersection. His decision to make the hard-left turn was unpredictable and scary. While in proximity of the vehicle, Capt. Carter had his back turned while attending to pedestrians in the crosswalk, and Ofc Evans was almost touching the vehicle. I am

5

still amazed that no one was injured. After repeated attempts to redirect the driver to an alternate route, the driver left me no other course of action but to stop the threat. It was in my strong belief that the driver posed to be an immediate threat by advancing his vehicle against Ofc Evans and yelling at Ofc Evans. He endangered the safety of the pedestrians, other officers and me by suddenly gunning his vehicle to make a hard-left turn. Because of the strong fear that I had at the moment, I reacted. I had a split-second to make a decision. I was in fear that the driver was going to hit me, Capt. Carter and the pedestrians that were in the crosswalk. I was able to get out of the path of the vehicle as I discharged my city issued weapon center mass of the target. The target was the driver operating the vehicle. I have been trained to identify the threat (vehicle) and the aggressor which in this case is the driver. His actions were aligned with the elements of Ability, Jeopardy, and Behavior when using Deadly Force as I have been trained to identify in the academy and in-service training.

While everything was racing my mind at the scene, I was not able to articulate all the appropriate charges to the driver. Only the two most obvious stood out; Failure to Obey Traffic Personnel and Improper Turn. I would have submitted a sworn arrest warrant for Aggravated Assault with a Vehicle, Simple Assault, and Reckless Driving. Within less than 24 hours, I was relieved of duty and advised to

6

go home. I was counseled that GBI will be taking over the investigation and charges can be placed later by GBI.

After a departmental investigation and meeting with the Chief of Police, my employment with the City of Atlanta Police was terminated May 2017. No charges were placed to the driver of the vehicle. Cadeau was indicted by the grand jury for the charges listed below in October 2018. In March 2020, Cadeau accepted offer of First Offender without conviction to from the presiding Judge.

In January 2012, Cadeau worked an approved extra job the very same intersection on New Year's Eve. Cadeau witnessed a very similar incident. A 6yr old boy was struck by a red SUV that did not obey commands to stop given by Cadeau. The boy sustained serious bodily injuries from the accident. The driver was arrested and charged. As a result of this incident, I am especially aware of the dangers of this intersection and take the measure of safety for all very seriously. Ten days prior to this incident in February 2017 Cadeau appeared in court as a witness for the January 2012 incident.

In applying the *Maclin Test*, the Court should consider the five factors for reconsideration to appoint counsel as follows;

1. Is the claim colorable? The Plaintiff in this complaint suggests to no wrongdoing in their part in this incident. Defendant Cadeau gives an assertion of fear for himself, other officers assigned at the intersection, and the pedestrians being in imminent danger of the vehicle driven by the Plaintiff.

2. Does the Defendant have the ability to investigate crucial facts? The Defendant does not have access to reports, testimony, and evidence presented in this complaint. Due to the terms of the Defendants probation, the defendant is not permitted to conduct any investigations, interviews, and /or contact anyone regarding the complaint.

3. Whether the nature of the evidence indicated that the truth would more likely be exposed where both sides were represented by counsel- particularly "where the only evidence to be presented to the factfinder consists of conflicting testimony", the defendant does not have the

expertise, knowledge, and the resources to examine evidence and testimony presented in this complaint. Defendant pled *"No Contest"* in Fulton County Superior Court to receive First Offender, three years probation, and community service to the charges involved in this complaint.

4. The Defendant's ability to present his/her case.

   Without proper presentation from a trained practitioner the Defendant does not have the capability of presenting arguments, conducting cross-examinations, drawing depositions, and subpoenas.
   The Defendant having worked an extra job at the same intersection witnessed a similar event at the same intersection in January of 2012 the Defendant would not be able to interview the victim and witnesses.

5. The complexity of the legal issues raised by the complaint. Defendant Cadeau does not have the education equivalent to that of a trained practitioner to argue the legal issues raised by the complaint.

**II.**

From the Officer Involved Shooting incident the City of Atlanta Police Department decided to separate my employment in May 2017. Contributions towards Retirement and Saving Plans were returned to me. I was unable to secure steady gainful employment due to the pending charges held by the Fulton County District Office. I have exhausted all my savings and my retirement contribution to meet my financial obligations. It was necessary to sell my home and to return my vehicle to the bank to further meet my financial needs and to secure a defense attorney for criminal court.

As of April 2019, I currently live with family at 2000 Towaliga Court, Locust Grove, GA 30248.

My preferred mailing address is: PO Box 931, locust Grove, GA 30248- 0931

When I was notified of the initial Civil Action, I had submitted a motion to appoint counsel, *Pro Bono* along with an affidavit of indigency. I was recently made aware that my initial request for *Pro Bono* counsel was denied moot because the court ordered the plaintiff to amend their complaint to cure deficiency. I respectfully request that an attorney for *Pro Bono* counsel for Civil Cases be selected for my behalf.

US DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

## CONCLUSION

The decision must rest upon the Courts' careful consideration of all the circumstances of the case, with particular emphasis upon certain factors that have been recognized as highly relevant to a request for counsel.

Under O.C.G.A. 15-11-16 (a) "Indigent person" defined. An indigent person is one who at the time of requesting counsel is unable without undue financial hardship to provide for full payment of legal counsel and all other necessary expenses for representation.

guardian, or custodian. If the interests of two or more parties' conflict, separate counsel shall be provided for each of them.

An Amended *IN FORMA PAUPERIS* and *AFFIDAVIT OF INDIGENCY* has been filed to this motion.

DATED: 9/24/20

By: _____ 9/24/20
Mathieu Cadeau

Defendant in Pro Se

11