Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 1 of 110

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NOEL HALL and CHRISTINA HALL,

        Plaintiffs,

                     CIVIL ACTION FILE

    vs.              NO.:1:18-cv-4710-CAP

CITY OF ATLANTA, a municipal
corporation of the State of
Georgia; GEORGE N. TURNER, in
his individual capacity as
former Chief of Police of the
City of Atlanta Police Department;
and MATHIEU CADEAU, in his
individual capacity as former
Police Officer of the City of
Atlanta Police Department,

        Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

REMOTE VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF
GEORGE N. TURNER

January 13, 2021

9:31 a.m.

(All attendees appeared remotely via
videoconferencing and/or teleconferencing.)

REPORTED BY:  Tom Brezina, CRR, RMR, CCR-B-2035

---

Page 2

APPEARANCES OF COUNSEL

On behalf of the Plaintiffs:

    SAMUEL L. STARKS, Esquire
    SHEAN D. WILLIAMS, Esquire
    The Cochran Firm - Atlanta
    100 Peachtree Street, NW
    Suite 2600
    Atlanta, Georgia 30303
    (404) 222-9922
    (404) 222-0170 (facsimile)
    sstarks@cochranfirmatl.com
    swilliams@cochranfirmatl.com

On behalf of the Defendants, City of Atlanta and
George N. Turner, in his individual capacity as
former Chief of Police of the City of Atlanta Police
Department:

    TIFFANY C. SELLERS, Esquire
    MARRIAH N. PAIGE, Esquire
    Thomas, Kennedy, Sampson & Tompkins, LLP
    3355 Main Street
    Atlanta, Georgia 30337
    (404) 688-4503
    (404) 684-9515 (facsimile)
    T.sellers@tkstlaw.com
    M.paige@tkstlaw.com

Videographer:  Mr. A.J. Gallo
            - - -

---

Page 3

INDEX OF EXAMINATIONS

WITNESS: GEORGE N. TURNER

EXAMINATION                                    Page
Cross By Mr. Williams                            11

INDEX TO EXHIBITS

EXHIBIT    DESCRIPTION                          PAGE
1          Second Amended Notice to              30
           Take Video Deposition of
           George Turner
2          First Amended Complaint               30
           for Damages

3          Defendants City of Atlanta            47
           and George N. Turner's
           Answer to Plaintiffs' First
           Amended Complaint for Damages
4          Defendant George Turner's             80
           Objections and Response
           to Plaintiff Noel Hall's
           First Set of Interrogatories

5          Defendant George N. Turner's         114
           Response to Plaintiff
           Christina Hall's First Set of
           Interrogatories to Defendant
           George Turner

6          Defendant George N.                  115
           Turner's Response to
           Plaintiffs' First Requests
           for Admission to Defendant
           George N. Turner

7          Defendant George Turner's            116
           Objections and Responses
           to Plaintiffs' Second Request
           for Admissions to Defendant
           George Turner

---

Page 4

INDEX TO EXHIBITS (continued)

EXHIBIT    DESCRIPTION                          PAGE
8          Transcript of Deposition             139
           of George N. Turner of
           February 02, 2018
9          Atlanta Police Department            153
           SOP 2080 Training

10         Atlanta Police Department            162
           SOP 1010 Mission and
           Organization of the
           Department
11         Atlanta Police Department            169
           SOP 2010 Work Rules

12         Atlanta Police Department            195
           SOP 2011 General Conduct
13         Atlanta Police Department            197
           SOP 2020 Disciplinary
           Process
14         Atlanta Police Department            206
           SOP 2022 Early
           Warning System
15         Atlanta Police Department            214
           SOP 2060 Extra Jobs

16         Atlanta Police Department            214
           SOP 2090 Performance
           Evaluations Bates
           Numbered FAVORS-COA000661
           through FAVORS-COA000673

17         Atlanta Police Department            214
           SOP 3010 Use of Force
18         Atlanta Police Department            214
           SOP 3030 Arrest Procedures

19         Atlanta Police Department            214
           SOP 3060 Reports &
           Report Writing

---

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 5

INDEX TO EXHIBITS (continued)

| EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|
| 20 | Atlanta Police Department SOP 3120 Polygraph and Computer Voice Stress Analyzer | 214 |
| 21 | O.C.G.A. Section 17-4-20 | 214 |
| 22 | 2015 ACRB Annual Report | 214 |
| 23 | 2016 Atlanta Citizen Review Board Annual Report | 214 |
| 24 | 2017 Atlanta Citizen Review Board Annual Report | 214 |
| 25 | ACRB document dtd 3/3/2016 | 214 |
| 26 | Peace Officer Standards and Training Council Data Report System Individual Officer Profile Bates Numbered COA 001609 through COA001612 | 214 |
| 27 | Incident Memorandum dtd 2/15/08 Bates Numbered HALL-FC013236 through HALL-FC013249 | 214 |
| 28 | Oath of Office Bates Numbered COA000195 | 214 |
| 29 | City of Atlanta Mid-Year Review Form Bates Numbered COA000196 through COA000247 | 214 |
| 30 | Memorandum dtd August 18, 2014 Bates Numbered COA002025, COA000604, and COA007785 through COA007788 | 214 |
| 31 | Atlanta Police Department OPS Officer Disciplinary History Bates Numbered PLF000003 through PLF000004 | 214 |

Page 6

INDEX TO EXHIBITS (continued)

| EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|
| 32 | OPS Complaint File Closeout Report Bates Numbered COA002205 through COA002230 | 214 |
| 33 | Complaint File Closeout Report Bates Numbered COA002291 through COA002323 | 214 |
| 34 | Complaint File Closeout Report Bates Numbered COA002324 through COA002355 | 214 |
| 35 | OPS Complaint File Closeout Report Bates Numbered COA002399 through COA002419 | 214 |
| 36 | OPS Complaint File Closeout Report Bates Numbered COA002485 through COA002514 | 214 |
| 37 | OPS Complaint File Closeout Report Bates Numbered COA002515 through COA002574 | 214 |
| 38 | OPS Complaint File Closeout Report Bates COA000001 through COA000070 | 214 |
| 39 | OPS Complaint File Closeout Report Bates Numbered COA002421 through COA002484 | 214 |
| 40 | OPS Complaint File Closeout Report Bates Numbered COA006550 through COA006603 | 214 |
| 41 | Plea of Guilty of Elsh Mathieu Cadeau | 214 |
| 42 | Direct Indictment, State of Georgia v. Elsh Mathieu Cadeau | 214 |

Page 7

INDEX TO EXHIBITS (continued)

| EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|
| 43 | OPS Complaint File Closeout Report Bates Numbered COA000071 through COA000194 | 214 |

(Original Exhibits 1 through 43 have been attached to the original transcript.)

Page 8

1     Deposition of George N. Turner
2          January 13, 2021
3          (The following transpired off the video
4     record.)
5          THE REPORTER:  Just before we start, do
6     I have counsel's agreement to take the
7     deposition remotely and swear the witness
8     remotely?
9          MR. WILLIAMS:  You have my agreement.
10         MS. SELLERS:  Agreement on behalf of
11    the defendants.
12         THE REPORTER:  And secondly, anybody
13    else present besides the two plaintiffs'
14    attorneys, the two defense attorneys, myself,
15    the videographer, and the deponent?  Anybody
16    else?
17         MR. WILLIAMS:  We have people in and
18    out of the office, but there is nobody
19    attending the deposition or participating.
20    My son is coming back through, and he's on
21    virtual.
22         THE REPORTER:  I'm sorry.  Was that Mr.
23    Williams?
24         MR. WILLIAMS:  Yes.
25         (Discussion ensued off the record.)

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 9

```
1              (The following transpired on the video
2    record.)
3        THE VIDEOGRAPHER:  We are now on the
4    record.  Today's date is January 13, 2021,
5    and the time is approximately 9:34 a.m.  This
6    will be the videotape deposition of George
7    Turner.  Will all attorneys present please
8    state their names and who they represent?
9        MR. WILLIAMS:  My name is Shean
10   Williams.  I represent the plaintiffs in this
11   matter.
12       MR. STARKS:  Sam Starks for the
13   plaintiffs.
14       MS. SELLERS:  Tiffany Carter Sellers on
15   behalf of the defendant.
16       MS. PAIGE:  Marriah Paige on behalf of
17   Defendant City of Atlanta and Defendant
18   George Turner.
19       THE VIDEOGRAPHER:  All right.  And can
20   the court reporter please swear the witness.
21               GEORGE N. TURNER,
22   having been produced and first duly affirmed as
23   a witness, testified as follows:
24       THE WITNESS:  I do affirm.
25       MR. WILLIAMS:  Good morning, everybody.
```

Page 10

```
1    This will be the deposition of -- give me the
2    wrong -- George Turner taken pursuant to
3    agreement of counsel as well as notice.  This
4    deposition is being taken in the Hall versus
5    city of Atlanta -- city of Atlanta, et al.
6    case currently pending in the US District
7    Court of Northern District of Georgia,
8    Atlanta Division.
9        This deposition is being taken for all
10   purposes allowed under the Federal Rules of
11   Civil Procedure as well as all discovery
12   purposes and cross-examination purposes.
13   This deposition -- I propose that we reserve
14   all objections except to the form of the
15   question and the responsiveness of the answer
16   until later use of this deposition as is
17   stated in the Federal Rules of Civil
18   Procedure as well as federal law.
19       MS. SELLERS:  That is agreeable.
20       MR. WILLIAMS:  Is Mr. -- is Chief
21   Turner going to read and sign?
22       MS. SELLERS:  Yes.
23       MR. WILLIAMS:  It is agreeable with
24   plaintiffs, he can do that before any notary.
25       MS. SELLERS:  That's fine.
```

Page 11

```
1        MR. WILLIAMS:  All right.  Is there any
2    other stipulations or anything we need to get
3    on the record?
4        MS. SELLERS:  None from the defendants.
5               CROSS-EXAMINATION
6    BY MR. WILLIAMS:
7        Q     Chief Turner?
8        A     Yes.
9        Q     I guess I need to get back to you.
10   Tiffany is showing up on my screen as opposed to
11   you.
12       THE VIDEOGRAPHER:  Shean, if you double
13   click his little box, it'll pin it so it'll
14   stay focused on him.
15       MR. WILLIAMS:  Okay.  Great.  Thanks.
16   BY MR. WILLIAMS:
17       Q     Good morning, sir.  We met off the
18   record.  Could you just please state your full name
19   for the record?
20       A     George Norman Turner.
21       Q     Mr. Turner, do you currently reside in
22   Atlanta?  I don't want to know your address.
23       A     No.
24       Q     You do not?  Okay.  What city do you
25   reside in?
```

Page 12

```
1        A     Conyers.
2        Q     And you are a party defendant to this
3    lawsuit; am I correct?
4        A     Yes.  That's what I have been informed.
5        Q     And you were actually served with a
6    complaint, a lawsuit?
7        A     That's correct.
8        Q     And am I correct that you're here
9    represented by counsel?
10       A     I am.
11       Q     Now, are you currently employed with
12   anyone?
13       A     I am.
14       Q     Who is your employer?
15       A     The Atlanta Hawks basketball club and
16   State Farm Arena.
17       Q     And how long have you been employed
18   there, sir?
19       A     Since May of 2017.
20       Q     And what is your position with the
21   Atlanta Hawks basketball team?
22       A     I'm a senior vice president of safety
23   and security for the team.
24       Q     You're not currently employed with the
25   city of Atlanta; am I correct?
```

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 13

1    A    I am not.
2    Q    And when was the last time you was
3  employed with the city of Atlanta in any capacity?
4    A    I was employed with the city of
5  Atlanta.  I retired in December of 2016.  I don't
6  recall the exact date in December of '16.
7    Q    After your retirement did you ever work
8  in any capacity with the city of Atlanta again?
9    A    I worked as an executive on loan as a
10  public safety commissioner for a short period during
11  the Olympics.  I'm sorry; during the Super Bowl,
12  this most recent Super Bowl.
13    Q    What year was that, sir?
14    A    I -- I think it was 2019.  I don't -- I
15  do not recall the exact date.
16    Q    Do you recall when you were put on
17  executive loan?
18    A    Again, it was -- it was multiple -- I
19  do not recall the exact date.  It was in -- it was
20  in the year of '19.
21    Q    What about the month?  Do you recall
22  the month?
23    A    I think it was September of -- of '19.
24  I think that was correct.
25    Q    Was that '18?  Because the Super Bowl I

Page 14

1  thought was in '19.
2    A    You're right, then.  It was -- it was
3  '18.  It was definitely prior to the Super Bowl, so
4  like I said in the very beginning, I could not be
5  for sure what year it was.
6    Q    Now, you've had your deposition taken
7  before; am I correct?
8    A    I have.
9    Q    And -- well, before we go back to that,
10  in your deposition one of the times you had a depo
11  was with me.  You recall that?
12    A    I think so.  I've had a number of
13  depos, but I do -- I think so, yes, sir.
14    Q    I look better than I did then, but
15  yeah.  We -- we deposed you a couple years ago.  At
16  that time me and you went over some ground rules.
17  I'm going to try to go over them again so you and I
18  are on the same page to make sure we get you out of
19  here sooner than later.  Is that okay?
20    A    Okay.  That's fine with me.
21    Q    The one thing is, you're doing a very
22  good job of, continue to give verbal responses.
23    A    Okay.
24    Q    So that the court reporter and the
25  videographer, we can accurately record your

Page 15

1  testimony.
2    A    Okay.
3    Q    The second rule is, please continue to
4  allow me to get the question out before you answer,
5  and I will try to also let you answer before I ask
6  another question so that we're not talking over each
7  other.
8    A    That's fine and agreeable.
9    Q    The other thing is that at some point
10  during the deposition your counsel is probably going
11  to cite some objections for the record.  Would you
12  just please give a little time to allow her to do
13  that before you just jump into an answer?
14    A    I will.
15    Q    And please answer the question after
16  she objects unless she instructs you otherwise.
17  Okay?
18    A    Yes.
19    Q    Also, I don't always ask the best
20  questions, so if at any moment you don't understand
21  my question, please tell me, and I'll rephrase the
22  question the way you do understand.  Is that
23  agreeable?
24    A    Yes, it is.
25    Q    If you don't tell me you don't

Page 16

1  understand my question, though, I'm going to assume
2  that you do understand it, and I'm going to ask that
3  you answer unless your attorney instructs you not
4  to.
5    A    I understand.
6    Q    You understand that your testimony here
7  is under oath?
8    A    I do.
9    Q    And under penalties of perjury?
10    A    Yes.
11    Q    Getting back to -- well, let me make
12  sure.  Are you taking any medications or anything
13  that will have you having problems recalling events
14  or giving you memory issues?
15    A    No.
16    Q    Do you -- are you taking any
17  medications or anything that will prevent you from
18  testifying truthful and honest here?
19    A    No.
20    Q    Before I got into that little side
21  piece, we were talking about you being on loan as
22  executive public safety as relates to the Super Bowl
23  to the city of Atlanta.  At that time were you still
24  considered -- even though you was on loan, were you
25  an employee of the city of Atlanta?

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 17

```
1       A       No, I was not.  I never received a dime
2   from the city of Atlanta.
3       Q       Well, how was you compensated for your
4   work as executive public safety on loan?
5       A       I continued to receive my salary from
6   the Atlanta Hawks basketball club.
7       Q       Just briefly take me through your
8   educational background.
9       A       I was born in the city of Atlanta.  I
10  went to Atlanta Public School System through high
11  school.  I attended Clark Atlanta University, or
12  Clark College at the time.  I received a
13  undergraduate degree from St. Leo's University in
14  public -- criminal -- criminal justice.  I later
15  received a master's degree from Columbus State
16  University in public administration.
17      Q       And do you hold any professional
18  licenses as we sit here today?
19      A       Other than a -- by the Peace Officer
20  Association of Georgia, no.
21      Q       So you are -- you still hold a license
22  with the peace office department of Georgia?
23      A       Yes.  I am a POST-certified peace
24  officer of the state of Georgia.
25      Q       Are you a member of any professional
```

Page 18

```
1   associations or organizations?
2       A       I am.
3       Q       Which ones?
4       A       I am a member of the National
5   Organization of Black Law Enforcement Executives.  I
6   am a life member of the Georgia Chiefs Association,
7   a life member of Police Executive Research Forum, a
8   life member of Major City Chiefs, a life member of
9   the International Association of Police -- Chiefs of
10  Police.
11      Q       Are you a member of a -- have a
12  membership with any police union?
13      A       I do not.
14      Q       Have you ever had a -- a membership
15  with a police union?
16      A       No.
17      Q       I do not want to know conversations
18  you've had with your counsel.  Those are privileged,
19  but I do want to know what you have done in
20  preparation for today's deposition.
21      A       I've had three sessions where we spoke
22  concerning the content of the --
23      Q       I don't want to know what you talked
24  about.
25      A       I'm not --
```

Page 19

```
1       Q       Okay.
2       A       But just the content of the case.
3       Q       And you had those sessions with your
4   attorneys?
5       A       I did.
6       Q       Was anybody present from the city of
7   Atlanta?
8       A       No.
9       Q       Other than the sessions -- or including
10  the sessions, what documents have you reviewed in
11  preparation of today's deposition?
12              MS. SELLERS:  Object to the form to the
13          extent the question calls for information
14          protected under the attorney-client
15          privilege.  Subject to that objection, Chief
16          Turner, you can answer.
17              THE WITNESS:  The -- the actual lawsuit
18          and the response to the lawsuit.
19  BY MR. WILLIAMS:
20      Q       Prior to today have you reviewed the
21  discovery responses that you have submitted in this
22  case?
23      A       Yes.
24      Q       Any other documents that you believe
25  you reviewed prior to today's deposition as relates
```

Page 20

```
1   to this case?
2       A       No.
3       Q       Have you reviewed any documents
4   relating to Mathieu Cadeau?
5       A       I have not.
6       Q       You understand that the allegations
7   against you stemmed from your supervision over
8   Cadeau when you were chief?
9       A       Yes.
10      Q       You understand that his -- the
11  allegations stem from his disciplinary history as
12  relates to him being at the City of Atlanta Police
13  Department when you were chief?
14              MS. SELLERS:  Object to the form.  To
15          the extent that you can answer, Chief Turner,
16          you can answer.
17              THE WITNESS:  Yes.
18  BY MR. WILLIAMS:
19      Q       If your involvement in this case as a
20  defendant involves Cadeau, did you not want to look
21  at Cadeau's files to look at your involvement, if
22  any, in his disciplinary history?
23              MS. SELLERS:  Object to the form.  To
24          the extent that you can answer, Chief, you
25          can.
```

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 21

1     THE WITNESS:  No.  I didn't have access
2   to those -- that particular file.
3   BY MR. WILLIAMS:
4     Q    So regardless if you had access, would
5   you have wanted to look at the file that -- of the
6   man that you have been sued for?
7     A    No.
8     Q    Okay.  Can you tell us why you as a
9   defendant in this lawsuit would not want to look at
10   the file of Cadeau, who is the genesis of why you're
11   in this lawsuit?
12     A    I have no reason to be able to -- not
13   be able to respond as you present the document, and
14   that's why I did not feel I needed to access those
15   files.
16     Q    Have you inquired to the city of
17   Atlanta to look at any of the files that you were
18   over and controlled in your capacity as chief since
19   you've been brought into this litigation?
20     A    No.
21     Q    We proposed very specific discovery
22   questions to you regarding those files and your
23   involvement in them.  Is it your testimony under
24   oath that you have not inquired to the city to look
25   at those files to answer the discovery that we

Page 22

1   propounded to you?
2     MS. SELLERS:  Object to the form.  To
3   the extent that you can answer, Chief, you
4   can.
5     THE WITNESS:  Restate the question.
6   BY MR. WILLIAMS:
7     Q    Yeah.  Let me do a better question.
8   You're aware that we have propounded discovery
9   questions to you about Cadeau and other matters
10   while you were chief of the city of Atlanta.  Do you
11   recall getting those questions?
12     A    Yes.
13     Q    Have you at any point inquired to the
14   city of Atlanta, information to look at those files
15   to answer those discovery questions that we
16   propounded to you?
17     A    No.
18     Q    Can you tell me why you have not asked
19   the city of Atlanta to do that?
20     A    I trusted counsel that's representing
21   me.
22     Q    So have you made any inquiry, you
23   personally, to get information to answer the
24   questions that we have set forth in our discovery
25   responses?

Page 23

1     MS. SELLERS:  Object to the form.
2     THE WITNESS:  No.  Sorry.
3     MS. SELLERS:  I'm going to put my
4   objection on the record.  You can answer,
5   Chief.
6     THE WITNESS:  No.
7   BY MR. WILLIAMS:
8     Q    So we're clear for the record, the only
9   documents you have reviewed in this case is the
10   complaint that was filed against you; is that
11   correct?
12     MS. SELLERS:  Object to the form.  I
13   think he said -- I think he said in discovery
14   too, Shean.
15     MR. WILLIAMS:  You're right.  I was
16   going to go for a checklist, Tiffany.
17     MS. SELLERS:  Oh, I'm sorry.  Go ahead.
18     MR. WILLIAMS:  No.  It was a bad
19   question.  Let me do a better way.
20   BY MR. WILLIAMS:
21     Q    I'm going to give a list of documents
22   that I think you say you reviewed.  Let me know if
23   I'm correct, Chief Turner.  Am I correct you
24   reviewed the amended complaint -- the complaint, the
25   amended complaint, the answer to the complaint, the

Page 24

1   discovery that the plaintiff has propounded to you,
2   and your responses to those questions?
3     A    That's correct.
4     Q    Is that the extent of only the
5   documents you looked at?
6     A    Yes.
7     Q    And for the record, you have not made
8   any inquiry to the city of Atlanta to review any
9   files of Cadeau?
10     A    I have not.
11     Q    You have not reviewed any files or
12   inquiry or made a request to the city of Atlanta,
13   make an inquiry regarding the OPS files that were in
14   possession of the city during your time as chief?
15     A    I have not.
16     Q    Have you reviewed the policies and
17   procedures that were in effect at the time of your
18   time as chief?
19     A    No, I have not.
20     Q    You have reviewed, am I correct, the
21   request for admissions that the plaintiff sent to
22   you asking for you to admit or deny the certain
23   facts in this case?
24     A    I have.
25     Q    And you have reviewed your responses to

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 25

1  those?
2      A      Yes.
3      Q      Did you make any inquiry to the city of
4  Atlanta to obtain information or documents that will
5  allow you to respond to those requests for
6  admission?
7      A      I have not.
8      Q      And why not?
9      A      I have trusted counsel to represent me,
10  and therefore I did not reach out to the city for
11  any additional documents.
12      Q      So when you answered the discovery
13  responses that the plaintiff provided to you, the
14  interrogatories, the requests for production of
15  documents, the request for admissions -- and we sent
16  several sets -- what did you rely on to respond to
17  those interrogatories, requests for production of
18  documents, and requests for admissions?
19      A      I relied on this legal team.
20      Q      Is that it?
21      A      That is it, sir.
22      Q      Did you rely on your own knowledge and
23  information that you had independent of the legal
24  team?
25      A      Let me just say that that will never

Page 26

1  leave me, my knowledge and understanding, and so I
2  will always rely on my knowledge, but you asked
3  specifically if there are other documents that I --
4  I utilized.
5      Q      No.  No, I didn't.  I asked, what did
6  you rely on?  I specifically made sure I didn't say
7  documents.
8      A      Okay.
9      Q      What did you rely on to provide
10  truthful and honest responses to the interrogatory
11  requests that I made to you, the requests for
12  production of documents I made to you, the request
13  for admissions I propounded to you?  That was my
14  question.
15      A      Okay.
16      Q      So would you answer that so we make
17  sure the record is clear on what your answer to that
18  is?
19      A      Sure.  You just restate it one more
20  time, and then I'll respond to --
21      Q      Chief Turner, can you please tell this
22  court and this jury what you relied upon to answer
23  the interrogatory questions, the requests for
24  admission questions, and the request for production
25  questions that the plaintiff propounded to you

Page 27

1  pursuant to the Federal Rules of Civil Procedure in
2  this case?
3      A      The documents that the -- my attorney
4  represent -- provided and my working knowledge of
5  the city SOPs and understanding of those.
6      Q      Okay.  Which documents were you
7  provided to answer our interrogatory questions, our
8  request for production of documents, and our request
9  for admissions?
10      A      I was provided no documents, sir.
11      Q      Okay.  Because I thought you said you
12  relied on documents provided by counsel.
13      A      Just the interrogatory after it was
14  completed.
15      Q      Did you actually provide answers or
16  information to respond to those interrogatories?
17      A      Yes.
18      Q      Did you review those responses to those
19  interrogatories after they -- before they were
20  served to us?
21      A      Yes.
22      Q      Did you look at them to make sure that
23  they were truthful and honest to the best of your
24  information and knowledge?
25      A      Yes.

Page 28

1      Q      Would you agree with me, though, sir,
2  that if you don't have access or don't look at the
3  documents that those interrogatories or those
4  requests for production or those requests for
5  admissions deal with, it is difficult for you to
6  give complete answers?
7          MS. SELLERS:  Object to the form.  To
8      the extent that you can answer, Chief, you
9      can.
10          THE WITNESS:  No.
11  BY MR. WILLIAMS:
12      Q      So you believe to this jury that you
13  can give full and complete responses to the
14  interrogatory requests, the request for production
15  of documents, and the request for admissions that
16  the plaintiffs have propounded to you without
17  reviewing any of the files from the city of Atlanta?
18          MS. SELLERS:  Object to the form.  To
19      the extent that you can answer, Chief, you
20      can.
21          THE WITNESS:  I again trusted the
22      counsel to review those documents, provide
23      those responses that I checked to confirm
24      that they were -- and consistent with what I
25      wanted to say.

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 29

```
1   BY MR. WILLIAMS:
2        Q      Yeah.  And I understand that part.  I'm
3   asking a different question, though.  Do you believe
4   you -- with your knowledge, you told me your -- your
5   knowledge that you got as chief will never leave
6   you.
7            With the questions that we asked, your
8   knowledge of what being chief of police means in
9   details of duties and responsibilities, OPS files,
10  disciplinary files, training files, policies and
11  procedures, do you believe that you could reasonably
12  and adequately give full and complete responses to
13  our interrogatory requests, our requests for
14  production of documents, and our requests for
15  admissions without getting inquiry and access to the
16  city of Atlanta files?
17           MS. SELLERS:  Object to the form.  To
18       the extent that you can answer, Chief, you
19       can.
20           THE WITNESS:  Yes.
21           MR. WILLIAMS:  Hey, Tom, are you -- do
22  you have the documents ready yet?
23           THE REPORTER:  Can we go off the record
24  and let me see?
25           MR. WILLIAMS:  Yes.
```

Page 30

```
1        THE VIDEOGRAPHER:  Going off the
2   record.  The time is 9:59.
3        (A recess was taken.)
4        THE VIDEOGRAPHER:  10:09.  We're back
5   on the record.
6        MR. WILLIAMS:  Tiffany?
7        MS. SELLERS:  Yes.
8        MR. WILLIAMS:  I'm going to -- Exhibit
9   1 will be the notice of the deposition.
10       MS. SELLERS:  Okay.
11       MR. WILLIAMS:  We have the wrong one
12  that was e-mailed to you guys, so we're going
13  to replace it.
14       MS. SELLERS:  All right.  Is that the
15  one that said it started at nine?
16       MR. WILLIAMS:  No.  It is the one that
17  says 9:30, but that is Cadeau.
18       MS. SELLERS:  Oh, okay.  All right.  So
19  you are going to replace it -- no, nothing is
20  on the screen.  Okay.
21       MR. WILLIAMS:  Nothing is on the
22  screen.  I'm just telling you, Exhibit 1,
23  Tom, will be the notice of deposition for
24  Chief Turner.
25       MS. SELLERS:  Okay.
```

Page 31

```
1            (Exhibits Numbers 1 and 2 were marked
2        for identification.)
3   BY MR. WILLIAMS:
4        Q      Chief Turner, I want to show you what
5   we've marked as Exhibit 2 to your deposition.
6        A      Okay.
7        Q      Do you have the ability to see that?
8        A      I can.
9        Q      And I appreciate your patience.  I'm
10  not the IT guy.
11       A      I understand.
12       Q      But Exhibit 2 to your deposition is the
13  first amended complaint that was filed by the
14  plaintiffs.
15           (A cellular telephone rang.)
16  BY MR. WILLIAMS:
17       Q      Sorry about that.  That was filed by
18  the plaintiffs against the city of Atlanta and
19  yourself.  Have you seen this document prior to
20  today?
21       A      Yes.
22       Q      Have you had a chance to read it?
23       A      Yes.
24       Q      And do you understand the claims that
25  have been brought against you?
```

Page 32

```
1        A      Yes.
2        Q      As well as against Cadeau?
3        A      Yes.
4        Q      As well as against the city of Atlanta?
5        A      Yes.
6        Q      Do you have an understanding of what
7   the Fourth Amendment is?
8        A      Yes.  I get the amendments kind of
9   confused.  If you remind me of the -- what the
10  Fourth specifically talks about, then I'm confident
11  I'll remember which one is which.
12       Q      Well, let me ask you this way as the
13  former chief of the City of Atlanta Police
14  Department.  Do you have an understanding of the
15  significance that the Fourth Amendment has to police
16  officers and the rights of citizens of this city?
17           MS. SELLERS:  Object to the form.  To
18       the extent that you can answer, Chief, you
19       can.
20           THE WITNESS:  I'll answer that to say
21       that I am not abreast with all amendments at
22       this point in my life.  However, if you
23       remind me of the Fourth Amendment, I will be
24       able to respond to that more effectively.
25  BY MR. WILLIAMS:
```

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner
January 13, 2021

Page 33

1  Q  Now, you understand that as part of
2  this lawsuit, my clients are contending that their
3  Fourth Amendment rights were violated.  Do you
4  recall seeing that in the complaint?
5  A  I do.
6  Q  Did you not as a defendant in this case
7  at any point after being sued, ever inquire to what
8  the Fourth Amendment was?
9  A  No.
10  Q  Why not?
11  A  I'm confident that I am familiar with
12  the Fourth Amendment.  I just don't -- again, the
13  numbers are -- I'm lost to the exact number that
14  we're referring to.
15  Q  So as you sit here right now, you
16  just -- you just don't recall what the generalities
17  of the Fourth Amendment is as we -- as I'm asking
18  you this question, per se?
19  A  That is correct.
20  Q  All right.  If you go to -- I'm going
21  to scroll down on the complaint.  I'm going to try
22  to zoom this in so that you can see better.  Is that
23  better, sir?
24  A  That is a lot better, yes.  Thank you.
25  Q  Thank you.  And if you ever need me to

Page 34

1  zoom or do anything, just let me know.  Okay?
2  A  All right.
3  Q  Let's go to paragraph 5 of the
4  complaint that was filed against you that you
5  testified that you reviewed.  I want to focus on
6  where it starts --
7  MS. SELLERS:  You said paragraph 5,
8  Shean, or paragraph -- because you have
9  paragraph 6 up, on my screen, at least.
10  Okay.
11  MR. WILLIAMS:  I'm trying to get it
12  there.  I apologize, Tiffany.
13  MS. SELLERS:  No, no, no, that's fine.
14  You said five, and I was looking at six.  I
15  just wanted to make sure we were on the same
16  page.
17  BY MR. WILLIAMS:
18  Q  Here we go.  Chief Turner, I'm not here
19  to try to see if you can read or anything, just
20  to move it quicker, I'm going to read the relevant
21  part and just ask you a question.  Is that okay?
22  A  That is fine.
23  Q  Okay.  And it says, in relevant, "In
24  his role as chief of police, Defendant Turner, which
25  is you, was ultimately responsible for the

Page 35

1  management and operation of the Atlanta Police
2  Department."
3  Am I correct?  Is that statement
4  correct?
5  A  That is correct.
6  Q  During the times of -- of January 10th
7  through December of 2016?
8  A  That is correct.
9  Q  And during that same period am I also
10  correct you was responsible for ensuring that the
11  Atlanta Police Department officers comply with the
12  color and pretense of federal and state laws as well
13  as the ordinance, regulations, custom, uses of the
14  state of Georgia and the city of Atlanta as well as
15  the policies of the Atlanta Police Department?  Is
16  that also a true statement?
17  A  Yes.
18  Q  Those federal laws is the laws of the
19  Fourth Amendment and the 14th Amendment; am I
20  correct?
21  A  That is correct.
22  Q  Do you have a recollection or any
23  generality of what the 14th Amendment is?
24  A  I don't recall at this time.
25  Q  All right.  Do you -- do you understand

Page 36

1  that you are still a POST-certified officer;
2  correct?
3  A  I am, yes, sir.
4  Q  And what do you have to do to be POST
5  certified?
6  A  To continue training and -- and to
7  qualify on the -- with the -- a firearm.
8  Q  How often do you have to do that, sir?
9  A  Training is a 20-hour requirement per
10  year and a -- a firearm course once a year.
11  Q  When was the last time you got
12  recertified?
13  A  Before the end of this past year.
14  Q  So before the end of 2020?
15  A  That's correct, yes.
16  Q  Would it have been in September?  In
17  October?  November?  December?  Give me a --
18  A  Closer to -- closer to November.
19  Q  And when did you take the training to
20  be certified?
21  A  I attended multiple trainings.  Going
22  to the Georgia Chiefs Association meeting and the
23  National Organization of Black Law Enforcement
24  Executives.
25  Q  Did you get training on the Fourth

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 37

1  Amendment during that time when you were -- POST
2  certification?
3      A      No.  No, sir.
4      Q      Did you get training on the 14th
5  Amendment during those POST certifications?
6      A      No, sir.
7      Q      What about on reasonable search and
8  seizure?
9      A      Not -- at neither one of those
10 particular trainings, no, sir.
11     Q      What about excessive force?
12     A      No, sir.
13     Q      Do you have an understanding of whether
14 the Fourth Amendment of -- Fourth Amendment of the
15 Constitution applied to reasonable search and
16 seizure?
17            MS. SELLERS:  I object to the form.  To
18       the extent, Chief, you can answer, you can.
19            THE WITNESS:  I don't recall.
20 BY MR. WILLIAMS:
21     Q      And do you have an understanding of
22 whether or not the Fourth Amendment applies to the
23 use of excessive force or the prohibition of
24 excessive force?
25            MS. SELLERS:  I'm sorry.  Same

Page 38

1       objection.  Object to the form.  To the
2       extent that you can answer, Chief, you can.
3            THE WITNESS:  I -- I don't recall.  I'm
4       sorry.
5  BY MR. WILLIAMS:
6      Q      Do you have an understanding, what is
7  reasonable force as allowed under the Fourth
8  Amendment of the Constitution by a police officer?
9      A      Yes.
10     Q      Could you tell me what your
11 understanding of what is allowed under the Fourth
12 Amendment as relates to use of force?
13     A      That force that is reasonable to
14 overcome the force that is being presented at the
15 time of the threat.
16     Q      Let's go to paragraph 6.  I'm going to
17 do the same thing.  Under paragraph 6, relevant
18 parts, sir -- let me move up a little bit --
19 "Defendant Turner was ultimately responsible for the
20 policies, practices, customs, and regulations of the
21 Atlanta Police Department from January of 2010 to
22 December of 2016."
23            Is that correct?
24     A      Yes.
25     Q      Am I also correct during that time

Page 39

1  period you was responsible for the hiring, training,
2  supervision, and discipline of all Atlanta Police
3  Department officers under your department at that
4  time?
5            MS. SELLERS:  Object to the form.  To
6       the extent that you can answer, Chief, you
7       can.
8            THE WITNESS:  Only as a paramilitary
9       organization and being the head of that --
10      the Atlanta Police Department.
11 BY MR. WILLIAMS:
12     Q      What do you mean, only as?  Were you
13 the ultimate chief officer responsible for hiring,
14 training, supervision, and discipline of the APD
15 officers during January of 2010 through December of
16 2016?
17            MS. SELLERS:  Object to the form.  You
18      can answer, Chief, if you can.
19            THE WITNESS:  Yes.  But as in any
20      paramilitary organization, commanders of
21      those various different sections are
22      responsible to the day-to-day operation of
23      those particular disciplines.
24 BY MR. WILLIAMS:
25     Q      You was responsible for the day-to-day

Page 40

1  operations of those supervisors and managers that
2  you appointed in those roles; correct?
3      A      And the specifics, you talk training,
4  policies, regulations.  Those are governed and
5  regulated by commanders.  That is correct, yes, sir.
6      Q      And you were responsible for the
7  commanders that was responsible for the day-to-day
8  operations regarding the hiring, training,
9  supervision, and discipline of the APD officers; is
10 that correct?
11     A      Yes, yes.
12     Q      For lack of a better word, the buck
13 stopped with you?  You were ultimately --
14     A      Yes.
15     Q      -- the responsible person?
16     A      That is correct.
17     Q      In fact, a person could not even be
18 terminated at the City of Atlanta Police Department
19 but by you during the time period of January 2010
20 through December of 2016; is that correct?
21     A      That's correct.
22     Q      So the officer in this case, Cadeau,
23 none of your commanders, none of your supervisors,
24 lieutenant, managers could terminate Cadeau during
25 the time period of January 10th -- I mean January of

Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 11 of 110

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 41

1  2010 through December of 2016?  The only way they
2  could do that was you?
3      A     That's correct.
4      Q     Now let's go in 14, paragraph 14.  We
5  get into the factual allegations, and the way this
6  works, sir, is I filed a lawsuit against you.  You
7  then file a response to that lawsuit, and you did
8  that in response to an answer to the complaint.  Do
9  you recall that?
10     A     Yes.
11     Q     Did you review your responses to that
12 complaint?
13     A     Yes.
14     Q     In the response you admitted -- well,
15 let me ask you this.  On -- let me ask you this way.
16 Strike that question.
17           Paragraph 14 says, "On the evening of
18 February 25th, 2017, Defendant Cadeau was performing
19 an authorized extra job performing traffic direction
20 and control detail at the intersection of Northside
21 Drive and Ivan Allen Jr. Boulevard following an
22 annual motocross event held at this Georgia Dome."
23           Do you see that, sir?
24     A     I do.  If you move it further up, I can
25 see the -- the remaining portion of that statement.

Page 42

1  Then -- go the other way.
2      Q     Go the other way.
3      A     I see.  I see it now.  Now -- I see it
4  then.  Up.
5      Q     My question to you is, do you know that
6  to be true or not?  And I'm asking that because you
7  said you had not reviewed any -- any documents.
8           MS. SELLERS:  Object to the form.  I
9      think you asked him in connection with the --
10     well, never mind.  Object to form.  You can
11     answer, Chief, to the extent you can.
12         THE WITNESS:  Restate the question.
13         Restate the question, please.
14 BY MR. WILLIAMS:
15     Q     Do you -- do you -- as exhibit --
16 Number 14 says a paragraph about Cadeau performing
17 an authorized extra job on the 25th of February,
18 2017.
19           My question is, do you agree that that
20 is a true fact in this case?
21     A     I cannot agree or disagree.
22     Q     And the reason is, is that you have not
23 reviewed any aspect of the city of Atlanta file on
24 the incident involving the -- the basis of this
25 lawsuit?  Am I correct?

Page 43

1           MS. SELLERS:  Object to the form.  To
2      the extent you can answer, Chief, you can.
3         THE WITNESS:  No.
4  BY MR. WILLIAMS:
5      Q     Am I correct?
6      A     No.  No, you're not.
7      Q     Okay.  Okay.  Do you believe that --
8  well, let me ask you this.  Have you reviewed the
9  OPS -- the APD investigation file surrounding the
10 incident involving the Halls, which are the
11 plaintiffs in this case; Cadeau, who is the officer
12 involved which is the basis of this lawsuit.  Have
13 you looked at the APD investigation?
14     A     I have not.
15     Q     Can I ask you why you would not want to
16 look at the file which is the basis of the lawsuit
17 that you are a party to?
18     A     Sir, I'd left the city of Atlanta on
19 December the 16th.  I would not have been involved
20 with determining if Cadeau was working a
21 city-approved extra job.  I had left the city.  My
22 employment with the city had discontinued.
23     Q     Yeah.  And notwithstanding that,
24 though, you still have been brought as a defendant
25 in a lawsuit involving Cadeau in an incident that

Page 44

1  happened after you left; correct?
2      A     That is correct.
3      Q     If I'm in a lawsuit and I'm being sued,
4  I would want to know the underlining issues
5  surrounding the incident which is the basis of the
6  lawsuit.  I'm just asking you, did you not want to
7  know?
8      A     No.
9      Q     Okay.  And my question is, why not?
10     A     I had no concerns about it.  I depended
11 on the -- the counsel that was hired to defend me.
12     Q     So you have -- as we sit here today and
13 since the filing of this lawsuit, you have not had a
14 concern about the facts and the underlying facts
15 that is the basis of the lawsuit that you are a
16 party to; is that correct?
17           MS. SELLERS:  Object to the form.  I'm
18     sorry.  I object to the form.  You can
19     answer, Chief, if you can.
20         THE WITNESS:  That is not what I said,
21     sir.
22 BY MR. WILLIAMS:
23     Q     Okay.  Well, let me ask it a different
24 way.
25     A     Please.

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 45

1    Q        Are you concerned about or have any
2    concern or -- or strike it this way.  Do you have
3    any concern regarding the -- knowing the facts and
4    allegations set forth regarding the incident
5    involving Mr. Cadeau and Mr. Hall?
6        A        The answer to that is, yes.
7        Q        And what have you done to understand
8    the facts and allegations as relates to the incident
9    involving Hall and Cadeau?
10       A        Communicated with counsel and depended
11   on their representation.
12       Q        Outside of that, have you done anything
13   else?
14       A        No, sir.
15       Q        Have you reviewed or even asked to
16   review the OPS or APD investigation file regarding
17   Hall and Cadeau?
18           MS. SELLERS:  Object to the form.  To
19       the extent you can answer, you can answer,
20       Chief.
21           THE WITNESS:  I have not.
22   BY MR. WILLIAMS:
23       Q        You said you relied on counsel.  In
24   your answer to this paragraph you did admit that it
25   was a true allegation.  Is it -- is it -- is it my

Page 46

1    understanding that when you admitted or denied our
2    allegations in your answer, that you was relying on
3    your counsel?
4        A        That is correct.
5        Q        Can we accept the things that you have
6    admitted to through your counsel as relates to the
7    answer to our complaint, as true and accurate?
8        A        Yes.
9        Q        Do you as we sit here today, recall
10   Officer Cadeau?
11       A        No, I do not.
12       Q        Do you recall even how he looks?
13       A        I do not.
14       Q        Do you recall ever having an incident
15   where you were involved in the decision as relates
16   to his employment at the Atlanta Police Department?
17       A        I do.
18       Q        Can you help me understand how you can
19   recall the incident but don't recall Cadeau as an
20   officer?
21       A        I can't.
22       Q        So how do you even remember the
23   incident, then?
24           MS. SELLERS:  Object to the form.  To
25       the extent that you can answer, Chief, you

Page 47

1    can.
2            THE WITNESS:  I remember the incident
3        as it was -- I was reminded about the -- the
4        actual case that I sat as the disciplinary
5        authority in.
6    BY MR. WILLIAMS:
7        Q        I'm asking you, how do you remember
8    that?
9        A        I remember it because of the
10   conversation that I had with counsel.
11       Q        Okay.  Independent of counsel do you
12   have an independent recollection of the incident
13   involving Cadeau?
14       A        What do you mean, sir?  Independent
15   recollection?
16       Q        Take your lawyers out of it; what they
17   told you, what you discussed.  Outside of that, but
18   for that, do you have a independent recollection of
19   that disciplinary hearing?
20       A        In that it was several years ago I do
21   vaguely recall the session, but I do not recall how
22   Officer Cadeau looked.  I couldn't pick him out of a
23   lineup today, no.
24           (Exhibit Number 3 was marked for
25       identification.)

Page 48

1    BY MR. WILLIAMS:
2        Q        Okay.  Let's go to Exhibit Number 3.
3    Office -- Chief Turner, I'm going to scroll through
4    this.  Would you just take your time a little bit?
5    I'm just going to ask you a couple of quick
6    questions.  Exhibit 3, I'll represent, sir, is the
7    -- is the city of Atlanta and George E. Turner's
8    answer to our amended complaint.  If you look at the
9    top, it was filed on August 2nd, 2019.  I'm just
10   going to scroll through it so you can see that it's
11   the full document.  Okay?
12       A        All right.
13       Q        And it is signed by your lawyers on
14   August 2nd, 2019; correct?
15       A        Yes.
16       Q        And it's your testimony that you had --
17   you reviewed the responses to this -- our complaint
18   that's set forth in this answer prior to it being
19   filed?
20       A        Yes.
21       Q        And you had input in the responses?
22       A        Yes.
23       Q        That input did not include any inquiry
24   into the files from the city of Atlanta from you; is
25   that correct?

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                                          January 13, 2021

Page 49

1    A        Ask that question again, sir.
2    Q        **That input did not include any specific**
3    **inquiry into the -- inquiry or review into the city**
4    **of Atlanta files that you were -- that were in the**
5    **possession of city of Atlanta during your tenure as**
6    **chief?**
7              MS. SELLERS:  Object to the form.  To
8    the extent that you can answer, Chief, you
9    can.
10             THE WITNESS:  You asking if there were
11   -- if I had -- if I inquired about -- ask the
12   question again, sir.  I'm sorry.
13   BY MR. WILLIAMS:
14   Q        **That's a bad question.  Your input in**
15   **providing an answer to our complaint, am I correct,**
16   **did not include any information that you would have**
17   **gleaned from reviewing any files from APD; is that**
18   **correct?**
19             MS. SELLERS:  Object to the form.  To
20   the extent that you can answer, Chief, you
21   can.
22             THE WITNESS:  I don't recall that.  I
23   don't recall if -- if the time that I met
24   back in 2019 with counsel, if they had OPS
25   files or not.  I did not have -- I didn't

Page 50

1    have those in my possession.
2    BY MR. WILLIAMS:
3    Q        **Well, let's look at what you and your**
4    **counsel put under oath as answers to our -- our**
5    **complaint.  Let's go to Number 8.  Do you see that**
6    **one, sir?**
7    A        Yes.
8    Q        **Would you take a little time to read**
9    **it?**
10             MS. SELLERS:  Hold it.  Shean, I'm
11   going to object.  I think this is the answer
12   on behalf of all the defendants.  Am I
13   correct with that?
14             MR. WILLIAMS:  Yes.
15             MS. SELLERS:  Okay.  So I'm going to
16   place -- I'm going to object to the form of
17   the question.  To the extent that you can
18   answer, Chief, you can, but this is the
19   answer on behalf of all the defendants.
20             MR. WILLIAMS:  You say all the
21   defendants.  Cadeau is a defendant.  This is
22   not Cadeau's answer.
23             MS. SELLERS:  I'm sorry.  Defendants --
24   I apologize.  Let me restate my objection
25   properly for the record.  I believe that this

Page 51

1    document, Exhibit 3, is the answer on behalf
2    of Defendant City of Atlanta and George
3    Turner.  To the extent that any question is
4    posed to Chief Turner where the information
5    may have been gleaned from the city of
6    Atlanta, because when I'm reading the
7    responses, it -- I can't tell who was
8    answering what.
9             I'm going to object to the form of the
10   question.  To the extent that Chief Turner
11   certainly can answer, he can answer, but I'm
12   going to place my objection on the record to
13   this entire line of questioning related to
14   this document.
15            MR. WILLIAMS:  Just for the record,
16   Chief Turner has an independent duty under
17   federal regulations, rules of procedure to
18   answer the complaint outside of what the city
19   of Atlanta answer is, and on the record he
20   did not file an independent answer; he filed
21   an answer jointly with the city of Atlanta.
22            So I'm going to inquire to what he as,
23   on the record, answered to our complaint, and
24   I'm going to ask him based upon what he
25   attested to as his answers, so --

Page 52

1             MS. SELLERS:  You can do what you want.
2    I'm just putting my objection on the record.
3             MR. WILLIAMS:  And I'm responding to
4    that, so the --
5    BY MR. WILLIAMS:
6    Q        **So this is the answer that you have**
7    **filed, paragraph 8.  Before you do that, I want to**
8    **give you a chance to read the answer that has been**
9    **submitted on your behalf.**
10   A        The document is cut off to the left of
11   the screen.  Can you move it to the right just a
12   bit?
13   Q        Oh.
14   A        I'm operating on a small tablet, so I
15   -- no, no.  It's too big now.  I can't see it.
16   That's better.  That's better.
17   Q        **I need to make it smaller for you --**
18   **the size of your tablet.  Okay.  I just want to make**
19   **sure that I'm on the same page with you.  Can you**
20   **see it now?**
21   A        I can, yes, sir.
22   Q        **Let me know when you are ready.**
23   A        I'm ready.
24   Q        **On behalf of you, sir, it says that**
25   **you-all's -- your position is, how -- "However,**

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

---

Page 53

1  Defendant Cadeau's actions were taken outside the
2  scope of his employment with APD."
3           Do you see that?
4      A      I do, yes, sir.
5      Q      Do you have -- do you agree with that?
6  Is that true or not?
7           MS. SELLERS:  Object to the form.  To
8      the extent that you can answer, Chief, you
9      can.
10          THE WITNESS:  I can't answer that.  I'm
11      sorry.
12  BY MR. WILLIAMS:
13     Q      Why not?
14     A      Because there are a couple of things
15  that is -- just by looking at this paragraph, I
16  don't know which particular action are we referring
17  to.  Are we referring to the action that took place
18  on February the 17th on 2017?  Are we referring to
19  the incident that I sat disciplinary action over --
20  that I sat as a disciplinary authority over?  I
21  don't know what this action are referring to, sir.
22  In that -- just that -- that section there.  Just in
23  this -- this paragraph.
24     Q      We can go back and forth between the
25  complaints, but to speed it along, this is referring

Page 54

1  to the action which is the basis of this lawsuit,
2  which is the paragraph that we asked and we put
3  forth in our complaint, paragraph 8.
4      A      Okay.  Okay.  Which is -- which is the
5  -- the initial -- I got it.  I understand.  Yes,
6  sir.
7      Q      My question is, do you agree with
8  that -- "Cadeau's actions were taken outside the
9  scope of his employment" -- based on what is set
10  forth in your answer?
11          MS. SELLERS:  Object to the form.  To
12      the extent that you can answer, Chief, you
13      can.
14          THE WITNESS:  Yes.
15  BY MR. WILLIAMS:
16     Q      And what is your basis that Cadeau's
17  actions on -- any of his actions on February 25th,
18  2017, with -- involving Mr. Hall was -- his actions
19  were out -- taken outside the scope of his
20  employment with APD?
21     A      In that I did not look at the -- the
22  OPS complaint.  I believe if the -- the violations
23  that this individual was -- have been charged with
24  was outside of the training provided by the Atlanta
25  Police Department.

Page 55

1      Q      So is it your testimony that if someone
2  -- an officer's actions are outside the training of
3  the APD, then that officer's actions were taken
4  outside the scope of his or her employment with APD?
5           MS. SELLERS:  Object to the form.  You
6      can answer, Chief, if you can.
7           THE WITNESS:  I believe a set of
8      policies and procedures and training direct
9      an officer on how and where and how they
10      should respond to a specific situation, and
11      if the actions are not consistent with
12      training, the answer to that is yes.
13  BY MR. WILLIAMS:
14     Q      So every time an officer violates
15  training or the specific work policies set forth in
16  an SOP, it is your testimony in this case that that
17  officer's actions are outside the scope of his or
18  her employment with APD?
19          MS. SELLERS:  Object to the form.  To
20      the extent that you can answer, Chief, you
21      can.
22          THE WITNESS:  That is my belief, yes,
23      sir.
24  BY MR. WILLIAMS:
25     Q      When an officer then doesn't comply

Page 56

1  with training and doesn't comply with the SOPs and
2  therefore your testimony is outside the scope of the
3  APD -- of his employment with APD, should that
4  officer be disciplined?
5      A      If the action is known and the evidence
6  confirmed that the officer was in violation of the
7  SOP, the answer to that is yes.
8      Q      What violations of training and what
9  violation of SOP policies during your tenure as
10  chief would an officer do or need to have done to,
11  in your view, warrant termination?
12          MS. SELLERS:  Object to the form.  To
13      the extent that you can answer, Chief, you
14      can.
15          THE WITNESS:  A form of truthfulness
16      actions that was so egregious that -- that
17      cause unapproved or unnecessary force against
18      a citizen of the city.  A number of things,
19      and there is -- there is a criteria that was
20      in place when I was the chief of police that
21      laid out those scopes of how those actions
22      would reach a place of termination or
23      significant disciplinary action.
24  BY MR. WILLIAMS:
25     Q      Let's focus on two you said.  You said

---

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 57

1  truthfulness is one that should warrant termination;
2  is that correct?
3          MS. SELLERS:  Object to the form --
4          THE WITNESS:  That is correct.
5          MS. SELLERS:  -- but you can answer.
6          THE WITNESS:  I'm sorry.
7  BY MR. WILLIAMS:
8      Q      Thank you, Chief Turner.  Give Attorney
9  Sellers a little bit of time.  She's just doing her
10 job.  Okay?  And I --
11     A      Okay.
12     Q      -- trying to answer my questions so
13 quickly.  I really do.  I want to get you out.
14         MR. WILLIAMS:  Tiffany, did you get
15         your objection on the record?
16         MS. SELLERS:  I believe I did.  Mr.
17         Court Reporter, you got my objection?
18         THE REPORTER:  Just a second, please.
19         (Thereupon, the court reporter read
20         as follows:  "Ms. Sellers, form.
21                 Answer, that is correct.  I'm
22         sorry.
23                 Ms. Sellers, you can answer.")
24         MS. SELLERS:  Yeah.  Just wanted to
25         make sure my objection is on the record.

Page 58

1          We're good.  Thank you.
2          MR. WILLIAMS:  And, Tom, did the answer
3          come through?
4          THE REPORTER:  Just a second, please.
5          MR. WILLIAMS:  Let me go ahead, Tom,
6          and ask a better question so we're clear.
7  BY MR. WILLIAMS:
8      Q      And then, Mr. -- Mr. Turner, let
9  Miss Sellers get her objection so that we're all
10 clear.  Okay?
11     A      Yes, sir.
12     Q      Chief Turner, if an officer is found to
13 have been untruthful or dishonest in word or action,
14 am I correct that that officer during your tenure
15 should be terminated at the Atlanta Police
16 Department?
17         MS. SELLERS:  Object to the form.  To
18         the extent that you can answer, Chief, you
19         can.
20         THE WITNESS:  Yes.
21 BY MR. WILLIAMS:
22     Q      And if an officer -- an officer's
23 actions are so egregious is what I wrote down.  What
24 did you mean by actions so egregious, so that we're
25 clear?

Page 59

1      A      That their action caused significant
2  bodily harm to another without cause of that action,
3  meaning without being -- having justification,
4  probable cause to provide a significant action
5  towards another citizen.
6      Q      You also said something about if the
7  actions are unapproved or unnecessary use of force.
8  What did you mean by that?
9      A      I meant that if a person -- an officer
10 utilized force, that was more than was needed to
11 overcome the action that was presented at the time,
12 which be deemed as unnecessary.
13     Q      What if an officer used force on
14 someone, on a citizen that was not only unnecessary
15 but it was criminal; i.e., an officer has someone
16 handcuffed and beats them in the face as they're
17 just sitting there?
18         MS. SELLERS:  Object to the form.  To
19         the extent that you can answer, Chief, you
20         can.
21         THE WITNESS:  I'm sorry.  Ask the
22         question again, please, sir.
23 BY MR. WILLIAMS:
24     Q      Yes.  If an officer -- hypothetically
25 if an officer has someone handcuffed and they can't

Page 60

1  -- they're no threat to the officer and the officer
2  just hits that citizen brutally in his face, in his
3  eye, and walks away, is that officer's
4  unnecessary -- so egregious to call for termination?
5          MS. SELLERS:  Object to the form.  You
6          can answer, Chief, if you can.
7          THE WITNESS:  I'm sorry.  I got a -- I
8          got a -- you were broken on that line of --
9          question, and I was receiving a call and I
10         had to -- I didn't hear the -- the complete
11         question.
12 BY MR. WILLIAMS:
13     Q      No problem.
14     A      Can you restate it?
15     Q      Yes.  I'm trying to get a better
16 understanding of what you mean by unnecessary and
17 egregious and all that, so I was trying to get up a
18 -- a hypothetical, and I'm reminded of a case I had
19 where the officer -- the plaintiff or the potential
20 arrestee was handcuffed, no threat to anybody
21 because he's handcuffed and the officer just punches
22 the assailant in the face.
23         My question to you is, first, does that
24 violate APD policies and procedures as you enforced
25 them during your tenure?

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 61

1          MS. SELLERS:  Object to the form.  To
2      the extent that you can answer, Chief, you
3      can.
4          THE WITNESS:  Not knowing the specifics
5      of the scenario that you laid out, I cannot
6      answer that question.
7  BY MR. WILLIAMS:
8      Q     You can't answer that if an -- if an
9  assailant is -- can be no threat, no harm to
10  anybody, is handcuffed, hands behind his back, that
11  if an officer just hits them in the -- in his face,
12  you can't answer whether that is a violation of APD
13  policies on your tenure?
14          MS. SELLERS:  Same objection.  You can
15      answer, Chief, if you can.
16          THE WITNESS:  If the scenario was just
17      as you described, then the answer would be
18      yes.  We are assuming and making assumptions.
19      I don't know the details of the -- the
20      incident.
21  BY MR. WILLIAMS:
22      Q     Well, that was all the details I was
23  giving.  All the details I gave you, that is a
24  violation of APD policy during your tenure; isn't
25  that correct?

Page 62

1          MS. SELLERS:  Same objection.
2          THE WITNESS:  Yes.
3  BY MR. WILLIAMS:
4      Q     It is also a criminal act, isn't it,
5  sir, to assault someone like that?  Isn't that a
6  criminal act?
7          MS. SELLERS:  Object to the form.  You
8      can answer, Chief, if you can.
9          THE WITNESS:  Yes.
10  BY MR. WILLIAMS:
11      Q     And a criminal act that one of your
12  officers commit hypothetically during your tenure
13  should also warrant termination; correct?
14      A     No, no.
15      Q     So if an officer commits aggravated
16  assault or aggravated battery on a citizen, that is
17  not a termination or dismissal offense during your
18  tenure?
19      A     A convict --
20          MS. SELLERS:  I'm going to object to
21      form.
22          THE WITNESS:  A convicted felon --
23      felony would be a termination of an
24      employee's working within the Atlanta Police
25      Department during my tenure.

Page 63

1  BY MR. WILLIAMS:
2      Q     So if an allegation of the scenario I
3  gave where this officer hits or commits an
4  aggravated battery or battery or assault on an
5  assailant who is handcuffed, there would not be an
6  automatic termination because the first thing that
7  has to happen is a conviction?
8      A     The allegation would not be the sole
9  determination of a termination.
10      Q     And what would have to happen before an
11  officer in that scenario would be terminated?
12      A     A complete investigation and/or a
13  conviction of the criminal action.
14      Q     And if the investigation determined
15  that the allegations of an officer committing a
16  battery or an aggravated battery or an assault on a
17  person or citizen who's handcuffed and is no threat,
18  is -- if that allegation is sustained, then
19  termination would be warranted?
20          MS. SELLERS:  Object to the form.  You
21      can answer if you can, Chief.  I'm sorry.
22          THE WITNESS:  Happened again, guys.
23      I'm sorry.  I received another contact, and I
24      -- your question was chopped -- chopped off.
25      I'm sorry.  Can you repeat the question?

Page 64

1  BY MR. WILLIAMS:
2      Q     Yeah.  If in the scenario I've given,
3  that the individual is handcuffed, no threat, the
4  officer hits the citizen in the face, commits an
5  aggravated assault or battery or just an assault,
6  and the investigation determines that the use of
7  force was -- complaint was sustained, would that
8  then warrant termination?
9          MS. SELLERS:  Object to the form.  To
10      the extent that you can answer, Chief, you
11      can.
12          THE WITNESS:  That's a -- that's
13      absolutely a possibility.
14  BY MR. WILLIAMS:
15      Q     If that person was -- would you agree
16  with me that that officer, the OPS, would need to
17  refer those allegations to the district attorney for
18  an investigation into the criminal -- potential
19  criminal conduct of that officer; isn't that
20  correct?
21          MS. SELLERS:  Object to the form.  To
22      the extent that you can answer, Chief, you
23      can.
24          THE WITNESS:  Traditionally that
25      happens probably one out of the chances of

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 65

```
1           five that a OPS investigator would refer to
2           the DA's office.  Historically the
3           complainant would have filed an action or
4           request to the district attorney and they
5           would be doing their simultaneous
6           investigation.
7    BY MR. WILLIAMS:
8        Q       Yeah.  But the City of Atlanta Police
9    Department has an oath to enforce the laws of the
10   city and the state; is that correct?
11       A       That is correct.
12       Q       And if the OPS investigation determines
13   that a -- an assault has been sustained, a criminal
14   act has been sustained against a citizen,
15   independent of whether the complainant or the
16   citizen made a complaint, they should be
17   independently referring it to the district
18   attorney's office as their oath required; correct?
19       A       You are correct.
20       Q       Because the ultimate people who should
21   be enforcing the laws if there is criminal conduct,
22   is the City of Atlanta Police Department; isn't that
23   true?
24               MS. SELLERS:  Object to the form.
25               THE WITNESS:  To --
```

Page 66

```
1                MS. SELLERS:  I'm sorry.  Object to the
2           form.  To the extent you can answer, Chief,
3           you can.
4                THE WITNESS:  To bring those charges,
5           correct.
6    BY MR. WILLIAMS:
7        Q       Exactly.  If -- if the City of Atlanta
8    Police Department during your tenure, if there was
9    any evidence or allegations of an officer committing
10   a felony against a citizen of this city, they were
11   under a duty to refer that to the district
12   attorney's office based on the oath of office that
13   the -- every officer took; isn't that true?
14               MS. SELLERS:  I am going to object to
15          the form.  To the extent you can answer,
16          Chief, you can.
17               THE WITNESS:  I can't answer that.  I
18          don't know.  I can't answer that question the
19          way it is laid out.
20   BY MR. WILLIAMS:
21       Q       Okay.  Sir, doesn't the oath of office
22   of every officer during your tenure require that
23   they enforce the laws of the state and of the city
24   as carrying out their duty?
25       A       Yes.
```

Page 67

```
1        Q       If they -- if any of your officers or
2    your OPS department in their investigation
3    determines that an officer has committed an assault
4    against a citizen, aren't they under a duty in
5    enforcing the laws of the city and the state of
6    Georgia, to refer those allegations to the district
7    attorney?
8                MS. SELLERS:  Object to the form.  To
9           the extent that you can answer, Chief, you
10          can.
11               THE WITNESS:  That -- the answer to
12          that would be yes.  However, the officer
13          has -- can -- or also file an action on
14          behalf -- as a law enforcement officer on
15          his -- on his behalf, of the citizen.
16   BY MR. WILLIAMS:
17       Q       I'm confused.
18       A       So cases are -- police officers make
19   arrests, and then that information is sent to the DA
20   to prosecute that -- that case, and so if the DA, as
21   I said earlier, is working the case simultaneously,
22   there would be no reason for the OPS investigation
23   -- investigator to submit to the DA's office.
24   However, if there were not a simultaneous
25   investigation, yes, the investigator would and
```

Page 68

```
1    should submit that case to the DA's office or file
2    the action on his own behalf.
3        Q       Sir, in all candor, whether anybody
4    else has -- does anything, the DA or the private
5    citizen, the officer who sees or investigates or has
6    evidence of another officer committing a felony
7    against a citizen, that officer has an independent
8    duty to refer those allegations to the district
9    attorney's office regardless of what anybody else
10   does; isn't that true?
11               MS. SELLERS:  Object to the form.  To
12          the extent that you can answer, Chief, you
13          can.
14               THE WITNESS:  Again, during my tenure
15          as the Atlanta police officer -- police
16          officer and a chief, cases were not
17          necessarily filed by way of the district
18          attorney's office.  An officer made an
19          arrest, and then the district attorney is
20          responsible for prosecuting the crime.
21               So that is the only antics that we're
22          -- I mean semantics -- that we're dealing
23          with at this point.  Yes, the officer has an
24          obligation.  Yes, the officer should --
25          should make a case or either report to the
```

Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 18 of 110
Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner
January 13, 2021

Page 69

1          district attorney's office.
2    BY MR. WILLIAMS:
3          Q        I want you -- I want you to -- as part
4    of the OPS investigation if it is determined that an
5    officer committed a felony against a citizen and in
6    that OPS investigation the OPS would know -- have
7    information of whether that officer has been --
8    being charged or being looked at by the DA's office.
9    They would know that during the investigation;
10   right?
11         A        That's correct.
12         MS. SELLERS:  Object to the form.  To
13     the extent that you can answer, Chief, you
14     can answer.
15   BY MR. WILLIAMS:
16         Q        So I want you to assume that there is
17   no investigation by the DA because the DA either
18   doesn't know or doesn't have information about this
19   allegation.  Whatever the reason, there is no
20   independent investigation going on by the DA on the
21   officer's action, and OPS knows it, but they do
22   their investigation.
23         It is sustained and determines that the
24   officer committed a felony against a citizen in use
25   of force.  They come to that conclusion.  Don't that

Page 70

1    OPS investigator and the people who're reviewing
2    that file have an independent -- if they know there
3    is not a current criminal investigation by the DA
4    going against that officer, to let them know and to
5    refer it to the DA's office?  That's all I'm asking.
6          MS. SELLERS:  Object to the form.  To
7      the extent that you can answer that question,
8      Chief, you can.
9          THE WITNESS:  I believe that is an
10     obligation of the officer.
11   BY MR. WILLIAMS:
12         Q        So --
13         A        Yes.
14         Q        -- the answer to the question is yes?
15         A        Yes.
16         Q        And the reason it is yes, sir, is
17   because an officer's duty to arrest or charge
18   somebody is the same duty whether they're a private
19   citizen or whether they're a police officer?  If
20   they see a crime, they have a duty to report that
21   crime and to start investigation or charges
22   regarding that crime; isn't that true?
23         MS. SELLERS:  Same objection.  To the
24     extent that you can answer, Chief, you can.
25         THE WITNESS:  Yes.

Page 71

1    BY MR. WILLIAMS:
2          Q        Police officers are not above the law
3    of any other citizen in this state, in this city, or
4    this country; isn't that true?
5          A        That is correct.
6          Q        And if you, sir, as Chief Turner during
7    your tenure, if you became aware that there was not
8    an independent investigation of a district attorney
9    about an officer but you learned that that officer
10   committed a felony act against a private citizen or
11   a battery while that citizen was handcuffed and it
12   was sustained, you would have made sure that officer
13   faced criminal charges with the DA?
14         MS. SELLERS:  Object to the form.  To
15     the extent that you can answer, Chief, you
16     can.
17         THE WITNESS:  In that scenario I would
18     have communicated with the district
19     attorney's office if case -- if files were
20     not -- if there were no charges filed and the
21     evidence dictated that the -- the officer was
22     guilty of the actions that you described, in
23     the hypothetical situation that you just
24     exposed.
25   BY MR. WILLIAMS:

Page 72

1          Q        Is there ever any circumstances that
2    you are okay with as a -- or strike that.  Is there
3    ever any circumstances that a reasonable officer
4    could use force against a handcuffed man who is no
5    threat and has no ability to cause harm or threat to
6    anybody?
7          MS. SELLERS:  Object to the form.  To
8      the extent that you can answer, Chief, you
9      can.
10         THE WITNESS:  That's a very challenging
11     question in that there are so many scenarios
12     that -- just as a person is handcuffed,
13     that's not that they cannot present a threat.
14     They have multiple -- they have lower
15     extremities.  They can kick.  They can spit.
16     They can grab you with their hand.  I can't
17     answer that question in that it is -- I just
18     do not have enough information to answer that
19     question the way you laid it out.
20   BY MR. WILLIAMS:
21         Q        Let me ask it this way.  A man is
22   handcuffed.  He has no ability to -- to be a --
23   cause physical harm or -- anybody, and he doesn't.
24   He just is sitting there.  Does an officer in any
25   circumstance, a reasonable officer, ever have the

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 73

1  right to just hit that off -- that person in the
2  face?
3              MS. SELLERS:  Object to the form.  To
4         the extent that you can answer, Chief, you
5         can.
6              THE WITNESS:  In that scenario, no.
7  BY MR. WILLIAMS:
8       Q       Would -- would that officer ever have a
9  right -- well, let me go back.  With that scenario
10 I just gave you, would you -- if you learned that an
11 officer did that, would you not terminate that
12 officer?
13             MS. SELLERS:  Object to the form.  To
14        the extent that you can answer, Chief, you
15        can.
16             THE WITNESS:  It depends on the
17        egregiousness of that particular action.  I
18        would probably recommend termination, but I
19        can't -- I don't know the -- the situation
20        that you are specifically referring to.
21 BY MR. WILLIAMS:
22      Q       Let me give you a scenario.  What type
23 of forces do you guys when you were there, could
24 your officer use?
25      A       Force all the way up to deadly force.

Page 74

1       Q       And deadly force is with a gun?
2       A       Not always, but yes.
3       Q       And what other things could give deadly
4  force?
5       A       You can take a man's life with your
6  hands.  You can use a blunt trauma -- a blunt object
7  to take a person's life, so obviously a firearm
8  would be the most -- I guess it would be the
9  quickest way to effect bodily harm that would cause
10 death.
11      Q       And there was also nonlethal force
12 at -- during your tenure; correct?
13      A       That is correct.
14      Q       And what was the tools or weapons used
15 for nonlethal force?
16      A       Obviously communications, your hands,
17 ASP baton, OC gas as well as a --
18      Q       What is OC gas?
19      A       It's a pepper spray.
20      Q       Was there rules on when pepper spray
21 could be used?
22      A       In that it was part of a nonlethal
23 process.  Rules were -- well, officers were
24 instructed to use those -- that force to overcome
25 the force that was being presented.  Now, it was up

Page 75

1  to the officer to apply whatever force they thought
2  was needed, the force that was being presented at
3  the time of an incident.
4       Q       Basically, if you use OC spray you had
5  to comply with the use of force policy as well as
6  the requirements of reasonable force that the
7  Constitution requires; is that correct?
8       A       Yes.
9       Q       If an officer uses pepper spray, are
10 they allowed to spray someone's eyes?
11             MS. SELLERS:  Object to the form.  You
12        can answer, Chief, if you recall.
13             THE WITNESS:  You're -- if you decide
14        to use pepper spray as a -- as a nonlethal
15        effort.  It's not required.  We don't
16        specifically -- I don't recall specifically
17        saying whether you could or could not spray
18        that -- that pepper spray.
19 BY MR. WILLIAMS:
20      Q       If a person is handcuffed, not causing
21 any physical harm to anybody, not hitting or
22 touching anybody, is handcuffed, can't be a threat,
23 can an officer just pepper spray them in the face?
24             MS. SELLERS:  Object to the form.  To
25        the extent that you can answer, Chief, you

Page 76

1         can.
2              THE WITNESS:  No.  Not a reasonable
3         officer.
4  BY MR. WILLIAMS:
5       Q       That is actually -- based on my reading
6  of the statute, that is aggravated battery and
7  assault, isn't it, sir?
8              MS. SELLERS:  Object to the form.  To
9         the extent that you can answer, Chief, you
10        can.
11             THE WITNESS:  I haven't read the
12        statute in a while, but I think it is.
13 BY MR. WILLIAMS:
14      Q       Based on your knowledge and your
15 certifications -- you've been a police officer for
16 how long?
17      A       Since 1981 I was sworn in as a peace
18 officer.
19      Q       And you're one of the -- one of the
20 pretty recognized chiefs and former chiefs in this
21 nation; am I correct?
22      A       I -- I guess so.
23      Q       You would have -- you would charge
24 somebody who pepper sprayed somebody in the face
25 that is handcuffed, with aggravated assault or

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 77

1 battery, wouldn't you?

2     A     If the subject was not presenting any
3 threat to an officer, we would definitely -- I would
4 definitely look to charge criminal charges towards
5 the officer. I don't know what that charge would
6 be, but I would definitely charge -- look to charge
7 an officer if they sprayed OC or pepper spray on a
8 person that was not creating a threat.

9          MS. SELLERS: I'm sorry. Hold on just
10    a second. I'm sorry.

11         (Discussion ensued off the record.)

12         MS. SELLERS: I'm sorry, you-all. I
13    apologize. Go ahead. I apologize for --
14    Shean, for interrupting your deposition. I'm
15    sorry.

16         MR. WILLIAMS: No problem, Tiffany.
17    Could you read my last question, Tom?

18         THE REPORTER: Just a second, please.

19         (Thereupon, the court reporter read
20    as follows: Question, "You would have -- you
21    would charge somebody who pepper sprayed
22    somebody in the face that is handcuffed, with
23    aggravated assault or battery, wouldn't you?

24              Answer, If the subject was not
25    presenting any threat to an officer, you

Page 78

1    would definitely -- I would definitely look
2    to charge criminal charges towards the
3    officer. I don't know what that charge would
4    be, but I would definitely charge -- look to
5    charge an officer if they sprayed OC or
6    pepper spray on a person that was not
7    creating a threat.")

8         MR. WILLIAMS: Okay.

9 BY MR. WILLIAMS:

10    Q     And if I -- and I won't do this, but if
11 I was -- pepper sprayed and tied up my ex-wife and
12 sprayed her in the face and the police got called,
13 they would charge me with, more likely than not,
14 aggravated assault or battery, wouldn't they, Chief
15 Turner?

16         MS. SELLERS: Object to the form. To
17    the extent that you can answer, Chief, you
18    can.

19         THE WITNESS: Yes. If there was
20    evidence to be able to determine that that --
21    that you were the culprit of that offense,
22    yes.

23 BY MR. WILLIAMS:

24    Q     So the same standard that would be
25 applied to me regarding me tying up and pepper

Page 79

1 spraying my ex-wife should be the same standard used
2 for an APD officer; isn't that true?

3         MS. SELLERS: Object to the form. You
4    can answer, Chief, if you can.

5         THE WITNESS: Yes. If they were
6    outside of the obligations of their -- of
7    their training, yes, sir.

8 BY MR. WILLIAMS:

9    Q     In fact, shouldn't an officer who has
10 an oath of office and duty to enforce the law, to
11 abide by the law, don't they have an even higher
12 standard of responsibility than the average citizen,
13 in your view?

14    A     Yes.

15    Q     Explain to us why that is.

16    A     Because of the oath that they have
17 taken compared to a normal citizen who is
18 responsible for their own response -- their own
19 actions. A police officer's oath of office put them
20 in a higher standard of responsibility to the city
21 that they had sworn to protect and serve.

22    Q     Also -- that oath also puts a higher
23 standard on the supervisors, the commanders, and you
24 as chief of police in making sure that those
25 officers follow the law and enforce it; isn't that

Page 80

1 true?

2    A     Yes.

3    Q     And if you or yourself -- yourself, a
4 commander or a supervisor or any other APD officer,
5 became aware of an officer committing a crime
6 against a citizen as we have described where they're
7 pepper spraying somebody who handcuffed, everybody
8 who has information about -- or knowledge about
9 those allegations has a duty to enforce the law,
10 carry out their oath, and make sure that those
11 charges are sent over to the DA's office; isn't that
12 true?

13         MS. SELLERS: Object to the form. To
14    the extent that you can answer, you can
15    answer.

16         THE WITNESS: Again, sir, all the
17    scenarios that this -- we're with working off
18    a scenario, and if those scenarios are actual
19    facts, the answer to that is yes.

20         (Exhibit Number 4 was marked for
21    identification.)

22 BY MR. WILLIAMS:

23    Q     Let's go to Exhibit 4. Okay. Well,
24 let me -- back to the Exhibit 3. Do you stand by
25 the answers that you -- have been submitted to in

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 81

1  your answer in Exhibit 3 to this complaint that we
2  filed against you?
3      A    Yes, sir.
4      Q    Exhibit 4.  Exhibit 4, I will make a
5  little larger for you.  Can I have control of it?
6          MR. WILLIAMS:  Am I controlling it,
7      Tom?  Okay.  I am.
8  BY MR. WILLIAMS:
9      Q    This is your objections and responses
10 to Noel Hall's first set of interrogatories, and I
11 will go to the end for you, that were filed on your
12 behalf on March 6, 2020.  Do you see that?
13     A    Yes, sir.
14     Q    Do you recall us propounding several
15 interrogatory questions to you?
16     A    Yes.
17     Q    Did you work with your lawyers to give
18 a truthful and accurate response?
19     A    Yes.
20     Q    Did you inquire as the Federal Rules
21 require, to search for information, to get
22 information to answer our interrogatory requests and
23 -- as relates to this document?
24     A    Search for?  No, sir.
25     Q    Do any --

Page 82

1      A    In the --
2      Q    Go ahead, sir.  I'm sorry.
3          MS. SELLERS:  I think he might be
4      frozen.  Okay.
5          THE WITNESS:  Yeah, I was frozen.
6      Yeah, I'm back.  It was another call coming
7      in.  I'm sorry.  Can we go back?  I don't --
8      I don't know where we were.
9  BY MR. WILLIAMS:
10     Q    I think my last question was, did you
11 go take a reasonable investigation to inquire to the
12 facts to respond to our interrogatories?
13     A    Yes.
14     Q    What reasonable investigation did you
15 do in responding to our interrogatories exhibit that
16 you set forth in Exhibit Number 4?
17     A    I'm sorry.  Can we go back to that last
18 question?
19     Q    Yes.
20     A    I did not investigate.
21     Q    Did you do any type of inquiry?
22     A    I did not make any inquiries other than
23 conversations with my attorney.
24     Q    Did you inquire with your attorneys to
25 provide you information to respond to this

Page 83

1  interrogatory?
2          MS. SELLERS:  Object to the form.  I'm
3      sorry.  Object to the form, and I object that
4      it calls for information that's protected
5      under attorney-client privilege.  I'm going
6      to instruct Chief Turner not to answer that
7      question.
8  BY MR. WILLIAMS:
9      Q    Well, you did sign a verification,
10 didn't you?
11     A    Is that question to me, sir?
12     Q    Yes.  Did you sign a verification
13 saying that your responses to these interrogatories
14 were true and accurate?
15     A    Yes.
16     Q    And so you attest to those responses?
17 You stand by them today?
18     A    Yes, sir.
19     Q    Now, let's get something clear.  You
20 are represented by the same lawyers that represent
21 the city of Atlanta; correct?
22     A    I don't know if they represent the city
23 of Atlanta.  I just know they represents me --
24 represent me.
25     Q    Did you not know that your lawyers are

Page 84

1  represent -- representing the city of Atlanta?
2      A    No.  Not until just now, no, I did not.
3  Maybe I missed that, but I did not, no.  I thought
4  they were representing George Turner in my
5  individual capacity, but I did not know that they
6  were representing the city.
7      Q    Yeah.  Your answer that we just did on
8  Exhibit Number 3, or was it -- yeah, three.  They
9  answer on behalf of yourself and the city of
10 Atlanta.
11     A    I do see that, and I apologize for
12 that.  You're -- you're absolutely correct.
13     Q    Okay.  So you have known since the
14 beginning of this litigation that your lawyers were
15 wearing two hats?  They're representing you in your
16 individual capacity, but they also represent the
17 city of Atlanta?
18     A    Yes.
19     Q    And so they have -- as their
20 representation of the city of Atlanta and you, they
21 have all the documents that I've been asking you
22 about, did you ever review; isn't that correct?
23         MS. SELLERS:  Object to the form.  To
24     the extent that you can answer that, Chief,
25     you can.

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

---

Page 85

1            THE WITNESS:  I don't know what they
2     have, sir.
3 BY MR. WILLIAMS:
4     Q    Sir, you're a pretty smart guy.  I've
5 deposed you before, and I've looked at your resume.
6 It's reasonable to understand, I'm assuming, from
7 you that if your lawyer is representing the city and
8 you've known that from the beginning, that they have
9 the ability and access to the city of Atlanta
10 documents that you were in custody of or maintain
11 when you was chief.  Is that not reasonable to you?
12            MS. SELLERS:  Object to the form.  To
13     the extent that you can answer that, Chief,
14     you can.
15            THE WITNESS:  Yes, that is reasonable.
16 BY MR. WILLIAMS:
17     Q    Did you not understand that at any
18 moment, that they had access to the documents and
19 the information that you were maintaining when you
20 were chief?  And when I mean "they," the lawyers for
21 the city of Atlanta that represent you as well.
22     A    I'm sorry.  You asked a -- reask --
23 restate that question, sir.
24            MS. SELLERS:  I'm going to put my
25     objection on.

Page 86

1 BY MR. WILLIAMS:
2     Q    It was a bad question.  Didn't you
3 understand that the lawyer -- your lawyers, also the
4 lawyers for the city of Atlanta, that they had
5 access to the information and documents regarding
6 the city files on officers regarding your
7 involvement in this case?  Did you understand that?
8     A    Yes.  I'm sorry.
9            MS. SELLERS:  I'm going to put my
10     objection on the record.  Object to the form,
11     but, Chief, you can answer.
12            THE WITNESS:  Yes.
13 BY MR. WILLIAMS:
14     Q    Let's go to question Number 4 of your
15 interrogatory that you certified on December -- same
16 date -- that you verified as true and accurate.
17 Let's go to Number 4.  My question first is, are you
18 familiar with OCGA Section 17-4-20?
19     A    Yes.
20     Q    What is OCGA 17-4-20?
21     A    It requires that a peace officer is
22 provided a copy of the status of the complaint.
23     Q    The status of the complaint?
24     A    I'm just reading the document here.
25     Q    No, no.  Don't -- don't go to the

Page 87

1 document yet.  I'm just asking, do you have an
2 independent recollection of OCGA 17-4-20?
3     A    Not specifically at this time, no, sir.
4     Q    When is the last time you looked at
5 that section?
6     A    Probably 2016.
7     Q    Have you not looked at that statute
8 and -- to respond to our interrogatory Number 4?
9     A    No.  I relied on counsel to do the
10 research on the -- actual status of the -- this
11 particular OCGA.
12            MR. WILLIAMS:  Tom, can you pull up
13     Exhibit 21?
14            (Communication between reporter and
15     attorney regarding digital exhibit placement
16     ensued.)
17            MR. WILLIAMS:  Well, let me -- let me
18     just ask this question, and if we do need it,
19     we'll stop.
20 BY MR. WILLIAMS:
21     Q    Chief Turner -- I've maybe gone too big
22 for you.
23     A    No.  I'm fine.
24     Q    Okay.  The question for interrogatory
25 Number 4 says, "During your tenure as chief of

Page 88

1 police from January 2010 through December of 2016
2 did APD ever provide Mathieu Cadeau -- ever provide
3 a copy of OCGA Section 17-4-20 relating to the use
4 of deadly force, and if so, identify the date when a
5 copy of this statute was provided."
6         Do you see your response?
7     A    Can you move it up?
8     Q    Yes.  Do you see your response that you
9 provided under oath, sir?
10     A    Yes.
11     Q    Can you tell us under oath right now,
12 how you know that Cadeau would have been provided a
13 copy of OCGA 17-4-20?
14     A    The statement says that I would not
15 have known.
16     Q    It says -- let's read it together,
17 then.
18     A    Okay.
19     Q    Second sentence, "As a former APD
20 officer, Defendant Cadeau would have been provided a
21 copy of the same."
22         Do you see that?
23     A    Yes.
24     Q    That does say Cadeau would have been
25 provided a copy of it; right?

---

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 89

1    A        If you continue to read, as I read it,
2    as a former APD officer Defendant Cadeau would have
3    been provided a copy of the same.  Defendant Turner
4    does not know the date Defendant Cadeau was provided
5    a copy of the status.
6    Q        Yes.  That is different from what I
7    said, though.  You're attesting that he got a copy,
8    though.  Don't you see that?
9    A        Yes, I do.  Yes, sir.
10   Q        And that's what I was asking.  I know
11   the answer later says you don't know what date.  I'm
12   asking you, how do you know he got a copy?  That's
13   what your interrogatory says.  How do you know he
14   got a copy?
15   A        During my time -- tenure as a police
16   chief we use a -- a software that each officer
17   was -- confirmed that they received a copy of all
18   state, federal, and local laws as well as SOPs, and
19   they would have been able to determine if Mr.
20   Cadeau, Officer Cadeau, received the document that
21   we're referring to.
22   Q        So we could -- during your tenure there
23   was a software that kept confirmation of whether --
24   when the Officer Cadeau would have gotten OCGA
25   17-4-20?

Page 90

1    A        That is correct.
2    Q        What was the name of that software?
3    A        I don't recall the name of the
4    software.
5    Q        So if -- go ahead, sir.  I'm sorry.
6    A        It was implemented by our standard
7    operation procedure through OPS and ultimately
8    pushed out all of our credentials and all of our
9    documents through because of our -- through our
10   certification through CALEA.
11   Q        Okay.  So this system would have been
12   something you-all put in place to comply with CALEA?
13   A        And to document the facts that officers
14   were in compliance and they received information on
15   a timely basis, yes, sir.
16   Q        Yes because that is important.  You got
17   to confirm to be able to acknowledge later if an
18   officer in fact got the training that the law
19   requires?
20   A        That is correct.
21   Q        So based on your tenure, your testimony
22   just there, the city of Atlanta, based on this
23   software, should have some confirmation or
24   documentation that proves Cadeau got a copy of this
25   statute, and it should have the date he got a copy

Page 91

1    based on your testimony; correct?
2    A        I will only preference this.  I would
3    say yes to that question with a preference:  That
4    there was a situation that occurred where the city
5    of Atlanta systems were compromised, and I don't
6    know what is available to the city after they lost a
7    tremendous amount of information.  I'll just leave
8    it that way.
9    Q        You -- have you -- in this case in
10   responding to that interrogatory have you seen a
11   copy of any document or any software or anything
12   electronic that confirms that Cadeau actually got a
13   copy of 17-4-20?
14   A        No, sir.
15   Q        So am I correct, sir, being honest and
16   truthful here under oath, you cannot testify that
17   Defendant Cadeau was provided a copy of 17-4-20 in
18   this case, can you?
19            MS. SELLERS:  Object to the form.  To
20        the extent that you can answer, Chief, you
21        can -- you can.
22            THE WITNESS:  In that I've not seen the
23        document, no.
24   BY MR. WILLIAMS:
25   Q        Well, I'm correct?  You cannot testify

Page 92

1    under oath that he got it; is that correct?
2    A        That's correct.
3    Q        Have you seen anything or been provided
4    any information that suggests or -- well, not
5    suggests; that confirms that Cadeau was provided a
6    copy of OCGA -- OCGA 17-4-20?
7    A        No, sir.
8    Q        Are you familiar with President Obama's
9    task force on the 21st century policing?
10   A        Yes.
11   Q        Would you agree with the
12   recommendations that that task force came with
13   regarding 21st century policing?
14            MS. SELLERS:  Object to the form.  To
15        the extent that you can answer, Chief, you
16        can.
17            THE WITNESS:  That was a large
18        document, sir.  You've got to be more
19        specific.
20   BY MR. WILLIAMS:
21   Q        Are you familiar with the
22   recommendations?
23   A        More than familiar with it, yes, sir.
24   Q        So generally are you agree with them,
25   or do you have issues with some of them?

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner
January 13, 2021

Page 93

1        MS. SELLERS:  Same objection.  Object
2    to the form.  To the extent that you can
3    answer, Chief, you can.
4        THE WITNESS:  I agree with a large
5    percentage of the 21st century policing
6    document that was produced, but there are
7    certain things in it that I do have concerns
8    about, yes, sir.
9  BY MR. WILLIAMS:
10       Q      What are the things that you generally
11  have concerns about?
12       A      I participated in the
13  community-oriented policing initiative on --
14  associated with the 21st century policing document,
15  and there were several statements that were provided
16  by some citizens that I did not agree with.
17       Q      Anything else?
18       A      Not that I can recall at this time.
19       Q      Let's go to interrogatory Number 10.
20  Do you see that, sir?
21       A      Yes, I do.
22       Q      It says, "State what information and
23  basis you relied upon as chief of police of APD when
24  you rejected the recommendations of OPS and APD
25  command to dismiss Defendant Mathieu Cadeau.  Based

Page 94

1  on the determination by OPS that he violated APD.SOP
2  2010, Section 4.103, truthfulness, as set forth in
3  OPS complaint file closeout report 14, dash, one,
4  dash, 0635UAF."
5        Do you see that?
6     A      Yes, sir.
7        Q      In response to this interrogatory did
8  you ever look at the OPS file to answer this
9  interrogatory?
10    A      I don't recall.  I do not recall.
11       Q      Have you looked at any OPS file since
12  you retired in 2016?
13    A      I don't recall.
14       Q      Do you think it is reasonable for you
15  to -- if you are going to attest under oath to
16  whatever response you give to interrogatory ten, do
17  you think it's reasonable for you to have reviewed
18  the OPS file involving your decision regarding
19  Cadeau?
20       MS. SELLERS:  I'm going to object to
21    the form, as I don't believe that the
22    interrogatory requires him to review
23    anything.
24       MR. WILLIAMS:  I didn't -- I know.  I
25    didn't say it did.

Page 95

1        MS. SELLERS:  I know.  I'm just putting
2    my objection on the record.  That was your
3    question.
4        MR. WILLIAMS:  Yes.  I'm -- okay.
5  BY MR. WILLIAMS:
6     Q      As a defendant --
7        MS. SELLERS:  To the extent that you
8    can answer that, Chief, you can.
9  BY MR. WILLIAMS:
10    Q      As a defendant in this case, Chief,
11  don't you think it's reasonable -- if you are going
12  to, under oath, attest to your response to
13  interrogatory ten, don't you think it's reasonable
14  to do a reasonable inquiry and investigation to
15  answer this question, that you at least looked at
16  the OPS file?
17       MS. SELLERS:  Same objection.
18       THE WITNESS:  I would say that the
19    executive summary -- I could have reviewed
20    the executive summary, but the entire file,
21    the answer to that is -- would be no.
22  BY MR. WILLIAMS:
23    Q      My question was, do you think it's
24  reasonable to review the file?
25       MS. SELLERS:  Object to the form.  To

Page 96

1    the extent that you can answer, Chief, you
2    can.
3        THE WITNESS:  No.
4  BY MR. WILLIAMS:
5     Q      You don't think that's reasonable?
6  Okay.  Did you review the executive summary?
7        MS. SELLERS:  Object to the form.  To
8    the extent that you can answer, Chief, you
9    can.
10       THE WITNESS:  I don't recall the
11    specifics of the file -- the executive
12    summary.  During the time of counsel
13    presenting the information that is presented
14    here on the interrogatory.
15  BY MR. WILLIAMS:
16    Q      Okay.  Let -- would you read your
17  response in the record to interrogatory ten that you
18  verified under oath?
19    A      "Defendant Turner relied on the OPS
20  investigation file, certified surveillance footage
21  from Wet Willie's, as well as evidence and facts
22  gleaned from the Defendant Cadeau's disciplinary
23  hearing when he rejected the recommendations of OPS
24  and APD command to dismiss Defendant Mathieu Cadeau
25  based on the determination -- determination by the

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 97

1    OPS -- by OPS that it violated APD.SOP ten -- 2010,
2    Section 4.1.03, truthfulness, as set forth in" --
3    and if you would move it up, I can finish.
4    Q    Some reason -- how about that?
5    A    "Set forth in OPS complaint file
6    closeout report 14, dash, one, dash, 0635, dash,
7    UAF."
8    Q    Okay.  Is that true, that you relied
9    upon the OPS -- is that statement true?
10    A    That --
11    MS. SELLERS:  Object to the form.  Go
12    ahead, Chief.
13    THE WITNESS:  That statement is true.
14    BY MR. WILLIAMS:
15    Q    So you know as we sit here as a matter
16    of fact -- you're under oath -- that you relied on
17    the OPS investigation file, the surveillance footage
18    from Wet Willie's, as well as the evidence and facts
19    gleaned from the disciplinary hearing?
20    A    Yes.
21    Q    Anything else?
22    A    And representation from counsel -- and
23    counsel, through the Atlanta -- city of Atlanta law
24    department.
25    Q    Oh.  Were you -- so when it came to

Page 98

1    Cadeau and this truthfulness, did you get advice
2    from the city of Atlanta law department?
3    A    Yes, sir.
4    Q    Oh.  Was the -- so the city of Atlanta
5    was involved -- law department was involved in your
6    decision regarding whether to accept the
7    recommendations of the OPS and dismiss Mathieu
8    Cadeau?
9    A    In all disciplinary actions with the
10    chief of police there was a city of Atlanta attorney
11    that provided counsel at the time of the hearing.
12    Q    And my question to you, in making the
13    decision did you rely on that counsel's advice or
14    recommendations in making your decision?
15    A    As well as the evidence presented at
16    the time and information gleaned from the testimony
17    at the hearing.  Yes, sir.
18    Q    So that's a yes to my question?
19    A    Yes, sir.
20    Q    But you don't have city of Atlanta law
21    department in this answer; correct?
22    A    That is correct.
23    Q    So we need -- to have a complete
24    answer, we need to add the city of Atlanta law
25    department; correct?

Page 99

1    A    Yes.
2    Q    Do you remember the lawyer who was
3    present?
4    A    I do not at this time.
5    Q    Were they at the disciplinary hearing?
6    A    Yes, they were.
7    Q    Do you recall the legal -- do you
8    recall the advice or recommendation or their input
9    into the decision that you made regarding rejecting
10    the recommendations of OPS?
11    MS. SELLERS:  Object to the form.
12    We're not -- and I'm going to instruct my
13    client not to answer that question.
14    MR. WILLIAMS:  Are you guys -- are you
15    going to say that that advice in a roomful of
16    individuals would be protected by
17    attorney-client privilege?
18    MS. SELLERS:  He didn't say it was a
19    roomful of individuals, Shean.  You might
20    need to ask that question.
21    MR. WILLIAMS:  Well --
22    MS. SELLERS:  But as to the question
23    that you asked --
24    MR. WILLIAMS:  You instructed him not
25    to answer, so I'm assuming you're basing the

Page 100

1    privilege off of something that you think is
2    protected, so let me ask it a better way so
3    we're clear.
4    MS. SELLERS:  Yes.  Why don't you do
5    that.
6    BY MR. WILLIAMS:
7    Q    When did you rely on this advice or
8    recommendation from the city of Atlanta law
9    department?
10    A    At the time of the decision.
11    Q    And when did you make the decision?
12    A    I made the decision after information
13    was provided back to me from the OPS
14    investigation -- department.
15    Q    What information are you talking about?
16    A    I sent the file back.  As you -- I sent
17    the file back to OPS for additional information.
18    They could not provide additional information to --
19    to determine if the information that was presented
20    at the time of the hearing was factual or not.
21    Q    Did you make this request in writing?
22    A    I made it in writing at the time of the
23    initial hearing.  The file was sent back to OPS.
24    Q    And would you have done some type of
25    form requesting -- I have the OPS file, sir.  There

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 101

1 is nothing in your -- that says you're requesting
2 for additional information.  That's why I'm asking.
3 Where would that --
4        A       The file -- the file should have said
5 that the -- the file was sent back for additional
6 time.
7        Q       And how does additional time mean
8 additional information?
9        A       The investigator -- the investigator
10 responsible for the file was in the room at the
11 time, and the additional information at that time
12 was a -- was articulated during the time that we
13 were in the session.
14       Q       And that -- and what was the basis for
15 asking for additional time or information?
16       A       I'm sorry.  Ask that question again,
17 sir.
18       Q       What was the reason for asking for
19 additional time and information?
20       A       Because of information presented at the
21 disciplinary hearing.  I needed clarity if the
22 information was factual or not.
23       Q       What specific information that was
24 presented at the hearing that you felt you needed
25 additional information or time?

Page 102

1        A       Concerning when and how and if the
2 pepper spray was discharged, and if the officer true
3 and knowingly made a dishonest statement at the time
4 of the investigation.
5        Q       And you felt based upon the hearing,
6 the whole OPS file that had already happened, that
7 you did not have the information to answer those
8 questions?
9        A       That is correct.
10       Q       So did you get more information?
11       A       I got no information to refute the
12 information that was presented at the time of the
13 hearing back from OPS.
14       Q       What standard did you use?  Is it -- I
15 think I took your deposition before where you said
16 it's preponderance of the evidence on these OPS
17 files.  Isn't that correct?
18       A       That is correct.
19       Q       Tell the jury what preponderance of the
20 evidence means.
21       A       Means those set of facts that would
22 bring a reasonable person to come to the conclusion
23 that's been described in the conclusion.
24       Q       Isn't it more likely than not,
25 preponderance of the evidence standard, the same

Page 103

1 standard where you are, in a civil case, more likely
2 than not?  Isn't that preponderance of the evidence?
3        MS. SELLERS:  Object to the form.  To
4        the extent that you can answer that, Chief,
5        you can.
6        THE WITNESS:  Yes.
7 BY MR. WILLIAMS:
8        Q       So the standard should have been
9 whether or not more likely than not the evidence
10 from the investigation showed more likely than not,
11 that Cadeau was either truthful or not.  That should
12 have been the standard; right?
13       A       That was the standard, yes, sir.
14       Q       And that is the standard you applied in
15 your decision?
16       A       That is correct.
17       Q       And that is actually the standard that
18 you should have applied; correct?
19       A       That's correct.
20       Q       If you did not apply that standard,
21 sir, wouldn't you have been in violation of
22 you-all's policies and procedures?
23       A       Yes.
24       Q       And you would have been in direct
25 contradiction of what a reasonable chief under the

Page 104

1 same or similar circumstances would have done in
2 making that decision; correct?
3        A       Yes.
4        Q       Because a reasonable chief, sir -- if
5 the evidence showed more likely than not that Cadeau
6 violated Section 4.103, truthfulness, a reasonable
7 chief would have terminated him at that time;
8 correct?
9        MS. SELLERS:  Object to the form.  To
10        the extent that you can answer that without
11        discussing any information that's protected
12        under attorney-client privilege, Chief, you
13        can answer.
14        THE WITNESS:  No.
15 BY MR. WILLIAMS:
16       Q       A reasonable chief would not have?
17       A       Not knowing the set of circumstances
18 and facts that I had.  The answer to that is no.
19       Q       Would you agree that a reasonable
20 chief -- if the evidence shows more likely than not
21 that an officer is being untruthful, a reasonable
22 chief would terminate that officer?  I'm not talking
23 about Cadeau.  I'm just talking about generally.
24 Isn't just -- let me -- isn't generally the standard
25 for chiefs is that if more likely than not the

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 105

1  evidence shows that an officer is being untruthful,
2  that more likely than not a reasonable chief would
3  have -- would terminate such a officer?
4         MS. SELLERS:  I'm going to object to
5      the question, to the form of the question.
6      To the extent that you can answer, Chief,
7      without discussing any information protected
8      under attorney-client privilege, you can.
9         THE WITNESS:  I didn't understand the
10      question.
11  BY MR. WILLIAMS:
12      Q     Yeah.  That was a bad question.  Let me
13  ask it this way.  You-all's policy on truthfulness
14  is pretty clear, isn't it?
15      A     It was at the time that I was the chief
16  of police, yes, sir.
17      Q     And let's talk about when you were
18  there.  Hold on for one second.  And I'm talking
19  about that time period, the time between the January
20  '10 and December of 2016.  Okay?  January of 2010
21  and December of 2016, that time period.  Okay, sir?
22      A     Okay.
23      Q     Regarding you-all's truthfulness
24  policy, am I correct that the policy specifically
25  says that if the evidence by a preponderance of the

Page 106

1  evidence shows that an officer violated the 40 --
2  4.1.03, truthfulness, that the requirement under
3  you-all's own SOP is that that officer be
4  terminated?  Isn't that --
5      A     I -- I think the answer to that is yes.
6      Q     So if you-all's -- APDs followed the
7  policies and procedures of what police departments
8  would do generally based on the CALEA standards and
9  the industry standards; correct?
10      A     Yes.
11      Q     So if your policy said that if the
12  preponderance of the evidence shows that an
13  officer's actions violated 4.1.03 and that that
14  officer would be terminated, then it's fair to say
15  that most chiefs would also reasonably follow that
16  standard?
17         MS. SELLERS:  Object to the form.  To
18      the extent that you can -- I'm sorry.
19      Objection to the form of the question.  Also
20      going to object to the extent it calls for
21      information that's protected under
22      attorney-client privilege.  Subject to those
23      objections, Chief, without discussing
24      anything related to any information that you
25      got from your attorney, you can answer the

Page 107

1      question.
2         THE WITNESS:  I can't answer that
3      question as relates to what other police
4      officers -- what other chiefs would have come
5      to the conclusion, but as I stated earlier,
6      if they had the same set of circumstances and
7      facts that I had, I believe a reasonable
8      chief of police would have not sustained
9      truthfulness in this particular case.
10  BY MR. WILLIAMS:
11      Q     And I'm not talking about Cadeau, sir.
12  I think that's where --
13      A     Okay.
14      Q     -- we're confused.  Okay?
15      A     Okay.  All right.
16      Q     I'm not talking about Cadeau now.
17      A     Okay.
18      Q     I understand your answer on that.  What
19  I am trying to say is, look, your APD policies are
20  set forth in a manner that other chiefs would do
21  under the same or similar circumstances; isn't that
22  correct?
23      A     Yes.
24      Q     And if your policies say if the
25  preponderance of the evidence shows they violated

Page 108

1  truthfulness and they should be dismissed, don't you
2  agree that most policies in the United States have
3  the same standards and requirement?
4      A     I'm going to back you up, and I am
5  going to have to answer this, this way.  Most police
6  departments around the country do not have a zero
7  tolerance on truthfulness.  It is an extension that
8  was provided through the Atlanta Police Department
9  in that we believed that truthfulness was absolutely
10  critical for the -- for the professionalism as well
11  as the accountability to our citizens.
12         And so majority of police departments
13  around the country do not have the zero tolerance
14  for truthfulness.  You will find officers around the
15  country that will have multiple truthfulness
16  complaints that's sustained in their files and
17  they're still working on police departments.  So I
18  can't answer that question and talk about reasonable
19  police chiefs as relates to what happens around the
20  country.
21      Q     So it is your position that most
22  reasonable chiefs in the country would not terminate
23  an officer if they violate truthfulness?
24         MS. SELLERS:  Object to the form of the
25      question.  To the extent that you can answer

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner
January 13, 2021

Page 109

1    that question, Chief, you can.
2            THE WITNESS:  I can't answer that
3    question.
4    BY MR. WILLIAMS:
5        Q       Well, either you believed that most
6    chiefs would terminate or you believed they would
7    not terminate.  It's one or the other, isn't it?
8            MS. SELLERS:  Object to the form of the
9    question.  To the extent that you can answer
10   that, Chief, you can.
11           THE WITNESS:  No, sir.  It depends on
12   the police department's policy and
13   procedures.  In the city of Atlanta until
14   Chief Pennington came, truthfulness was not a
15   terminating offense within the Atlanta Police
16   Department, and I don't know what it is at
17   this time in the Atlanta Police Department.
18   It is not a standard, a national standard.
19   It was the standard that I applied when I was
20   the chief of police in Atlanta.
21   BY MR. WILLIAMS:
22       Q       All right.  So it was your standard?
23       A       It was my standard as the police chief
24   during the time that we're discussing, yes, sir.
25       Q       You agree with me that my clients, Noel

Page 110

1    Hall and Christina Hall, had the right to expect
2    that you would follow your standard and apply the
3    standard you had put forth on truthfulness as
4    relates to Officer Cadeau back in 2014?
5            MS. SELLERS:  Object to the form of the
6    question.  To the extent that you can answer,
7    Chief, you can.
8            THE WITNESS:  Yes.
9    BY MR. WILLIAMS:
10       Q       Did you rely on any advice from the
11   legal department in supporting your decision not to
12   terminate Cadeau?
13       A       As I said earlier, yes, with counsel
14   from the city of Atlanta along with the evidence
15   that was presented at the time.
16       Q       Did you make any independent decision
17   not to terminate Cadeau without advice from the law
18   department?
19           MS. SELLERS:  Object to the form of the
20   question.  To the extent that you can answer
21   that, Chief, you can.
22           THE WITNESS:  Yes.
23   BY MR. WILLIAMS:
24       Q       You did make an independent decision
25   not to terminate Cadeau without advice of the law

Page 111

1    department?
2        A       Well, the answer to that question is
3    no.
4        Q       Okay.  Okay.  I wanted to make sure.
5    All right.  I'm about to finish up, so we can -- do
6    you want to take a lunch break, Mr. Turner?  It's
7    totally --
8        A       We can power through.  I've got a -- it
9    depends on how long you're going to go, sir.
10       Q       Well, I don't know how long I'm going
11   to go.  I have seven hours with you, your counsel
12   told -- I'm just trying to -- you tell me how much
13   break you need.  If not, if you don't need any, I'm
14   fine.  I just wanted to give you an opportunity.
15           MS. SELLERS:  Can we take a break?  Can
16   I take a break for ten minutes?  It could be
17   short.
18           MR. WILLIAMS:  Yeah, yeah.  So why
19   don't -- Tiffany, I think what I would like
20   to do is get through a couple of these.
21           MS. SELLERS:  Okay.
22           MR. WILLIAMS:  Why don't we take ten,
23   15 minutes; we take a 15, 20-minute break;
24   and come back.
25           THE WITNESS:  Can we stop at 12?  I

Page 112

1    have to jump on another call.  I figure it
2    will take about 15 to 20 minutes, and I can
3    get right back on.
4            MR. WILLIAMS:  Let's do that.
5            MS. SELLERS:  That's fine.
6    BY MR. WILLIAMS:
7        Q       As relates to this interrogatory and
8    the Cadeau situation -- we're back to the Cadeau
9    situation.  Did you -- well, let me ask you this.
10   When you have a decision about an officer, you have
11   access to the whole OPS history of that officer;
12   correct?
13       A       Not necessarily, no, sir.
14       Q       What do you mean, not necessarily?
15       A       So at the time of the disciplinary
16   hearing I would have relied on the executive summary
17   provided by OPS.  I would have been briefed by the
18   OPS sergeant or whoever was presenting the case at
19   the time of the disciplinary hearing.  I would have
20   been presented with the entire file, but there is no
21   guarantee that I would have gone through the entire
22   disciplinary file.
23       Q       And I -- thank you.  I appreciate that.
24   I'm asking a different question.
25       A       Okay.  I'm sorry.

Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 29 of 110
Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                                    January 13, 2021

Page 113

1    Q    You have -- based on my review of the
2  OPS policy and procedure, you had access as chief
3  because you're the person responsible for OPS --
4  didn't you have access to the OPS files and history?
5  That was my question.
6    A    Yes, yes.
7    Q    And you had the authority and
8  discretion to use information from OPS history in
9  making decisions as relates to OPS discipline?
10   A    Yes.
11   Q    And in this case -- we can get to
12 whether you relied on it or not in a minute -- you
13 had the ability to go back and review Cadeau's OPS
14 history before making your decision?
15   A    Yes.
16   Q    My question now is, did you review his
17 prior OPS history in making the decision?
18   A    I don't recall.
19   Q    It is not listed in your interrogatory
20 response Number 10, is it?
21   A    No, it isn't.
22   Q    Based on the truthfulness issue -- let
23 me ask you, do you believe truthfulness is a
24 paramount critical issue as relates to a police
25 officer?

Page 114

1    A    Yes, I do.
2    Q    Explain to the jury why.
3    A    It is my belief that if an officer have
4  a challenge that they have been untruthful, then
5  their testimony in court or anytime that they speak
6  or write, it can be brought into question.  And so
7  ultimately I don't take truthfulness -- I did not
8  take truthfulness with a grain of salt.  I really
9  considered the facts associated with truthfulness
10 and officers at the time that I was the chief of
11 police.
12   Q    And that required you, and you're
13 basing that -- how important it is to do a thorough
14 investigation on whether or not the standard of
15 preponderance of the evidence was met as well as
16 looking at every possible piece of evidence you
17 could to determine that fact; is that correct?
18   A    By utilizing the Office of Professional
19 Standards investigative wing, yes.  As far as the
20 investigative -- investigating the facts.
21        (Exhibit Number 5 was marked for
22     identification.)
23 BY MR. WILLIAMS:
24   Q    I am going to go to Exhibit Number 5.
25 This is your -- George Turner's response to

Page 115

1  Plaintiff's Christina Hall first set of
2  interrogatories.  I'm just going to skim down to the
3  bottom.  This was filed in this case on
4  November 12th, 2020.  Did you review these documents
5  before they were served on us?
6    A    Yes, sir.
7    Q    Did you testify -- did you also do a
8  verification in December of 2020 attesting to the
9  verification of them being truthful and accurate?
10   A    I did, yes, sir.
11   Q    Do you stand by your responses in
12 Exhibit Number 5?
13   A    Yes.
14        (Exhibit Number 6 was marked for
15     identification.)
16 BY MR. WILLIAMS:
17   Q    I'm going to show you what's been
18 marked as Exhibit 6.  These are your responses to
19 plaintiffs' first request for admissions, which were
20 -- which were filed -- I'm going to scroll to the
21 bottom -- January 7, 2020.  Do you recognize this
22 document?
23   A    Yes.
24   Q    Did you get to review these -- this
25 document prior to it being filed on your behalf?

Page 116

1    A    Yes.
2    Q    Did you -- what did you rely on to
3  respond to our request for admissions in Exhibit
4  Number 6?
5    A    I relied on the expertise from counsel
6  and my memory of the set of facts that was inquired
7  about.
8    Q    You did not, am I correct, as relates
9  to Exhibit 6, do any inquiry to the city of Atlanta
10 to review files or to get information that was in
11 their possession when you was chief; am I correct?
12   A    Yes, you are.
13        (Exhibit Number 7 was marked for
14     identification.)
15 BY MR. WILLIAMS:
16   Q    Let's go to Exhibit Number 7.  This is
17 your objections and responses to plaintiffs' second
18 request for admissions that you filed in this
19 case -- I will go to the bottom -- on December 21st,
20 2020.
21        Do you see that?
22   A    I do see that, yes, sir.
23   Q    When you provided responses to this,
24 did you get a chance to review this prior to your --
25 it being served?

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 117

1     A     Yes.
2     Q     Did you -- independent of advice from
3  counsel did you do any reasonable inquiry and
4  investigation to answer these questions outside of
5  your advice from counsel?
6     A     No, I did not.
7     Q     Did you inquire to the city of Atlanta
8  to look at any documents or review any information
9  that was in their possession regarding documents and
10 things that were available to you when you was
11 chief?
12    A     No, I did not.
13    Q     So when you would write a response to
14 Exhibit -- to Exhibit 6, request for admissions; or
15 Exhibit 7, request for admissions, it was based upon
16 your legal advice from counsel; correct?
17    A     Yes.  And my own working knowledge.
18    Q     And your own working recollection;
19 correct?
20    A     That's correct, yes.
21    Q     But you did not do any independent
22 reasonable inquiry or investigation into the files
23 that were available to the city of Atlanta or to
24 your counsel as the attorney for city of Atlanta in
25 answer to these requests, did you?

Page 118

1            MS. SELLERS:  Objection to the form.
2       To the extent that you can answer, Chief, you
3       can answer.
4            THE WITNESS:  No.
5  BY MR. WILLIAMS:
6     Q     Am I correct you did not?
7     A     I did not.
8            MR. WILLIAMS:  That's a good break,
9       sir.
10           THE WITNESS:  Thank you.  What time are
11      we getting back?
12           THE VIDEOGRAPHER:  Off at 11:59.
13           (A recess was taken.)
14           THE VIDEOGRAPHER:  The time is 12:33.
15      We're back on the video record.
16 BY MR. WILLIAMS:
17    Q     Chief Turner, how are you doing?  You
18 -- we're back on the record.  You understand you are
19 still under oath?
20    A     I do.
21    Q     Okay.  Let's go to Exhibit 4 again.
22 Let's go back to Number 10 -- Number 10 on that.
23 This thing is slow.
24           MR. WILLIAMS:  It's taking a long time,
25      Tom, to -- something is wrong.  This is not

Page 119

1  how it was before.
2            MR. STARKS:  Has he given you access?
3            MR. WILLIAMS:  He did.  He's given me
4       access.  It's just taking longer to scroll
5       down than it did before.  Hey, Tom, did you
6       change Internet access or something?  Because
7       it's slow coming over to me.
8            THE REPORTER:  No.  I just got out.
9       No, I didn't.
10           MR. WILLIAMS:  Okay.
11 BY MR. WILLIAMS:
12    Q     Mr. Turner?
13    A     Yes, sir.
14    Q     We're back to your response to
15 interrogatory Number 10.
16    A     Can you expand that document that you
17 have on the screen?
18    Q     You want it bigger?
19    A     Yes, bigger.  Just a little bigger.
20 One more time.  There you go.  That's perfect.
21 Thank you.
22    Q     Okay.  If you recall, I asked you if
23 you relied on anything else other than what is set
24 forth in -- in your response to interrogatory
25 Number 10.  You -- you have added, am I correct, the

Page 120

1  city of Atlanta law department; correct?
2     A     That's correct.
3     Q     I want to make sure.  Is there anybody
4  else, any other individual, any other entity, any
5  other piece of document, anything else that you
6  relied upon that would be responsive to Number 10?
7     A     No other -- and I think that it
8  concludes the evidence presented at the time.  That
9  is -- that -- yes, that's it.  That's it, sir.
10    Q     You did not -- you did not use any
11 polygraph or communication verification system;
12 correct?
13    A     I did not, no, sir.
14    Q     You did not request that that be done,
15 did you?
16    A     I did not, no.
17    Q     That is a -- something, a tool that can
18 be used based on you-all's policies and procedures;
19 correct?
20    A     That is correct.
21    Q     In fact, you guys use it for
22 truthfulness when you hire somebody?
23           MS. SELLERS:  Object to the form of the
24      question.  You can answer, Chief.
25           THE WITNESS:  It is a tool that is used

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner
January 13, 2021

Page 121

1    in the -- the hiring of officers.
2 BY MR. WILLIAMS:
3    Q    Why do you --
4    A    I'm sorry.
5    Q    Why is it used?
6    A    As one of the tools to build a case
7 whether to bring an officer on to the -- on to the
8 police department or not.  It is a building a total
9 investigative file to -- to hire an officer or not
10 to hire an officer.
11    Q    So --
12    A    So it would not preclude hiring an
13 officer, but with the additional information it may
14 prevent us from hiring an officer.
15    Q    So you-all -- you said the word "total
16 investigation" into the office -- a person before
17 you hire them as an officer?
18    A    That's correct, yes, sir.
19    Q    Do you believe that same standard
20 should be on whether you should keep an officer?  A
21 total investigation into their actions or discipline
22 when determining whether to keep an officer?
23          MS. SELLERS:  Object to the form of the
24      question.  You can answer, Chief.
25          THE WITNESS:  That depends on the

Page 122

1    nature of the investigation.
2 BY MR. WILLIAMS:
3    Q    I guess what I am -- I'm confused
4 about, sir, is if it's important to do a total
5 investigation into an officer before you hire them,
6 isn't it important to do a total investigation when
7 you are determining whether to discipline them or
8 terminate them?
9          MS. SELLERS:  Object to the form of the
10      question.  To the extent -- to the extent
11      that you can answer, Chief, you can.
12          THE WITNESS:  The answer to that is,
13      yes.
14 BY MR. WILLIAMS:
15    Q    Okay.  So am I correct, during your
16 tenure every time you hired an officer, you-all used
17 the -- the CVSA?
18    A    That is correct.
19    Q    But you -- you had the opportunity
20 available to you based on your policies, to use that
21 same CVSA during disciplinary investigation, an OPS
22 investigation?
23    A    That's correct.
24    Q    But you did not use the CVSA as relates
25 to your determination in the OPS issue regarding

Page 123

1 truthfulness regarding Cadeau, did you?
2    A    I did not direct the CVS platform to be
3 used during this investigation.  No, I did not.
4    Q    And when you use it for hiring
5 purposes, you're using it, am I correct, to
6 determine whether the applicant has been truthful in
7 his application and his history?
8    A    That is correct.
9    Q    Have you ever heard a concept, if you
10 lie, you die in law enforcement?
11          MS. SELLERS:  Object to the form of the
12      question.  To the extent that you can answer,
13      Chief, you can.
14          THE WITNESS:  No, I have not.
15 BY MR. WILLIAMS:
16    Q    Do you agree with me that truthfulness
17 is the para -- is the paramount character for a
18 police officer?
19    A    Yes.
20          MS. SELLERS:  Object to the form of --
21      I'm sorry.  Let me put my objection on the
22      record.  Object to the form of the question.
23      Chief, to the extent that you can answer, you
24      can answer.
25          THE WITNESS:  Yes.

Page 124

1 BY MR. WILLIAMS:
2    Q    Explain to us why.
3    A    I believe that the accountability of an
4 officer's testimony and his written word is
5 absolutely critical for the -- the faith of an
6 officer within the community that they've been sworn
7 to protect and serve.
8    Q    Did you rely on the Early Warning
9 System -- well, let me ask you this.  Are you aware
10 as we sit here today that Cadeau was put into the
11 Early Warning System at APD?
12    A    I don't recall.
13    Q    So you don't recall right now whether
14 that's the case?
15    A    That's correct.
16    Q    Did you rely on any Early Warning
17 information regarding Cadeau in your decision
18 regarding his truthfulness complaint?
19    A    Only if the information was in the
20 executive summary at the time of the hearing.
21    Q    And you don't know as we sit here,
22 whether that -- as we sit here right now, you don't
23 know whether that was in that summary, do you?
24    A    No, I do not.
25    Q    Because you have not seen that summary,

Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 32 of 110

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                    January 13, 2021

Page 125

```
1  have you?
2       A      I've not, no, sir.
3       Q      And you did not use that summary to
4  respond to this interrogatory, did you?
5       A      I'm not -- no.  That's not the point.
6  The point is that my -- the lawyers could have --
7  could have utilized that as part of the response to
8  the interrogatory.  I relied on attorney, my
9  attorneys, to provide me with counsel concerning the
10 responses.
11      Q      How did you -- how did you come to get
12 your attorneys?
13      A      The attorneys were assigned to me by
14 way of the city attorney's office, I can only
15 imagine.  I don't know.
16      Q      You don't know how you got your
17 attorney?
18      A      No, I don't.  I was not part of the
19 assignment of the -- the firm that's presently
20 representing me and the city.
21      Q      What did you do once you got served
22 with the complaint?
23      A      I don't recall.
24      Q      Well, how did you come to -- did you
25 contact the city attorney at all when you got the
```

Page 126

```
1  complaint?
2       A      I perhaps could have been -- I could
3  have, and I don't know for sure, and I won't that
4  question.  I don't know.
5       Q      At some point you got in communication
6  with the city attorney's office; correct?
7       A      At some point I would imagine I did,
8  but I don't recall that, sir.  I don't recall how
9  that information came to me.  Either it was done by
10 a city attorney or -- I just do not recall how it
11 was done.
12      Q      At some point you communicated with the
13 city attorney's office, and you were assigned the
14 law firm that's currently representing you; is that
15 fair?
16      A      That's --
17             MS. SELLERS:  Object to the form of the
18      question.  To the extent that you can answer,
19      Chief, you can.
20             THE WITNESS:  That's correct.
21             MS. SELLERS:  Chief --
22 BY MR. WILLIAMS:
23      Q      Did you sign a retainer agreement?
24      A      I did not.
25      Q      Are you paying for your attorneys?
```

Page 127

```
1       A      I am not.
2       Q      Who's paying for your attorney?
3       A      I do not know.
4       Q      Do you know how much your attorneys are
5  charging?
6       A      No, I do not.
7       Q      You are -- you understand that you are
8  an independent defendant in this case; correct?
9       A      I do, yes, sir.
10      Q      Are you -- and as a defendant you get
11 served with documents as part of this lawsuit?  You
12 understand that?
13      A      Yes.
14             MS. SELLERS:  Object to the form of the
15      question.  To the extent that you can answer,
16      Chief, you can.
17             MR. WILLIAMS:  I think he did.
18             MS. SELLERS:  I'm sorry.  Did he
19      answer?
20             MR. WILLIAMS:  Yes.
21             MS. SELLERS:  Okay.  What was the
22      answer?  Mr. Court Reporter?  I didn't hear
23      it.  I was talking.
24             THE REPORTER:  Just a second, please.
25             (Thereupon, the court reporter read
```

Page 128

```
1       the pertinent portion of the record.)
2             MS. SELLERS:  Okay.  Thank you.
3  BY MR. WILLIAMS:
4       Q      And we served all parties with
5  discovery, and discovery responses -- the city of
6  Atlanta has provided discovery responses to us in
7  this case.  Have you been provided copies of those
8  documents as part of those -- as part of this
9  lawsuit?
10      A      Which documents, sir?  Can you repeat?
11      Q      Documents that have been produced and
12 provided in this case from all the parties,
13 including the city of Atlanta.
14      A      No, sir.
15      Q      Have you reviewed the documents that
16 the city of Atlanta has produced in discovery in
17 this case in response to the plaintiffs' request for
18 production of documents?
19      A      No, sir.
20      Q      Do you have any liability insurance
21 that covers the claims brought against you in this
22 case?
23             MS. SELLERS:  Object to the form of the
24      question.  To the extent that you can answer,
25      Chief, you can.
```

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 129

1    THE WITNESS:  Not that I know of.
2  BY MR. WILLIAMS:
3    Q    Have you been given some type of
4  indemnification from the city regarding the claims
5  in this case?
6    A    I have not.
7    Q    Do you have independent counsel or
8  anybody advising you regarding this case other than
9  the counsel that is shared with you by the city?
10    A    I do not.
11    Q    Did you -- between -- at any time
12  between January 2010 and December 2016 did you ever
13  make a recommendation -- did you ever reject a
14  recommendation of the the the OPS or the APD's command
15  to terminate an officer other than the Cadeau
16  situation?
17    A    I don't recall.
18    MS. SELLERS:  Object to the form of the
19  question.  To the extent that you can answer,
20  Chief, you can.
21    THE WITNESS:  I don't recall.
22  BY MR. WILLIAMS:
23    Q    Have you been a party to any other
24  lawsuits where you were named defendant as relates
25  to your job at city of Atlanta?

Page 130

1    A    Yes.
2    Q    What other case was that?
3    A    I don't recall the ones.  It's been
4  numerous -- a number of cases.  I don't -- I don't
5  remember the exact ones.
6    Q    Were you involved in a -- have you --
7  were you involved in another case involving Cadeau
8  where the city was sued?
9    A    I'm not sure.  I don't know that.  I
10  can't recall if that's the case.
11    Q    What is the purpose -- what is the
12  Early Warning System, and what is the purpose of it?
13    MS. SELLERS:  Object to the form.  To
14  the extent that you can answer, Chief, you
15  can.
16    THE WITNESS:  The objection -- the
17  objective of the Early Warning is to provide
18  counsel direction to help office -- to
19  sustain their ability to work on the Atlanta
20  Police Department and make sure that they're
21  physically and mentally prepared for the job
22  that they are sworn to -- to provide to the
23  city.
24  BY MR. WILLIAMS:
25    Q    I understand.  What -- so what is the

Page 131

1  Early Warning System?  You answered the purpose
2  question.  What is it?  What is the Early Warning
3  System?
4    A    The Early Warning System is to identify
5  those officers that might be in a challenge that
6  would bring to the attention of the Atlanta Police
7  Department on what we should be doing to try to
8  mitigate any -- any problems that an officer might
9  have.
10    Q    I want to show you what is Exhibit
11  Number 6, which is your responses to requests for
12  admissions from -- from January of 2020.  I asked
13  you in request Number 10 -- and I will tell you, I
14  was going to ask you now because if we have a trial,
15  I will ask you in front of the jury, so I might as
16  well give you a chance now.
17    I asked you, "Plaintiff Christina Hall
18  was not negligent or reckless or otherwise engaged
19  in any illegal behavior that justified Mathieu
20  Cadeau shooting into Hall's vehicle on
21  February 25th, 2017."
22    Do you see that question?
23    A    I do see the question, yes, sir.
24    Q    I'm going to let you read your
25  response.  This is frustrating.  All right.  Could

Page 132

1  you -- can you read your response?  Is that -- I
2  just want to make sure I gave you -- can you see
3  your response?
4    A    I'm looking at it, yes, sir.
5    Q    Would you read your response into the
6  record to our request for admission Number 10?
7    A    "Defendant Turner objects to the
8  request because of a -- because it's vague,
9  ambiguous, and overly broad.  Subject to and without
10  waiving the foregoing objection, Defendant Turner
11  can neither admit or deny this request for lack of
12  information.
13    Defendant Turner retired from the City
14  of Atlanta Police Department in December of 2016;
15  thus, has -- thus, he -- he does not have knowledge
16  or allegation containing to the plaintiffs' request
17  for admission Number 10.  Defendant has made
18  reasonable inquiries, but the information known or
19  rapidly -- readily available to the defendant is
20  insufficient to enable him to admit or to deny this
21  request."
22    Q    Can you tell me what reasonable inquiry
23  you made to determine whether the plaintiff, Miss
24  Hall, was negligent, reckless, or otherwise engaged
25  in illegal behavior?

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 133

1       A       I have to depend on my attorney as
2   relates to what inquiries they made.  I did not make
3   any inquiries to the Atlanta Police Department
4   concerning this -- this request.
5       Q       As relates to any of the requests for
6   admission set forth on Exhibit 6 did you make any
7   personal inquiries to answer the request for
8   admission?
9       A       No, I did not.
10      Q       Regarding Exhibit 7 did you make any
11  personal inquiries to answer these questions?
12      A       No, I did not.
13      Q       Let's go to Exhibit 6 because you --
14  you answered questions this time, and I'm trying to
15  figure out, if you didn't make any inquiries, how
16  are you attesting to this stuff, so let's go through
17  the first one.  Exhibit 6 is your response to
18  request for admissions dated December 21st, 2020.
19  The question asked -- can you see request Number 1,
20  sir?
21      A       I -- I can, yes.
22      Q       It says, "In your role as chief of
23  police you were made aware that" --
24      A       I don't see that.
25      Q       Okay.  Let me -- let me do a better

Page 134

1   job.  Thanks.
2       A       Oh, it's -- it's below.  I see the
3   first line.
4       Q       I'm going to do it better for you.
5   This is frustrating.  Can you see it all now?
6       A       I can.  I can see the bottom of the --
7   that page Number 1, yes, sir.
8       Q       Can you see the bottom of one and
9   beginning of two?
10      A       I do not.  I just see the -- bottom
11  of one.  I see the top portion of the page, but no
12  writing.
13      Q       How about now?
14      A       Just the first line.
15      Q       How about now?
16      A       The first line.
17      Q       Okay.  Let me read it to you, and then
18  we'll go from there.
19      A       Thank you.
20      Q       "In your role as chief of police you
21  were made aware that Mathieu Cadeau was subject of
22  an OPS citizen complaint investigation as reflected
23  in Office of Professional Standards investigation
24  file 08C0709CTSY."
25              Your response was, "Denied."

Page 135

1               I'm going to show that to you.  Do you
2   see your response now?
3       A       I do see it now, yes, sir.
4       Q       Okay.  Can you tell me -- have you
5   first made -- did you make a personal inquiry into
6   determining this answer to this request for
7   admission?
8               MS. SELLERS:  Object to the form.  To
9       the extent you can answer, Chief, you can.
10              THE WITNESS:  No.
11  BY MR. WILLIAMS:
12      Q       So what is the basis of you denying
13  whether or not you were made aware of the OPS
14  investigation 08C0709CTSY?
15      A       I would have to rely on the -- on
16  counsel to determine that, but I can only suspect.
17      Q       You can suspect.  I mean, you don't
18  know as we sit here under oath, whether you were
19  made aware of that OPS file or not, do you?  Under
20  oath do you know that for sure?
21      A       At this time I cannot confirm that I
22  was made aware of this particular complaint.  I can
23  only suspect, and as I said, because of the file
24  number, and I was not in place at the time of this
25  complaint.  I was retired at the time.

Page 136

1       Q       This complaint is not when you was
2   retired.  It's in '08.
3       A       Okay.  Well, I was not made aware of
4   it.  I'm sorry.  I'll wait on your question.
5       Q       My question is, can you testify under
6   oath truthfully or not, whether you were made aware
7   of this complaint or not?
8       A       No, I cannot.
9       Q       So you can't deny or admit whether you
10  were made aware of this complaint, can you?
11      A       Not at this time, no.
12      Q       At any time since this lawsuit have you
13  been able to admit or deny whether you were made
14  aware of this complaint?
15      A       That's not true, sir.
16      Q       I'm asking, can you --
17      A       No, no.  The answer, then -- the answer
18  to that is, no.
19      Q       No, what?
20      A       Would you repeat the question?
21      Q       At --
22      A       Repeat --
23      Q       At any point prior to this deposition
24  do you know for a fact whether or not you were made
25  aware or not made aware of the OPS complaint

Page 137

1  08C0709CTSY?

2       A      I cannot -- I don't recall.

3       Q      So when you write "denied," that is not

4  accurate, is it?

5       A      That is not -- that is not the case,

6  no, sir.  That is -- that is -- I am answering that

7  as no.

8       Q      You're answering that you was not made

9  -- that you were -- you're denying that you were

10 made aware of it?

11      A      I'm sorry.  This is a circle.  Repeat

12 the question again.  I'm sorry.

13      Q      Yeah.  My question to you, sir, is --

14 I'm cross examining you under oath.

15      A      And I understand that.

16      Q      In your answer you denied the statement

17 that in your role as chief you were made aware that

18 Cadeau was the subject of an OPS citizen complaint

19 as reflected in OPS 08C0709CTSY.  I'm asking you,

20 really, what is the basis of your denial?

21      A      On counsel recommendation.

22      Q      So sometimes you rely on counsel to

23 admit or deny, and sometimes you say you don't know;

24 is that correct?

25             MS. SELLERS:  Object to the form of the

Page 138

1       question.  To the extent that you can answer

2       that, Chief, you can.

3             THE WITNESS:  No.

4  BY MR. WILLIAMS:

5       Q      Do you see on your last responses when

6  you said you didn't know?  You just put, I can't

7  admit or deny, make reasonable inquiry.

8             Do you see -- do you remember that in

9  Exhibit Number 6?

10      A      Yes, sir.

11      Q      But then in Exhibit 7 you are denying

12 things.  I'm trying to find out, are you denying it

13 based on your personal knowledge, or are you denying

14 it based on your attorney?  And I'm specifically

15 asking as relates to Number 1, 2, 3, 4, 5, 7, 8, 9,

16 12, 13, 24 of the request for admissions.  And I'll

17 let you look at them.  I'll scroll through them if

18 you want.

19      A      My answer is, a combination of both my

20 own personal knowledge and the direction of counsel

21 for each one of those responses.

22      Q      Let me ask it more clear because -- so

23 we can just have this matter for the court.  Did you

24 answer the request for admissions based on

25 independent personal knowledge, or did you answer

Page 139

1  the request for admissions of Exhibit Number 7 based

2  on advice of counsel?

3       A      I can't answer that question yes or no.

4  I answered that question because it was a

5  combination of my personal experience as well as

6  counsel from my attorneys.

7       Q      Okay.  Let us get this straight,

8  though.  When you were chief of police, whether you

9  were made aware of a complaint about an officer or

10 not, you had the ability and the authority to go

11 back and look at any officer's OPS file; am I

12 correct?

13      A      Yes.

14             (Exhibit Number 8 was marked for

15        identification.)

16 BY MR. WILLIAMS:

17      Q      All right.  Let's go to Exhibit 8.

18 This is a copy of the transcript of your deposition

19 I took of you on February 2nd, 2018.  Do you recall

20 me taking your deposition that day?

21      A      Vaguely.  Yes, sir.

22      Q      We were down at city hall.  It was

23 regarding the case involving James Burns, who shot

24 and killed Deravis Rogers.  Do you recall that

25 incident?

Page 140

1       A      Yes, sir.

2       Q      Do you recall we took your deposition

3  at that time?

4       A      I do.

5       Q      And you was represented by the city of

6  Atlanta law department; correct?

7       A      Yes.

8       Q      And you remember you was under oath?

9       A      Yes, sir.

10      Q      And you, as you stated here under oath,

11 swore to tell the truth and be honest with your

12 answers?

13      A      Yes.

14      Q      And is it fair based upon your

15 acknowledgment that you would be honest and

16 truthful, that the court and the jury in the case

17 involving that deposition, which was the Rogers

18 case, that the court in that case as well as the

19 court and jury in this case, can rely on the facts

20 and testimony you testified to in that deposition on

21 February 2nd, 2018?

22      A      Yes.

23      Q      We gave you an opportunity to read and

24 sign that deposition.  Do you recall that?

25      A      Yes.

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 141

1    Q    Did you review it to make sure that the
2  information that was in it was truthful and accurate
3  and transcribed as you testified to?
4    A    To the best of my knowledge, yes.
5    Q    I want to go through a couple of things
6  so I don't have to -- I can kind of shorten this.
7  There is some things I asked you about in that
8  deposition that we had already satisfied that are
9  relevant to this case.  One of the things I asked
10  you -- we can go to 19 if you want to.  Let's see.
11  I'm sorry, sir.  This is taking longer because it's
12  just taking longer to -- this is frustrating.  Let
13  me ask you this question, sir.
14         Do you believe -- do you agree or not
15  with this statement:  There is never a reason for an
16  officer to exert physical force if a person has not
17  committed a crime?
18    A    I agree to that statement.
19    Q    "If a supervisor or a manager of a
20  police officer witnessed, learned, and became
21  knowledgeable of an action of a police officer that
22  was in violation of the Atlanta Department's
23  standards, that supervisor was required to hold that
24  officer accountable for that."
25         Do you agree with that statement?

Page 142

1    A    Yes.
2    Q    "If a supervisor or manager witnessed,
3  learned about, became informed about an officer
4  violating the Atlanta Police Department policy and
5  that officer did not hold that officer accountable,
6  he or she is in violation.  That supervisor would
7  have been in violation of the Atlanta Police
8  Department policies and procedures."
9         Do you agree with that statement?
10    A    Yes.
11    Q    You agree with the concept that if you
12  don't hold people responsible for violation of
13  rules, they are more likely to continue to violate
14  those rules?
15    A    Yes.
16    Q    Do you agree with the statement that a
17  police department must hold people accountable for
18  the small things?
19    A    Yes.
20    Q    Am I correct that the OPS commander
21  would report directly to you?
22    A    Yes.
23    Q    And during your tenure as chief of
24  police from 2010 to 2016 you would meet weekly on
25  Monday meetings with the OPS commander?

Page 143

1    A    Along with the other executive staff,
2  yes.
3    Q    You guys would -- the OPS commander
4  would discuss the specific officers, if necessary,
5  with you; is that correct?
6    A    On a briefing sheet if there were any
7  issues associated with a discussion, yes, sir.
8    Q    You would also receive a weekly OPS
9  report; isn't that true?
10    A    Yes.
11    Q    And if at any moment you wanted to get
12  additional information regarding the OPS history or
13  prior actions of an officer, you had the ability to
14  get that information immediately from your OPS
15  commanders?
16    A    That's correct.
17    Q    Do you agree with me, getting to work
18  on time is the basic in the beginning as relates to
19  an Atlanta police officer?
20    A    I'm sorry.  Repeat that statement, that
21  question.
22    Q    Getting to work on time is one of the
23  things that are very basic as relates to being a
24  police officer?
25    A    Yes.

Page 144

1    Q    Do you agree with me you don't want
2  police officers who have responsibilities of
3  protecting the citizens in this community, showing a
4  propensity to be tardy or late?
5    A    Yes.
6    Q    Do you agree that being late or tardy
7  is a potential sign that the person may not follow
8  even more important rules?
9    A    Yes.
10    Q    If someone shows a propensity or signs
11  of being undiscipline, you agree with me that you
12  should not be a city of Atlanta police officer?
13         MS. SELLERS:  Object to the form of the
14         question.  To the extent that you can answer,
15         Chief, you can.
16         THE WITNESS:  It depends on the action
17         of the officer and what is contained in the
18         complaint.
19  BY MR. WILLIAMS:
20    Q    Bear with me for one second.  Okay?
21         MR. WILLIAMS:  It wasn't doing this
22         before, Sam.  This is so slow.
23         MR. STARKS:  You want to switch
24         connections?
25         MR. WILLIAMS:  I'm using the Cochran

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner
January 13, 2021

Page 145

1        internal.
2   BY MR. WILLIAMS:
3        Q        Hey, sir, I want to pull up -- can you
4   see page 39 here?
5        A        I can.
6        Q        Do you see 20 through 25?
7        A        No, I do not.
8        Q        How about now?
9        A        I see 20 through 23.
10       Q        What about now?
11       A        Twenty through 25.  Yes, sir.
12       Q        I'm going to read the question that I
13  asked you back on February 2nd, 2018.
14            "If you -- you agree with me that if in
15  the academy or as a cadet if someone shows a
16  propensity or signs of being undisciplined, that you
17  agree with me that they should not be a city of
18  Atlanta police officer?"
19            What was your response?
20       A        Yes.
21       Q        So do you believe that if an officer
22  who's already a police officer, shows a propensity
23  or sign of being undisciplined, do you agree that
24  they should not be a city of Atlanta police officer?
25            MS. SELLERS:  Object to the form of the

Page 146

1   question.  To the extent that you can answer,
2   Chief, you can.
3            THE WITNESS:  I will qualify my answer.
4   I will say yes, but I'll qualify my answer
5   with, as a cadet in our state an officer is
6   -- this is a right-to-work state, and
7   individuals do not have a right to that
8   position as a recruit.
9            However, as a police officer that
10  officer has a right to the position, and we
11  have to go through a proper procedure to
12  dismiss an officer for a disciplinary action.
13  BY MR. WILLIAMS:
14       Q        Okay.  Does that fact make my question
15  to you not true?  Whether you got to go through the
16  procedures, don't you agree that that officer should
17  not be a city of Atlanta police officer if they're
18  showing a propensity or signs of being
19  undisciplined?
20       A        I can't answer that question at this
21  time because of the nature of the complaint.  You
22  cannot determine that by knowing knowledge on what
23  the policies and procedures are concerning
24  terminating an officer.  You just cannot terminate
25  an officer without due cause.

Page 147

1        Q        Are you saying that the officers at
2   APD, are they -- they don't operate under Georgia
3   at-will rules?
4        A        They do within the -- within the
5   framework of due process.
6        Q        Doesn't your rules and the due process
7   rules of Atlanta Police Department when you were
8   chief, it gave you the authority to terminate an
9   officer that shows signs and propensity of being
10  undisciplined?
11       A        In my opinion the answer to that is no
12  without a formal investigative conclusion.
13       Q        And if the formal investigative
14  conclusion showed that the officer was
15  undisciplined, would you as a reasonable chief of
16  police want that officer terminated?
17       A        Yes.
18       Q        You agree that one of the paramount
19  attributes that an officer has to have is honesty
20  and trustworthy?
21       A        Yes, sir.
22       Q        Do you agree with me you do not want an
23  officer that uses unnecessary use of force in their
24  handling of citizens who are the guests of the city
25  or who are citizens of the city?

Page 148

1            MS. SELLERS:  Object to the form of the
2   question.  To the extent that you can answer,
3   Chief, you can.
4            THE WITNESS:  Yes.
5   BY MR. WILLIAMS:
6        Q        You expect the officers to use only the
7   level of force necessary to deal with the situation?
8        A        Yes.
9        Q        As chief of police you expected and
10  understood that police officers of the city of
11  Atlanta were required not to violate people's civil
12  rights; am I correct?
13       A        Yes.
14       Q        You agree with me to treat people with
15  respect and enforce the laws with dignity and
16  respect means that you do not use physical force,
17  more force than necessary?
18       A        Yes.
19       Q        If there is -- you agree with this
20  statement -- I asked you about this back in 2018 --
21  if there is a situation where the circumstances
22  don't require you to Tase somebody, you agree with
23  me in complying with the APD rules, an officer
24  should not Tase somebody if it's not necessary?
25            MS. SELLERS:  Object to the form of the

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 149

1    question.  To the extent that you can answer,
2    Chief, you can.
3            THE WITNESS:  Yes.
4    BY MR. WILLIAMS:
5        Q        You agree with that?
6        A        Yes.
7        Q        And if the situation and circumstances
8    don't require that you use OC spray on somebody, you
9    agree with me that the officer should not use OC
10   spray on somebody if it's not necessary?
11           MS. SELLERS:  Same objection.  To the
12       extent that you can answer, Chief, you can.
13           THE WITNESS:  Yes.
14   BY MR. WILLIAMS:
15       Q        You agree with me that all APD
16   officers, including their supervisors and you as
17   chief, should uphold the Constitution of the state
18   of Georgia, the United States, and obey all
19   applicable federal, state, and local laws?
20       A        Yes.
21       Q        As chief you expect that all your
22   officers during your tenure to act professional and
23   with integrity?
24       A        Yes.
25       Q        You agree with me in order for the

Page 150

1    department of the city of Atlanta to carry out its
2    vision and mission during your tenure as chief, you
3    expected and needed your supervisors and commanders
4    to hold the employees and officers under their
5    immediate supervision, accountable?
6        A        Yes.
7        Q        If the conduct or failure of an officer
8    is such that it's in the best interests of the
9    department that the person be terminated, that is
10   the recommendation that should be made for your
11   consideration as chief?  Isn't that true?
12       A        Restate that question, please.
13       Q        If the conduct or failure of an officer
14   is such that it's in the best interests of the
15   department that the person be terminated, that
16   recommendation should be made for your consideration
17   as chief?
18       A        Yeah.
19           MS. SELLERS:  Object to the form.  To
20       the extent that you can answer, Chief, you
21       can.
22           THE WITNESS:  Yes.
23   BY MR. WILLIAMS:
24       Q        Because you're the only person that can
25   terminate a sworn officer, correct, as chief of

Page 151

1    police?
2        A        That's correct.
3        Q        Even though you relied on and used the
4    city of Atlanta as relates to Cadeau, ultimately the
5    decision was yours; is that correct?
6        A        That's correct.
7        Q        You were the chief policy maker as
8    relates to the employment and/or termination of
9    Cadeau back in 2014, '15; is that correct?
10       A        Yes.
11       Q        If an officer shows a tendency or
12   propensity or behavior that does not measure up to
13   the limits of the law, ordinances, or rules, that
14   officer should not continue to be on the force;
15   isn't that correct?
16           MS. SELLERS:  Objection to the form of
17       the question.  To the extent that you can
18       answer, Chief, you can.
19           THE WITNESS:  Yes.
20   BY MR. WILLIAMS:
21       Q        If an officer continuously showed a
22   propensity not to comply, be considerate of a
23   person's rights, feelings, and interests, you do not
24   want that officer on the force; am I correct?
25           MS. SELLERS:  Same objection.  Chief,

Page 152

1        if you can answer, you can.
2            THE WITNESS:  Yes.
3    BY MR. WILLIAMS:
4        Q        If you got an officer who continuously
5    shows a propensity not to comply, be considerate of
6    a person's rights, feelings, and interests, you
7    agree with me that you as chief should go through
8    the requirement of the SOP to terminate that
9    officer?
10           MS. SELLERS:  Same objection.  To the
11       extent that you can answer, Chief, you can.
12           THE WITNESS:  Sir, can you restate that
13       question?
14   BY MR. WILLIAMS:
15       Q        Yeah.  If a person, an officer
16   continuously shows a propensity not to comply with
17   the rules, be considerate of a person's rights,
18   feelings, and interests, you agree with me that you
19   should, as chief, go through the procedures to have
20   that officer terminated?
21       A        Yes.
22       Q        And if the officer is acting reasonable
23   in the way they carry out their job duties, you
24   agree with me, you don't want that officer on the
25   force; am I correct?

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                           January 13, 2021

Page 153

1    A        You broke up on your statement -- your
2   initial part of that question.  Can you repeat that?
3        Q    Yes.  If you have a person or an
4   officer who is acting unreasonable in the way they
5   carry out their job duties, you don't want that
6   officer working at the APD either?  Am I correct?
7              MS. SELLERS:  Object to the form of the
8        question.  To the extent that you can answer,
9        Chief, you can.
10             THE WITNESS:  Yes.
11  BY MR. WILLIAMS:
12       Q    And if you have an officer who is
13  acting unreasonable in the way they carry out their
14  job duties and it becomes -- you become aware of it,
15  you should take all actions within the SOP to
16  terminate that officer?  Am I correct?
17             MS. SELLERS:  Object to the form of the
18        question.  To the extent that you can answer,
19        Chief, you can.
20  BY MR. WILLIAMS:
21       Q    You can answer.
22       A    Discipline -- discipline up to
23  termination.
24             (Exhibit Number 9 was marked for
25        identification.)

Page 154

1   BY MR. WILLIAMS:
2        Q    Okay.  I want to show you what's been
3   marked as Exhibit Number 9 to your deposition.
4   Exhibit 9, sir, is the SOP 2080 regarding training
5   that was signed in on December -- I mean on
6   October 23rd, 2015, and I'm going to go up and let
7   you see it.  Okay?
8        A    Okay.
9              MR. STARKS:  Call the tech guy to see
10        what's going on.  I'm going to see if Tom
11        can --
12  BY MR. WILLIAMS:
13       Q    October 23, 2015, you see at the top,
14  sir?
15       A    Yes, sir.
16       Q    You was chief of police then; correct?
17       A    Yes.
18       Q    You would have signed off on this
19  policy; right?
20       A    That's correct.
21       Q    In fact, it says, "Chief George Turner"
22  on the side over here; correct?
23       A    Yes.  I don't see it, but I --
24       Q    I'm sorry.  Let me get -- see it.  It's
25  right here on the top here.  I can make it smaller

Page 155

1   for you.  How about that?
2        A    I see it now, yes, sir.
3        Q    Am I correct that it is critical that
4   APD officers receive adequate training?
5        A    Yes.
6        Q    What does adequate training mean to you
7   as a former chief -- the chief of police between
8   2010 to 2016?
9        A    Adequate training would mean the
10  prerequisite requirements that the state require to
11  maintain POST certification.  Those changes within
12  laws, those changes within policies and procedures
13  within the Atlanta Police Department.
14       Q    Do you agree -- okay.  I'm sorry.  Were
15  you finished?
16       A    Yes, sir.
17       Q    Do you agree with me that the APD
18  department had a duty to require that every officer
19  receive adequate training to ensure that citizens'
20  civil rights are protected and not violated?
21       A    Yes.
22       Q    It also is critical for officers to
23  receive adequate training on use of force and deadly
24  use of force?
25       A    That's correct, yes.

Page 156

1        Q    What is the -- define excessive force
2   and -- as you see it as a former chief of police.
3        A    Force that exceed the amount of force
4   to overcome the threat at the time of an incident.
5        Q    Define unnecessary force.
6              MS. SELLERS:  Object to the form of the
7        question.  To the extent that you can answer,
8        Chief, you can.
9              THE WITNESS:  I'm sorry.  What did I
10        define prior to this -- this question?  I
11        thought that's what I was defining.
12  BY MR. WILLIAMS:
13       Q    You defined -- unnecessary force.
14       A    I'm sorry.  Ask your question again,
15  please, sir.
16       Q    The first question to -- asked you,
17  inquiry, I said, what was -- define excessive force,
18  and you did.  My next question was, would you define
19  unnecessary force?  And if they're the same, that's
20  fine.  I just -- I had two different questions.
21       A    I would only imagine -- the only thing,
22  that unnecessary force would be force that was not
23  reasonable to deal with the threat or that was used
24  without a threat.
25       Q    In the hypothetical we talked about

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 157

1  where the person is handcuffed, they're not a
2  threat, they're not doing anything to anybody, and
3  someone pepper sprays them in the face, that would
4  be considered, based on the scenario I gave you
5  before, unnecessary force?
6          MS. SELLERS:  Object to the form of the
7      question.  To the extent that you can answer,
8      Chief, you can.
9          THE WITNESS:  In the situation that you
10     provided, I would say that that would be
11     unnecessary force.
12 BY MR. WILLIAMS:
13     Q      It would also be excessive, wouldn't
14 it, based on your own definition?
15         MS. SELLERS:  Same objection.  To the
16     extent that you can, Chief, you can answer
17     the question.
18         THE WITNESS:  I think I talked about
19     threat, but if they were no threat, it would
20     be unnecessary as well as excessive.
21 BY MR. WILLIAMS:
22     Q      The policy set forth on two thousand --
23 this 2008 Exhibit Number 9, am I correct that all
24 APD officers would have been required to follow this
25 in carrying out their job duties and

Page 158

1  responsibilities?  Am I correct?
2      A      Yes, sir.
3      Q      And all APD officers, including Cadeau,
4  would have to be trained in compliance with Exhibit
5  Number 9?
6      A      Yes, sir.
7      Q      One of the things that it says, it
8  talks about is remedial training.  Can you tell us
9  what that was?
10     A      I -- I -- I can't even imagine -- can
11 you explain to me what area are we referring to as
12 far as relationship -- remedial?  Is it firearms?
13 Is it -- what is it?
14     Q      I'm going to try to pull it up.
15     A      Thank you.
16     Q      And, sir, anytime you need me to refer
17 to something or try to do that -- I was trying to
18 see if you knew or understood without it, but with
19 this delay, I was trying to move quicker for you.
20     A      No.  I understand that, and I
21 appreciate that.  Thank you.
22     Q      Actually, I think I went too far.
23 Right here, sir.  Let me come down a little bit.  I
24 don't know why that blue marker came on here.  I'm
25 coming back, sir.

Page 159

1      A      Okay.
2      Q      Do you see now where I was talking
3  about remedial training?
4      A      Yes, sir.
5      Q      4.15.2 says, "Remedial training shall
6  be required for all employees as indicated by
7  failure to successfully complete a required
8  component of a specific training or as an element of
9  the disciplinary process.  Failure to successfully
10 complete and pass mandated remedial training or
11 training required as a result of the disciplinary
12 problem -- process may result in additional
13 disciplinary action or termination."
14         Do you see where remedial training can
15 be part of the disciplinary process?
16     A      Yes, sir.
17     Q      So my question to you is, when someone
18 is disciplined pursuant to a discipline -- well, let
19 me ask you this.  When someone is disciplined do you
20 believe that it's reasonable for that officer to be
21 retrained on the issue that the person was
22 disciplined on?
23     A      Yes.
24     Q      Is that what was in place at the APD
25 during your tenure a chief?

Page 160

1          MS. SELLERS:  Object to the --
2          THE WITNESS:  Yes.
3          MS. SELLERS:  -- form of the question.
4      To the extent that you can answer, Chief, you
5      can.
6          THE WITNESS:  Yes.
7  BY MR. WILLIAMS:
8      Q      Explain to the jury why you had a
9  process in place for a retraining when there was a
10 disciplinary process where an officer was sustained.
11         MS. SELLERS:  Object to the form of the
12     question.  To the extent that you can answer,
13     Chief, you can.
14         THE WITNESS:  If there were an action
15     that was egregious to the point where we
16     thought that the officer needed to be
17     retrained in a specific area that was brought
18     to the attention of the complaint, then we
19     would have made a recommendation to have the
20     officer retrained in that specific area.
21 BY MR. WILLIAMS:
22     Q      So there it was a sustained complaint,
23 would it be the custom and practice to provide
24 retraining with that regarding that sustained
25 complaint?

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 161

1    MS. SELLERS: Object to the form of the
2    question. To the extent you can answer,
3    Chief, you can.
4    THE WITNESS: Yes. If retraining was
5    appropriate part of the disciplinary process.
6    THE REPORTER: Mr. Williams, can we
7    have a minute here?
8    MR. WILLIAMS: Yeah. Let's take a
9    break. Can we take like a five-minute break,
10   Tiffany and Mr. Turner?
11   THE WITNESS: Yes.
12   MS. SELLERS: That's fine with me.
13   Well, let's make it 1:40 to make it even.
14   MR. WILLIAMS: Fine. Let's do that.
15   THE VIDEOGRAPHER: Going off the
16   record. The time is 1:32.
17   (A recess was taken.)
18   THE VIDEOGRAPHER: The time is 1:44.
19   We're back on the video record.
20   BY MR. WILLIAMS:
21   Q    Chief Turner, how are you doing?
22   A    I'm good, sir.
23   Q    Thank you for your patience. I think
24   we figured out how to make this go quicker with the
25   documents.

Page 162

1    A    Okay.
2    (Exhibit Number 10 was marked for
3    identification.)
4    BY MR. WILLIAMS:
5    Q    I'm going to show you what's been
6    marked as Exhibit Number 10. This is the APD.SOP
7    101 -- 1010, mission and organization of the
8    department. It is for August 13, 2016. Are you
9    able to see that?
10   A    I can, yes, sir.
11   Q    Is -- am I correct that this policy
12   of --
13   A    Can you expand it just a bit? Let me
14   put my glasses back on also. That's good. Yes,
15   sir.
16   Q    This was produced to us in this case.
17   Am I correct that this mission and organization of
18   the department was a -- set forth the mission and
19   vision and core values of the APD during your tenure
20   as chief?
21   A    I believe that's the case, yes, sir.
22   Q    And Exhibit 10, am I correct that
23   yourself, your commanders, supervisors, and the
24   officers were required to follow the mission,
25   vision, core values set forth in SOP 1010?

Page 163

1    A    Yes.
2    Q    One of the things that I see is that
3    the vision and the mission statement is -- the
4    mission of the Atlanta Police Department is to
5    create a safer Atlanta by reducing crime, ensuring
6    the safety of our citizens, and building trust in
7    the partnerships with our community.
8    Do you see that?
9    A    Yes. As the vision statement, that's
10   correct.
11   Q    That's actually the mission statement,
12   isn't it?
13   A    Well, it's under vision; correct? Am I
14   missing?
15   Q    I don't know. How about now? Do you
16   see it?
17   A    Oh, mission. I do see it, yes.
18   Q    So that was -- right?
19   (Court Reporter clarification.)
20   BY MR. WILLIAMS:
21   Q    Yes. The mission of the Atlanta Police
22   Department is to create a safer Atlanta by reducing
23   crime, ensuring the safety of our citizens, and
24   building trust and partnership with our community.
25   My question was, that was the mission

Page 164

1    that was required to be carried out by yourself,
2    your commanders, your superiors, the OPS as well as
3    the officers; correct?
4    A    Yes.
5    Q    And building trust in the partnership
6    with our community requires honesty and
7    trustworthiness?
8    A    Yes.
9    Q    Next down is the core values of
10   professionalism, integrity, commitment, and courage.
11   Do you see that?
12   A    Yes, sir.
13   Q    You can't have those core values if you
14   do not have trustworthiness or honesty; correct?
15   A    Yes, sir.
16   Q    Now, when did you actually become chief
17   of police?
18   A    January of 2010.
19   Q    And before that, what was your position
20   with the City of Atlanta Police Department?
21   A    I served as the deputy chief of support
22   services section in the Atlanta Police Department.
23   Q    And before that, what was your role?
24   A    I served as the commander over
25   corporate services.

Page 165

1    Q      And before that, what was your role?
2    A      I was a night commander.
3    Q      What department?
4    A      Within the FOD, field operations
5  division.
6    Q      And before that, what was your role?
7    A      I was a zone one precinct commander.
8    Q      And before that, what was your role?
9    A      I was the major over family and youth
10 services section.
11   Q      At any time did your -- were you a
12 commander, supervisor, manager over Cadeau?  Other
13 than being chief.
14   A      I don't know.  I'm sorry.
15   Q      And you have not done an inquiry
16 personally to answer -- to determine that; am I
17 correct?
18   A      That's correct.
19   Q      If you look at -- am I correct as chief
20 of police, all commanders are chosen by the chief to
21 serve at the pleasure of the chief?
22   A      Above the rank of lieutenant.
23   Q      Who was the assistant chief of police
24 in 2014, '15, and '16?
25   A      I had two assistant chiefs during the

Page 166

1  time that I was the chief of police.  At one point
2  we did not have an assistant chief.  It was either
3  Pete Andressen or Shawn Jones.
4    Q      And in 2014, '15 and -- well, during
5  your tenure who was your deputy chiefs?
6    A      I had a -- a litany of folks, but it's
7  -- it was probably about 20 different people served
8  in deputy chiefs position over the time.
9    Q      Okay.  And what about just the period
10 of 2015 to '16?
11   A      I don't recall that period of time, on
12 who that might have been.
13   Q      You see under 4.1 -- 4.1.5 it says,
14 "Every employee shall be held accountable for the
15 use of authority or failure to use authority
16 delegated or structured for his or her position"?
17          Do you see that?
18   A      Can you just expand the document a
19 little bit, and -- I don't -- it's not that I don't
20 agree with you.  I just don't -- I can't make it
21 out.  It's too small.
22   Q      You're fine.  I'm sorry.  I should have
23 made it bigger.  Is that better?
24   A      One more time.
25   Q      Okay.

Page 167

1    A      You're going the other way, sir.  It's
2  smaller.  Okay.  I can see it.  I just lost it.  One
3  more time.
4    Q      Let me do this.  How about now?
5    A      I can see it.
6    Q      It's just when I make it too big, it
7  gets it out of the screen.
8    A      Right, right.  I get it.
9    Q      It says, "Every employee should be held
10 accountable for the use of authority or failure to
11 use authority delegated or structured for his or her
12 position."
13          Do you see that?
14   A      Yes, sir.
15   Q      That means if you have the authority as
16 a supervisor or manager to discipline or hold an
17 officer accountable, this section right here says
18 you have the duty to do that; correct?
19   A      Yes, sir.
20   Q      You had a duty and responsibility when
21 making the decisions about Cadeau's employment and
22 his disciplinary -- you had a duty to be -- to
23 comply with this SOP; correct?
24   A      Yes, sir.
25   Q      And this is the section I was trying to

Page 168

1  get to.  Forty-one -- do you see that now?  Chief of
2  police, 4.2.
3    A      Yes, sir.
4    Q      Do you see where it says, "He or she
5  has the authority and responsibility to manage,
6  direct, control the operations, administration of
7  the department."
8    A      Yes.
9    Q      You're ultimately responsible for what
10 happens, what goes on at APD during your tenure as
11 chief; correct?
12   A      Yes.
13   Q      And then under 4.23, the Office of
14 Professional Standards report directly to the chief
15 of police and is responsible for the disciplinary
16 process of the APD; correct?
17   A      Yes, sir.
18   Q      That specific policy puts the sole
19 responsibility of OPS and the discipline in your
20 hands; correct?
21   A      Yes.
22   Q      Not the city of Atlanta law department;
23 correct?
24   A      That's correct.
25   Q      So at the end of the day regarding who

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                          January 13, 2021

Page 169

1   was involved, any decisions, any other information,
2   you were ultimately the person who decided the
3   decision regarding Cadeau in two thousand and -- in
4   2014, '15, and '16; correct?
5       A       Yes.
6       Q       It says that the OPS reports directly
7   to you, and am I also correct that you have full
8   access to all -- any and all documents, evidence,
9   videos, statements that was contained in OPS during
10  your tenure?
11      A       Yes, sir.
12      Q       And you also had the ability and
13  authority to use whatever tool OPS had in
14  investigating an OPS investigation, including using
15  computer voice analyze?
16      A       Yes.
17      Q       You agree with me the ultimate goal in
18  OPS should be to get to the truth of the allegation?
19          MS. SELLERS:  Object --
20          THE WITNESS:  Yes.
21          MS. SELLERS:  -- to the form of the
22      question.  To the extent that you can answer,
23      Chief, you can answer.
24          THE WITNESS:  Yes.
25          (Exhibit Number 11 was marked for

Page 170

1       identification.)
2   BY MR. WILLIAMS:
3       Q       All right.  Let's go to Exhibit 10.  I
4   mean 11.  Exhibit 11, sir, I'm going to pull it up
5   for you at the top.  Do you see now?
6       A       I can, yes, sir.
7       Q       This is SOP 2010, which is the work
8   rules, and it is signed September 4, 2015, and you
9   were chief at that time; correct?
10      A       Yes, sir.
11      Q       In the work rules -- I know this is
12  2015, but based on the cases I've done, these work
13  rules hadn't pretty much changed during your tenure
14  as chief from 2010 to 2016; am I correct?
15      A       Very minimal, if any.
16      Q       Okay.  So -- okay.  But everything set
17  forth on Exhibit 11 pretty much during your tenure
18  was required of yourself, your commanders, your
19  managers, your supervisors, and the officers in
20  carrying out their day-to-day duties?
21      A       Yes.
22      Q       Let's go to -- oh.  And am I correct
23  based on this policy, all supervisors were
24  responsible for ensuring that all employees complied
25  with these work rules?  Am I correct?

Page 171

1       A       Yes.
2       Q       The one that's interesting is 3.3.  The
3   Office of Professional Standards is responsible for
4   investigating violations of this directive as
5   outlined in APD.SOP 2020, the disciplinary process.
6           Do you see that?
7       A       Yes, sir.
8       Q       So OPS, which you were over as the
9   chief operating officer of that department, they had
10  a duty to investigate any violations of these work
11  rules?
12      A       Yes.
13      Q       And Cadeau was required to follow these
14  throughout his tenure at APD?
15      A       That's correct, yes, sir.
16      Q       Under 4.1 -- 4.1.1, appropriate action
17  required, it basically starts to set forth all the
18  appropriate actions that an officer is required to
19  do in their day-to-day operations.  Am I correct?
20      A       Yes, sir.
21      Q       But before we go there, it -- under
22  policy, it specifically says, under two, "All
23  violations of established work rules should be
24  investigated fairly, uniformly, and equitable."
25          Do you see that?

Page 172

1       A       Yes, sir.
2       Q       What does that mean to you?
3       A       I think it goes just as it reads:  That
4   violations should be -- they should be investigated
5   completely and fairly and with equitable
6   determination on those files.
7       Q       Equitable not only for the officer but
8   the citizens of the city of Atlanta?  You agree?
9       A       Yes.
10      Q       Work rule -- I want to talk about being
11  considerate of the rights and feelings and interests
12  of persons.  Do you see that?
13      A       Yes, sir.
14      Q       What did you mean by that in putting
15  forth this policy as relates to your officers?
16      A       Being concluded -- inclusive of the --
17  not just the officers but the citizens that we were
18  sworn to protect and serve.
19      Q       So you can't be mean?  You got to be
20  courteous; correct?
21      A       Yes, sir.
22          MS. SELLERS:  Object to the form of the
23      question.  To the extent that you can answer,
24      Chief, you can.
25          THE WITNESS:  Yes.

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 173

1  BY MR. WILLIAMS:
2       Q      That means you have these -- your
3  officers in your tenure needed to be considerate of
4  others' feelings?
5              MS. SELLERS:  Objection to the form of
6       the question.  To the extent that you can
7       answer, Chief, you can.
8              THE WITNESS:  Yes.  To the best of your
9       ability, yes.
10 BY MR. WILLIAMS:
11      Q      Well, how much ability does it take not
12 to be rude and -- and ugly to somebody?  Does it
13 take a lot of ability for that?
14             MS. SELLERS:  Objection to the form of
15      the question.  To the extent that you can
16      answer, Chief, you can.
17             THE WITNESS:  No.
18 BY MR. WILLIAMS:
19      Q      So if you have an officer who is
20 continuously being rude, disrespectful, mean to
21 citizens, do you want that type of officer, based on
22 this policy, as a APD officer?
23             MS. SELLERS:  Same objection.  To the
24      extent that you can answer, Chief, you can.
25             THE WITNESS:  It would not be my

Page 174

1       recommendation to continue to have a person
2       that violated this particular area of the
3       work rule.
4  BY MR. WILLIAMS:
5       Q      It's interesting to me that it's like
6  the first work rule.  Is there a reason why in your
7  view that being considerate of the rights, feelings,
8  and interests of persons is the first one?
9       A      No.
10      Q      Do you agree with me that it's, like,
11 the foundation of being a police officer?  To be
12 considerate of the rights, feelings, and interests
13 of all people?
14      A      I think it's a major pillar.  I don't
15 know if it's the first, but it's definitely a
16 significant pillar for being a -- a good police
17 officer in the 21st century that we find ourselves
18 in.
19      Q      Performing official acts in a lawful,
20 restrained, dignified, impartial, and reasonable
21 manner is Number 4 under 4.1.1.
22             Do you see that?
23      A      I do, yes, sir.
24      Q      Do you agree with me that in every
25 action Cadeau as an officer, he was required to

Page 175

1  comply with that?
2       A      Yes.
3       Q      If you have an officer who shows a
4  propensity in his official acts to not be lawful, to
5  not be restrained, dignified, or impartial or
6  reasonable in carrying out his acts, do you want
7  that officer working at APD?
8       A      No, sir.
9       Q      Explain why not.
10      A      It would not be in keeping with the
11 recommendations of our work rule and the mission
12 that we set aside for the Atlanta Police Department.
13      Q      If you as the chief operating officer
14 over the OPS section learned doing and reviewing an
15 OPS file or learned during a hearing that you have
16 an officer who has a history of being unlawful,
17 restrained, dignified, impartial, or unreasonable in
18 manner, would you take action to terminate that
19 officer?
20             MS. SELLERS:  Object to the form of the
21      question.  To the extent that you can answer,
22      Chief, you can.
23             THE WITNESS:  Depending on the
24      situation, sir.
25 BY MR. WILLIAMS:

Page 176

1       Q      What situation would you allow an
2  officer who performs acts in an unlawful manner to
3  remain on the force?  Give me a list of them.
4       A      No.  If it was brought to my attention
5  first and then after it was brought to my attention
6  and that we were in the -- I was in the -- I'm
7  sorry.  I got a call.  And that the situation
8  allowed for us to terminate the officers in that the
9  action was so egregious that it -- that it allowed
10 for me to terminate the officer because of the
11 action that they exemplified in the file.
12      Q      You keep saying if it allowed you.
13 What -- how do you think the disciplinary -- what is
14 preventing you -- the disciplinary file says you're
15 the person who decides if someone is terminated.
16      A      Yes, that's correct.  That's correct.
17      Q      So if it's egregious and it allows,
18 what did you mean, allowed?
19      A      Sir, inside the Atlanta Police
20 Department in any -- police officers have due
21 rights, due processes, as I spoke earlier, and we
22 have a responsibility to adhere to that or that
23 officer -- whatever disciplinary actions that we
24 apply to a situation, then the action could be
25 overturned if we're not within the framework of the

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 177

1  disciplinary policy and process that set aside by
2  the city of Atlanta.
3       Q     Yeah.  Basically you just got to follow
4  the disciplinary process set forth in your SOP;
5  correct?
6       A     That's correct.
7       Q     If you follow the -- the disciplinary
8  process in the criteria, the due process is, you
9  still make the final decision; right?
10      A     You're correct.
11      Q     So the due process you keep talking
12  about is ultimately still your decision?
13           MS. SELLERS:  Object to the form of the
14           question.  To the extent that you can answer,
15           Chief, you can.
16           THE WITNESS:  That's correct, but you
17           keep bringing in assumptions, sir, and I'm
18           not going to answer on assumptions.  If you
19           give me factual information, I will answer
20           yes or no to.
21  BY MR. WILLIAMS:
22      Q     We're going to get to some facts.
23      A     Thank you.
24      Q     But the egregious thing you keep
25  bringing up and the due process, ultimately the

Page 178

1  person who decided egregious so to the extent to be
2  terminated, was you; correct?
3       A     That's correct, yes.
4       Q     Nobody else; correct?
5       A     Yes.
6       Q     And the person who decided and made
7  sure the due process -- process went through was
8  you?  Nobody else; correct?
9           MS. SELLERS:  Object to the form of the
10           question.  To the extent that you can answer,
11           Chief, you can.
12           THE WITNESS:  Yes.
13  BY MR. WILLIAMS:
14      Q     Did you expect your OPS investigators
15  or people who worked in that department, your zone
16  commanders and their supervisors, to bring to your
17  attention officers that should be terminated?
18      A     I expected my commanders to bring to my
19  attention those officers that needed to be
20  disciplined, not just to be terminated.
21      Q     So not only disciplined, but people
22  whose actions, either in repeat actions or the
23  egregiousness, required that they be disciplined in
24  a manner that should be terminated; is that correct?
25      A     Yes, sir.

Page 179

1       Q     When you would make a decision on
2  something -- on the termination of an officer, I
3  would think, and tell me if I'm wrong, that you
4  would want as much information available to you
5  regarding that officer's history at the department
6  when you are deciding what to do.  Is that fair?
7           MS. SELLERS:  Object to the form.  To
8           the extent that you can answer, Chief, you
9           can.
10           THE WITNESS:  No.  I need him to
11           restate the question, please.
12  BY MR. WILLIAMS:
13      Q     Am I -- am I correct -- is it fair,
14  sir, that when you are making the decision about
15  whether an officer should be terminated, since that
16  is such an important decision not only for the
17  officer but for the citizens of Atlanta, that you
18  want all the information available to you and -- so
19  you can use it to make a reasonable and full de --
20  thoughtful decision?
21      A     Yes.
22      Q     Did you expect the officers to follow
23  the disciplinary process that's set forth in the
24  SOP?
25      A     Yes.

Page 180

1       Q     And did that SOP designate your
2  commanders to bring to your attention officers that
3  needed discipline and/or termination?
4       A     Yes.
5       Q     Am I correct under -- let's go down to
6  four, one -- 4.13.  It says, "Employees shall be
7  truthful in their written and spoken words at all
8  times"; correct?
9       A     Yes.
10      Q     Am I correct that that work rule
11  requires that an officer follow it in not only the
12  letter of the -- what is written, but also the
13  spirit of what is written?  Do you agree with that?
14           MS. SELLERS:  Object to the form.  To
15           the extent that you can answer, Chief, you
16           can.
17           THE WITNESS:  The spirit?  I can't
18           answer that question.
19  BY MR. WILLIAMS:
20      Q     You want your officers to be completely
21  honest and not hide the ball, don't tell
22  half-truths?  You want them to be fully truthful in
23  their written and spoken word.  Do you understand
24  what I am saying by that?
25      A     I do.

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                        January 13, 2021

Page 181

1    Q       So when I say the spirit, you want
2    someone to comply with not only being truthful in
3    the letter of it, but understand that you can't
4    fudge something, you can't give half-truths and
5    things of that nature?  You get me now?
6        A    Yes.  I understand what you're saying.
7        Q       So do you agree that they should be
8    honest in the spirit of this truthfulness section as
9    well?
10       A    Yes.
11       Q       And am I correct, they must be truthful
12   when speaking to OPS, their commanders, supervisors,
13   and what they put in reports?
14       A    Yes.
15       Q       So anytime an officer is speaking with
16   a commander, a supervisor, or another officer about
17   something, they need to be honest and truthful with
18   what happened, what actions they took or didn't
19   take; am I correct?
20       A    Yes.
21       Q       So if I ask an officer -- I'm a
22   supervisors -- officer, it's my understanding that
23   you were sleeping in your car, that officer must be
24   truthful when he responds to the supervisor says
25   whether I was sleeping or not?  He needs to be

Page 182

1    honest and truthful?
2        A    Yes.
3        Q       4.14 says, "An officer should not act
4    in an official or private capacity in a manner that
5    should bring discredit upon the department or
6    themselves."
7            Do you see that?
8        A    Yes.
9        Q       Do you think if an officer put OC spray
10   in somebody's face who's handcuffed, who's not a
11   threat and not doing anything to even warrant force,
12   that if they put that OC spray in that person's
13   face, do you think that that brings discredit to the
14   department?
15       A    Yes.
16       Q       Explain why that does.
17       A    The appearance of the action of the
18   officer providing that the situation is just as you
19   described it.  There were no threats to the officer,
20   that the person was compliant, then obviously it
21   would show that the officer was in violation of our
22   policies.
23       Q       And the way we would determine that, if
24   it is what I say, is -- is, that would be something
25   that would be investigated by OPS and sustained if

Page 183

1    that person used unnecessary or excessive force;
2    correct?
3        A    That --
4            MS. SELLERS:  Objection to the form of
5        the question.  To the extent that you can
6        answer, Chief, you can.
7            THE WITNESS:  Either investigated by
8        the OPS department or the officer's command
9        structure, depending on the grievance -- the
10       egregiousness of the complaint.
11   BY MR. WILLIAMS:
12       Q       And when we looked down under obey the
13   law, "Employee shall uphold the Constitution of the
14   United States, the state of Georgia, obey all
15   applicable federal, state, and local laws, and
16   comply with all applicable court decisions and
17   orders of the court."
18            Do you see that?
19       A    Yes, sir.
20       Q       That really means you uphold the
21   Constitution, the laws of Georgia; that if you see
22   an officer commit a crime on a citizen, you are to
23   report that to OPS or the commanders and to report
24   that to the district attorney's office?  Am I
25   correct?

Page 184

1            MS. SELLERS:  Objection to the form of
2        the question.  To the extent that you can
3        answer that question, Chief, you can.
4            THE WITNESS:  Yes.
5    BY MR. WILLIAMS:
6        Q       And there is no exception to that?  If
7    you are going to uphold the laws, you must uphold
8    the laws for all people, including the officers who
9    commit a crime; is that correct?
10       A    Yes.
11       Q       And upholding the laws means upholding
12   the work rules of the City of Atlanta Police
13   Department; correct?
14            MS. SELLERS:  Object to the form of the
15       question.  To the extent that you can answer,
16       Chief, you can.
17            THE WITNESS:  I believe that that
18       statement does include policies and
19       procedures.
20   BY MR. WILLIAMS:
21       Q       That means if you're subpoenaed to come
22   to court, you should come to court; correct?
23       A    Yes.
24       Q       Let's go to 4.21.  "Employees shall
25   promptly and courteously effectively assist the

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 185

```
1   public."
2              Do you see that?
3       A    Yes, sir.
4       Q    "Employees shall provide immediate
5   attention to the needs of any person without
6   referral to any other employee or agent unless this
7   cannot be avoided."
8              Does that mean that if an officer sees
9   someone needs medical attention, either somebody
10  that they have arrested, that they have a duty to
11  provide medical attention or get medical attention
12  for them?
13      A    Yes.
14      Q    So if you shoot somebody, even if you
15  believe your actions were justified, that officer
16  has the duty to call in medical attention; correct?
17      A    Yes.
18      Q    "Employees shall not sleep or indulge
19  during the time they are on duty or responsible for
20  reporting to work physically able to appropriately
21  complete the tour of duty."
22             Do you see that?
23      A    Yes, sir.
24      Q    So first, you should not even be
25  sleeping while you're working; correct?
```

Page 186

```
1       A    Yes, sir.
2       Q    That's not safe for you or for the
3   citizens you have a duty to protect and serve; is
4   that correct?
5              MS. SELLERS:  Object to the form.  To
6          the extent that you can answer, Chief, you
7          can.
8              THE WITNESS:  Yes.
9   BY MR. WILLIAMS:
10      Q    Am I also correct, though, before you
11  even get to sleeping, you have a duty and
12  responsibility to show up to work physically able to
13  do your duty and not come to work tired or sleepy;
14  is that correct?
15             MS. SELLERS:  Same objection.
16             THE WITNESS:  Yes.
17  BY MR. WILLIAMS:
18      Q    And if you are unable to remain awake
19  or complete the tour, you should report to your
20  supervisor, who shall take appropriate action; am I
21  correct?  So if I fall asleep on the job and I'm an
22  officer and I'm sleeping in my car and it comes to
23  someone's attention that I was sleeping in the car
24  and I realize I'm sleeping in the car, shouldn't I
25  tell my superior that I was sleeping in the car so
```

Page 187

```
1   that that superior can know and determine whether I
2   need to stay on duty that night?  Isn't that
3   correct?
4              MS. SELLERS:  Same objection.  To the
5          extent that you can answer, Chief, you can.
6              THE WITNESS:  Yes.
7   BY MR. WILLIAMS:
8       Q    That's what reasonable officers do;
9   correct?
10             MS. SELLERS:  Same objection.  You can
11         answer, Chief, if you can.
12             THE WITNESS:  I don't know if a
13         reasonable officer would tell their
14         supervisor that they dozed off.
15  BY MR. WILLIAMS:
16      Q    Well, don't you expect your officers to
17  act reasonable?
18      A    You asked me another question.  Now,
19  I'll answer that question.  I expect for them to,
20  yes, sir.
21      Q    So during your tenure did you have a
22  belief that your officers wouldn't always act
23  reasonable?
24             MS. SELLERS:  Object to the form of the
25         question.  To the extent that you can answer,
```

Page 188

```
1       Chief, you can.
2              THE WITNESS:  Yes.
3   BY MR. WILLIAMS:
4       Q    When did you have that understanding
5   that your officers would not always act reasonable?
6       A    I didn't say that they would not act
7   reasonable.  I said that I don't know if a
8   reasonable officer would report the fact that they
9   dozed off to a super -- their supervisor.
10      Q    Let me ask you this.  If the rule says
11  you are supposed to report it and you have
12  officers -- well, let me ask you this.  During your
13  tenure did the officers you retained, were they
14  reasonable in your -- in your viewpoint?
15      A    Yes.
16      Q    You think the majority of the officers
17  during your tenure acted reasonable and followed the
18  rules set forth in this policy?
19      A    I can't answer that.  I would be --
20  have to speculate on that.  I -- I can't answer that
21  question.
22      Q    Did you see a history in the filings,
23  in the OPS files, that you were having a problem
24  with people, officers not following and not -- the
25  rules and not being reasonable?
```

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 189

1     A     No, sir.

2     Q     Well, let me ask you this.  If you

3  found out you had an officer who fell asleep in a

4  car on duty, do you want that officer to continue to

5  work at APD when you was the chief?

6         MS. SELLERS:  Object to the form of the

7         question.  To the extent that you can answer,

8         Chief, you can.

9         THE WITNESS:  Sleeping on duty is not a

10       terminating offense.

11  BY MR. WILLIAMS:

12     Q     That was not my question.  Do you want

13  that person working at the APD?

14         MS. SELLERS:  Same objection.  Chief,

15         you can answer if you can.

16         THE WITNESS:  Yes.

17  BY MR. WILLIAMS:

18     Q     You would?  My question is, you would

19  want that person working?

20     A     Yes.

21     Q     So what discipline would be appropriate

22  for someone who fell asleep on the job?  Since you

23  want them to continue to --

24         MS. SELLERS:  Shean, your Internet is

25         going out.  Shean, your Internet went out.  I

Page 190

1         think he's frozen, Tom.  I think he's -- I

2         think Cochran is -- okay.  Shean, you were

3         frozen for a minute.  I think he's frozen

4         again, Tom.

5         THE VIDEOGRAPHER:  Shall we go off the

6         record?

7         MS. SELLERS:  Are you guys seeing that

8         too, or is it just mine?

9         THE VIDEOGRAPHER:  It's -- I'm seeing

10       it too.

11         MS. SELLERS:  He's frozen on his end.

12         MS. PAIGE:  I'm seeing it as well.

13         THE VIDEOGRAPHER:  Going off the

14       record.  The time is 2:21.

15         (A recess was taken.)

16         THE VIDEOGRAPHER:  The time is 2:30.

17       We're back on the record.

18         MR. WILLIAMS:  Tiffany, thanks for your

19       patience.  Thank you, Chief Turner.

20  BY MR. WILLIAMS:

21     Q     I'd like --

22         MS. SELLERS:  You're fine.

23  BY MR. WILLIAMS:

24     Q     So --

25         MS. SELLERS:  Are you moving the

Page 191

1  screen, Shean?  Because I'm not seeing

2  anything move.  Am I supposed to be?  Shean?

3  Can everybody hear me?

4         THE WITNESS:  I can.

5         THE VIDEOGRAPHER:  Yes, I can hear you,

6  Tiffany.

7         MS. SELLERS:  Shean, there is something

8  wrong -- can you hear me?  There is something

9  going on.  He's coming across choppy on my

10  end.

11         THE WITNESS:  I don't hear him at all.

12         THE VIDEOGRAPHER:  Neither do I.

13         MS. SELLERS:  He just muted, but he was

14  not muted before.  Something is funky with

15  his computer.

16         THE VIDEOGRAPHER:  Can we go back off

17  the record?

18         MR. WILLIAMS:  You guys, can you all

19  see and hear me now?

20         MS. SELLERS:  Yes.  Now -- because

21  before, you were choppy again.

22         MR. WILLIAMS:  Can you --

23         MS. SELLERS:  Whatever is going on with

24  your computer, Shean.  You're going to be on

25  this.  Okay.  We're good.

Page 192

1         MR. WILLIAMS:  Can you-all see and hear

2     me now?

3         MS. SELLERS:  Yes, we can.

4         MR. WILLIAMS:  I'm over to Sam's

5     e-mail -- I mean computer.  Mine is acting

6     up.  Can you share the documents with Sam

7     now, Tom?

8         THE REPORTER:  Yes.  Just a second.

9         THE VIDEOGRAPHER:  Can we go off the

10     record -- back off the record?

11         (Communication between reporter and

12     attorney regarding digital exhibit placement

13     ensued.)

14  BY MR. WILLIAMS:

15     Q     All right.  When I got off, we were

16  talking about sleeping on the duty.  Chief Turner --

17     A     Yes, sir.

18     Q     -- once an officer is confronted about

19  whether or not he or she was sleeping on duty, they

20  still have a duty to be honest and truthful about

21  it; correct?

22     A     Yes, sir.

23     Q     When they are submitting reports an

24  officer, including Cadeau, would be required to

25  submit reports promptly, correctly, and completely

Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 49 of 110
Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 193

1  and truthfully; am I correct?
2      A      Yes, sir.
3      Q      They also got to follow the use of
4  firearms and the use of reasonable force
5  requirements set forth in this work rule as well; am
6  I correct?
7      A      Yes.
8      Q      So an officer at APD during your tenure
9  was required to respond in an appropriate manner;
10 correct?
11     A      Yes.
12     Q      Be considerate of all persons' rights
13 and feelings; correct?
14     A      Yes.
15     Q      Take action to provide a necessary and
16 appropriate service to the citizens of this state?
17     A      Yes.
18     Q      Perform acts in a lawful, restrained,
19 dignified, impartial, reasonable manner?
20     A      Yes.
21     Q      Be truthful in written and spoken word?
22     A      Yes.
23     Q      Do nothing to discredit the APD in
24 their actions on and off duty?
25     A      Yes.

Page 194

1      Q      Observe and abide by work rules at all
2  times?
3      A      Yes.
4      Q      Provide immediate attention to the
5  needs of any person?
6      A      Yes.
7      Q      Did not sleep on duty?
8      A      Yes.
9      Q      To be punctual?
10     A      Yes.
11     Q      To show up to work when they're on call
12 to work or duty to work?
13     A      Yes.
14     Q      Provide reports that are prompt,
15 correct, accurate, and complete?
16     A      Yes.
17     Q      And use only force necessary and in
18 compliance with the work rules and the Constitution?
19     A      Yes.
20     Q      And operate their vehicles with due
21 care?
22     A      Yes.
23     Q      At some point if an officer continues
24 to violate work rules is there a point where you
25 start to realize this is just not the officer that

Page 195

1  should be working at APD during your tenure as
2  chief?
3      A      Yes.
4      Q      What happens when you get that type of
5  officer?  What shift -- what was in place during
6  your tenure to ultimately go through the process to
7  terminate such an officer?
8      A      The disciplinary process itself.
9             MR. WILLIAMS:  Tom, can you put up
10 Exhibit Number 12 and 13, please.
11            THE REPORTER:  Yes.  Just a second.
12 Can we go off the record and let me do that,
13 please?
14            MR. WILLIAMS:  Yes.
15            THE VIDEOGRAPHER:  Going off record.
16 The time is 2:35.
17            (Discussion ensued off the record.)
18            (Exhibit Number 12 was marked for
19 identification.)
20            THE VIDEOGRAPHER:  Time is 2:37.  We're
21 back on record.
22 BY MR. WILLIAMS:
23     Q      Chief Turner, I want to show you what's
24 been marked as Exhibit 12 now to your deposition.
25 This is the general conduct policy.  It states

Page 196

1  September 11, 2017.  Do you see it?
2      A      Yes, sir.
3      Q      Is this -- this exhibit to your
4  deposition, was this the policy -- this is the
5  policy for Erika Shields -- Erika Shields.  Do you
6  know if there was a policy similar to this in effect
7  during your time and tenure?
8      A      Can you move it up just a little bit?
9  Let me see the title of this again.  No, the other
10 way.  I'm sorry.
11     Q      Go up?
12     A      Go down where I can see the title of
13 the general order.  This is the general conduct
14 order.
15     Q      Yes.
16     A      And --
17     Q      Can you see, sir?
18     A      I can.
19     Q      My question is, did you have an order
20 similar to this during your time?
21     A      I -- I would only say yes, I think so.
22     Q      There was -- is it fair to say there
23 was a general conduct policy under APD.SOP 2011 that
24 was in effect during the time you were there?  Is
25 that fair?

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 197

```
 1     A      Yes.  Either as a standalone document
 2  or it was included in some other SOP.
 3     Q      They -- Cadeau and the other officers
 4  as well as your commanders and chief were required
 5  to follow that policy; is that correct?
 6     A      Yes.
 7            (Exhibit Number 13 was marked for
 8      identification.)
 9  BY MR. WILLIAMS:
10     Q      Exhibit Number 13 is the SOP on
11  discipline.  Do you see that?
12     A      Yes, sir.  Excuse me.
13     Q      And is that -- am I correct, it says
14  May 29 of 2015; correct?
15     A      That's correct.
16     Q      Who was chief at that time?
17     A      I was.
18     Q      And am I correct during your tenure the
19  policy set forth here in Exhibit Number 13 was
20  similar to what you had throughout the tenure of
21  your -- from January of '10, 2010, to January -- I
22  mean, to December of 2016?  Am I correct?
23     A      You're correct with modest -- modest
24  changes.  What they were, I can't specifically say,
25  but they were not dramatic changes.  From the time
```

Page 198

```
 1  that I was chief, the entire time.
 2     Q      The bottom line is, throughout your
 3  tenure you were responsible for the effective and
 4  professional administration of the discipline
 5  policy; am I correct?
 6     A      Yes, sir.
 7     Q      And you remained the authority to
 8  review, revoke, modify any disciplinary action taken
 9  by any supervisor in that department; is that
10  correct?
11     A      Yes.
12     Q      I'm going to -- let's go to Number --
13     A      Is that saying 16 or 15, sir?
14     Q      That's Exhibit 13.
15     A      No.  I'm saying the file date.  Okay.
16  That's the file date of the --
17     Q      Oh, okay.  I'm sorry.  I didn't know --
18  understand your question.  Yeah, that's the file
19  date that this document was filed in this case.
20     A      Right.  I -- I understand.  Thank you.
21     Q      Now I'm going up to Number 2 of this
22  document.  I'm going to make this bigger for you.
23  Can you see Number 2 right now?
24     A      Yes, sir.
25     Q      It says, "The department strives for
```

Page 199

```
 1  consistency in its application of discipline;
 2  imposes for minor policy infractions, disciplinary
 3  actions which are in accordance with the philosophy
 4  of progressive discipline, and provides
 5  consideration for mitigating and/or aggravating
 6  factors."
 7            Do you see that?
 8     A      Yes, sir.
 9     Q      What do you mean by philosophy of
10  progressive discipline?
11     A      In that an individual may have received
12  an oral admonishment and their next violation
13  perhaps would be a written reprimand and then going
14  up through the process of progressive discipline.
15  You would not dismiss a person for a minor
16  violation, basically.
17     Q      So that also takes into account -- when
18  they have violations later, you take into account
19  that they've messed up or violated things in the
20  past?  Is that fair?
21     A      Only if that particular violation is
22  still on the reckoning period of the -- of the
23  process.
24     Q      And things that are C and D on the list
25  have reckoning periods of five years; correct?
```

Page 200

```
 1     A      Or longer.  That's correct, yes.
 2     Q      But if you got somebody who
 3  continuously is doing something, there is a system
 4  in place that you can go back and progressively
 5  discipline them to the extent necessary, or you can
 6  terminate them at some point; is that correct?
 7            MS. SELLERS:  Object to the form of the
 8      question.  To the extent that you can answer
 9      that question, Chief, you can answer.
10            THE WITNESS:  Yes.  Depending on the --
11      again, the details within the file.
12  BY MR. WILLIAMS:
13     Q      It also says, "These includes employee
14  intent, past performance, degree of culpability,
15  discipline history."
16            Do you see that?
17     A      Yes, sir.
18     Q      "Severity of infraction, acceptance of
19  responsibility by the employee, and other relevant
20  factors."
21            So when you guys are looking at
22  discipline, and you in particular, your own policy
23  says you guys are to consider discipline history; am
24  I correct?
25            MS. SELLERS:  Object to the form of the
```

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                                    January 13, 2021

Page 201

1    question.  To the extent that you can answer,
2    Chief, you can.
3        THE WITNESS:  Yes.  Within the
4    framework of the SOP, that's correct, yes,
5    sir.
6  BY MR. WILLIAMS:
7        Q       The framework of this SOP; right?
8        A       The SOP as relates to discipline,
9  that's correct.
10       Q       This is the SOP on discipline; right?
11       A       I guess.  Yes, that's correct.  The
12  policy.
13       Q       Exhibit 13 is what we -- I asked you
14  about, was this the disciplinary policy you had in
15  effect in May of 2015?
16       A       Yes.  No -- yes.  Yes, sir.
17       Q       And this policy was generally the same
18  throughout your tenure from 2010 to 2016; am I
19  correct?
20       A       With small modifications, correct.
21       Q       But the one thing that was consistent
22  is you, chief of police, are responsible for the
23  effective and professional administration of this
24  disciplinary process; right?
25       A       Yes, sir.

Page 202

1        Q       Once again, the buck stopped with you
2  regarding discipline?  You was the chief policy
3  maker; correct?  Regarding --
4        MS. SELLERS:  Object to the form of the
5        question.  To the extent that you can answer,
6        Chief, you can do so.
7  BY MR. WILLIAMS:
8        Q       Am I correct, sir, as relates to
9  discipline, you were the chief policy maker?
10       A       Yes and no.  I did not discipline all
11  officers.  It depend on the egregious nature of the
12  actual offense, and then the commanding officer
13  would be responsible for discipline -- issuing out
14  the discipline, and then I would receive a file copy
15  of the discipline if the egregious action was not to
16  the point where it -- I was the disciplinary
17  officer.
18       Q       Sir, let's go back.
19       A       Please.
20       Q       It doesn't say anybody else.  It says
21  the chief of police is responsible for the effective
22  professional administration of the disciplinary
23  process.  Thus, the chief retains the authority to
24  review, revoke, or modify any disciplinary action
25  taken by any supervisor's department.  Is that

Page 203

1  correct?
2        A       That is correct.
3        Q       So even if another officer disciplined
4  is under you, you -- they can only do it because you
5  gave them the authority under this policy; correct?
6        A       That's correct.
7        Q       So ultimately whether you actually did
8  it or not, you're still ultimately the person that
9  is sending out the authority and exercising that
10  authority to discipline somebody; correct?
11       A       Yes, sir.
12       Q       So at the end of the day you -- whether
13  you do it actually or you delegate the power to
14  somebody else, you're still the one that gave the
15  authority and the power to discipline?
16       A       Yes, sir.
17       Q       What process -- what was required to
18  submit someone into the personal -- the Early
19  Warning System?
20       A       There is an SOP that regulates that
21  process, and I don't know all of those criterias.
22       Q       What does it mean to be sustained?  For
23  a complaint to be sustained?
24       A       The investigation was concluded and
25  there was enough evidence to believe that the -- the

Page 204

1  infraction was -- was meeting -- that there was
2  enough evidence that concluded that the actual
3  action did take place.
4        Q       Isn't the definition in this policy,
5  the investigative file provides sufficient evidence
6  to support the finding that the employee committed
7  the violation?
8        A       Okay.  Yes.
9        Q       Isn't that what -- isn't that your
10  understanding of what sustained is?
11       A       Not until you bring it up.  I gave you
12  my definition of what I thought it was.
13       Q       Okay.  I'll bring it up.
14       A       Thank you.  Been four years, but okay.
15  I just want you to know that.  I'm not trying to be
16  evasive.
17       Q       No.  Every time I've ever talked to
18  you, sir, you've been very respectful, helpful.  I
19  have no problems with you, and when I'm at the Hawks
20  game I'm happy with your services there too.  While
21  I'm getting there, am I correct that the standard
22  for determining sustained, nonsustained, exonerated
23  is by a preponderance of the evidence; correct?
24       A       Yes, sir.
25       Q       Do you see where it says, "Sustained;

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                                                     January 13, 2021

Page 205

1  the investigative file provides sufficient evidence
2  to support the finding that the employee committed
3  the violation"?
4              You see that?
5      A      Yes, sir.
6      Q      So if there is sufficient evidence by a
7  preponderance of the evidence -- by preponderance of
8  the evidence standard in the OPS file based on this
9  policy, there should be a finding of sustained; is
10 that correct?
11             MS. SELLERS:  Object to the form of the
12         question.  To the extent that you can answer,
13         Chief, you can.
14             THE WITNESS:  Yes.
15 BY MR. WILLIAMS:
16     Q      So that is a yes to my question?
17     A      Yes.
18     Q      All right.  And if there was sufficient
19 evidence in the OPS file to sustain a finding of
20 untruthfulness against Cadeau, the -- this policy
21 would have required you to terminate him; correct?
22             MS. SELLERS:  Objection to the form of
23         the question.
24             THE WITNESS:  Yes.
25 BY MR. WILLIAMS:

Page 206

1      Q      And nonsustained basically just means
2  the opposite of that?  There is not sufficient
3  evidence to find a finding that the employee
4  committed the violation; correct?
5      A      Sustained.  You've got unfounded and
6  written.  I'm sorry.  I'm sorry.  Not sustained.
7  I'm sorry.  Yes.
8              (Exhibit Number 14 was marked for
9          identification.)
10 BY MR. WILLIAMS:
11     Q      I'm going to show you what's been
12 marked as Exhibit Number 14 in your deposition.
13 It's the APD Early Warning System.  It was in place
14 in July of 2010 signed off by you.  Do you see that?
15     A      Yes, sir.
16     Q      Am I correct that this policy was put
17 in place by you when you were chief?
18     A      Yes, sir.
19     Q      And am I correct that pretty much
20 throughout your tenure the policy set forth in
21 Exhibit Number 14 was pretty consistent with
22 potentially just minor changes?  Is that fair?
23     A      Yes, sir.
24     Q      And am I correct you, your staff, your
25 commanders, managers were required to comply with

Page 207

1  and enforce this policy when it came to your
2  officers?
3      A      Yes, sir.
4      Q      And if an officer was in this program,
5  it means they had been identified with a pattern of
6  behavior that may be detrimental to the achievement
7  of the APD goals; am I correct?
8      A      Yes, sir.
9      Q      Do you know as you sit here, whether
10 Cadeau was involved in the Early Warning System?
11     A      I do believe that I was informed that
12 he had been, but I did not know that he was.
13     Q      When were you informed?
14     A      During my session with my counsel.
15     Q      Did you -- would you have not been
16 privy to that information if he was put in the Early
17 Warning System before your disciplinary hearing
18 deciding his termination?
19     A      No.
20     Q      You would not have been provided that?
21     A      Reask the question, sir.  I'm sorry.
22     Q      Yeah.  Would you have not had the
23 information -- when you were having the decision to
24 make about his termination, would you not have known
25 at that time, that he was in the Early Warning

Page 208

1  System?
2      A      It depends if the -- it was included in
3  the executive summary of the file.  I don't know if
4  -- if it was.
5      Q      If it was not included in the file,
6  executive file, would you have means to know whether
7  or not he was in the Early Warning System?
8      A      Yes, sir.
9      Q      So you would have had that information
10 accessible or available to you if you wanted that
11 information, regardless if it was in the executive
12 summary?
13     A      Yes.
14     Q      And as part of the disciplinary policy
15 we just saw, you had the right, the ability, and
16 discretion to use past discipline or his history
17 with the police department as part of getting a
18 total package and information to decide what to do;
19 am I correct?
20     A      Yes.
21             MS. SELLERS:  Object to the form of the
22         question.  To the extent that you can answer,
23         Chief, you can answer.  I'm sorry.  Let me
24         get my objections out.  I apologize, Chief.
25         To the extent that you can answer the

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 209

1    question, Chief, you're free to answer.
2              THE WITNESS:  Yes.
3    BY MR. WILLIAMS:
4         Q      If you go down here, once you're in the
5    -- in the system, if we look, the responsibility of
6    the Early Warning System is put in place by the OPS
7    commander; correct?
8         A      Yes.
9         Q      You're over the OPS?
10        A      That's correct.
11        Q      And so just like the OPS files, you
12   have access to the Early Warning System file because
13   that is part of OPS when you are making the decision
14   about Cadeau regardless this truthfulness thing; am
15   I correct?
16        A      Yes, sir.
17        Q      All right.  It says under 3.3, "All
18   supervisors will be responsible for actively
19   monitoring employees' conduct, intervention, proper
20   notification when employees' behavior is contrary to
21   the department's goals and objectives."
22             Do you see that?
23        A      Yes, sir.
24        Q      So when this issue with truthfulness
25   and any other OPS complaint, if you are already in

Page 210

1    the Early Warning System, your superiors in the OPS
2    need to be monitoring you and looking at the current
3    complaint in light of the fact that you are already
4    in the Early Warning System; isn't that correct?
5              MS. SELLERS:  Object to the form of the
6         question.  To the extent that you can answer,
7         Chief, you can answer.
8              THE WITNESS:  I believe that's correct.
9    BY MR. WILLIAMS:
10        Q      That is the purpose of the Early
11   Warning System is to identify people who have a
12   pattern of behavior that may be detrimental to your
13   goals at APD and your objectives; correct?
14             MS. SELLERS:  Object to the form.
15        Chief, you can answer if you can.
16             THE WITNESS:  Yes.
17   BY MR. WILLIAMS:
18        Q      That is why if you are in the Early
19   Warning System, something in the decision about
20   whether you should be terminated or not, the fact
21   that you are in the Early Warning System should be a
22   part of that evaluation, shouldn't it, sir?
23             MS. SELLERS:  Object to the form of the
24        question.  To the extent that you can answer
25        if you can, Chief.

Page 211

1              THE WITNESS:  I can't answer that
2         particular question in that it is not a
3         yes-or-no question for me.
4    BY MR. WILLIAMS:
5         Q      Let me ask you this.  I want you to
6    assume that Cadeau was in the Early Warning System
7    because he had -- he had two or more unauthorized
8    force complaints against him within a one-year
9    period before your incident and your decision about
10   truthfulness.  If that was the case, is that
11   something that you would have used as part of your
12   analysis and evaluation of whether to terminate him?
13             MS. SELLERS:  Object to the form of the
14        question.  To the extent that you can answer,
15        Chief, you can answer.
16             THE WITNESS:  Yes.
17   BY MR. WILLIAMS:
18        Q      Why would it have been part of your
19   decision?
20        A      In that it was part of -- it was --
21   that particular process was still in the reckoning
22   period, and it was an active investigation.  Active
23   Early Warning employee.
24        Q      So if you have somebody -- if Cadeau
25   was in the Early Warning System, that is something

Page 212

1    that you should have taken into account based on
2    you-all's disciplinary policy when determining
3    whether -- in determining your decision about
4    whether to terminate him regarding the truthfulness
5    -- truthfulness issue?  Is that fair?
6              MS. SELLERS:  Same objection.  To the
7         extent that you can answer, Chief, you can.
8              THE WITNESS:  I'm sorry.  Can you
9         restate that?  And I probably do need to take
10        a break after this one so I can get some
11        food.  I thought we would be through, and I
12        didn't eat.  So ask -- if you would ask that
13        question again, and then I'll try to respond
14        to it.
15   BY MR. WILLIAMS:
16        Q      My question is, should --
17             MR. WILLIAMS:  Hey, Tom, could you read
18        the question again?  Make it --
19             (Thereupon, the court reporter read
20        the pertinent portion of the record.)
21             THE WITNESS:  Yes.
22   BY MR. WILLIAMS:
23        Q      We can take a break.  Tell me how much
24   time you need, sir.
25        A      I -- 15 minutes.

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner
January 13, 2021

Page 213

1      Q      Okay.  It's 3:05.  Do we want to just
2  come back at 3:20?
3      A      That works for me.
4             MS. SELLERS:  I mean, that is fine.
5  Can I get a calculation of the time on the
6  record, please?
7             THE VIDEOGRAPHER:  Yes.  Going off
8  record, 3:04.
9             (A recess was taken.)
10             THE VIDEOGRAPHER:  The time is 3:24.
11  We're back on the record.
12  BY MR. WILLIAMS:
13      Q      Mr. Turner, I'm going to --
14             MR. WILLIAMS:  And Tiffany, for the
15  record, I'm going to go ahead and introduce
16  exhibits -- we've been up to Exhibit Number,
17  what is it?  Fourteen?
18             MS. SELLERS:  Seventeen you got on the
19  screen.
20             MR. WILLIAMS:  Yeah.  But I'm talking
21  about introduce.  Have we introduced --
22             MS. SELLERS:  I thought you introduced
23  17.  No.  I'm sorry.  I'm wrong.  Yeah,
24  you're right.
25             MR. WILLIAMS:  I think I stopped at 14.

Page 214

1  Is that correct?  Or 13.
2             MS. SELLERS:  I believe so.
3             MR. WILLIAMS:  For the record, I'm
4  going to introduce into an exhibit -- all the
5  exhibits that have been sent online, Exhibits
6  14 through 43.
7             (Exhibits Numbers 15 through 43 were
8  marked for identification.)
9             MS. SELLERS:  There is no 14 that's
10  been sent online, Shean.  It jumps from 13 to
11  15.  On the e-mail that you sent me today
12  there is no 14.  There is a 15, 16.  Oh, I'm
13  sorry.  I'm wrong.  It's out of order.  I
14  apologize.  Fourteen is between 22 and 23, so
15  it's not in order.
16             MR. WILLIAMS:  Okay.  So Exhibits 14
17  through 43 will be introduced, and then I'm
18  going to be able to move quicker.  Okay,
19  Tiffany?
20             MS. SELLERS:  Oh, that is fine.
21  BY MR. WILLIAMS:
22      Q      All right.  Exhibit Number 14, Mr.
23  Turner, I'm just going to -- just let you know, was
24  the -- is the Early Warning System policy that was
25  in effect on July 14, 2010, I'll represent to you.

Page 215

1  My question to you is, if it was in July 14, 2010,
2  were you chief of police then?
3      A      Yes, sir.
4      Q      And it has your name on this policy.
5  My question to you is, would this policy have
6  changed throughout your tenure?
7      A      Not significantly, no.
8      Q      And we asked -- I asked you some
9  questions about this policy already.  My question to
10  you is, was yourself and your commanders required to
11  follow this policy?
12      A      Yes, sir.
13      Q      Let's go to Exhibit 15, which I'll
14  represent to you is signed by you on October -- on
15  September 4, 2015.  Exhibit 15 is the SOP 2060,
16  which is extra jobs.  My question to you is, would
17  that policy have changed much during your tenure
18  from 2010 to 2016?
19      A      Only slightly as relates to the
20  required -- the amount of hours an officer could
21  work.
22      Q      Am I correct, extra job is a privilege
23  for the officers?
24      A      That is correct.
25      Q      And one of the ways you can discipline

Page 216

1  an officer is taking his extra job privileges?
2      A      That's correct.
3      Q      Am I correct that the Exhibit Number 15
4  was required to be followed by Officer Cadeau
5  regarding every extra job he had during your tenure?
6             MS. SELLERS:  Object to the form.  You
7      said Exhibit 15?
8             MR. WILLIAMS:  Yes.
9             MS. SELLERS:  Okay.
10             MR. WILLIAMS:  It's the extra job
11      policy.  I can pull it up.  I was just asking
12      him -- you want me to pull it up?  I can.
13      Exhibit 15, Tom, would you pull it up?
14             (Communication between reporter and
15      attorney regarding digital exhibit placement
16      ensued.)
17  BY MR. WILLIAMS:
18      Q      Do you see it now, sir?
19      A      Yes.
20      Q      Am I correct that that policy would
21  have generally been what was in effect during your
22  tenure?
23      A      Yes, it would have been.
24      Q      And Officer Cadeau would have been
25  required to follow Exhibit 15 in carrying out his

Case 1:18-cv-04710-CAP  Document 260-3  Filed 08/16/21  Page 55 of 110
Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                    January 13, 2021

Page 217

1   job duties as an extra job at APD?
2       A    Yes, sir.
3       Q    Exhibit Number 16, I'll represent to
4   you, is the performance evaluations, 2090.  It is
5   signed by you on November 13, 2013.
6       A    Okay.
7       Q    My question to you is, has that policy
8   changed significantly during your tenure?
9            MS. SELLERS:  Object to the form of the
10           question.  To the extent that you can answer,
11           Chief, you can do so.
12           THE WITNESS:  Our evaluation process
13           within the city of Atlanta changed a couple
14           of times during my time.  I don't know if it
15           was a significant change in the way that we
16           evaluated.  I don't know if it happened
17           during the time frame that this SOP is signed
18           and dated.
19  BY MR. WILLIAMS:
20      Q    Did it always have a midyear and an
21  annual evaluation period?
22      A    Not always, but it did later, yes, sir.
23      Q    Did the scoring ever change?
24      A    Yes, it did.  The framework that's --
25  the phrases associated with evaluations changed

Page 218

1   completely.
2       Q    Can I ask you this?
3       A    Yes, sir.
4       Q    If you had a sustained use of force
5   issue during a period, should you have an
6   outstanding score in your evaluation, in your view?
7            MS. SELLERS:  Object to the form of the
8            question.  To the extent that you can answer
9            that question, Chief, you may do so.
10           THE WITNESS:  I would -- I would say
11           depends on -- it depends on the goals that
12           were set in place for the officer at the
13           beginning of the evaluation process.
14           Personally -- and that's all -- personally, I
15           would say no.
16  BY MR. WILLIAMS:
17      Q    But if your goals and your rating of
18  outstanding means consistently exceeded the expected
19  performance standards and contributes in unexpected
20  areas well beyond job responsibilities, how can you
21  -- how can someone have a sustained OPS of use of
22  force or any OPS violation and have an outstanding
23  rating?
24      A    I can't answer that, sir.
25      Q    Do you know of any way based on your

Page 219

1   experience where anybody could have a sustained
2   violation of OPS and still have an outstanding
3   evaluation?
4       A    Unfortunate --
5            MS. SELLERS:  Hold on one second,
6            Chief.  Object to the form of the question.
7            To the extent that you can answer, Chief, you
8            may do so.
9            THE WITNESS:  Yes.  Unfortunately, the
10           way that evaluations were put together --
11           that was -- that were implemented on behalf
12           of squads, units, sections, it depending
13           on -- it depended on what the actual officer
14           or investigator was being judged or gauged on
15           during the operating period.
16           And so if there were no administrative
17           issues associated with the officer's
18           evaluation process, I can only -- that is the
19           only way that they could have gotten a
20           outstanding on the evaluation.
21  BY MR. WILLIAMS:
22      Q    So if the supervisor, whoever giving
23  the evaluation, became -- was made aware of the
24  sustained violation, then they should have taken
25  that to -- in account in their evaluation and not

Page 220

1   given an outstanding evaluation?  Is that fair?
2            MS. SELLERS:  Object to the form of the
3            question.  To the extent that you can answer
4            that question, Chief, you may do so now.
5            THE WITNESS:  No.  I don't think that
6            that is a correct.  What I am attempting to
7            say is, if the three areas that the officers
8            were being evaluated on for the time
9            period -- say, for instance, it was a
10           productivity rating.
11           Another was a rating of -- I can't even
12           imagine where he was working, but if there
13           were no areas that was -- that accounted for
14           a sustained evaluation, a sustained
15           complaint, then that supervising officer
16           would have -- had not -- would have not had a
17           choice but to give him an outstanding if the
18           evaluation dictated that on the areas that he
19           was being rated.  That's a long answer.
20  BY MR. WILLIAMS:
21      Q    I want to show you Exhibit 17 that is
22  up.
23      A    Okay.
24      Q    This is the use of force policy 3010
25  signed in on October 28, 2013.  That is you who

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                    January 13, 2021

Page 221

1   signed off on that?
2        A     Yes, sir.
3        Q     Did the use of force policy change
4   dramatically from this exhibit during your tenure?
5        A     No, sir.
6        Q     Would Cadeau have been required as well
7   as the other officers, to follow this policy during
8   your tenure as chief?
9        A     Yes, sir.
10       Q     Would your supervisors, OPS, would have
11  been required to follow the standards set forth in
12  Exhibit 17 during your tenure as relates to their
13  evaluation of use of force?
14       A     Yes.
15       Q     Should evaluations -- performance
16  evaluations take into account OPS violations?
17       A     Yes.
18       Q     And was that a policy and practice in
19  place during your tenure at -- as Chief?
20             MS. SELLERS:  Object to the form of the
21       question.  To the extent that you can answer
22       -- that you can answer, Chief, you can do so.
23             THE WITNESS:  At some point we did
24       include evaluation -- sustained complaints in
25       the criterias of evaluating officers.  At

Page 222

1        what point that that was required, I don't
2        recall.
3   BY MR. WILLIAMS:
4        Q     What about an officer being in Early
5   Warning System?  Is that taken into account in a
6   person's performance evaluation?
7        A     No.
8        Q     Why not?
9        A     If you look at the criterias on Early
10  Warning, it could have been anything from personal
11  situations in a person's life as well as discipline,
12  and so the Early Warning is not designed as part of
13  the disciplinary process; just to correct an action
14  of an officer if they were having challenges.
15       Q     Every time deadly use of force
16  occurs -- or strike that.  During your tenure as
17  chief, every time a use of force was done by an
18  officer, there should have been a use of force
19  report done by a supervisor; am I correct?
20       A     Yes.
21       Q     The incident involving our client, Mr.
22  Hall, where Mr. Cadeau shot at him in a vehicle,
23  based on your understanding of the APD use of force
24  policy, there should be a use of force report done
25  by a supervisor; am I correct?

Page 223

1             MS. SELLERS:  Objection to the form of
2        the question.  To the extent, Chief, that you
3        can answer that, you may do so.  If you
4        can't, you can't.
5             THE WITNESS:  Under the policy, under
6        the administrative -- the time that I was a
7        police chief, there should have been a -- a
8        use of force report completed.
9   BY MR. WILLIAMS:
10       Q     Use of force reports got to be
11  treated -- be done by a supervisor even when it's
12  just OC spray; correct?
13       A     Yes, sir.
14       Q     And every time an officer uses use of
15  force, he has to document and report it; correct?
16       A     Yes, sir.
17       Q     When an officer uses force, they must
18  meet the standards set forth in Graham versus
19  Connor; is that correct?
20       A     Yes, sir.
21       Q     And that force applied must be
22  objectively reasonable in light of the particular
23  circumstances perceived by the officer; is that
24  correct?
25       A     Yes, sir.

Page 224

1        Q     All of the surrounding circumstances
2   should be considered, including but not limited to
3   whether the subject against whom force was used,
4   poses an imminent threat to the safety of the
5   employee or others, the severity of the crime in
6   question, and whether the subject actively resisted
7   or attempted to flee; is that correct?
8        A     Yes.
9        Q     When you-all are evaluating in your
10  tenure whether an officer's actions were within the
11  standard, you would evaluate employee's use of force
12  from the perspective of a reasonable officer
13  presented on the same or similar circumstances; is
14  that correct?
15       A     That is correct.
16       Q     Let's go to Exhibit Number 30.
17             MR. WILLIAMS:  Could you pull it up?
18       You can take down 17.
19             (Communication between reporter and
20       attorney regarding digital exhibit placement
21       ensued.)
22  BY MR. WILLIAMS:
23       Q     Chief Turner, do you see Exhibit Number
24  30?
25       A     I do, yes, sir.

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                              January 13, 2021

Page 225

```
 1      Q       I'll represent to you, this was
 2  produced to us in this case.  It is the -- a notice
 3  regarding the Early Warning information we requested
 4  from the city of Atlanta regarding Officer Cadeau.
 5  Have you seen -- I'm going to let you go through
 6  each document.
 7      A       Can you expand that for me?
 8      Q       I'm trying to.
 9      A       Thank you.
10      Q       Can you see that now, sir?
11      A       Yes, sir.
12      Q       Who is Deputy Chief Spillane?
13      A       Deputy Chief Spillane at that time must
14  have been the field operation division commander.
15      Q       Okay.  And who is Major Dalton?
16      A       Major Dalton, I do believe, was the
17  precinct commander in zone one during that time.
18      Q       And based on this document it is --
19  shows that Cadeau was put into the Early Warning
20  System as early as August 18th, 2014, for two
21  unenforced use of force complaints against him
22  within the two-month period; is that correct?
23              MS. SELLERS:  Object to the form of the
24      question.  To the extent that you can answer,
25      Chief, you can.
```

Page 226

```
 1              THE WITNESS:  That's what it appeared
 2      to -- yes, sir, to be.
 3  BY MR. WILLIAMS:
 4      Q       All right.  If he was put in the system
 5  in August 18th of 2014 and your disciplinary hearing
 6  didn't happen until 2015, you would have had the
 7  ability to go into -- and know that he was in the
 8  Early Warning System when you made your decision
 9  about termination; is that correct?
10              MS. SELLERS:  Object to the form.
11              THE WITNESS:  Yes.
12  BY MR. WILLIAMS:
13      Q       You can answer, sir.
14      A       Yes.
15      Q       This appears to be an Early Warning
16  report as of December 22, 2014.  Do you see that?
17      A       Yes, sir.  Sideways, but yes.
18      Q       Would you get this type of report on a
19  weekly or monthly basis?
20      A       Yes, sir.
21      Q       So --
22      A       It would be part of the OPS com -- OPS
23  report.
24      Q       So as of December 22, 2014, you would
25  have received a report that showed that Cadeau was a
```

Page 227

```
 1  part of the Early Warning System; is that correct?
 2      A       Yes.
 3      Q       And you would have had that information
 4  available to you prior to your decision in 2015
 5  about whether to terminate him for truthfulness; is
 6  that correct?
 7      A       Yes, sir.
 8      Q       Did you use -- rely on him being in the
 9  Early Warning System for anything regarding that in
10  your decision on truthfulness at 2015?
11      A       I -- I don't believe I did.  No, sir.
12      Q       Why not?
13      A       It wasn't relative to the facts that I
14  was dealing with at the time of the disciplinary
15  hearing.
16      Q       Why do you not think it was relevant?
17      A       Whether he told the truth or not
18  wouldn't have affected my decision concerning the
19  Early Warning report.
20      Q       But if he's shown a propensity and a
21  history that puts him in the Early Warning System in
22  the first place, you don't think as a reasonable
23  chief, that you should even be considering he's in
24  the Early Warning System as part of your evaluation?
25      A       During the time of this case I do not
```

Page 228

```
 1  believe that the Early Warning report would have
 2  affected my decision at the time that I made that
 3  decision.
 4      Q       With all due respect, I understand it
 5  might not have made your -- affected, but my
 6  question is, should it have been even part of your
 7  consideration?
 8      A       No, sir.
 9      Q       Whether it affected your decision or
10  not, would -- shouldn't it have been a part of your
11  consideration?
12      A       No, sir.  Not in this case.
13      Q       What if the truthfulness was related to
14  use of force?
15              MS. SELLERS:  Object to the -- go
16      ahead.
17  BY MR. WILLIAMS:
18      Q       Wasn't the issue that you would
19  determine truthfulness on, a use of force issue?
20              MS. SELLERS:  Object to the form of the
21      question.  To the extent that you can answer,
22      Chief, you may do so.
23              THE WITNESS:  Restate your question,
24      please, sir.
25  BY MR. WILLIAMS:
```

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 229

1    Q        My question is, what if the reason the
2    officer is in -- Cadeau is in the Early Warning
3    System because of use of force?  Wouldn't it be
4    relevant to your determination about truthfulness if
5    the truthfulness is an issue surrounding the use of
6    force by Cadeau?
7        A        No, sir.
8        Q        Why not?
9        A        It did not determine if the gentleman
10   -- the officer was telling the truth or not.  You're
11   -- that's not something that would have changed my
12   opinion about the evidence that was presented at the
13   time.
14       Q        Well, when you are making the decision
15   about whether to terminate somebody, you look at the
16   totality of circumstances based on your own
17   discipline policy related to the employee's overall
18   history.  Isn't that part of the factor?
19           MS. SELLERS:  Object to the form of the
20           question.  I believe that this
21           mischaracterizes the testimony.  To the
22           extent you can answer, Chief, you may do so.
23           THE WITNESS:  I'll say no.
24   BY MR. WILLIAMS:
25       Q        My question is, don't you go beyond the

Page 230

1    incident -- when you are making the determination of
2    truthfulness, don't you still look at other aspects
3    of his whole history when making that determination?
4           MS. SELLERS:  Same objection.  This
5           question has now been asked at least five
6           times.  Chief, you can answer it if you know,
7           and that's it.
8           THE WITNESS:  No.
9    BY MR. WILLIAMS:
10       Q        In the investigation of truthfulness,
11   when it was brought before you, if you learned any
12   information that has nothing to do with
13   truthfulness, that shows that this officer should
14   not have been employed, wouldn't you have had a duty
15   to make a determination, notwithstanding the
16   truthfulness issue, whether that person should be
17   employed or not?
18           MS. SELLERS:  Object to the form of the
19           question.  To the extent that you can answer,
20           Chief, you may do so.
21           THE WITNESS:  Can you repeat that
22           question?
23   BY MR. WILLIAMS:
24       Q        Yeah.  If you are doing the
25   truthfulness analysis and argument but you learn

Page 231

1    during that, that this officer had other things that
2    warranted termination, wouldn't you have a duty
3    pursuant to you-all's policies and procedures, to
4    evaluate independent of the truthfulness issue
5    whether or not this officer should have been
6    terminated?
7           MS. SELLERS:  Same objection.  You can
8           answer, Chief.
9           THE WITNESS:  Yes.  Yes.
10   BY MR. WILLIAMS:
11       Q        So if you found out during the
12   investigation of the truthfulness that was related
13   to use of force that you did in 2015 and at that
14   time you learned that Cadeau unlawfully committed an
15   assault on a person by pepper spraying them in their
16   face when they are handcuffed, if you had learned
17   that, wouldn't that allegation or incident required
18   you to independently look at whether he should have
19   been terminated?
20           MS. SELLERS:  Object to the form of the
21           question.  To the extent that you can answer
22           that, Chief, you may do so.
23           THE WITNESS:  I can't answer that
24           question.
25   BY MR. WILLIAMS:

Page 232

1        Q        Why can't you?
2        A        Because the facts was not -- I was not
3    privy to the facts that you just laid out, sir.
4        Q        I want you to assume, and the law lets
5    me --
6        A        I'm not going to assume.
7        Q        Well, sir, unfortunately -- hold on --
8    your lawyer can -- can tell you what the rules are.
9    Hypothetically -- I can put forth to you a
10   hypothetical question.  Okay?
11       A        Okay.
12       Q        I want to assume that when -- in the
13   2015 when you were at a disciplinary hearing as to
14   determine whether to terminate Cadeau, I want you to
15   assume at that time, Cadeau had been sustained for a
16   use of force violation relating to him pepper
17   spraying a individual who was handcuffed in his face
18   and pepper sprayed by Cadeau while he was
19   handcuffed.  I want you to assume that.  Okay?
20           If you knew that information or was
21   presented with that information or had that
22   information available to you, could you at that time
23   make a decision about whether to terminate Cadeau
24   notwithstanding whatever you decided on
25   truthfulness?

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner
January 13, 2021

Page 233

1         MS. SELLERS:  Object to the form of the
2    question.  To the extent that you can answer
3    that, Chief, you can do so.
4         THE WITNESS:  Not on the charges that
5    was in front of me, no.
6  BY MR. WILLIAMS:
7         Q       But the charges, if you had that
8  information in front of you, you would have been
9  under a duty to independently evaluate the charges
10 that you now learned; is that correct?
11        A       No.  I would have had a -- I would have
12 had a obligation to send it for investigative
13 purposes, not to -- not to rule on that particular
14 incident as I found out in the middle of an
15 evaluation -- a disciplinary issue.
16        Q       And you would have required, then,
17 under that hypothetical, to send it for evaluation.
18 You also would have been required under that
19 hypothetical, to send it to the district attorney's
20 office to determine the -- whether a crime was
21 committed based on our earlier conversation; am I
22 correct?
23        MS. SELLERS:  Object to the form of the
24    question.  To the extent that you can answer,
25    Chief, you may do so.

Page 234

1         THE WITNESS:  Yes.
2  BY MR. WILLIAMS:
3         Q       Because pepper spraying a person in
4  their face while they're handcuffed is a assault and
5  an aggravated battery and a crime, isn't it, sir?
6         MS. SELLERS:  Object to the form of the
7    question.  Is that a hypothetical, Shean, or
8    is that -- you're presenting as facts?
9         MR. WILLIAMS:  A hypothetical.
10 BY MR. WILLIAMS:
11        Q       I'm asking with that hypothetical,
12 wouldn't that be deemed evidence sufficient to
13 charge someone with battery or aggravated assault?
14        MS. SELLERS:  Object to the form of the
15    question.  Chief, to the extent that you can
16    answer that hypothetical, you may do so.
17        THE WITNESS:  In this hypothetical
18    situation there would be reasons to charge
19    the officer with some form of crime.
20 BY MR. WILLIAMS:
21        Q       And if the evidence and facts by a
22 preponderance showed that that officer did in fact
23 use excessive force and unnecessary force and pepper
24 spray a person who was handcuffed, if the facts by a
25 preponderance, you would have done an indy --

Page 235

1  required an independent investigation, and if it
2  determined that to be true, it would have came back
3  to you for that person to be terminated; am I
4  correct, sir?
5         MS. SELLERS:  Object to the form of the
6    question.  To the extent that you can answer
7    that hypothetical, Chief, you may do so now.
8         THE WITNESS:  In this hypothetical
9    situation after the investigation was
10   concluded and after the incident was
11   sustained, then the recommendation, if it was
12   above 25 days, would have been sent to my
13   office for disciplinary issues.
14 BY MR. WILLIAMS:
15        Q       And would you determine at that time
16 that an that officer should have been terminated,
17 based on the hypothetical we gave?
18        MS. SELLERS:  Object to the form of the
19    question.  To the extent that you can answer
20    that hypothetical, Chief, you may do so now.
21        THE WITNESS:  In this hypothetical
22    situation I would have looked at the
23    situation -- the evidence, and I probably
24    would have made a determination to -- to
25    terminate the officer.

Page 236

1  BY MR. WILLIAMS:
2         Q       Why?
3         A       In this hypothetical situation the
4  facts that you laid out, if they were factually
5  investigated, the situation was sustained, and it
6  came up to my disciplinary level, I would have
7  looked at the facts in this hypothetical situation
8  and made a determination to terminate the officer.
9         Q       Why?  Why would you want this person
10 terminated, is my question?
11        A       Because he violated my oath -- his oath
12 of office.
13        Q       He also violated this person's
14 constitutional rights, didn't he, sir?
15        MS. SELLERS:  Object to the form of the
16    question.  To the extent that you can answer
17    that hypothetical, you may do so now.
18        THE WITNESS:  In this hypothetical
19    situation he would have violated his
20    constitutional rights.
21 BY MR. WILLIAMS:
22        Q       He also would have committed a crime;
23 isn't that right, sir?
24        MS. SELLERS:  Object to the form of the
25    question.  To the extent that you can answer

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                                January 13, 2021

Page 237

1      that hypothetical, Chief, you can do so now.
2             THE WITNESS:  Yes.
3             MR. WILLIAMS:  I want to -- let's go to
4      Exhibit Number 39.
5             THE REPORTER:  It's up.
6   BY MR. WILLIAMS:
7        Q       Exhibit 39, sir --
8             (Communication between reporter and
9      attorney regarding digital exhibit placement
10     ensued.)
11            MR. WILLIAMS:  Hey, Tom, I honestly
12     don't think it's me because I'm on two
13     different networks now, and it's still very
14     slow.
15            THE REPORTER:  Can we stop just a
16     second, please?
17            MS. SELLERS:  We can't go off the
18     record.  We can -- we can certainly stop, but
19     the clock got to keep ticking.
20            MR. WILLIAMS:  That's fine.  You don't
21     have to go off the record, Tom.  I'm just
22     telling you, we got to figure that out.
23     Okay?  Here you go.
24  BY MR. WILLIAMS:
25       Q       This is -- Exhibit Number 39, sir, is

Page 238

1   the OPS complaint file closeout report for 1410431.
2   Do you see that at the top?
3        A      I do, sir.  It's very shallow.  I can
4   barely make out the print.
5        Q      That's how I got it, unfortunately.
6        A      Okay.  It's better now.
7        Q      Okay.  Fourteen -- investigation is
8   received on June 19th, '14, and it closed out on
9   October 29th, 2014.  Do you see that?
10       A      Yes, sir.
11       Q      It's involving Officer Cadeau.
12       A      Okay.  Yes, sir.
13       Q      I'm going to go down.  It's showing
14   violations of rule -- of investigative rule 4.2.50
15   and 4.1.4.  Do you see that?
16       A      Yes, sir.
17       Q      Have you -- have you -- do you recall
18   ever seeing an incident about Cadeau and OC spray?
19       A      No, sir.  And as you -- you just kind
20   of moved away from that, and the recommendation on
21   the discipline, I would have -- that -- a copy of
22   that final disciplinary report would have come to my
23   office for file.  I would not have necessarily seen
24   that report.
25       Q      But the people under your control would

Page 239

1   have and -- command would have been -- everybody in
2   OP is under your control and command, though; right?
3        A      That is -- that is -- yes, that's
4   correct.  Yes, sir.
5        Q      Now, do you see -- I'm going to let you
6   read this.  Can you see the memo from Major
7   Dalton -- from Lieutenant Ferguson to Major Dalton,
8   to Major Dalton?  Do you see that?
9        A      I can, yes, sir.
10       Q      Go ahead and read the section.  You
11   don't have to read it out loud, but read the section
12   so you will know because I'm going to ask you a
13   question about it.
14       A      Just the top section?
15       Q      Yeah.  Whatever -- on the screen.  I'm
16   going to keep rolling down because I'm going to let
17   you read this document.
18       A      Okay.
19       Q      All right.  You can read some more?
20       A      Yes.  Okay.
21       Q      So you see -- are you past the part
22   where Mr. Squire was handcuffed and shackled at the
23   time his OC spray was put in his face?
24       A      I don't see shackled.  I don't see
25   that.

Page 240

1        Q      Okay.  What about at the top now?
2   Discharge his canister of OC spray into the face of
3   Mr. Squire, who was handcuffed and shackled at the
4   time the OC spray was dispensed?
5             Do you see that?
6        A      Yes.
7        Q      I'm going to keep going up for you.
8   Tell me where you're at so I can -- I'll stop it.
9             MR. WILLIAMS:  Hey, Tiffany, I think
10       you're trying to talk, but you're on mute.
11            MS. SELLERS:  I'm sorry.  Can you
12       scroll back?  Because I think there is a part
13       in there that we skipped over.
14            MR. WILLIAMS:  Okay.  And --
15            MS. SELLERS:  Yes.
16            MR. WILLIAMS:  I'm trying to make it,
17       but his screen is kind of -- I don't know --
18       kind of -- how about that?  Let's do 85.
19  BY MR. WILLIAMS:
20       Q      Can you see now, sir?
21       A      Yes.
22       Q      Are you on Number 2, 3, or 4?
23       A      Just -- I'm just completed two.
24       Q      Okay.  Can I move up some more?
25       A      Yes.  Okay.  Okay.  Okay.

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                           January 13, 2021

Page 241

1    Q      Are you -- have you read where Officer
2  Cadeau stated that Mr. Squire was not a physical
3  threat but he was being verbally disruptive?
4    A      Yes, sir.
5    Q      And he used force -- use of force used
6  against him was completely unnecessary,
7  unreasonable, and is in violation of this work rule?
8    A      Yes, sir.
9    Q      I'm going to keep going up, then.
10   A      Okay.
11   Q      Who was Lieutenant Ferguson?  Was that
12 over the OPS commander at the time?
13   A      I don't think so.  I think Lieutenant
14 Ferguson might have been the watch commander for
15 Officer Cadeau in zone two at -- zone one at the
16 time.  I think this was the field investigation as
17 opposed to an OPS investigation.
18   Q      Based on what we've talked about
19 earlier -- well, first of all let's go up.  He says,
20 "Officer Cadeau by his own admission stated he
21 intentionally used his OC spray on Mr. Squire
22 because he was becoming a distraction towards
23 Officer Carter."
24         Do you see that?
25   A      I do, yes, sir.

Page 242

1    Q      First of all, there's freedom of speech
2  in the Constitution; correct?
3    A      Yes.
4    Q      Despite what Mr. Cadeau thinks,
5  Mr. Squire has a right to speak and talk; is that
6  correct?
7    A      That is correct.
8         MS. SELLERS:  Object to the form of the
9     question.  You can answer it to the extent
10    you can.
11        THE WITNESS:  Yes.
12 BY MR. WILLIAMS:
13   Q      Then he says, "By his own admission, he
14 intentionally used OC spray."
15         That is intent; correct?
16   A      Yes.
17   Q      And he sprayed him for exercising a
18 right to speak.  Do you see that?
19   A      Yes, sir.
20        MS. SELLERS:  Object to the form of the
21    question.  That's not what it said.
22 BY MR. WILLIAMS:
23   Q      Well, let me ask you, sir, do you agree
24 with me based on what is on this page and the page
25 you read, it appears that Cadeau admitted to

Page 243

1  intentionally using OC spray because Mr. Squire was
2  becoming a distraction in how he was talking to
3  another officer?  Isn't that how you read it, sir?
4    A      Yes.
5    Q      Based upon your knowledge, your
6  experience as a police officer, you being the chief
7  of police, your understanding of the Constitution,
8  your understanding of what reasonable force is
9  necessary, was this within APD policies and
10 procedures?
11   A      It was not.
12   Q      This is no longer a hypothetical, sir.
13 This is from your-all's OPS policy from when you and
14 I -- when you was there.  Based on this, isn't this
15 a crime?
16        MS. SELLERS:  Object to the form of the
17    question.  To the extent you can answer,
18    Chief, you can.
19        THE WITNESS:  It is a -- it could -- it
20    definitely could be a criminal or a civil
21    crime against the person that is listed in
22    this complaint.
23 BY MR. WILLIAMS:
24   Q      Is this something, based on the
25 policies and procedures, the duties and the oath

Page 244

1  that every one of these officers, even Lieutenant
2  Ferguson who looked at this, they had a duty to
3  report this to the district attorney's office; am I
4  correct?
5         MS. SELLERS:  Object to the form of the
6     question.  To the extent that you can answer,
7     Chief, you may do so.
8         THE WITNESS:  Yes.
9  BY MR. WILLIAMS:
10   Q      They also should have a duty to report
11 this up to the OPS commander in light of this being
12 a potential crime; isn't that correct?
13        MS. SELLERS:  Object to the form of the
14    question.  To the extent that you can answer,
15    Chief, you may do so.
16        THE WITNESS:  Yes.
17 BY MR. WILLIAMS:
18   Q      Based upon what you trained and the
19 policies and procedures they had in place when you
20 was there, the OPS commander would have been
21 required based on the policies, to institute --
22 actually start proceedings to terminate Mr. Cadeau
23 for this violation; am I correct?
24        MS. SELLERS:  Object to the form of the
25    question.  To the extent that you can answer,

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 245

1    Chief, you may do so.
2         THE WITNESS:  No.  Not to terminate,
3    but to investigate.
4    BY MR. WILLIAMS:
5         Q    Sir, there has already been an
6    investigation.  It's been sustained already, hadn't
7    it?
8         A    On the -- you're saying a criminal --
9    that's a different crime, different charge, sir.
10   You're talking about a criminal case against an
11   individual.  This is administrative action.
12        Q    No.  I'm talking about, what other
13   information and investigation does the City of
14   Atlanta Police Department need to do when they have
15   a sustained violation for use of force, which you
16   just admitted under oath was a potential crime and
17   should have been reported to the DA and a violation
18   of this person's constitutional rights?
19        MS. SELLERS:  Object to the form of the
20        question.  I think that that's
21        mischaracterizing the testimony, but to the
22        extent that you can answer, Chief, you may do
23        so.
24        THE WITNESS:  I also said to you
25        earlier that a criminal investigation has to

Page 246

1    be concluded before a termination or a
2    disciplinary action to be administered to an
3    officer due to the due process that the
4    officer required, that is required of the
5    officer, of the --
6    BY MR. WILLIAMS:
7         Q    So you --
8         A    -- for the officer.
9         Q    Are you testifying to -- are you
10   telling me that the APD cannot terminate an officer
11   until the district attorney completes a criminal
12   investigation?
13        A    No, I am not.
14        MS. SELLERS:  Object to the form of the
15        question.  Hold on.  Hold on, Chief.  Let me
16        get my objection in.  Object to the form of
17        the question to the extent that I believe
18        that mischaracterizations the testimony.  To
19        the extent that you can answer, though,
20        Chief, you may do so.
21        THE WITNESS:  No, I'm not.
22   BY MR. WILLIAMS:
23        Q    So what due process -- let's just go
24   back.  Let's take this slow.  We now -- you know for
25   a fact that this was filed by your OPS back in

Page 247

1    August of 2014; am I correct?
2         A    Yes.
3         Q    What should have happened to Mr. Cadeau
4    based upon what you now see was sustained regarding
5    his use of force and his discredit upon the
6    department?
7         MS. SELLERS:  I'm going to object to
8         the extent that I think -- I'm going to
9         object to the question because I think we're
10        stuck on page 3, but it's 64 pages in this
11        document.  To the extent that the information
12        is contained in the document has not been
13        shown to the witness, I'm going to place my
14        objection on the record.  Chief, to the
15        extent you can answer it based on the
16        information you have, you may do so now.
17        THE WITNESS:  Okay.  I'm sorry.
18   BY MR. WILLIAMS:
19        Q    My question, sir, is what should have
20   happened based on your policy, procedures, based on
21   the standards of holding officers accountable from a
22   chief?
23        MS. SELLERS:  Same objection.
24        THE WITNESS:  The officers should have
25        provided additional information on their

Page 248

1    findings to their commander to proceed with
2    additional charges.
3    BY MR. WILLIAMS:
4         Q    What additional charges?
5         A    There is a -- the criminal act that the
6    officer participated in.
7         Q    So another independent investigation
8    regarding the criminal act?
9         A    That's correct.
10        Q    And then what was to happen based upon
11   that investigation?
12        A    According to the facts and figures, the
13   facts associated with that particular investigation,
14   the officer could have been terminated.
15        Q    If the facts and circumstances are
16   consistent with what was determined in this OPS
17   investigation, what should have been done if the
18   facts bear out like they are already in this
19   sustained OPS violation?
20        MS. SELLERS:  Object to the form of the
21        question.  To the extent that you can answer
22        that question, you may do so now.
23        THE WITNESS:  The commander should have
24        been informed about the findings, and
25        additional charges should have been brought

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 249

1          against Officer Cadeau.
2  BY MR. WILLIAMS:
3      Q      So are you saying a separate
4  independent OPS investigation on these additional
5  charges you're referring to?
6      A      That is what I am saying.
7      Q      I'm saying to you, that investigation
8  has been open and the facts are consistent with what
9  we already have here:  That he in his own admission
10 stated he intentionally used his OC spray on
11 Mr. Squire.
12         MS. SELLERS:  I am going to object to
13         the form of the question.  Also going to
14         object to the fact that you're not showing
15         the witness the entirety of the document.  To
16         the extent that you can answer based on the
17         limited information you're provided, Chief,
18         you may do so now.
19         MR. WILLIAMS:  He does --
20 BY MR. WILLIAMS:
21     Q      I'm not -- Mr. Turner, I'm only asking
22 you what should have happened.  Now, whether it
23 happened or not, we going to look and find out.  I'm
24 asking you what should have happened?  You was the
25 chief there.  Do you need to review the whole file

Page 250

1  to see what should have happened?
2         MS. SELLERS:  I'm going to object to
3         the form of that question.  To the extent
4         that you can answer, Chief, you may do so
5         now.  If you cannot answer, then you let the
6         lawyer know.
7         THE WITNESS:  I've answered that
8         question.
9  BY MR. WILLIAMS:
10     Q      Okay.  What should have been done?  I'm
11 asking.
12     A      I've answered that question.
13         MS. SELLERS:  Same objection.  Hold on,
14         Chief.  Same objection.  To the extent that
15         you can answer, you can answer.  You don't
16         have to change your answer, Chief, because he
17         asked the question 15 times.
18         MR. WILLIAMS:  I haven't asked the
19         question 15 -- I'm going to be --
20 BY MR. WILLIAMS:
21     Q      I'm going to be very blunt.  Chief, I'm
22 going to be very blunt.  If you, based on what you
23 see here on page 2 of this executive memo, if those
24 facts are true and those facts bear out in the
25 second investigation that you said should have

Page 251

1  happened, should this officer be terminated pursuant
2  to APD policies and procedures?
3         MS. SELLERS:  Same objection.  To the
4         extent that you can answer that question,
5         Chief, you may do so.  If you cannot, you do
6         not have to do so.  You do not have to change
7         your answer if he asks the question 15 times.
8         MR. WILLIAMS:  Tiffany, you're now
9         getting too far into speaking.
10         MS. SELLERS:  That's fine.  Shean, you
11         asked this question 15 times.
12         MR. WILLIAMS:  I haven't asked the
13         question 15 times, but whether I ask or not,
14         the rules say --
15         MS. SELLERS:  My objection --
16         MR. WILLIAMS:  Tiffany --
17         MS. SELLERS:  You can answer the
18         question if you can.  If you can't, then
19         that's fine.
20         MR. WILLIAMS:  Okay.  But you don't
21         have to add that.  All you can say -- is all
22         you have to say is, object the form.
23         MS. SELLERS:  Shean, you do not tell me
24         how to take a deposition.
25         MR. WILLIAMS:  I'm not --

Page 252

1         MS. SELLERS:  You're taking the
2         deposition.  You made your point.  I'm going
3         to make my point.
4         MR. WILLIAMS:  The Federal Rules
5         specifically say you can't do it.  You
6         follow --
7         MS. SELLERS:  Shean, I have said what I
8         said.  That's it.  Chief, if you can
9         answer --
10         MR. WILLIAMS:  I'm going to let you
11         ask --
12         MS. SELLERS:  Chief, if you can answer
13         the question, you may do so.  If you cannot,
14         you cannot.
15         MR. WILLIAMS:  Well, you keep saying
16         you can answer; you cannot.  I believe you're
17         coaching this witness.
18         MS. SELLERS:  I am not coaching the
19         witness, Shean.  You have asked the question
20         multiple times.
21         MR. WILLIAMS:  I'm going to make
22         sure --
23         MS. SELLERS:  Multiple answers.
24         MR. WILLIAMS:  -- whether --
25         MS. SELLERS:  If you can answer,

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 253

1  answer.
2       MR. WILLIAMS:  Whether I asked it
3  multiple times, I'm going to make it clear so
4  when I go to Pannell, we're clear.
5       MS. SELLERS:  Please.  And when you
6  finish, I'm going to put my objection back on
7  the record, and then you can answer.  How
8  about that?
9       MR. WILLIAMS:  I have asked --
10      (Court Reporter clarification.)
11      MR. WILLIAMS:  I'll go first, and then
12  Tiffany can respond.  I have an objection to
13  Tiffany, Attorney Sellers, keep giving
14  speaking objections beyond "I object to the
15  form."
16      It is my belief and opinion that her
17  continual conversation of, "Chief Turner,
18  if -- you can answer the question if you
19  know; you can answer the question," is
20  coaching this witness and affecting his
21  ability to properly answer my question and
22  give a thorough and sifting
23  cross-examination, which the Federal Rules
24  allow.  The rules of the Northern District
25  are very clear.

Page 254

1       There is case law.  You cannot go
2  beyond "I object to the form of the
3  question."  I have tried and been very
4  gracious and allowed this to happen, but it
5  has to stop now.  There is no reason or basis
6  to go beyond "object to the form."
7       I was very clear with Chief Turner, if
8  he did not understand my question, he could
9  let me know.  By the mere fact that it
10  continues to go on, I'm getting on the
11  record, she can have a standing objection to
12  all of these questions so she can protect her
13  record.
14      If that is what she is trying to do, I
15  am volunteering that she can have a standing
16  objection to any question I have going
17  forward, but to continue to object and go
18  beyond "object to the form" is, in my view, a
19  violation of the Federal Rules and is
20  coaching this witness.
21      MS. SELLERS:  My objection will remain
22  the same.  I'm objecting to the form of the
23  question.  To the extent that Chief Turner
24  can answer, he may do so now, and I would
25  make that objection to every question that I

Page 255

1       deem to be inappropriate.  That's all.
2  BY MR. WILLIAMS:
3       Q    Chief Turner, based on evidence that
4  Cadeau admittedly stated he used the Ocean Spray on
5  Mr. Squire because he was becoming a distraction
6  towards Officer Carter and based on the fact that
7  Mr. Squire was handcuffed and shackled to the bench
8  and had not attempted to touch anybody, based on
9  that fact, at some point should Officer Cadeau have
10  been fired?
11      MS. SELLERS:  Object to the form of the
12  question.  To the extent that you can answer
13  that question, you may do so now.
14      THE WITNESS:  I cannot answer that
15  without the investigation being completed.
16  BY MR. WILLIAMS:
17      Q    What do you need to know in the
18  investigation to be completed to make that
19  determination?  What other information do you need?
20      A    First of all, if there was a federal --
21  I mean a felony or misdemeanor charge criminally
22  against the officer, the information should have
23  been provided to the district attorney's office for
24  further prosecution.  That was not done.  I would
25  have reacted if that information had moved to the

Page 256

1  district attorney and charges had been brought
2  against the officer.
3       Q    If charges had not been brought against
4  the officer, would that have affected whether or not
5  he should be terminated?
6       A    On which situation, sir?
7       Q    On the situation of him admitting using
8  OC spray on Mr. Squire because he was becoming a
9  distraction towards Officer Carter while he was
10  handcuffed and shackled.  I want you to assume the
11  DA doesn't bring charges or the DA takes five years
12  to bring charges, which happens sometimes.  Does
13  that affect what you or the APD does?
14      MS. SELLERS:  Object to the form of the
15  question.  To the extent that you can answer,
16  you may do so.
17      THE WITNESS:  We have done two --
18  handled that in two ways.  We have attempted
19  to allow the district attorney to complete
20  the investigation, and we have also moved
21  forward with administrative actions if the
22  administration actions were to the point
23  where we could conclude the administrative
24  investigation either to terminate the officer
25  or allow the officer to continue to go back

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 257

1    to work.
2  BY MR. WILLIAMS:
3      Q      Where is that written, these two ways
4  you've handled this that you just testified to?
5  Where is that in the policy?
6      A      Sir, I don't know if it's in a policy
7  at all.
8      Q      So where -- is there anywhere written
9  where you-all decide on disciplinary action based on
10  what the DA does or doesn't do?
11            MS. SELLERS:  Object to the form of the
12        question.  To the extent that you can answer,
13        Chief, you may do so.
14            THE WITNESS:  A decision -- honestly,
15        with the Atlanta Police Department's chief of
16        police in conjunction with the attorneys,
17        city attorney, those decisions are made.
18  BY MR. WILLIAMS:
19      Q      My question is, is there a written
20  policy anywhere that you can point me to that
21  reflects disciplinary actions dependent upon charges
22  brought by a district attorney or not?
23            MS. SELLERS:  Same objection.
24            THE WITNESS:  Not at this time.
25  BY MR. WILLIAMS:

Page 258

1      Q      Was it at any time during your tenure?
2      A      No.
3      Q      In fact, there's been situations during
4  your tenure where officers were fired for their
5  conduct before a district attorney's prosecution or
6  charges have been brought; isn't that correct?
7      A      Yes, sir.
8      Q      If you -- if the allegations set forth
9  on Exhibit 39, pages 1, 2, 3, and 4 are true --
10  well, strike that.  Lieutenant Ferguson, am I
11  correct, based on the policies and procedures,
12  should have submitted this to the district
13  attorney's office?
14            MS. SELLERS:  Object to the form of the
15        question.  To the extent that you can answer,
16        Chief, you may do so.
17            THE WITNESS:  I believe someone in the
18        command structure of this officer, that
19        information should have been submitted to the
20        district attorney's office.
21  BY MR. WILLIAMS:
22      Q      So who -- tell me who above her or in
23  that structure you're talking about should have done
24  that.
25      A      Be it the lieutenant, the captain, the

Page 259

1  major, or the deputy chief who was privy to this
2  disciplinary file.
3      Q      What would you have done if you was
4  made aware of this incident back when it happened?
5      A      I perhaps would have instructed my OPS
6  commander to share the file with the district
7  attorney's office.
8      Q      What else would you have done?
9      A      Waited until the investigation was
10  completed and that -- the recommendations for the
11  action would have brought -- the disciplinary action
12  would have been brought to my office for a hearing,
13  for a -- first for just a notice of -- finding,
14  and we would have had a hearing, and the officer
15  would have been disciplined on -- according to the
16  recommendation.
17      Q      If you had learned about this when you
18  had the hearing, going back regarding the
19  truthfulness, would you have done the same thing?
20            MS. SELLERS:  Object to the form of the
21        question.  To the extent that you can answer,
22        Chief, you may do so.
23            THE WITNESS:  I perhaps would have sent
24        the investigation, not the truthfulness,
25        back.  The actions in front of me did not

Page 260

1        glean an action of termination, but the
2        details of the information that you are
3        showing, I would have sent it back for
4        further investigation on behalf of the Office
5        of Professional Standard.
6  BY MR. WILLIAMS:
7      Q      Is it your testimony, then, that
8  learning this information about this incident before
9  that hearing would not have changed your decision to
10  sustain the truthfulness allegation that you did in
11  2015 with Cadeau?
12            MS. SELLERS:  Object to the form --
13            THE WITNESS:  No.
14            MS. SELLERS:  -- of the question.  To
15        the extent you can answer, Chief, you may do
16        so.
17            THE WITNESS:  It wouldn't have changed
18        about the truthfulness, no, sir.
19  BY MR. WILLIAMS:
20      Q      So the answer to my question is, it
21  wouldn't have changed?  That's correct; right?
22      A      That's correct.
23      Q      Okay.  Did you know this information
24  when you made that decision?
25      A      No, sir.

Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 66 of 110

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 261

1    Q    Would you have used or relied upon that
2 information if you knew it?
3    MS. SELLERS:  Object to the form of the
4    question.  This question has been asked and
5    answered.  Mr. Turner, Chief Turner, you can
6    answer it this last time, and that's it.
7    THE WITNESS:  No.
8    MS. SELLERS:  And then Mr. Williams can
9    take it to Judge Pannell.
10    MR. WILLIAMS:  That's fine.  I don't
11    think I've asked it the same way the same --
12    MS. SELLERS:  You have.  You've asked
13    that exact question.  Go ahead, Chief Turner.
14    To the extent that you can answer that
15    question, you may do so.
16    THE WITNESS:  No.
17 BY MR. WILLIAMS:
18    Q    Okay.  I want to show you this
19 document, COA002428.  No.  And 2049.  2048,
20 actually.  No, 2049.  I'm sorry.  Do you see this
21 document, sir?  It's the memo to you.  Can you see
22 it?
23    A    Yes, yes.
24    Q    What date is that memo, sir?
25    A    October the 13th, 2014.

Page 262

1    Q    And who is it from?
2    A    Deputy Chief Spillane.
3    Q    And who is it to?
4    A    It's to myself.  Doesn't look like
5 Lou -- Chief Spillane signed that document.  That's
6 someone else's signature off to the side, but
7 neither here nor there.
8    Q    It's from Spillane to you?
9    A    That's correct.
10    Q    Is it relevant, or does it matter that
11 somebody else signed the initials for him?  Wasn't
12 that customary?
13    A    Yes.
14    Q    Okay.  Could you read into the record
15 what this memo of October 13, 2014, to says?
16    A    "Investigation and disposition of OPS
17 complaint Number 14, dash, one, dash, 0431, dash,
18 UAF."
19    Q    You can read the memo, sir.  I'll keep
20 moving up.
21    A    Can you slide it to the right?  I can
22 -- it's cut off on the side.
23    Q    I can just -- I can just -- all I can
24 do is make it smaller.  How about that?
25    A    That's fine.

Page 263

1    Q    Would you read into the record?
2    A    "Attached please find OPS complaint
3 investigation Number 14, dash, one, dash, 0431,
4 dash, UAF involving Officer Mathieu Cadeau.  After
5 carefully reviewing -- review, I do not concur with
6 the chain of command's recommendation for discipline
7 as outlined in the employee disciplinary work sheet
8 below.  I have listed my recommendation discipline
9 for the sustained complaint to in accordance with
10 the APD.SOP 2020, Section 4.7.1B.
11    I am forwarding this OPS complaint for
12 your review and recommendation.  It shows that
13 Officer Cadeau work rule 4.2.5, maltreatment and
14 unnecessary force, a four-day suspension, was
15 concurred, it was concurred, and a conduct, a
16 one-day suspension was concurred."
17    That's all I see on the page.
18    Q    Hey, sir, is that your signature at the
19 bottom?
20    A    I don't see the bottom of the page,
21 sir.
22    Q    How about now?
23    A    I still don't.  That is my signature,
24 yes, sir.
25    Q    Is that dated -- is that your

Page 264

1 handwriting on the date as well?
2    A    That is correct.
3    Q    And so you were aware of this incident
4 involving Cadeau before your hearing in February of
5 2015; am I correct?
6    A    I know of the disciplinary actions laid
7 out, yes, sir.
8    Q    You got the whole file; right?
9    A    No, sir.  I could have access to it,
10 but the document that you see is a document that
11 comes -- that came to my office.
12    Q    You had access to it; correct?
13    A    If I -- yes, sir.
14    Q    Okay.  All right.  And what did you
15 see -- what does your signing off on this mean?
16    A    Meaning that I concurred with the
17 disciplinary that was issued out by the deputy
18 chief.
19    Q    Which was a reduction from the original
20 discipline?  You recall that?
21    A    I did read that that's what -- I do not
22 recall it, but I did read that in the statement,
23 yes, sir.
24    Q    So in October of 2014 the OPS chain of
25 command recommended a certain type of discipline for

Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 67 of 110
Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                     January 13, 2021

Page 265

1  Cadeau, and you didn't concur with that
2  recommendation; am I correct?
3      A     No, sir, that's not correct.
4      Q     Well, explain what happened.
5      A     The investigation was concluded, and
6  either the lieutenant or OPS made a recommendation
7  to the O -- to the field operation division
8  commander, Lieutenant Spillane.  He did not concur
9  with the recommended discipline and changed it to
10  what you see there.  I concurred with the deputy
11  chief.
12     Q     So you con -- but you're the ultimate
13 person over discipline; right?
14     A     Not arguing that.  Yes, sir.
15     Q     So you -- once again, you went -- you
16 went against what the people underneath you
17 recommended; right?
18            MS. SELLERS:  Object to the form of the
19       question.  I believe that mischaracterizes
20       the testimony.  To the extent that you can
21       answer, Chief, you may do so.
22 BY MR. WILLIAMS:
23     Q     Well, let me ask you this way.  You
24 went against what the field chain of command
25 recommended?  Is that fair?

Page 266

1            MS. SELLERS:  Same objection.
2            THE WITNESS:  No.  I concurred with the
3       field commander recommendation.
4  BY MR. WILLIAMS:
5      Q     You went against what the other people
6  below that field commander recommended; is that
7  right?
8      A     I concurred with the field operations
9  division commander.
10     Q     And that decision was different from
11 what the OPS investigation recommended; is that
12 right, then?
13     A     Yes, yes.
14     Q     Okay.  Now, you had available when you
15 concurred, to go through and see what happened;
16 right?
17     A     Yes.
18     Q     Do you know or recall as we sit here
19 today, whether you did that?
20     A     No.
21     Q     Can you explain to me how with the
22 facts we got and what you told me should have been
23 done with the rules, how this was never sent to the
24 DA's office?  Can you explain that to me?
25     A     No.

Page 267

1      Q     Do you agree with me that that is not
2  in compliance with the APD policies and procedures
3  that we've talked about today, are they?
4      A     I'm sorry.
5            MS. SELLERS:  Hold on.  Object to the
6       form of the question.  To the extent that you
7       can answer, Chief, you may do so.
8            THE WITNESS:  Okay.  Can you restate
9       the question, please, sir?
10 BY MR. WILLIAMS:
11     Q     Yes.  The fact that this was never,
12 ever sent over to the district attorney's office and
13 the fact that an independent investigation regarding
14 the -- as you put it, the incident of a potential
15 crime regarding the OC spray, the fact that that was
16 never done, doesn't comply with the APD rules as
17 you've stated today -- today, did they?
18            MS. SELLERS:  Object to the form of the
19       question.  To the extent that you can answer,
20       Chief, you may do so.
21            THE WITNESS:  No.
22 BY MR. WILLIAMS:
23     Q     They did not, did they?
24     A     No.
25     Q     And you don't, as we sit here, have an

Page 268

1  explanation for that, do you?
2      A     No.
3      Q     If someone, based on what we discussed
4  earlier -- you remember I took your depo, and I
5  wrote in the notes, your prior depo, if somebody is
6  not held accountable for a violation of the work
7  rule, that can be an issue because they start to
8  believe it's okay and that it is a custom and
9  practice that is allowed; am I correct?
10            MS. SELLERS:  Object to the form of the
11       question.  To the extent that you can answer,
12       Chief, you can answer.
13            THE WITNESS:  Can you restate the
14       question, sir?
15            MS. SELLERS:  May I have the time,
16       please?
17            MR. WILLIAMS:  AJ, you can give that.
18            THE VIDEOGRAPHER:  Are you asking for
19       the total time, ma'am?
20            MS. SELLERS:  Yes, I am.
21            THE VIDEOGRAPHER:  Okay.  Can we go off
22       the record so I can add it up?
23            MR. WILLIAMS:  He can't do it if you do
24       it off the record.
25            THE VIDEOGRAPHER:  Yeah.  I have to

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 269

```
1      plug it in.  I've got to plug the SD card in
2      and add up all the video clips, so it
3      takes --
4           MR. WILLIAMS:  Do you want the time,
5      Tiffany?
6           MS. SELLERS:  I do.  I absolutely want
7      the time.
8           MR. WILLIAMS:  Hold on.  Do you want me
9      to finish the question before he goes off the
10     record?  Because he can't give you the time
11     without going off the record.
12          MS. SELLERS:  Oh, I thought you were
13     finished.  Chief, I think -- Chief -- I
14     thought chief answered.
15          THE WITNESS:  No.  I have to -- I have
16     to ask him to restate the question for me.
17          MS. SELLERS:  Oh, I'm sorry.  I'm
18     sorry.  Don't go off the record yet.  Let's
19     let him finish restating the question.
20  BY MR. WILLIAMS:
21     Q     You remember when we discussed and you
22  agreed with me that concept, if you don't hold
23  people responsible for rules they are more likely to
24  continue to violate those rules?  You recall that?
25     A     Yes, sir.
```

Page 270

```
1      Q     And if officers, am I correct, are not
2  disciplined, they start to believe that they are
3  above the law, don't they?
4      A     Yes.
5           MS. SELLERS:  Object to the form of the
6      question.  To the extent that you can answer,
7      Chief, you may do so.
8           THE WITNESS:  Yes.
9           MR. WILLIAMS:  Tiffany, if you want to
10     go off the record, you can now.
11          MS. SELLERS:  Okay.  We don't have to
12     be off the record that long.  I just want to
13     get a time.
14          THE VIDEOGRAPHER:  Going off the
15     record, 4:35.
16          (Discussion ensued off the record.)
17          THE VIDEOGRAPHER:  Time is 4:39.  We're
18     back on the record.
19          (Communication between reporter and
20     attorney regarding digital exhibit placement
21     ensued.)
22  BY MR. WILLIAMS:
23     Q     Chief Turner?
24     A     Yes, sir.
25     Q     By the way, the document I showed you
```

Page 271

```
1  on the OC spray incident, that was produced to us by
2  the city of Atlanta, I wanted you to know.
3      A     Okay.
4      Q     Is that something that would have
5  assisted you in responding to our discovery
6  responses in this case if you had seen that prior to
7  today?
8      A     It wouldn't have changed my testimony
9  on the -- on the termination on the truthfulness,
10  no, sir.
11     Q     Now, Exhibit 40 is the OPS complaint
12  regarding the Wet Willie and the truthfulness issue.
13     A     Okay.
14     Q     Have you -- in preparation of this
15  deposition did you even inquire or try to read this
16  OPS file, since you was involved in it?
17     A     No, sir.
18     Q     I must admit I'm surprised with that,
19  but that's okay.  All right.  Did you not think it
20  would be wise for you to look at the file that you
21  was involved in, which is part of -- one of the
22  reasons you were sued?
23     A     I --
24          MS. SELLERS:  Object to the form of the
25     question.  To the extent that you can answer,
```

Page 272

```
1      Chief, you may do so.
2           THE WITNESS:  I don't recall looking at
3      the -- the file.
4  BY MR. WILLIAMS:
5      Q     No.  That wasn't my question.  My
6  question is, doesn't it seem prudent for someone
7  who's being sued based upon decisions they've made
8  or didn't make, to at least look at the OPS file
9  that they were involved in that is one of the basis
10  of this lawsuit?  I'm asking you, did that not make
11  you even curious or want to look at this file prior
12  to today?
13          MS. SELLERS:  Same objection.  You can
14     answer, though, Chief.
15          THE WITNESS:  I depended on counsel as
16     relates to my response, so the answer to that
17     would be no.
18  BY MR. WILLIAMS:
19     Q     So as of January 23, 2015, based on
20  Exhibit Number 40, Chief -- Deputy Chief Spillane
21  sent a memo to Assistant Chief SL Jones recommending
22  termination for Cadeau; am I correct?
23     A     Yes, that's correct.
24     Q     So the deputy chief is where as
25  relation to the assistant in command?
```

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 273

1    A    He is directly below the assistant
2 chief.
3    Q    **So is that like the third person in**
4 **charge?**
5    A    One of five deputy chiefs, that's
6 correct.
7    Q    **Did -- and Chief -- Assistant Chief**
8 **Jones was right under you; correct?**
9    A    Yes, that's correct.
10    Q    **Do you recall what Chief Jones'**
11 **decision was on whether to terminate Officer Cadeau?**
12    A    As I've just read, his -- his
13 recommendation was to concur with the termination on
14 truthfulness.
15    Q    **So your assistant chief and the deputy**
16 **chief under that believed that there was sufficient**
17 **evidence based on the preponderance of the evidence**
18 **standard, to terminate Cadeau; am I correct?**
19    A    Yes.
20    Q    **And then there is another commander**
21 **underneath those two that also believed there was**
22 **sufficient evidence to sustain a termination; am I**
23 **correct?**
24    A    I can only imagine that the -- the
25 commander of OPS recommended the charges, to sustain

Page 274

1 it, and then the -- the field operations division
2 commander made the recommendation for discipline.
3    Q    **So the field operations commander**
4 **recommended termination, OPS commander recommended**
5 **termination, the deputy recommended termination, and**
6 **then the assistant chief recommended termination;**
7 **correct?**
8    A    That's correct. But the -- yes. It's
9 semantics, but yes.
10    Q    **Other than yourself was there anybody**
11 **who did not believe the -- there was sufficient**
12 **evidence to sustain a truthfulness?**
13         MS. SELLERS: I'm going to object to
14    the extent that that question calls to --
15    calls for information protected under the
16    attorney-client privilege. To the extent
17    that it calls for any information that's
18    protected under attorney-client privilege,
19    Chief, I'd ask you not to answer that.
20         MR. WILLIAMS: Well, you --
21         MS. SELLERS: You -- because -- I'm
22    sorry. The court reporter can repeat the
23    question back, Shean, but I thought you said,
24    was there anybody else?
25         MR. WILLIAMS: Well, Tiffany, whether

Page 275

1 there was anybody else is not attorney-client
2 privilege. The privilege is when there is
3 communication. I'm asking -- if there were
4 somebody else involved, then I would not ask
5 what was discussed. That's attorney-client
6 privilege. The fact that an attorney was
7 involved is actually something I need to know
8 to determine whether I can get information
9 beyond the privilege.
10         MS. SELLERS: Well, you already -- I'm
11    sorry. Go ahead.
12         MR. WILLIAMS: No. I asked, was
13    somebody present or whatever, but I'm going
14    to ask that question. I think if you
15    instruct him not to answer, it's going to
16    cause problems because I have to inquire and
17    see if there is a basis for the privilege.
18    I'm not going to ask what that lawyer, if
19    there is somebody else, said to them because
20    that would be privilege.
21         But the mere fact that if there is
22    somebody else that disagreed with the
23    concurrence, I need to at least know. If
24    that person is a lawyer, then I need to
25    inquire whether there is a privilege

Page 276

1 involved.
2         MS. SELLERS: So we already know that
3    there is a lawyer because back at I think
4    hour one, maybe hour one and a half, you
5    asked that question, and we inquired into
6    this line of questioning when you went back
7    through his discovery response, and
8    particularly as it relates, if I'm not
9    mistaken, to Christina Hall's -- either her
10    rogs or her request to admit. We had this
11    entire discussion where Chief Turner
12    testified under oath that there was an
13    attorney involved in the decision making as
14    it relates to this.
15         And, in fact, you inquired because the
16    attorney was not -- the attorney was not
17    identified in the discovery response. So we
18    did have this discussion, so I think it's a
19    little disingenuous for you to suggest that
20    now you don't know if there is an attorney
21    involved because you were notified of that
22    pretty early in this particular deposition.
23         MR. WILLIAMS: I never said -- I never
24    said that I wasn't think an attorney
25    involved. That was not what I said. My

Elizabeth Gallo
COURT REPORTING, LLC

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 277

```
 1  specific question -- if you listen to the
 2  specific question, because I'm very, very
 3  particular how I word a question -- I asked
 4  him, was there anybody other than himself
 5  that concurred or did not agree with people
 6  below besides himself?
 7       Now, if his position is that there's
 8  somebody else, that's fine, but that doesn't
 9  mean attorney-client privilege.  It -- all he
10  testified to earlier is that -- I asked him,
11  was there anybody else or anything else he
12  relied on in making the decision?  I then
13  asked him, regardless, it was an independent
14  decision made by you as the chief, and he
15  said yes.
16       MS. SELLERS:  In conversation with his
17  attorney.
18       MR. WILLIAMS:  No.
19       MS. SELLERS:  That's what he said.
20       MR. WILLIAMS:  No, Tiffany, but the
21  record will be what it is.
22       MS. SELLERS:  It is.
23       MR. WILLIAMS:  But I think the bigger
24  thing is, if you are going to instruct him
25  not to answer, that's fine.  We can take the
```

Page 278

```
 1  matter up, but I don't think there is -- my
 2  question poaches into attorney-client
 3  privilege, and if he's going to limit his
 4  answer because of privilege, I need to know
 5  and we need to get a privilege log so I can
 6  inquire about that with the court.  That's
 7  all I'm really saying.
 8       MS. SELLERS:  No.  I understand that,
 9  and to the extent that the question calls for
10  information protected under the
11  attorney-client privilege, we're not going to
12  go into that.  Now, if there is somebody
13  outside of attorney-client privilege, he
14  certainly should answer the question, which
15  is --
16       MR. WILLIAMS:  The problem --
17       MS. SELLERS:  -- what I said.
18       MR. WILLIAMS:  The problem is, if he
19  doesn't answer my question, I can't know to
20  inquire into attorney-client privilege.
21  That's the point.  Do you want to go off
22  record and talk to him?  And you can tell and
23  represent to me that there may be somebody
24  that's protected that did not answer my
25  question, but right now I'm going to ask the
```

Page 279

```
 1  question.  If you instruct him not to, that's
 2  fine.  We can take it up.
 3       MS. SELLERS:  I mean, that's -- you can
 4  ask the question, Shean, the way that you
 5  need to ask the question.
 6       MR. WILLIAMS:  Let me ask the question
 7  so I'm very clear with the court what I am
 8  asking.
 9  BY MR. WILLIAMS:
10  Q       Sir --
11       MS. SELLERS:  Okay.
12  BY MR. WILLIAMS:
13  Q       -- other than yourself is there anybody
14  that -- in the investigation of this incident that
15  did not agree with -- excuse me -- who disagreed
16  with your deputy chief, your assistant chief, your
17  OPS commander, and the field operation commander?
18       MS. SELLERS:  You can answer that
19  question, Chief.
20       THE WITNESS:  Restate that question.
21  I'm sorry.
22  BY MR. WILLIAMS:
23  Q       Was there anybody else other than
24  yourself that disagreed with the recommendation to
25  terminate Cadeau other than yourself?  Was there
```

Page 280

```
 1  anybody else?
 2  A       Not in the documents that you've shown
 3  me, no.  There was someone that concurred with me.
 4  Q       Is that person a lawyer?
 5  A       Yes.
 6  Q       Would -- was that person a lawyer the
 7  city of Atlanta?
 8  A       Yes.
 9  Q       Did you rely on that person's opinion
10  in making the decision?
11  A       I relied on counsel -- recommendations
12  from counsel, yes.
13  Q       And is it this person that gave you the
14  opinion that concurred with you?
15  A       After hearing the evidence presented --
16       MS. SELLERS:  Hold on, Chief.  Stop,
17  stop.  Chief, stop, stop.  Mr. Court
18  Reporter, can you read back the question for
19  me, please?
20       MR. WILLIAMS:  And, Tiffany, I can -- I
21  can help.  Let us -- let us certify those
22  questions.  We are going to have to probably
23  get the court involved on that issue, so --
24       MS. SELLERS:  That's fine.
25       MR. WILLIAMS:  -- just make sure he
```

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner
January 13, 2021

Page 281

1    doesn't do anything that is against -- I got
2    one last question so we're clear to button
3    this up, if that's okay.
4  BY MR. WILLIAMS:
5         Q       Chief Turner, if I hear you right, the
6    decision to -- not to terminate Cadeau, was not your
7    decision by itself; is that correct?
8         A       No.  That is not what I said, no.  I
9    didn't say that, sir.
10        Q       Okay.  Was somebody else involved in
11   that decision?
12        A       As part of a recommendation from
13   counsel, but the decision was mine and mine alone.
14        Q       Okay.  And as part of your decision
15   process you relied on information you got from legal
16   counsel?  Is that fair?
17        A       That is fair.
18        Q       Okay.  All right.  All right.  Did you
19   get something in writing?
20        A       No, I did not get anything in writing.
21               MR. WILLIAMS:  All right.  Let's table
22          that, Tiffany.
23               MS. SELLERS:  That's fine.
24  BY MR. WILLIAMS:
25        Q       I got one last question on this, Mr.

Page 282

1   Turner.
2         A       Sure.
3         Q       Would you have made the decision
4   regardless, without the advice from counsel?
5                MS. SELLERS:  Object to the form of the
6           question.  You can answer to the extent that
7           you can, Chief.
8                THE WITNESS:  After listening to the
9           totality of the evidence presented at the --
10          the disciplinary hearing, I would have made
11          the same decision that I made.
12  BY MR. WILLIAMS:
13        Q       Tell me what evidence that you heard at
14  the evidential hearing that would have made you make
15  the same decision whether you had counsel or not.
16        A       It was my opinion on the information
17  that was presented that there were a totality of
18  evidence that I could not conclude that the officer
19  had been untruthful at the time of the inquiry, if
20  he had used a pepper spray.  I could not come to
21  that conclusion, and ultimately that's why I made
22  that decision.
23        Q       And that's what I am asking.  I want to
24  go through so I can identify what specific evidence
25  you pointed to that made you feel like you could not

Page 283

1   come to the decision of termination.  I want to make
2   a checklist so that I can get through it and figure
3   out what it was that you saw differently or what
4   evidence that said you said, I can't agree with my
5   assistant chief, with my OPS commander, with my
6   field commander.  What was it that was presented to
7   you that made you say, you-all wrong?
8         A       At the time of the disciplinary hearing
9    the officer's representative provided information
10   that brought in question -- questioning, if the --
11   if the officer physically sprayed his gas, his OC
12   gas.  It was a fight that he was engaged in.  He was
13   trying to -- to -- to separate individuals.
14               And the -- the representative at the
15   time presented enough information for me to believe
16   that there was no way to determine if the officer
17   literally knew that he could have stepped on the
18   gas, the spent -- the OC gas, or he -- in the
19   struggle that he was involved in.  And so ultimately
20   I made the decision not to terminate the officer for
21   truthfulness because I did not believe that he came
22   to -- that he was dis -- or was not truthful in his
23   statements at the time of the incident.
24        Q       And when you came to that conclusion,
25   what you really came to the conclusion is because

Page 284

1   you -- you not sustained it, is there was not
2   sufficient evidence in the totality of the
3   investigation file for you to, by a preponderance of
4   the evidence, find that he was untruthful?
5                MS. SELLERS:  Object to the form.  You
6           can answer, though, Chief.
7                THE WITNESS:  After additional evidence
8           was provided I sent it back to the -- to the
9           OPS for further investigations to dis --
10          disprove the information that was presented
11          at the time of the hearing.
12  BY MR. WILLIAMS:
13        Q       To disprove?  Okay.  What additional
14  investigation did you want done?
15        A       I wanted to determine if the
16  information that was presented at the hearing was
17  factual.  And after a day or so, I don't remember
18  the exact time frame, OPS responded that they could
19  not -- could not disprove the information that was
20  presented at the time of the hearing.
21        Q       One thing that you could have requested
22  was the CVSA exam; correct?
23        A       I -- yes.
24        Q       And one of the reasons that tool is
25  available to you guys is you use it for hiring is to

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                              January 13, 2021

Page 285

1  determine if someone is being truthful or not;
2  right?
3       A       That's part of the investigation, yes.
4  That's correct.
5       Q       The ultimate goal in any investigation,
6  whether it's OPS investigation or just regular
7  citizens, is to get to the truth; right?
8       A       Yes, yes.
9       Q       And you use every available resource
10  and tool to you as an officer to get to the truth;
11  isn't that correct?
12       A       Yes.
13       Q       If you wanted additional investigation
14  and information to disprove what you heard at the
15  hearing, why did you not request a CVSA exam be
16  done?  If you were wanting the truth?
17       A       That's not something that I -- I would
18  not direct the OPS commander on how they would
19  complete their investigation.  I would not have done
20  that.  I have never done that.  It is the
21  responsibility of OPS commander to use whatever tool
22  is available to come to the conclusion of the
23  investigation.
24       Q       Hey, sir, whether you've done it or
25  not, let's get really specific on your authority.

Page 286

1  You're the chief of police; isn't that correct?
2       A       I was, yes, sir.
3       Q       You had the authority to immediately
4  say, if you had any doubts or any issues with this
5  investigation, to order a CVSA exam to be done;
6  isn't that true?  You had that authority?
7       A       Yes.
8       Q       And if the ultimate goal is to really
9  find out who is telling the truth, the statements
10  from your officers that you had as opposed to this
11  representative at a hearing, you could have ordered
12  the CVSA to be done to help you make sure you got it
13  right?  Is that fair?
14              MS. SELLERS:  Object to the form of the
15       question.  To the extent that you can answer,
16       Chief, you may do so.
17              THE WITNESS:  Yes.
18  BY MR. WILLIAMS:
19       Q       Did you receive additional information
20  before making your decision?
21       A       I did.  I received the form back from
22  the -- information back from OPS.
23       Q       And what did the form say?
24       A       I don't recall.
25       Q       But whatever that form was, it was

Page 287

1  sufficient for you to decide to not sustain?
2       A       That's correct.
3       Q       Did -- did the information that was
4  provided to you at this hearing, was it something
5  that your commanders and people under you, did they
6  not have this information?
7              MS. SELLERS:  Object to the form of the
8       question.  To the extent that you can answer,
9       Chief, you may do so.
10              THE WITNESS:  I don't think so.
11  BY MR. WILLIAMS:
12       Q       What was this information?  Was that a
13  video?
14       A       It was the video and the testimony to
15  what transpired at the time of the disciplinary
16  hearing.
17       Q       But didn't Cadeau -- I actually
18  listened to that and transcribed it.  Didn't Cadeau
19  tell the same thing he told the OPS investigators on
20  what happened?  Was it something different you
21  heard?
22       A       I can't answer that.
23       Q       Well, as you sit here do you recall
24  something different than what your people under you
25  were told?

Page 288

1       A       I don't know what they were told.  I'm
2  telling you what happened at the disciplinary
3  hearing.  I cannot respond to what was told to them.
4  I'm talking about what happened at the disciplinary
5  hearing, sir.
6       Q       Well, what I am trying to figure out,
7  why can't you respond, what was told to them?
8  Didn't you have the OPS investigation file available
9  to you when you was making this decision?
10       A       I did have it available.
11       Q       So my question to you is, what you were
12  told at the hearing, was it different than what was
13  said to the people under you or provided to you?
14       A       It is my belief that it was.
15       Q       What specifically was different, is
16  what I am trying to find out?
17       A       I can't answer that.
18       Q       Why not?
19       A       I don't have the information at hand at
20  this point to talk about what was told to the
21  investigator and to compare to what was said to me
22  at the time of the hearing.
23       Q       Where was that information -- where is
24  that information at?
25       A       I'm sorry.  What information, sir?

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

Page 289

1    Q      The information that you don't have
2    available to you to determine the difference, is my
3    question.
4        A      Well, you suggested that it was the
5    same information provided to the OPS commander, the
6    deputy chief, as my -- I would imagine that it's in
7    the OPS file.  The hearing information was done.
8    It's available on -- it should have been available
9    on the recording, audio recording.  If that was
10   different, I can't answer that.  I made a decision
11   on the information that was presented.
12       Q      You can't answer whether -- the
13   differences right now, I guess what I am saying, is
14   because you haven't reviewed the OPS file?  Is that
15   what you're -- I'm getting at?
16           MS. SELLERS:  Object to the form of the
17       question.  You're talking about today, for
18       the purposes of this deposition?
19   BY MR. WILLIAMS:
20       Q      Since it happened, since this case.
21   You can't --
22           MS. SELLERS:  I just want a time frame.
23   BY MR. WILLIAMS:
24       Q      Okay.  You can't answer that question
25   right now because you have not reviewed the OPS

Page 290

1    file?  Is that what you are saying?
2        A      I'm not saying that I have not ever
3    reviewed the OPS file.  That's not what I am saying,
4    sir.  Would you please reask the question so that I
5    can --
6        Q      I'm trying to ask you what is different
7    between what was presented at the hearing that made
8    you feel like you could not sustain as opposed to
9    what the people underneath you got, and I thought I
10   was hearing you say you can't do that right now, and
11   I was trying to figure out, is the reason you can't
12   do it right now, because you have not reviewed the
13   OPS file as relates to this -- to right now for this
14   depo?  That's what I was trying to see.
15       A      Oh, no.  That is not what I am saying.
16       Q      Oh, okay.  All right.  Well -- okay.
17   Well, I guess I misunderstood, then.  Why can't you
18   tell me what was different, then?  Please explain
19   that to me, then.
20       A      I don't know what was explained to them
21   during the time of the investigation.  I made a
22   decision on the information presented to me at the
23   time of the hearing and the subsequent information
24   that was provided back to me from the OPS commander.
25       Q      I guess what I am trying to say is,

Page 291

1    when you heard the stuff at the hearing, you did
2    have the information that they were provided in
3    front of you with the OPS file; right?
4        A      Yes.
5        Q      So what was different?  You -- before
6    the hearing or at this time of the hearing, you had
7    the whole file, their recommendations, their
8    findings, the evidence, the statements, everything.
9    Then you get this hearing, and you hear from Cadeau
10   and you hear from his representative.  What was
11   different, is what I am trying to figure out?
12       A      The video testimony.  The video that
13   was presented and the testimony of the
14   representative and the officer.
15       Q      But you agree with me the officer had
16   testified numerous times before the hearing on what
17   happened; correct?
18       A      I did not agree with that.
19       Q      You didn't see the number of statements
20   that Cadeau gave about what happened, before the
21   hearing?
22           MS. SELLERS:  Object to the form.
23           THE WITNESS:  The question --
24           MS. SELLERS:  I'm sorry.  Objection to
25       form of the question.  To the extent that you

Page 292

1    can answer, Chief, you can do so.
2            THE WITNESS:  I'm sorry, sir.  That
3        wasn't your question.  That wasn't the
4        question that I answered.
5    BY MR. WILLIAMS:
6        Q      Okay.  Well, I'm asking you.  You knew
7    before the hearing, that there was evidence in the
8    file of what Cadeau's statements were, what he said
9    happened before the hearing?
10       A      That's correct.
11       Q      And you knew the video had been seen by
12   the investigation officers and other people before
13   the hearing?
14       A      I don't recall that.  I do not recall
15   if the OPS investigators had seen the video that was
16   presented to me at the time of the hearing.
17       Q      I want you to assume they had it and
18   they saw it.  Okay?
19       A      Okay.
20       Q      What other -- the only other thing that
21   was not a part was the -- I guess the
22   representative's statement.  Is that your
23   understanding?  The only thing different besides --
24   you don't know about the video, but is anything else
25   different?

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner
January 13, 2021

Page 293

```
 1      A       Other than the -- the information that
 2  was presented at the time and of course my
 3  consultation with counsel, no.
 4      Q       Did anyone change their recommendation
 5  after the hearing other than -- well, did any of
 6  those people underneath you -- your chief, your
 7  assistant chiefs, your deputy, the OPS commander --
 8  did they change their recommendation?
 9      A       That's not part of the process, no.
10  No, sir.
11      Q       So the answer to my question is no?
12      A       That's correct.
13      Q       Do you know that -- are you familiar
14  with the fact that Cadeau was involved in an
15  incident regarding use of force?  That he was sued
16  and the city of Atlanta was sued?  Were you familiar
17  with that?
18      A       I -- I do recall a conversation about a
19  suit brought by a -- on a separate situation on
20  Cadeau.
21      Q       Was -- that suit or claim being
22  presented to the city, was that going on when you
23  made this decision about Cadeau?
24      A       I -- I don't think so.  I don't know.
25  I can't answer that question.
```

Page 294

```
 1      Q       Did you -- do you know that the city
 2  actually settled that claim?
 3      A       I do know that the city did settle a
 4  claim on an action against Cadeau.
 5      Q       Was it the claim involving people who
 6  were involved in the -- the Flux Festival
 7  regarding --
 8      A       I don't --
 9      Q       Do you remember what the circumstances
10  regarding that is?
11      A       No, sir.
12      Q       How did you come to find out that the
13  case was settled by the city of Atlanta?
14      A       I can only -- during the time a
15  settlement on behalf of the city of Atlanta would
16  have been discussed in public safety or exec --
17  finance, and I would have known at that time.
18  However, for this purpose it was after having
19  consultation with my attorney.
20      Q       Do you -- have you read anything
21  regarding the shooting involving Mr. Hall and Cadeau
22  that occurred in 2017?
23      MS. SELLERS:  Object to the form of the
24      question.  To the extent that you can answer,
25      Chief, you may do so.
```

Page 295

```
 1      THE WITNESS:  I think I do recall
 2      reading something after the incident
 3      occurred.
 4  BY MR. WILLIAMS:
 5      Q       The incident involving the Wet Willie
 6  truthfulness and the OC spray, that happened at a
 7  extra job situation.  Is that your understanding?
 8      A       It is.
 9      Q       The incident involving Mr. Hall also
10  happened at an off-duty extra job situation.  There
11  was an incident involving Mr. Cadeau where he had a
12  courtesy complaint sustained and an allegation of
13  use -- excessive use of force at a -- while he was
14  extra job at a Jay-Z concert.  Do you recall ever
15  hearing anything about that?
16      A       No, sir.
17      Q       Do you recall ever hearing about an
18  incident in 2014 was a courtesy complaint made
19  against Cadeau regarding off-duty extra job as he
20  was doing traffic for Dunkin' Donuts?
21      A       No, sir.
22      Q       You ever recall hearing incident about
23  sleeping in the car and when he was asked about it
24  to a supervisor, he said he was not sleeping?  Do
25  you recall ever hearing that?
```

Page 296

```
 1      A       No, sir.
 2      Q       If he lied to his supervisor about
 3  sleeping in the car, that would have also been a
 4  truthfulness violation; correct?
 5      MS. SELLERS:  Objection --
 6      THE WITNESS:  Yes.
 7      MS. SELLERS:  -- to the form of the
 8      question.  To the extent that you can answer,
 9      Chief, you can do so.
10      THE WITNESS:  Yes.
11  BY MR. WILLIAMS:
12      Q       Do you have any pending lawsuits
13  against you other than this one as -- regarding your
14  role as an APD chief of police?
15      A       I'm sure that I do.
16      Q       Well, tell me, what are they?
17      A       I don't know what they are, sir.  They
18  are -- anytime a officer have an action, there were
19  multiple lawsuits that was filed against the city of
20  Atlanta on actions of police officers that also
21  included the chief of police during the time that I
22  was in my tenure, so I don't -- I can't answer -- I
23  cannot tell you what they are.
24      Q       Well, let me ask you this way.  Have
25  you received a service of a complaint where you were
```

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

---

Page 297

1  a defendant like you are in this case?

2          MS. SELLERS:  Object to the form of the

3      question.  To the extent that you can answer,

4      Chief, you may do so.

5          THE WITNESS:  I think you deposed me on

6      something earlier.  I just -- I can't answer

7      that question, sir.  Sorry.

8  BY MR. WILLIAMS:

9      Q       Who's representing you on these

10 potential pending cases, then?  I'll go ask them.

11 Who is that?

12     A       I do not -- I don't have any evidence

13 that -- I don't know if I'm being represented on any

14 other cases.  Let's say it that way, because I don't

15 know.  I've answered the question.  I cannot answer

16 that question.  I don't know if I'm being

17 represented or being sued for any other action.

18     Q       Who would you ask to answer that

19 question?

20     A       I would call the city of Atlanta law

21 department.

22     Q       Okay.  As a result of this shooting, in

23 May of 2017 Cadeau was terminated.  Did you know

24 anything about that?

25     A       Other than information that was

---

Page 298

1  provided by counsel.

2      Q       Do you know if they had a disciplinary

3  hearing like they had for -- that you -- that you

4  gave him for the Wet Willie incident?

5          MS. SELLERS:  Object to the form of the

6      question.  To the extent that you can answer,

7      you can, Chief.

8          THE WITNESS:  I do not.

9  BY MR. WILLIAMS:

10     Q       Based on your understanding of the

11 policy and procedures, would a hearing been

12 required?

13     A       Under my administration there would

14 have been.

15     Q       Do you think a citizen finding an

16 officer sleeping in a car, is that -- do you think

17 that's a discredit to the department?

18     A       Yes, sir.

19     Q       Why?

20     A       It would bring a negative approach on

21 the Atlanta Police Department, and the officer was

22 not representing himself in the appropriate way at

23 all times.

24     Q       Didn't you have some issues with

25 ACRB -- when I say you, I mean the department during

---

Page 299

1  your tenure -- where they felt like you were not

2  fairly considering their recommendations of an

3  officer being sustained based on their

4  investigation?

5          MS. SELLERS:  Object to the form of the

6      question.  To the extent that you can answer,

7      Chief, you may do so.

8          THE WITNESS:  There were issues

9      associated with the way that we determined

10     our direction or our conclusion of cases with

11     the ACRB and the way the police department

12     determined their -- their --

13 BY MR. WILLIAMS:

14     Q       And what was your -- what was the issue

15 that was brewing between the APD and the ACRB

16 about -- regarding that?

17     A       There was a number of issues.  First,

18 it started when I first took over and the ACRB was

19 initially established, where officers were not

20 compelled to testify the ACRB.  We changed our

21 policy and made it responsible -- and made it

22 mandatory that the officers had to go to ACRB.

23 That's one -- first issue.

24          Then the other issue came up with

25 officers investigations having dual processes where

---

Page 300

1  there was an administrative investigation going

2  forward on behalf of OPS and the City of Atlanta

3  Police Department and one going forward with the

4  ACRB.

5          They would conclude their investigation

6  prior to the OPS complaint was -- would be

7  completed, and ultimately we had to come back and

8  basically say that we objected to their findings

9  because the investigation within the Atlanta Police

10 Department was not concluded.

11          We then had a requirement that we had

12 to respond back to the ACRB once the OPS

13 investigation was concluded, and then that

14 information was done at that time.  Whether we came

15 to the same decision that the investigators in ACRB

16 and the board came to, there was always a challenge

17 in coming to a consistent decision.  If -- APD, the

18 investigators within the ACRB, and the board came to

19 the same conclusion on multiple cases.

20     Q       You guys have a pretty low agreement

21 rate with them regarding sustained violations, am I

22 correct, during your tenure?

23          MS. SELLERS:  Object to the form of the

24      question.  To the extent you can answer,

25      Chief, you can do so.

---

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                        January 13, 2021

Page 301

1           THE WITNESS:  I don't remember the
2    exact number, sir, but I know that we did not
3    agree with them on a regular basis.
4    BY MR. WILLIAMS:
5       Q        Well, didn't the head of the ACRB in
6    '15 and '16 go to the city counsel and complain and
7    in their annual report specifically talk about the
8    fact that you-all had a low agreement rate with them
9    regarding sustained violations?  Weren't you made --
10   notified of that?
11      A        I was, yes, sir.
12      Q        So there was allegations or a position
13   from the ACRB that the city of Atlanta and the OPS
14   department was -- had a low percentage of agreement
15   rate regarding sustained violations; am I correct?
16      A        Yes.
17      Q        They took those complaints to the city
18   council; am I correct?
19      A        Yes.
20      Q        And then they had a new ordinance
21   drafted because they felt like they were not getting
22   appropriate cooperation and responses from you and
23   the APD; am I correct?
24      A        I guess that's the reason they sent --
25   went to the -- I can't assume that, sir, but yes, I

Page 302

1    would just imagine that that's why they made that
2    decision to go to the city council.
3       Q        You guys use the same standard of proof
4    as they do; correct?
5       A        I don't know if that's the case.  I
6    don't know what they -- what they use as a standard
7    of proof, sir.
8       Q        You were not familiar with the fact
9    that they use preponderance of the evidence proof?
10      A        I was not, no.  No, sir.
11      Q        Okay.  I took their depositions, and
12   they use that standard of proof.  Did you never ask
13   at any point during your tenure, what proof or
14   standard you guys are using?
15      A        No, sir.
16      Q        That may explain why you-all were on
17   different pages, if you think about it.  You never
18   inquired what they -- what their standard was?
19           MS. SELLERS:  Objection to the form of
20      the question.  I think we already asked and
21      answered that question.  You can answer it
22      this last time, Chief.
23           THE WITNESS:  No, sir.
24           MR. WILLIAMS:  You don't need to -- I
25      just found it odd.

Page 303

1    BY MR. WILLIAMS:
2       Q        Would it surprise you in 2015 that the
3    ACRB in their annual report says that your -- APD,
4    the chief's discipline on sustained ACRB complaints,
5    were only 11 percent?
6       A        No, it wouldn't.
7       Q        It would not?
8       A        No, sir.
9       Q        Do you think that's acceptable?
10      A        Yes.
11      Q        Do you think that ACRB was less
12   qualified than the OPS to conduct an investigation
13   and make a determination?
14      A        I can't answer that.
15      Q        Why not?
16      A        I don't know the -- the skill set of
17   the investigators that concluded those
18   investigation, and then I will get on record in
19   saying this:  The investigative findings were not
20   consistent with the board's decision consistently
21   either, so I'll just leave it there.
22           MR. WILLIAMS:  Can we take a
23      couple-minute break?  I might be finished.
24           MS. SELLERS:  Okay.
25           THE VIDEOGRAPHER:  Going off the video

Page 304

1    record.  The time is 5:17.
2           (A recess was taken.)
3           THE VIDEOGRAPHER:  We're back on the
4    record.
5    BY MR. WILLIAMS:
6       Q        Chief Turner?
7       A        Yes, sir.
8       Q        Regarding the -- the com -- the lawsuit
9    and -- that was settled with Cadeau, were you
10   present at the city council meeting that approved
11   that -- that settlement?  Public safety?
12      A        I do not -- I don't believe I was
13   present at the city council meeting.
14      Q        Was there any repercussions for Cadeau
15   as a result of that settlement?
16      A        No.
17      Q        Did he get any additional training?
18      A        I don't -- I can't answer that
19   question.  I don't know the answer to that.
20      Q        So that we can understand when we go to
21   this issue with the court, when you had
22   communications or got input or opinions from legal
23   counsel, who was present other than counsel?  Was
24   anybody other than counsel present?
25      A        I can't recall that, and I say that

Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 77 of 110
Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner
January 13, 2021

Page 305

1  because at some points -- at different times in
2  disciplinary hearings there would be an opportunity
3  for the counsel and I to -- to go into my office and
4  -- and to talk about a specific crime -- charge.
5  And there were other times that the group, which be
6  the OPS commander as well as the counsel, we would
7  have those conversations then at the table.  So I
8  cannot answer that question.  I wish I could.
9      **Q     No, that is fair.  I understand the**
10 **distinction.  This incident -- this issue regarding**
11 **an opinion or advice or thoughts from legal counsel**
12 **regarding the Cadeau incident regarding truthfulness**
13 **that you were involved in, would that have occurred**
14 **after the hearing was over?  At -- on that day was**
15 **what I am really getting at.**
16     A      Initial conversation would have
17 occurred after the hearing, and we would have
18 provided information back to the -- the
19 representative and the officer within three days of
20 the hearing on our decision.
21     **Q      Although the decision was your**
22 **decision, you made that decision in conjunction with**
23 **legal advice from the city of Atlanta legal**
24 **department.  Is that fair?**
25     A      With counsel having an input on the

Page 306

1  decision, yes, sir.
2            MR. WILLIAMS:  That's all the questions
3  I have for you at this time, sir.  Thank you.
4            THE WITNESS:  Thank you.
5            MS. SELLERS:  None for me.
6            MR. WILLIAMS:  Thank you, Mr. Turner,
7  for your time and your patience.
8            THE VIDEOGRAPHER:  The time is 5:29.
9  We're going off the record.
10           (Discussion ensued off the record.)
11           THE VIDEOGRAPHER:  The time is 5:31.
12 We're back on the record.
13           MS. SELLERS:  Yes.  While the defense
14 does not have any questions for Chief Turner,
15 the defense did want to request that the
16 video, the screen graphs, the screen share --
17 I don't know; I may not be using the
18 appropriate terminology, but it is, based on
19 my looking at my screen, this Zoom has been
20 recorded in addition to the recording that
21 the videographer is doing of Chief Turner.
22           It's my understanding that the
23 recording of the Zoom is also showing the
24 documents that have been presented and the
25 pages that have been presented, and I'm

Page 307

1  placing my request that that -- this
2  recording be preserved.  I've asked who to
3  make that request to.  I will certainly make
4  it to Mr. Brezina's firm of Elizabeth Gallo.
5  Is that correct, Mr. Brezina?  Elizabeth
6  Gallo?
7            THE REPORTER:  Yes, ma'am, that is
8  correct.
9            MS. SELLERS:  I will certainly make
10 that request to Elizabeth Gallo, but I'd like
11 to keep this -- the Zoom screen recording
12 preserved.  Thank you.
13           THE REPORTER:  Are we off the record?
14           THE VIDEOGRAPHER:  Going off record,
15 5:31.
16           (Discussion ensued off the record.)
17           (The following transpired off the video
18 record.)
19           THE REPORTER:  Does Mr. Williams want
20 this transcribed?
21           MR. WILLIAMS:  Yes, we do want it
22 transcribed.
23           MR. STARKS:  Yes, Tom.
24           THE REPORTER:  The usual time, or --
25           MR. STARKS:  You said you can have it

Page 308

1  by Monday, so if you can have it by Monday,
2  that would be our request.
3            THE REPORTER:  Yes, sir, we can.  Does
4  Miss Sellers want a copy, then?
5            MS. SELLERS:  Yes.  A copy to us with
6  the same payment arrangement --
7            MR. STARKS:  That same --
8            MS. SELLERS:  -- as plaintiff, and
9  since they're going to get theirs on Monday,
10 if we can have ours Monday, we appreciate
11 that too, Tom.
12           THE VIDEOGRAPHER:  And just so everyone
13 knows, we went six hours and one minute
14 today.  Just so everyone has the right count.
15           (Deposition concluded at 5:30 p.m.)
16           (Pursuant to Rule 30(e) of the Federal
17 Rules of Civil Procedure and/or O.C.G.A. 9-11-30(e),
18 signature of the witness, GEORGE N. TURNER, has been
19 reserved.)
20
21
22
23
24
25

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

---

Page 309

COURT REPORTER CERTIFICATE

1
2
3  STATE OF GEORGIA   )
4  COUNTY OF GWINNETT )
5
6        I hereby certify that the foregoing
7  transcript was taken down, as stated in the
8  caption, and the questions and answers thereto
9  were reduced to typewriting under my direction;
10  that the foregoing pages represent a true,
11  complete and correct transcript of the evidence
12  given upon said hearing, and I further certify
13  that I am not of kin or counsel to the parties
14  in the case; am not in the employ of counsel
15  for any of said parties; nor am I in any way
16  interested in the result of said case.
17
18
            Thomas R. Brezina, B-2035
19
20
21
22
23
24
25

---

Page 310

DISCLOSURE OF NO CONTRACT

1
2
3        I, Thomas R. Brezina, do hereby disclose
   pursuant to Article 10.B of the Rules and
4  Regulations of the Board of Court Reporting of the
   Judicial Council of Georgia that Elizabeth Gallo
5  Court Reporting, LLC was contacted by the party
   taking the deposition to provide court reporting
6  services for this deposition and there is no
   contract that is prohibited by O.C.G.A. 15-14-37(a)
7  and (b) or Article 7.C of the Rules and Regulations
   of the Board for the taking of this deposition.
8
9        There is no contract to provide court reporting
   services between Elizabeth Gallo Court Reporting,
   LLC or any person with whom Elizabeth Gallo Court
10  Reporting, LLC has a principal and agency
   relationship nor any attorney at law in this action,
11  party to this action, party having a financial
   interest in this action, or agent for an attorney at
12  law in this action, party to this action, or party
   having a financial interest in this action.  Any and
13  all financial arrangements beyond our usual and
   customary rates have been disclosed and offered to
14  all parties.
15        This 18th day of January, 2021.
16
17
18
19
20
21
22
23
24
            Thomas R. Brezina, B-2035
25          Elizabeth Gallo Court Reporting, LLC

---

Page 311

1  CASE:  Noel Hall and Christina Hall vs City of Atlanta, et al.
2  NAME OF WITNESS:   George N. Turner
3        The preceding deposition was taken
4  in the matter, on the date and at the time and
5  place set out on the title page hereof.
6      It was requested that the deposition
7  be taken by the reporter and that same be
8  reduced to typewritten form.
9      It was agreed by and between counsel
10  and the parties that the deponent will read and
11  sign the transcript of said deposition. Said jurat
12  is to be returned, within 30 days after the transcript
13  is made available, to the following address:
14        Elizabeth Gallo Court Reporting, LLC
15        2900 Chamblee Tucker Road
16        Building 13, First Floor
17        Atlanta, Georgia 30341
18  If an errata is executed and returned
19  to EGCR within the 30 days allocated by law,
20  the executed errata will be sent to the taking
21  attorney for filing with the original transcript.
22  Should an executed errata not be forwarded from
23  EGCR to the taking attorney for filing, the
24  deposition was not reviewed and signed by the
25  deponent within 30 days.

---

Page 312

1  NAME OF CASE:     Noel Hall and Christina Hall vs City of Atlanta, et al.
   DATE OF DEPOSITION: 01/13/2021
2  NAME OF WITNESS:   George N. Turner
   EGCR JOB NO.:   73719
3
4            CERTIFICATE
5      Before me this day personally
   appeared GEORGE N. TURNER, who, being duly
6  sworn, states that the foregoing transcript of
   his/her deposition, taken in the matter, on
7  the date and at the time and place set out on
   the title page hereof, constitutes a true and
8  accurate transcript of said deposition.
9
10        GEORGE N. TURNER
11      SUBSCRIBED and SWORN to before me
12  this _____ day of _____ 20____.
13  in the jurisdiction aforesaid.
14
15  My Commission Expires      Notary Public
16      STATE OF _____
17      COUNTY/CITY OF _____
18
19      []   No changes made to the Errata Sheet;
20  therefore, I am returning only this signed,
21  notarized certificate.
22      []   I am returning this signed,
23  notarized certificate and Errata Sheet with
24  changes noted.
25

---

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

*January 13, 2021*

Page 313

```
1            Errata Sheet
2    NAME OF CASE:      Noel Hall and Christina Hall vs City of Atlanta, et al.
3    DATE OF DEPOSITION: 01/13/2021
4    NAME OF WITNESS:   George N. Turner
5    Reason Codes: 1. To clarify the record
6                  2. To correct transcription errors
7                  3. Other
     _____
8    _____
9    Page _____ Line _____ Reason _____
10   From _____ to _____
11   Page _____ Line _____ Reason _____
12   From _____ to _____
13   Page _____ Line _____ Reason _____
14   From _____ to _____
15   Page _____ Line _____ Reason _____
16   From _____ to _____
17   Page _____ Line _____ Reason _____
18   From _____ to _____
19   Page _____ Line _____ Reason _____
20   From _____ to _____
21   Page _____ Line _____ Reason _____
22   From _____ to _____
23
24   SIGNATURE:_____DATE:_____
25            George N. Turner
```

Page 314

```
1            Errata Sheet
2    NAME OF CASE:      Noel Hall and Christina Hall vs City of Atlanta, et al.
3    DATE OF DEPOSITION: 01/13/2021
4    NAME OF WITNESS:   George N. Turner
5    Reason Codes: 1. To clarify the record
6                  2. To correct transcription errors
7                  3. Other
     _____
8    _____
9    Page _____ Line _____ Reason _____
10   From _____ to _____
11   Page _____ Line _____ Reason _____
12   From _____ to _____
13   Page _____ Line _____ Reason _____
14   From _____ to _____
15   Page _____ Line _____ Reason _____
16   From _____ to _____
17   Page _____ Line _____ Reason _____
18   From _____ to _____
19   Page _____ Line _____ Reason _____
20   From _____ to _____
21   Page _____ Line _____ Reason _____
22   From _____ to _____
23
24   SIGNATURE:_____DATE:_____
25            George N. Turner
```

Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 80 of 110
Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                    January 13, 2021

_____
**Exhibits**
_____

**Exhibit 01** 30:8,9,22

**Exhibit 02** 31:5,12

**Exhibit 03** 47:24 48:2,6
51:1 80:24 81:1 84:8

**Exhibit 04** 80:20,23
81:4 82:16 118:21

**Exhibit 05** 114:21,24
115:12

**Exhibit 06** 115:14,18
116:3,4,9 117:14
131:10,11 133:6,13,17
138:9

**Exhibit 07** 116:13,16
117:15 133:10 138:11
139:1

**Exhibit 08** 139:14,17

**Exhibit 09** 153:24
154:3,4 157:23 158:4,5

**Exhibit 10** 162:2,6,22
170:3

**Exhibit 11** 169:25
170:4,17

**Exhibit 12** 195:10,18,
24

**Exhibit 13** 197:7,10,19
198:14 201:13

**Exhibit 14** 206:8,12,21
214:22

**Exhibit 15** 215:13,15
216:3,7,13,25

**Exhibit 16** 217:3

**Exhibit 17** 220:21
221:12

**Exhibit 18** 4:22

**Exhibit 19** 4:23

**Exhibit 20** 5:3

**Exhibit 21** 87:13

**Exhibit 22** 5:6

**Exhibit 23** 5:7

**Exhibit 24** 5:9

**Exhibit 25** 5:10

**Exhibit 26** 5:11

**Exhibit 27** 5:15

**Exhibit 28** 5:17

**Exhibit 29** 5:19

**Exhibit 30** 224:16,23,
24

**Exhibit 31** 5:23

**Exhibit 32** 6:3

**Exhibit 33** 6:5

**Exhibit 34** 6:7

**Exhibit 35** 6:9

**Exhibit 36** 6:11

**Exhibit 37** 6:13

**Exhibit 38** 6:15

**Exhibit 39** 237:4,7,25
258:9

**Exhibit 40** 271:11
272:20

**Exhibit 41** 6:21

**Exhibit 42** 6:22

**Exhibit 43** 7:3

**Exhibit Binder** 3:6 4:1
5:1 6:1 7:1

_____
**0**
_____

**001609** 5:13

**02** 4:4

**0431** 262:17 263:3

**0635** 97:6

**0635UAF** 94:4

**08** 136:2

**08C0709CTSY** 134:24
135:14 137:1,19

_____
**1**
_____

**1** 3:8 7:7 30:9,22 31:1
133:19 134:7 138:15
258:9

**10** 93:19 105:20 113:20
118:22 119:15,25 120:6
131:13 132:6,17 162:2,
6,22 170:3 197:21

**100** 2:5

**101** 162:7

**1010** 4:7 162:7,25

**10:09** 30:4

**10th** 35:6 40:25

**11** 3:4 4:9 169:25 170:4,
17 196:1 303:5

**114** 3:16

**115** 3:19

**116** 3:22

**11:59** 118:12

**12** 111:25 138:16
195:10,18,24

**12:33** 118:14

**12th** 115:4

**13** 4:12 8:2 9:4 138:16
162:8 195:10 197:7,10,
19 198:14 201:13
214:1,10 217:5 262:15

**139** 4:3

**13th** 261:25

**14** 4:14 41:4,17 42:16
94:3 97:6 206:8,12,21
213:25 214:6,9,12,16,
22,25 215:1 238:8
262:17 263:3

**1410431** 238:1

**14th** 35:19,23 37:4

**15** 4:16 111:23 112:2
151:9 165:24 166:4
169:4 198:13 212:25
214:7,11,12 215:13,15
216:3,7,13,25 250:17,
19 251:7,11,13 301:6

**153** 4:5

**16** 13:6 165:24 166:10
169:4 198:13 214:12
217:3 301:6

**162** 4:6

**169** 4:9

**16th** 43:19

**17** 213:23 220:21
221:12 224:18

**17-4-20** 5:5 86:18,20
87:2 88:3,13 89:25
91:13,17 92:6

**17th** 53:18

**18** 4:22 5:21 13:25 14:3

**18th** 225:20 226:5

**19** 13:20,23 14:1 141:10

**195** 4:10

**197** 4:12

**1981** 76:17

**19th** 238:8

**1:32** 161:16

**1:40** 161:13

**1:44** 161:18

_____
**2**
_____

**2** 3:10 31:1,5,12 138:15
198:21,23 240:22
250:23 258:9

**20** 5:3 112:2 145:6,9
166:7

**20-hour** 36:9

**20-minute** 111:23

**2008** 157:23

**2010** 4:9 38:21 39:15
40:19 41:1 88:1 94:2
97:1 105:20 129:12
142:24 155:8 164:18
170:7,14 197:21 201:18
206:14 214:25 215:1,18

**2011** 4:11 196:23

**2013** 217:5 220:25

**2014** 110:4 151:9
165:24 166:4 169:4
225:20 226:5,16,24
238:9 247:1 261:25
262:15 264:24 295:18



Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 81 of 110

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                                     January 13, 2021

**2015** 5:6 154:6,13 166:10 170:8,12 197:14 201:15 215:15 226:6 227:4,10 231:13 232:13 260:11 264:5 272:19 303:2

**2016** 5:7 13:5 35:7 38:22 39:16 40:20 41:1 87:6 88:1 94:12 105:20, 21 129:12 132:14 142:24 155:8 162:8 170:14 197:22 201:18 215:18

**2017** 5:9 12:19 41:18 42:18 53:18 54:18 131:21 196:1 294:22 297:23

**2018** 4:4 139:19 140:21 145:13 148:20

**2019** 13:14 48:9,14 49:24

**2020** 4:12 36:14 81:12 115:4,8,21 116:20 131:12 133:18 171:5 263:10

**2021** 8:2 9:4

**2022** 4:14

**2048** 261:19

**2049** 261:19,20

**206** 4:14

**2060** 4:16 215:15

**2080** 4:5 154:4

**2090** 4:18 217:4

**21** 87:13

**214** 4:16,17,20,22,23 5:3,5,6,7,9,10,11,15,17, 19,21,23 6:3,5,7,9,11, 13,15,17,19,21,22 7:3

**21st** 92:9,13 93:5,14 116:19 133:18 174:17

**22** 214:14 226:16,24

**23** 145:9 154:13 214:14 272:19

**23rd** 154:6

**24** 5:9 138:16

**25** 145:6,11 235:12

**25th** 41:18 42:17 54:17 131:21

**2600** 2:5

**27** 5:15

**28** 220:25

**29** 5:19 197:14

**29th** 238:9

**2:21** 190:14

**2:30** 190:16

**2:35** 195:16

**2:37** 195:20

**2nd** 48:9,14 139:19 140:21 145:13

**3**

**3** 47:24 48:2,6 51:1 80:24 81:1 84:8 138:15 240:22 247:10 258:9

**3.3** 171:2 209:17

**3/3/2016** 5:10

**30** 3:8,10 5:21 224:16, 24

**30(e)** 308:16

**3010** 4:21 220:24

**3030** 4:22

**30303** 2:6

**30337** 2:14

**3060** 4:24

**3120** 5:3

**32** 6:3

**33** 6:5

**3355** 2:14

**34** 6:7

**35** 6:9

**36** 6:11

**37** 6:13

**38** 6:15

**39** 6:17 145:4 237:4,7, 25 258:9

**3:04** 213:8

**3:05** 213:1

**3:20** 213:2

**3:24** 213:10

**4**

**4** 3:14 80:20,23 81:4 82:16 86:14,17 87:8,25 118:21 138:15 170:8 174:21 215:15 240:22 258:9

**4.1** 166:13 171:16

**4.1.03** 97:2 106:2,13

**4.1.1** 171:16 174:21

**4.1.4** 238:15

**4.1.5** 166:13

**4.103** 94:2 104:6

**4.13** 180:6

**4.14** 182:3

**4.15.2** 159:5

**4.2** 168:2

**4.2.5** 263:13

**4.2.50** 238:14

**4.21** 184:24

**4.23** 168:13

**4.7.1B** 263:10

**40** 6:19 106:1 271:11 272:20

**404 222-0170** 2:7

**404 222-9922** 2:6

**404 684-9515** 2:15

**404 688-4503** 2:15

**41** 6:21

**43** 7:3,7 214:6,7,17

**47** 3:11

**4:35** 270:15

**4:39** 270:17

**5**

**5** 34:3,7 114:21,24 115:12 138:15

**5:17** 304:1

**5:29** 306:8

**5:30** 308:15

**5:31** 306:11 307:15

**6**

**6** 34:9 38:16,17 81:12 115:14,18 116:4,9 117:14 131:11 133:6, 13,17 138:9

**64** 247:10

**7**

**7** 115:21 116:13,16 117:15 133:10 138:11, 15 139:1

**8**

**8** 4:3 50:5 52:7 54:3 138:15 139:14,17

**80** 3:14

**85** 240:18

**9**

**9** 4:5 138:15 153:24 154:3,4 157:23 158:5

**9-11-30(e)** 308:17

**9:30** 30:17

**9:34** 9:5

**9:59** 30:2

Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 82 of 110

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                                      January 13, 2021

## A

**A.J.** 2:18

**a.m.** 9:5

**abide** 79:11 194:1

**ability** 31:7 72:5,22
85:9 113:13 130:19
139:10 143:13 169:12
173:9,11,13 208:15
226:7 253:21

**abreast** 32:21

**absolutely** 64:13 84:12
108:9 124:5 269:6

**academy** 145:15

**accept** 46:5 98:6

**acceptable** 303:9

**acceptance** 200:18

**access** 21:1,4,14 28:2
29:15 85:9,18 86:5
112:11 113:2,4 119:2,4,
6 169:8 209:12 264:9,
12

**accessible** 208:10

**accordance** 199:3
263:9

**account** 199:17,18
212:1 219:25 221:16
222:5

**accountability** 108:11
124:3

**accountable** 141:24
142:5,17 150:5 166:14
167:10,17 247:21 268:6

**accounted** 220:13

**accurate** 46:7 81:18
83:14 86:16 115:9
137:4 141:2 194:15

**accurately** 14:25

**achievement** 207:6

**acknowledge** 90:17

**acknowledgment**
140:15

**ACRB** 5:6,10 298:25
299:11,15,18,20,22
300:4,12,15,18 301:5,
13 303:3,4,11

**act** 62:4,6,11 65:14
71:10 149:22 182:3
187:17,22 188:5,6
248:5,8

**acted** 188:17

**acting** 152:22 153:4,13
192:5

**action** 53:16,17,19,21
54:1 56:5,23 58:13
59:1,2,4,11 63:13 65:3
67:13 68:2 69:21 73:17
141:21 144:16 146:12
159:13 160:14 171:16
174:25 175:18 176:9,
11,24 182:17 186:20
193:15 198:8 202:15,24
204:3 222:13 245:11
246:2 257:9 259:11
260:1 294:4 296:18
297:17

**actions** 53:1 54:8,17,
18 55:2,3,11,17 56:16,
21 58:23,24 59:7 71:22
79:19 98:9 106:13
121:21 143:13 153:15
171:18 176:23 178:22
181:18 185:15 193:24
199:3 224:10 256:21,22
257:21 259:25 264:6
296:20

**active** 211:22

**actively** 209:18 224:6

**acts** 174:19 175:4,6
176:2 193:18

**actual** 19:17 47:4 80:18
87:10 202:12 204:2
219:13

**add** 98:24 251:21
268:22 269:2

**added** 119:25

**addition** 306:20

**additional** 25:11
100:17,18 101:2,5,7,8,
11,15,19,25 121:13

**address** 11:22

**adequate** 155:4,6,9,19,
23

**adequately** 29:12

**adhere** 176:22

**administered** 246:2

**administration** 17:16
168:6 198:4 201:23
202:22 256:22 298:13

**administrative** 219:16
223:6 245:11 256:21,23
300:1

**admission** 3:21 25:6
26:24 132:6,17 133:6,8
135:7 241:20 242:13
249:9

**admissions** 3:24
24:21 25:15,18 26:13
27:9 28:5,15 29:15
115:19 116:3,18
117:14,15 131:12
133:18 138:16,24 139:1

**admit** 24:22 45:24
132:11,20 136:9,13
137:23 138:7 271:18
276:10

**admitted** 41:14 46:1,6
242:25 245:16

**admittedly** 255:4

**admitting** 256:7

**admonishment**
199:12

**advice** 98:1,13 99:8,15
100:7 110:10,17,25
117:2,5,16 139:2 282:4
305:11,23

**advising** 129:8

**affect** 256:13

**affected** 227:18 228:2,
5,9 256:4

**affecting** 253:20

**affirm** 9:24

**affirmed** 9:22

**agent** 185:6

**aggravated** 62:15,16
63:4,16 64:5 76:6,25
77:23 78:14 234:5,13

**aggravating** 199:5

**agree** 28:1 42:19,21
53:5 54:7 64:15 92:11,
24 93:4,16 104:19
108:2 109:25 123:16
141:14,18,25 142:9,11,
16 143:17 144:1,6,11
145:14,17,23 146:16
147:18,22 148:14,19,22
149:5,9,15,25 152:7,18,
24 155:14,17 166:20
169:17 172:8 174:10,24
180:13 181:7 242:23
267:1 277:5 279:15
283:4 291:15,18 301:3

**agreeable** 10:19,23
15:8,23

**agreed** 269:22

**agreement** 8:6,9,10
10:3 126:23 300:20
301:8,14

**ahead** 23:17 58:5 77:13
82:2 90:5 97:12 213:15
228:16 239:10 261:13
275:11

**AJ** 268:17

**allegation** 45:25 63:2,
8,18 69:19 132:16
169:18 231:17 260:10
295:12

**allegations** 20:6,11
41:5 45:4,8 46:2 63:15
64:17 66:9 67:6 68:8
80:9 258:8 301:12

**Allen** 41:21

**allowed** 10:10 38:7,11
75:10 176:8,9,12,18
254:4 268:9

**ambiguous** 132:9

**amended** 3:8,10,13
23:24,25 31:13 48:8



Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 83 of 110

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                    January 13, 2021

**Amendment** 32:7,15, 23 33:3,8,12,17 35:19, 23 37:1,5,14,22 38:8,12

**amendments** 32:8,21

**amount** 91:7 156:3 215:20

**analysis** 211:12 230:25

**analyze** 169:15

**Analyzer** 5:4

**and/or** 63:12 151:8 180:3 199:5 308:17

**Andressen** 166:3

**annual** 5:6,8,9 41:22 217:21 301:7 303:3

**answering** 51:8 137:6, 8

**answers** 27:15 28:6 50:4 51:25 80:25 140:12 252:23

**antics** 68:21

**anytime** 114:5 158:16 181:15 296:18

**APD** 39:14 40:9 43:9,13 45:16 49:17 53:2 54:20 55:3,4,18 56:3 60:24 61:12,24 79:2 80:4 88:2,19 89:2 93:23,24 96:24 107:19 124:11 147:2 148:23 149:15 153:6 155:4,17 157:24 158:3 159:24 162:19 168:10,16 171:14 173:22 175:7 189:5,13 193:8,23 195:1 206:13 207:7 210:13 217:1 222:23 243:9 246:10 251:2 256:13 267:2,16 296:14 299:15 300:17 301:23 303:3

**APD's** 129:14

**APD.SOP** 94:1 97:1 162:6 171:5 196:23 263:10

**APDS** 106:6

**apologize** 34:12 50:24 77:13 84:11 208:24

214:14

**appearance** 182:17

**APPEARANCES** 2:1

**appeared** 226:1

**appears** 226:15 242:25

**applicable** 149:19 183:15,16

**applicant** 123:6

**application** 123:7 199:1

**applied** 37:15 78:25 103:14,18 109:19 223:21

**applies** 37:22

**apply** 75:1 103:20 110:2 176:24

**appointed** 40:2

**approach** 298:20

**appropriately** 185:20

**approved** 304:10

**approximately** 9:5

**area** 158:11 160:17,20 174:2

**areas** 218:20 220:7,13, 18

**Arena** 12:16

**arguing** 265:14

**argument** 230:25

**arrangement** 308:6

**arrest** 4:22 68:19 70:17

**arrested** 185:10

**arrestee** 60:20

**arrests** 67:19

**articulated** 101:12

**asks** 251:7

**asleep** 186:21 189:3,22

**ASP** 74:17

**aspect** 42:23

**aspects** 230:2

**assailant** 60:22 61:9 63:5

**assault** 62:5,16 63:4,16 64:5 65:13 67:3 76:7,25 77:23 78:14 231:15 234:4,13

**assigned** 125:13 126:13

**assignment** 125:19

**assist** 184:25

**assistant** 165:23,25 166:2 272:21,25 273:1, 7,15 274:6 279:16 283:5 293:7

**assisted** 271:5

**Association** 17:20 18:6,9 36:22

**associations** 18:1

**assume** 16:1 69:16 211:6 232:4,6,12,15,19 256:10 292:17 301:25

**assuming** 61:18 85:6 99:25

**assumptions** 61:18 177:17,18

**at-will** 147:3

**Atlanta** 2:4,6,10,11,14 3:11 4:5,6,9,10,12,14, 16,17,20,22,23 5:3,7,9, 19,23 9:17 10:5,8 11:22 12:15,21,25 13:3,5,8 16:23,25 17:2,6,9,10,11 19:7 20:12 21:17 22:10, 14,19 24:8,12 25:4 28:17 29:16 31:18 32:4, 13 35:1,11,14,15 38:21 39:2,10 40:18 42:23 43:18 46:16 48:7,24 49:4,5 51:2,6,19,21 54:24 58:15 62:24 65:8, 22 66:7 68:15 83:21,23 84:1,10,17,20 85:9,21 86:4 90:22 91:5 97:23 98:2,4,10,20,24 100:8 108:8 109:13,15,17,20 110:14 116:9 117:7,23, 24 120:1 128:6,13,16 129:25 130:19 131:6

132:14 133:3 140:6 141:22 142:4,7 143:19 144:12 145:18,24 146:17 147:7 148:11 150:1 151:4 155:13 163:4,5,21,22 164:20, 22 168:22 172:8 175:12 176:19 177:2 179:17 184:12 217:13 225:4 245:14 257:15 271:2 280:7 293:16 294:13,15 296:20 297:20 298:21 300:2,9 301:13 305:23

**attached** 7:7 263:2

**attempted** 224:7 255:8 256:18

**attempting** 220:6

**attended** 17:11 36:21

**attending** 8:19

**attention** 131:6 160:18 176:4,5 178:17,19 180:2 185:5,9,11,16 186:23 194:4

**attest** 83:16 94:15 95:12

**attested** 51:25

**attesting** 89:7 115:8 133:16

**attorney** 16:3 27:3 57:8 64:17 65:4 67:7 68:19 71:8 82:23 87:15 98:10 106:25 117:24 125:8, 17,25 126:10 127:2 133:1 138:14 192:12 216:15 224:20 237:9 246:11 253:13 256:1,19 257:17,22 270:20 275:6 276:13,16,20,24 277:17 294:19

**attorney's** 65:18 66:12 68:9,18 69:1 71:19 125:14 126:6,13 183:24 233:19 244:3 255:23 258:5,13,20 259:7 267:12

**attorney-client** 19:14 83:5 99:17 104:12 105:8 106:22 274:16,18 275:1,5 277:9 278:2,11,



Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 84 of 110

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                                 January 13, 2021

13,20

**attorneys** 8:14 9:7 19:4 82:24 125:9,12,13 126:25 127:4 139:6 257:16

**attributes** 147:19

**audio** 289:9

**August** 5:21 48:9,14 162:8 225:20 226:5 247:1

**authority** 47:5 53:20 113:7 139:10 147:8 166:15 167:10,11,15 168:5 169:13 198:7 202:23 203:5,9,10,15 285:25 286:3,6

**authorized** 41:19 42:17

**automatic** 63:6

**average** 79:12

**avoided** 185:7

**awake** 186:18

**aware** 22:8 71:7 80:5 124:9 133:23 134:21 135:13,19,22 136:3,6, 10,14,25 137:10,17 139:9 153:14 219:11 259:4 264:3

---

**B**

**back** 8:20 11:9 14:9 16:11 30:4 49:24 53:24 61:10 73:9 80:24 82:6, 7,17 100:13,16,17,23 101:5 102:13 108:4 110:4 111:24 112:3,8 113:13 118:11,15,18,22 119:14 139:11 145:13 148:20 151:9 158:25 161:19 162:14 190:17 191:16 192:10 195:21 200:4 202:18 213:2,11 235:2 240:12 246:24,25 253:6 256:25 259:4,18, 25 260:3 270:18 274:23 276:3,6 280:18 284:8 286:21,22 290:24 300:7,12 304:3 305:18

306:12

**background** 17:8

**bad** 23:18 49:14 86:2 105:12

**ball** 180:21

**barely** 238:4

**based** 51:24 54:9 66:12 76:5,14 90:21,22 91:1 93:25 96:25 102:5 106:8 113:1,22 117:15 120:18 122:20 138:13, 14,24 139:1 140:14 157:4,14 170:12,23 173:21 205:8 212:1 218:25 222:23 225:18 229:16 233:21 235:17 241:18 242:24 243:5, 14,24 244:18,21 247:4, 15,20 248:10 249:16 250:22 255:3,6,8 257:9 258:11 268:3 272:7,19 273:17 298:10 299:3 306:18

**basic** 143:18,23

**basically** 75:4 171:17 177:3 199:16 206:1 300:8

**basing** 99:25 114:13

**basis** 42:24 43:12,16 44:5,15 54:1,16 90:15 93:23 101:14 135:12 137:20 226:19 254:5 272:9 275:17 301:3

**basketball** 12:15,21 17:6

**Bates** 4:18 5:13,15,17, 19,21,24 6:3,5,7,9,11, 13,15,17,19 7:3

**baton** 74:17

**battery** 62:16 63:4,16 64:5 71:11 76:6 77:1,23 78:14 234:5,13

**bear** 144:20 248:18 250:24

**beats** 59:16

**beginning** 14:4 84:14 85:8 134:9 143:18

218:13

**behalf** 2:2,10 8:10 9:15, 16 50:12,19 51:1 52:9, 24 67:14,15 68:2 81:12 84:9 115:25 219:11 260:4 294:15 300:2

**behavior** 131:19 132:25 151:12 207:6 209:20 210:12

**belief** 55:22 114:3 187:22 253:16 288:14

**believed** 108:9 109:5,6 273:16,21

**bench** 255:7

**big** 52:15 87:21 167:6

**bigger** 119:18,19 166:23 198:22 277:23

**bit** 38:18 48:4 52:12 57:9 158:23 162:13 166:19 196:8

**Black** 18:5 36:23

**blue** 158:24

**blunt** 74:6 250:21,22

**board** 5:8,9 300:16,18

**board's** 303:20

**bodily** 59:2 74:9

**born** 17:9

**bottom** 115:3,21 116:19 134:6,8,10 198:2 263:19,20

**Boulevard** 41:21

**Bowl** 13:11,12,25 14:3 16:22

**box** 11:13

**break** 111:6,13,15,16, 23 118:8 161:9 212:10, 23 303:23

**brewing** 299:15

**Brezina** 307:5

**Brezina's** 307:4

**briefed** 112:17

**briefing** 143:6

**briefly** 17:7

**bring** 66:4 102:22 121:7 131:6 178:16,18 180:2 182:5 204:11,13 256:11,12 298:20

**bringing** 177:17,25

**brings** 182:13

**broad** 132:9

**broke** 153:1

**broken** 60:8

**brought** 21:19 31:25 43:24 114:6 128:21 160:17 176:4,5 230:11 248:25 256:1,3 257:22 258:6 259:11,12 283:10 293:19

**brutally** 60:2

**buck** 40:12 202:1

**build** 121:6

**building** 121:8 163:6, 24 164:5

**Burns** 139:23

**button** 281:2

---

**C**

**Cadeau** 6:21,23 20:4,8, 20 21:10 22:9 24:9 30:17 32:2 40:22,24 41:18 42:16 43:11,20, 25 45:5,9,17 46:10,19 47:13,22 50:21 88:2,12, 20,24 89:2,4,20,24 90:24 91:12,17 92:5 93:25 94:19 96:24 98:1, 8 103:11 104:5,23 107:11,16 110:4,12,17, 25 112:8 123:1 124:10, 17 129:15 130:7 131:20 134:21 137:18 151:4,9 158:3 165:12 169:3 171:13 174:25 192:24 197:3 205:20 207:10 209:14 211:6,24 216:4, 24 221:6 222:22 225:4, 19 226:25 229:2,6 231:14 232:14,15,18,23 238:11,18 241:2,15,20

Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 85 of 110

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                                    January 13, 2021

242:4,25 244:22 247:3
249:1 255:4,9 260:11
263:4,13 264:4 265:1
272:22 273:11,18
279:25 281:6 287:17,18
291:9,20 293:14,20,23
294:4,21 295:11,19
297:23 304:9,14 305:12

**Cadeau's** 20:21 50:22
53:1 54:8,16 96:22
113:13 167:21 292:8

**cadet** 145:15 146:5

**calculation** 213:5

**CALEA** 90:10,12 106:8

**call** 60:4,9 82:6 112:1
154:9 176:7 185:16
194:11 297:20

**called** 78:12

**calls** 19:13 83:4 106:20
274:14,15,17 278:9

**candor** 68:3

**canister** 240:2

**capacity** 2:10 13:3,8
21:18 84:5,16 182:4

**captain** 258:25

**car** 181:23 186:22,23,
24,25 189:4 295:23
296:3 298:16

**card** 269:1

**care** 194:21

**carefully** 263:5

**carried** 164:1

**carry** 80:10 150:1
152:23 153:5,13

**carrying** 66:24 157:25
170:20 175:6 216:25

**Carter** 9:14 241:23
255:6 256:9

**case** 10:6 19:2,22 20:1,
19 23:9 24:23 27:2 33:6
40:22 42:20 43:11 47:4
55:16 60:18 67:20,21
68:1,25 71:19 86:7
91:9,18 95:10 103:1
107:9 112:18 113:11

115:3 116:19 121:6
124:14 127:8 128:7,12,
17,22 129:5,8 130:2,7,
10 137:5 139:23
140:16,18,19 141:9
162:16,21 198:19
211:10 225:2 227:25
228:12 245:10 254:1
271:6 289:20 294:13
297:1 302:5

**cases** 67:18 68:16
130:4 170:12 297:10,14
299:10 300:19

**caused** 59:1

**causing** 75:20

**cellular** 31:15

**century** 92:9,13 93:5,
14 174:17

**certification** 37:2
90:10 155:11

**certifications** 37:5
76:15

**certified** 36:5,20 86:15
96:20

**certify** 280:21

**chain** 263:6 264:24
265:24

**challenge** 114:4 131:5
300:16

**challenges** 222:14

**challenging** 72:10

**chance** 31:22 52:8
116:24 131:16

**chances** 64:25

**change** 119:6 217:15,
23 221:3 250:16 251:6
293:4,8

**changed** 170:13 215:6,
17 217:8,13,25 229:11
260:9,17,21 265:9
271:8 299:20

**character** 123:17

**charge** 70:17 76:23
77:4,5,6,21 78:2,3,4,5,
13 234:13,18 245:9

255:21 273:4 305:4

**charged** 54:23 69:8

**charges** 66:4 70:21
71:13,20 77:4 78:2
80:11 233:4,7,9 248:2,
4,25 249:5 256:1,3,11,
12 257:21 258:6 273:25

**charging** 127:5

**checked** 28:23

**checklist** 23:16 283:2

**chief** 2:11 10:20 11:7
19:15 20:8,13,15,24
21:18 22:3,10 23:5,23
24:14,18 26:21 28:8,19
29:5,8,18 30:24 31:4
32:13,18 34:18,24
37:18 38:2 39:6,13,18
42:11 43:2 44:19 45:20
46:25 48:3 49:6,8,20
50:18 51:4,10,16 53:8
54:12 55:6,20 56:10,13,
20 57:8 58:12,18 59:19
60:6 61:2,15 62:8 63:21
64:10,22 66:2,16 67:9
68:12,16 69:13 70:8,24
71:6,15 72:8 73:4,14
75:12,25 76:9 78:14,17
79:4,24 83:6 84:24
85:11,13,20 86:11
87:21,25 89:16 91:20
92:15 93:3,23 95:8,10
96:1,8 97:12 98:10
103:4,25 104:4,7,12,16,
20,22 105:2,6,15
106:23 107:8 109:1,10,
14,20,23 110:7,21
113:2 114:10 116:11
117:11 118:2,17 120:24
121:24 122:11 123:13,
23 126:19,21 127:16
128:25 129:20 130:14
133:22 134:20 135:9
137:17 138:2 139:8
142:23 144:15 146:2
147:8,15 148:3,9 149:2,
12,17,21 150:2,11,17,
20,25 151:7,18,25
152:7,11,19 153:9,19
154:16,21 155:7 156:2,
8 157:8,16 159:25
160:4,13 161:3,21
162:20 164:16,21

165:13,19,20,21,23
166:1,2 168:1,11,14
169:23 170:9,14 171:9
172:24 173:7,16,24
175:13,22 177:15
178:11 179:8 180:15
183:6 184:3,16 186:6
187:5,11 188:1 189:5,8,
14 190:19 192:16
195:2,23 197:4,16
198:1 200:9 201:2,22
202:2,6,9,21,23 205:13
206:17 208:23,24 209:1
210:7,15,25 211:15
212:7 215:2 217:11
218:9 219:6,7 220:4
221:8,19,22 222:17
223:2,7 224:23 225:12,
13,25 227:23 228:22
229:22 230:6,20 231:8,
22 233:3,25 234:15
235:7,20 237:1 243:6,
18 244:7,15 245:1,22
246:15,20 247:14,22
249:17,25 250:4,14,16,
21 251:5 252:8,12
253:17 254:7,23 255:3
257:13,15 258:16
259:1,22 260:15 261:5,
13 262:2,5 264:18
265:11,21 267:7,20
268:12 269:13,14
270:7,23 272:1,14,20,
21,24 273:2,7,10,15,16
274:6,19 276:11 277:14
279:16,19 280:16,17
281:5 282:7 283:5
284:6 286:1,16 287:9
289:6 292:1 293:6
294:25 296:9,14,21
297:4 298:7 299:7
300:25 302:22 304:6
306:14,21

**chief's** 303:4

**chiefs** 18:6,8,9 36:22
76:20 104:25 106:15
107:4,20 108:19,22
109:6 165:25 166:5,8
273:5 293:7

**choice** 220:17

**chopped** 63:24

**choppy** 191:9,21



Case 1:18-cv-04710-CAP    Document 260-3    Filed 08/16/21    Page 86 of 110
Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner
January 13, 2021

**chosen** 165:20

**Christina** 3:17 110:1
115:1 131:17 276:9

**circle** 137:11

**circumstance** 72:25

**circumstances** 72:1,3
104:1,17 107:6,21
148:21 149:7 223:23
224:1,13 229:16 248:15
294:9

**cite** 15:11

**citizen** 5:7,9 56:18
59:5,14 60:2 62:16
63:17 64:4 65:14,16
66:10 67:4,15 68:5,7
69:5,24 70:19 71:3,10,
11 79:12,17 80:6
134:22 137:18 183:22
298:15

**citizens** 32:16 93:16
108:11 144:3 147:24,25
163:6,23 172:8,17
173:21 179:17 186:3
193:16 285:7

**citizens'** 155:19

**city** 2:10,11 3:11 5:19
9:17 10:5 11:24 12:25
13:3,4,8 16:23,25 17:2,
9 18:8 19:6 20:12
21:16,24 22:10,14,19
24:8,12,14 25:3,10 27:5
28:17 29:16 31:18 32:4,
13,16 35:14 40:18
42:23 43:18,21,22 48:7,
24 49:3,5 51:2,5,18,21
56:18 65:8,10,22 66:7,
10,23 67:5 71:3 79:20
83:21,22 84:1,6,9,17,20
85:7,9,21 86:4,6 90:22
91:4,6 97:23 98:2,4,10,
20,24 100:8 109:13
110:14 116:9 117:7,23,
24 120:1 125:14,20,25
126:6,10,13 128:5,13,
16 129:4,9,25 130:8,23
132:13 139:22 140:5
144:12 145:17,24
146:17 147:24,25
148:10 150:1 151:4
164:20 168:22 172:8
177:2 184:12 217:13

225:4 245:13 257:17
271:2 280:7 293:16,22
294:1,3,13,15 296:19
297:20 300:2 301:6,13,
17 302:2 304:10,13
305:23

**city-approved** 43:21

**civil** 10:11,17 27:1
103:1 148:11 155:20
243:20 308:17

**claim** 293:21 294:2,4,5

**claims** 31:24 128:21
129:4

**clarification** 163:19
253:10

**clarity** 101:21

**Clark** 17:11,12

**clear** 23:8 26:17 58:6,
10,25 83:19 100:3
105:14 138:22 253:3,4,
25 254:7 279:7 281:2

**click** 11:13

**client** 99:13 222:21

**clients** 33:2 109:25

**clips** 269:2

**clock** 237:19

**closed** 238:8

**closeout** 6:3,5,7,9,11,
13,15,17,19 7:3 94:3
97:6 238:1

**closer** 36:18

**club** 12:15 17:6

**COA** 5:13

**COA000001** 6:15

**COA000070** 6:16

**COA000071** 7:4

**COA000194** 7:4

**COA000195** 5:18

**COA000196** 5:20

**COA000247** 5:20

**COA000604** 5:22

**COA001612** 5:14

**COA002025** 5:22

**COA002205** 6:3

**COA002230** 6:4

**COA002291** 6:6

**COA002323** 6:6

**COA002324** 6:8

**COA002355** 6:8

**COA002399** 6:9

**COA002419** 6:10

**COA002421** 6:18

**COA002428** 261:19

**COA002484** 6:18

**COA002485** 6:12

**COA002514** 6:12

**COA002515** 6:13

**COA002574** 6:14

**COA006550** 6:20

**COA006603** 6:20

**COA007785** 5:22

**COA007788** 5:22

**coaching** 252:17,18
253:20 254:20

**Cochran** 2:4 144:25
190:2

**College** 17:12

**color** 35:12

**Columbus** 17:15

**combination** 138:19
139:5

**command** 93:25 96:24
129:14 183:8 239:1,2
258:18 264:25 265:24
272:25

**command's** 263:6

**commander** 80:4
142:20,25 143:3 164:24
165:2,7,12 181:16
209:7 225:14,17
241:12,14 244:11,20

248:1,23 259:6 265:8
266:3,6,9 273:20,25
274:2,3,4 279:17 283:5,
6 285:18,21 289:5
290:24 293:7 305:6

**commanders** 39:20
40:5,7,23 79:23 143:15
150:3 162:23 164:2
165:20 170:18 178:16,
18 180:2 181:12 183:23
197:4 206:25 215:10
287:5

**commanding** 202:12

**commissioner** 13:10

**commit** 62:12 183:22
184:9

**commitment** 164:10

**commits** 62:15 63:3
64:4

**committed** 67:3 69:5,
24 71:10 141:17 204:6
205:2 206:4 231:14
233:21 236:22

**committing** 63:15 66:9
68:6 80:5

**communicated** 45:10
71:18 126:12

**communication** 87:14
120:11 126:5 192:11
216:14 224:19 237:8
270:19 275:3

**communications**
74:16 304:22

**community** 124:6
144:3 163:7,24 164:6

**community-oriented**
93:13

**compare** 288:21

**compared** 79:17

**compelled** 299:20

**compensated** 17:3

**complain** 301:6

**complainant** 65:3,15

**complaint** 3:10,13 6:3,
5,7,9,11,13,15,17,19

 Elizabeth Gallo
COURT REPORTING, LLC

Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 87 of 110

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

7:3 12:6 23:10,24,25
31:13 33:4,21 34:4
41:8,12 46:7 48:8,17
49:15 50:5 51:18,23
54:3,22 64:7 65:16 81:1
86:22,23 94:3 97:5
124:18 125:22 126:1
134:22 135:22,25
136:1,7,10,14,25
137:18 139:9 144:18
146:21 160:18,22,25
183:10 203:23 209:25
210:3 220:15 238:1
243:22 262:17 263:2,9,
11 271:11 295:12,18
296:25 300:6

**complaints** 53:25
108:16 211:8 221:24
225:21 301:17 303:4

**complete** 28:6,13
29:12 60:10 63:12
98:23 159:7,10 185:21
186:19 194:15 256:19
285:19

**completed** 27:14
223:8 240:23 255:15,18
259:10 300:7

**completely** 172:5
180:20 192:25 218:1
241:6

**completes** 246:11

**compliance** 90:14
158:4 194:18 267:2

**compliant** 182:20

**complied** 170:24

**comply** 35:11 55:25
56:1 75:5 90:12 151:22
152:5,16 167:23 175:1
181:2 183:16 206:25
267:16

**complying** 148:23

**component** 159:8

**compromised** 91:5

**computer** 5:4 169:15
191:15,24 192:5

**con** 265:12

**concept** 123:9 142:11

269:22

**concern** 44:14 45:2,3

**concerned** 45:1

**concerns** 44:10 93:7,
11

**concert** 295:14

**conclude** 256:23
282:18 300:5

**concluded** 172:16
203:24 204:2 235:10
246:1 265:5 300:10,13
303:17 308:15

**concludes** 120:8

**conclusion** 69:25
102:22,23 107:5
147:12,14 282:21
283:24,25 285:22
299:10 300:19

**concur** 263:5 265:1,8
273:13

**concurred** 263:15,16
264:16 265:10 266:2,8,
15 277:5 280:3,14

**concurrence** 275:23

**conduct** 4:11 64:19
65:21 150:7,13 195:25
196:13,23 209:19 258:5
263:15 303:12

**confident** 32:10 33:11

**confirm** 28:23 90:17
135:21

**confirmation** 89:23
90:23

**confirmed** 56:6 89:17

**confirms** 91:12 92:5

**confronted** 192:18

**confused** 32:9 67:17
107:14 122:3

**conjunction** 257:16
305:22

**connection** 42:9

**connections** 144:24

**Connor** 223:19

**considerate** 151:22
152:5,17 172:11 173:3
174:7,12 193:12

**consideration** 150:11,
16 199:5 228:7,11

**considered** 16:24
114:9 157:4 224:2

**consistency** 199:1

**consistent** 28:24
55:11 201:21 206:21
248:16 249:8 300:17
303:20

**consistently** 218:18
303:20

**Constitution** 37:15
38:8 75:7 149:17
183:13,21 194:18 242:2
243:7

**constitutional** 236:14,
20 245:18

**consultation** 293:3
294:19

**contact** 63:23 125:25

**contained** 144:17
169:9 247:12

**contending** 33:2

**content** 18:22 19:2

**continual** 253:17

**continue** 14:22 15:3
36:6 89:1 142:13
151:14 174:1 189:4,23
254:17 256:25 269:24

**continued** 4:1 5:1 6:1
7:1 17:5

**continues** 194:23
254:10

**continuously** 151:21
152:4,16 173:20 200:3

**contradiction** 103:25

**contrary** 209:20

**contributes** 218:19

**control** 41:20 81:5
168:6 238:25 239:2

**controlled** 21:18

**controlling** 81:6

**conversation** 47:10
233:21 253:17 277:16
293:18 305:16

**conversations** 18:17
82:23 305:7

**convict** 62:19

**convicted** 62:22

**conviction** 63:7,13

**Conyers** 12:1

**cooperation** 301:22

**copies** 128:7

**copy** 86:22 88:3,5,13,
21,25 89:3,5,7,12,14,17
90:24,25 91:11,13,17
92:6 139:18 202:14
238:21 308:4,5

**core** 162:19,25 164:9,
13

**corporate** 164:25

**correct** 12:3,7,8,25
13:24 14:7 23:11,23
24:3,20 33:19 35:3,4,5,
8,10,20,21 36:2,15
38:23,25 40:2,5,10,16,
20,21 41:3 42:25 43:5
44:1,2,16 46:4 48:14,25
49:15,18 50:13 57:2,4,
21 58:14 61:25 62:13
64:20 65:10,11,18,19
66:5 69:11 71:5 74:12,
13 75:7 76:21 83:21
84:12,22 90:1,20 91:1,
15,25 92:1,2 98:21,22,
25 102:9,17,18 103:16,
18,19 104:2,8 105:24
106:9 107:22 112:12
114:17 116:8,11
117:16,19,20 118:6
119:25 120:1,2,12,19,
20 121:18 122:15,18,23
123:5,8 124:15 126:6,
20 127:8 137:24 139:12
140:6 142:20 143:5,16
148:12 150:25 151:2,5,
6,9,15,24 152:25 153:6,
16 154:16,20,22 155:3,

Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 88 of 110
Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                    January 13, 2021

25 157:23 158:1
162:11,17,22 163:10,13
164:3,14 165:17,18,19
167:18,23 168:11,16,
20,23,24 169:4,7 170:9,
14,22,25 171:15,19
172:20 176:16 177:5,6,
10,16 178:2,3,4,8,24
179:13 180:5,8,10
181:11,19 183:2,25
184:9,13,22 185:16,25
186:4,10,14,21 187:3,9
192:21 193:1,6,10,13
194:15 197:5,13,14,15,
18,22,23 198:5,10
199:25 200:1,6,24
201:4,9,11,19,20 202:3,
8 203:1,2,5,6,10
204:21,23 205:10,21
206:4,16,19,24 207:7
208:19 209:7,10,15
210:4,8,13 214:1
215:22,24 216:2,3,20
220:6 222:13,19,25
223:12,15,19,24 224:7,
14,15 225:22 226:9
227:1,6 233:10,22
235:4 239:4 242:2,6,7,
15 244:4,12,23 247:1
248:9 258:6,11 260:21,
22 262:9 264:2,5,12
265:2,3 268:9 270:1
272:22,23 273:6,8,9,18,
23 274:7,8 281:7
284:22 285:4,11 286:1
287:2 291:17 292:10
293:12 296:4 300:22
301:15,18,23 302:4
307:5,8

**correctly** 192:25

**council** 5:12 301:18
302:2 304:10,13

**counsel** 2:1 10:3 12:9
15:10 18:18 22:20 25:9
27:12 28:22 44:11
45:10,23 46:3,6 47:10,
11 49:24 50:4 87:9
96:12 97:22,23 98:11
110:13 111:11 116:5
117:3,5,16,24 125:9
129:7,9 130:18 135:16
137:21,22 138:20
139:2,6 207:14 272:15
280:11,12 281:13,16

282:4,15 293:3 298:1
301:6 304:23,24 305:3,
6,11,25

**counsel's** 8:6 98:13

**count** 308:14

**country** 71:4 108:6,13,
15,20,22

**couple** 14:15 48:5
53:14 111:20 141:5
217:13

**couple-minute** 303:23

**courage** 164:10

**court** 9:20 10:7 14:24
26:22 57:17,19 77:19
114:5 127:22,25 138:23
140:16,18,19 163:19
183:16,17 184:22
212:19 253:10 274:22
278:6 279:7 280:17,23
304:21

**courteous** 172:20

**courteously** 184:25

**courtesy** 295:12,18

**covers** 128:21

**create** 163:5,22

**creating** 77:8 78:7

**credentials** 90:8

**crime** 68:20 70:20,21,
22 80:5 141:17 163:5,
23 183:22 184:9 224:5
233:20 234:5,19 236:22
243:15,21 244:12
245:9,16 267:15 305:4

**criminal** 17:14 59:15
62:4,6,11 63:13 64:18,
19 65:13,21 70:3 71:13
77:4 78:2 243:20 245:8,
10,25 246:11 248:5,8

**criminally** 255:21

**criteria** 56:19 177:8

**criterias** 203:21 221:25
222:9

**critical** 108:10 113:24
124:5 155:3,22

**cross** 3:4 137:14

**cross-examination**
10:12 11:5 253:23

**culpability** 200:14

**culprit** 78:21

**curious** 272:11

**current** 70:3 210:2

**custody** 85:10

**custom** 35:13 160:23
268:8

**customary** 262:12

**customs** 38:20

**cut** 52:10 262:22

**CVS** 123:2

**CVSA** 122:17,21,24
284:22 285:15 286:5,12

---

## D

**DA** 67:19,20 68:4 69:17,
20 70:3 71:13 245:17
256:11 257:10

**DA's** 65:2 67:23 68:1
69:8 70:5 80:11 266:24

**Dalton** 225:15,16
239:7,8

**Damages** 3:10,13

**dash** 94:3,4 97:6
262:17 263:3,4

**Data** 5:12

**date** 9:4 13:6,15,19
86:16 88:4 89:4,11
90:25 198:15,16,19
261:24 264:1

**dated** 133:18 217:18
263:25

**day** 139:20 168:25
203:12 284:17 305:14

**day-to-day** 39:22,25
40:7 170:20 171:19

**days** 235:12 305:19

**de** 179:19

**deadly** 73:25 74:1,3
88:4 155:23 222:15

**deal** 28:5 148:7 156:23

**dealing** 68:22 227:14

**death** 74:10

**December** 13:5,6 35:7
36:17 38:22 39:15
40:20 41:1 43:19 86:15
88:1 105:20,21 115:8
116:19 129:12 132:14
133:18 154:5 197:22
226:16,24

**decide** 75:13 208:18
257:9 287:1

**decided** 169:2 178:1,6
232:24

**decides** 176:15

**deciding** 179:6 207:18

**decision** 46:15 94:18
98:6,13,14 99:9 100:10,
11,12 103:15 104:2
110:11,16,24 112:10
113:14,17 124:17 151:5
169:3 177:9,12 179:1,
14,16,20 207:23 209:13
210:19 211:9,19 212:3
226:8 227:4,10,18
228:2,3,9 229:14
232:23 257:14 260:9,24
266:10 273:11 276:13
277:12,14 280:10
281:6,7,11,13,14 282:3,
11,15,22 283:1,20
286:20 288:9 289:10
290:22 293:23 300:15,
17 302:2 303:20
305:20,21,22 306:1

**decisions** 113:9
167:21 169:1 183:16
257:17 272:7

**deem** 255:1

**deemed** 59:12 234:12

**defend** 44:11

**defendant** 3:14,16,18,
19,21,22,24 9:15,17
12:2 20:20 21:9 33:6
34:24 38:19 41:18
43:24 50:21 51:2 53:1



Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 89 of 110

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                    January 13, 2021

88:20 89:2,3,4 91:17
93:25 95:6,10 96:19,22,
24 127:8,10 129:24
132:7,10,13,17,19
297:1

**defendants** 2:10 3:11
8:11 11:4 50:12,19,21,
23

**defense** 8:14 306:13,
15

**define** 156:1,5,10,17,18

**defined** 156:13

**defining** 156:11

**definition** 157:14
204:4,12

**degree** 17:13,15
200:14

**delay** 158:19

**delegate** 203:13

**delegated** 166:16
167:11

**denial** 137:20

**denied** 46:1 134:25
137:3,16

**deny** 24:22 132:11,20
136:9,13 137:23 138:7

**denying** 135:12 137:9
138:11,12,13

**department** 2:11 4:5,6,
8,9,10,12,14,16,17,20,
22,23 5:3,23 17:22
20:13 32:14 35:2,11,15
38:21 39:3,10 40:18
46:16 54:25 58:16
62:25 65:9,22 66:8 67:2
97:24 98:2,5,21,25
100:9,14 108:8 109:16,
17 110:11,18 111:1
120:1 121:8 130:20
131:7 132:14 133:3
140:6 142:4,8,17 147:7
150:1,9,15 155:13,18
162:8,18 163:4,22
164:20,22 165:3 168:7,
22 171:9 175:12 176:20
178:15 179:5 182:5,14
183:8 184:13 198:9,25

202:25 208:17 245:14
247:6 297:21 298:17,
21,25 299:11 300:3,10
301:14 305:24

**department's** 109:12
141:22 209:21 257:15

**departments** 106:7
108:6,12,17

**depend** 133:1 202:11

**depended** 44:10 45:10
219:13 272:15

**dependent** 257:21

**depending** 175:23
183:9 200:10 219:12

**depends** 73:16 109:11
111:9 121:25 144:16
208:2 218:11

**depo** 14:10 268:4,5
290:14

**deponent** 8:15

**depos** 14:13

**deposed** 14:15 85:5
297:5

**deposition** 3:8 4:3 8:1,
7,19 9:6 10:1,4,9,13,16
14:6,10 15:10 18:20
19:11,25 30:9,23 31:5,
12 77:14 102:15 136:23
139:18,20 140:2,17,20,
24 141:8 154:3 195:24
196:4 206:12 251:24
252:2 271:15 276:22
289:18 308:15

**depositions** 302:11

**deputy** 164:21 166:5,8
225:12,13 259:1 262:2
264:17 265:10 272:20,
24 273:5,15 274:5
279:16 289:6 293:7

**Deravis** 139:24

**DESCRIPTION** 3:7 4:2
5:2 6:2 7:2

**designate** 180:1

**designed** 222:12

**detail** 41:20

**details** 29:9 61:19,22,
23 200:11 260:2

**determination** 63:9
94:1 96:25 122:25
172:6 229:4 230:1,3,15
235:24 236:8 255:19
303:13

**determine** 78:20 89:19
100:19 114:17 123:6
132:23 135:16 146:22
165:16 182:23 187:1
228:19 229:9 232:14
233:20 235:15 275:8
283:16 284:15 285:1
289:2

**determined** 63:14 69:4
235:2 248:16 299:9,12

**determines** 64:6 65:12
67:3 69:23

**determining** 43:20
121:22 122:7 135:6
204:22 212:2,3

**detrimental** 207:6
210:12

**dictated** 71:21 220:18

**die** 123:10

**difference** 289:2

**differences** 289:13

**differently** 283:3

**difficult** 28:5

**digital** 87:15 192:12
216:15 224:20 237:9
270:20

**dignified** 174:20 175:5,
17 193:19

**dignity** 148:15

**dime** 17:1

**direct** 6:22 55:8 103:24
123:2 168:6 285:18

**direction** 41:19 130:18
138:20 299:10

**directive** 171:4

**directly** 142:21 168:14
169:6 273:1

**dis** 283:22 284:9

**disagree** 42:21

**disagreed** 275:22
279:15,24

**Discharge** 240:2

**discharged** 102:2

**disciplinary** 4:12 5:24
20:11,22 29:10 47:4,19
53:19,20 56:23 96:22
97:19 98:9 99:5 101:21
112:15,19,22 122:21
146:12 159:9,11,13,15
160:10 161:5 167:22
168:15 171:5 176:13,
14,23 177:1,4,7 179:23
195:8 198:8 199:2
201:14,24 202:16,22,24
207:17 208:14 212:2
222:13 226:5 227:14
232:13 233:15 235:13
236:6 238:22 246:2
257:9,21 259:2,11
263:7 264:6,17 282:10
283:8 287:15 288:2,4
298:2 305:2

**discipline** 39:2,14 40:9
113:9 121:21 122:7
153:22 159:18 167:16
168:19 180:3 189:21
197:11 198:4 199:1,4,
10,14 200:5,15,22,23
201:8,10 202:2,9,10,13,
14,15 203:10,15 208:16
215:25 222:11 229:17
238:21 263:6,8 264:20,
25 265:9,13 274:2
303:4

**disciplined** 56:4
159:18,19,22 178:20,
21,23 203:3 259:15
270:2

**disciplines** 39:23

**discontinued** 43:22

**discovery** 10:11 19:21
21:21,25 22:8,15,24
23:13 24:1 25:12 128:5,
6,16 271:5 276:7,17

**discredit** 182:5,13
193:23 247:5 298:17



Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 90 of 110
Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                                January 13, 2021

**discretion** 113:8
208:16

**discuss** 143:4

**discussed** 47:17 268:3
269:21 275:5 294:16

**discussing** 104:11
105:7 106:23 109:24

**discussion** 8:25 77:11
143:7 195:17 270:16
276:11,18 306:10
307:16

**dishonest** 58:13 102:3

**disingenuous** 276:19

**dismiss** 93:25 96:24
98:7 146:12 199:15

**dismissal** 62:17

**dismissed** 108:1

**dispensed** 240:4

**disposition** 262:16

**disprove** 284:10,13,19
285:14

**disrespectful** 173:20

**disruptive** 241:3

**distinction** 305:10

**distraction** 241:22
243:2 255:5 256:9

**district** 10:6,7 64:17
65:4,17 66:11 67:6
68:8,17,19 69:1 71:8,18
183:24 233:19 244:3
246:11 253:24 255:23
256:1,19 257:22 258:5,
12,20 259:6 267:12

**division** 10:8 165:5
225:14 265:7 266:9
274:1

**document** 5:10 21:13
31:19 48:11 51:1,14
52:10 81:23 86:24 87:1
89:20 90:13 91:11,23
92:18 93:6,14 115:22,
25 119:16 120:5 166:18
197:1 198:19,22 223:15
225:6,18 239:17
247:11,12 249:15

261:19,21 262:5 264:10
270:25

**documentation** 90:24

**documents** 19:10,24
20:3 23:9,21 24:5 25:4,
11,15,18 26:3,7,12
27:3,6,8,10,12 28:3,15,
22 29:14,22 42:7 84:21
85:10,18 86:5 90:9
115:4 117:8,9 127:11
128:8,10,11,15,18
161:25 169:8 192:6
280:2 306:24

**Dome** 41:22

**Donuts** 295:20

**double** 11:12

**doubts** 286:4

**dozed** 187:14 188:9

**drafted** 301:21

**dramatic** 197:25

**dramatically** 221:4

**Drive** 41:21

**dtd** 5:10,15,21

**dual** 299:25

**due** 146:25 147:5,6
176:20,21 177:8,11,25
178:7 194:20 228:4
246:3,23

**duly** 9:22

**Dunkin'** 295:20

**duties** 29:9 152:23
153:5,14 157:25 170:20
217:1 243:25

**duty** 51:16 66:11,24
67:4 68:8 70:17,18,20
79:10 80:9 155:18
167:18,20,22 171:10
185:10,16,19,21 186:3,
11,13 187:2 189:4,9
192:16,19,20 193:24
194:7,12 230:14 231:2
233:9 244:2,10

## E

**e-mail** 192:5 214:11

**e-mailed** 30:12

**earlier** 67:21 107:5
110:13 176:21 233:21
241:19 245:25 268:4
277:10 297:6

**early** 4:14 124:8,11,16
130:12,17 131:1,2,4
203:18 206:13 207:10,
16,25 208:7 209:6,12
210:1,4,10,18,21 211:6,
23,25 214:24 222:4,9,
12 225:3,19,20 226:8,
15 227:1,9,19,21,24
228:1 229:2 276:22

**eat** 212:12

**educational** 17:8

**effect** 24:17 74:9 196:6,
24 201:15 214:25
216:21

**effective** 198:3 201:23
202:21

**effectively** 32:24
184:25

**effort** 75:15

**egregious** 56:16
58:23,24 60:4,17
160:15 176:9,17 177:24
178:1 202:11,15

**egregiousness** 73:17
178:23 183:10

**electronic** 91:12

**element** 159:8

**Elizabeth** 307:4,5,10

**else's** 262:6

**Elsh** 6:21,23

**employed** 12:11,17,24
13:3,4 230:14,17

**employee** 16:25
166:14 167:9 183:13
185:6 200:13,19 204:6
205:2 206:3 211:23
224:5 263:7

**employee's** 62:24
224:11 229:17

**employees** 150:4
159:6 170:24 180:6
184:24 185:4,18

**employees'** 209:19,20

**employer** 12:14

**employment** 43:22
46:16 53:2 54:9,20
55:4,18 56:3 151:8
167:21

**enable** 132:20

**end** 36:13,14 81:11
168:25 190:11 191:10
203:12

**enforce** 65:9 66:23
79:10,25 80:9 148:15
207:1

**enforced** 60:24

**enforcement** 18:5
36:23 67:14 123:10

**enforcing** 65:21 67:5

**engaged** 131:18
132:24 283:12

**ensued** 8:25 77:11
87:16 192:13 195:17
216:16 224:21 237:10
270:16,21 306:10
307:16

**ensure** 155:19

**ensuring** 35:10 163:5,
23 170:24

**entire** 51:13 95:20
112:20,21 198:1 276:11

**entirety** 249:15

**entity** 120:4

**equitable** 171:24
172:5,7

**Erika** 196:5

**Esquire** 2:3,4,12,13

**established** 171:23
299:19

**et al** 10:5



Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

**evaluate** 224:11 231:4
233:9

**evaluated** 217:16
220:8

**evaluating** 221:25
224:9

**evaluation** 210:22
211:12 217:12,21
218:6,13 219:3,18,20,
23,25 220:1,14,18
221:13,24 222:6 227:24
233:15,17

**evaluations** 4:18
217:4,25 219:10
221:15,16

**evasive** 204:16

**evening** 41:17

**event** 41:22

**events** 16:13

**evidence** 56:5 66:9
68:6 71:21 78:20 96:21
97:18 98:15 102:16,20,
25 103:2,9 104:5,20
105:1,25 106:1,12
107:25 110:14 114:15,
16 120:8 169:8 203:25
204:2,5,23 205:1,6,7,8,
19 206:3 229:12
234:12,21 235:23 255:3
273:17,22 274:12
280:15 282:9,13,18,24
283:4 284:2,4,7 291:8
292:7 297:12 302:9

**evidential** 282:14

**ex-wife** 78:11 79:1

**exact** 13:6,15,19 33:13
130:5 261:13 284:18
301:2

**exam** 284:22 285:15
286:5

**EXAMINATION** 3:3

**EXAMINATIONS** 3:1

**examining** 137:14

**exceed** 156:3

**exceeded** 218:18

**exception** 184:6

**excessive** 37:11,23,24
156:1,17 157:13,20
183:1 234:23 295:13

**excuse** 197:12 279:15

**exec** 294:16

**executive** 13:9,17
16:22 17:4 18:7 95:19,
20 96:6,11 112:16
124:20 143:1 208:3,6,
11 250:23

**Executives** 18:5 36:24

**exemplified** 176:11

**exercising** 203:9
242:17

**exert** 141:16

**exhibit** 3:7 4:2 5:2 6:2
7:2 30:8,22 31:5,12
42:15 47:24 48:2,6 51:1
80:20,23,24 81:1,4
82:15,16 84:8 87:13,15
114:21,24 115:12,14,18
116:3,9,13,16 117:14,
15 118:21 131:10
133:6,10,13,17 138:9,
11 139:1,14,17 153:24
154:3,4 157:23 158:4
162:2,6,22 169:25
170:3,4,17 192:12
195:10,18,24 196:3
197:7,10,19 198:14
201:13 206:8,12,21
213:16 214:4,22
215:13,15 216:3,7,13,
15,25 217:3 220:21
221:4,12 224:16,20,23
237:4,7,9,25 258:9
270:20 271:11 272:20

**exhibits** 3:6 4:1 5:1 6:1
7:1,7 31:1 213:16
214:5,7,16

**exonerated** 204:22

**expand** 119:16 162:13
166:18 225:7

**expect** 110:1 148:6
149:21 178:14 179:22
187:16,19

**expected** 148:9 150:3
178:18 218:18

**experience** 139:5
219:1 243:6

**expertise** 116:5

**explain** 79:15 114:2
124:2 158:11 160:8
175:9 182:16 265:4
266:21,24 290:18
302:16

**explained** 290:20

**explanation** 268:1

**exposed** 71:24

**extension** 108:7

**extent** 19:13 20:15,24
22:3 24:4 28:8,19 29:18
32:18 37:18 38:2 39:6
42:11 43:2 45:19 46:25
49:8,20 50:17 51:3,10
53:8 54:12 55:20 56:13
58:18 59:19 61:2 64:10,
22 66:2,15 67:9 68:12
69:13 70:7,24 71:15
72:8 73:4,14 75:25 76:9
78:17 80:14 84:24
85:13 91:20 92:15 93:2
95:7 96:1,8 103:4
104:10 105:6 106:18,20
108:25 109:9 110:6,20
118:2 122:10 123:12,23
126:18 127:15 128:24
129:19 130:14 135:9
138:1 144:14 146:1
148:2 149:1,12 150:20
151:17 152:11 153:8,18
156:7 157:7,16 160:4,
12 161:2 169:22 172:23
173:6,15,24 175:21
177:14 178:1,10 179:8
180:15 183:5 184:2,15
186:6 187:5,25 189:7
200:5,8 201:1 202:5
205:12 208:22,25
210:6,24 211:14 212:7
217:10 218:8 219:7
220:3 221:21 223:2
225:24 228:21 229:22
230:19 231:21 233:2,24
234:15 235:6,19
236:16,25 242:9 243:17
244:6,14,25 245:22

246:17,19 247:8,11,15
248:21 249:16 250:3,14
251:4 254:23 255:12
256:15 257:12 258:15
259:21 260:15 261:14
265:20 267:6,19 268:11
270:6 271:25 274:14,16
278:9 282:6 286:15
287:8 291:25 294:24
296:8 297:3 298:6
299:6 300:24

**extra** 4:16 41:19 42:17
43:21 215:16,22 216:1,
5,10 217:1 295:7,10,14,
19

**extremities** 72:15

**eye** 60:3

**eyes** 75:10

———————————————

**F**

**face** 59:16 60:2,22
61:11 64:4 73:2 75:23
76:24 77:22 78:12
157:3 182:10,13 231:16
232:17 234:4 239:23
240:2

**faced** 71:13

**facsimile** 2:7,15

**fact** 40:17 42:20 79:9
90:18 97:16 114:17
120:21 136:24 146:14
154:21 188:8 210:3,20
234:22 246:25 249:14
254:9 255:6,9 258:3
267:11,13,15 275:6,21
276:15 293:14 301:8
302:8

**factor** 229:18

**factors** 199:6 200:20

**facts** 24:23 44:14 45:3,
8 80:19 82:12 90:13
96:21 97:18 102:21
104:18 107:7 114:9,20
116:6 140:19 177:22
227:13 232:2,3 234:8,
21,24 236:4,7 248:12,
13,15,18 249:8 250:24
266:22

**Elizabeth Gallo**
COURT REPORTING, LLC

Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 92 of 110
Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                                                    January 13, 2021

**factual** 41:5 100:20
101:22 177:19 284:17

**factually** 236:4

**failure** 150:7,13 159:7,
9 166:15 167:10

**fair** 106:14 126:15
140:14 179:6,13
196:22,25 199:20
206:22 212:5 220:1
265:25 281:16,17
286:13 305:9,24

**fairly** 171:24 172:5
299:2

**faith** 124:5

**fall** 186:21

**familiar** 33:11 86:18
92:8,21,23 293:13,16
302:8

**family** 165:9

**Farm** 12:16

**FAVORS-COA000661**
4:19

**FAVORS-COA000673**
4:19

**February** 4:4 41:18
42:17 53:18 54:17
131:21 139:19 140:21
145:13 264:4

**federal** 10:10,17,18
27:1 35:12,18 51:17
81:20 89:18 149:19
183:15 252:4 253:23
254:19 255:20 308:16

**feel** 21:14 282:25 290:8

**feelings** 151:23 152:6,
18 172:11 173:4 174:7,
12 193:13

**fell** 189:3,22

**felon** 62:22

**felony** 62:23 66:10 68:6
69:5,24 71:10 255:21

**felt** 101:24 102:5 299:1
301:21

**Ferguson** 239:7
241:11,14 244:2 258:10

**Festival** 294:6

**field** 165:4 225:14
241:16 265:7,24 266:3,
6,8 274:1,3 279:17
283:6

**fight** 283:12

**figure** 112:1 133:15
237:22 283:2 288:6
290:11 291:11

**figured** 161:24

**figures** 248:12

**file** 6:3,5,7,9,11,13,15,
17,19 7:3 21:2,5,10
41:7 42:23 43:9,16
45:16 51:20 67:13 68:1
70:2 94:3,8,11,18
95:16,20,24 96:11,20
97:5,17 100:16,17,23,
25 101:4,5,10 102:6
112:20,22 121:9 134:24
135:19,23 139:11
175:15 176:11,14
198:15,16,18 200:11
202:14 204:5 205:1,8,
19 208:3,5,6 209:12
238:1,23 249:25 259:2,
6 264:8 271:16,20
272:3,8,11 284:3 288:8
289:7,14 290:1,3,13
291:3,7 292:8

**filed** 23:10 31:13,17
34:4 41:6 48:9,19 51:20
52:7 65:3 68:17 71:20
81:2,11 115:3,20,25
116:18 198:19 246:25
296:19

**files** 20:21 21:15,17,22,
25 22:14 24:9,11,13
28:17 29:9,10,16 48:24
49:4,17,25 71:19 86:6
102:17 108:16 113:4
116:10 117:22 172:6
188:23 209:11

**filing** 44:13

**filings** 188:22

**final** 177:9 238:22

**finance** 294:17

**find** 108:14 138:12

174:17 206:3 249:23
263:2 284:4 286:9
288:16 294:12

**finding** 204:6 205:2,9,
19 206:3 259:13 298:15

**findings** 248:1,24
291:8 300:8 303:19

**fine** 10:25 14:20 15:8
34:13,22 87:23 111:14
112:5 156:20 161:12,14
166:22 190:22 213:4
214:20 237:20 251:10,
19 261:10 262:25
277:8,25 279:2 280:24
281:23

**finish** 97:3 111:5 253:6
269:9,19

**finished** 155:15 269:13
303:23

**firearm** 36:7,10 74:7

**firearms** 158:12 193:4

**fired** 255:10 258:4

**firm** 2:4 125:19 126:14
307:4

**five-minute** 161:9

**flee** 224:7

**Flux** 294:6

**focus** 34:5 56:25

**focused** 11:14

**FOD** 165:4

**folks** 166:6

**follow** 79:25 106:15
110:2 144:7 157:24
162:24 171:13 177:3,7
179:22 180:11 193:3
197:5 215:11 216:25
221:7,11 252:6

**food** 212:11

**footage** 96:20 97:17

**force** 4:21 37:11,23,24
38:7,12,13,14 56:17
59:7,10,13 64:7 69:25
72:4 73:25 74:1,4,11,
15,24,25 75:1,2,5,6
88:4 92:9,12 141:16

147:23 148:7,16,17
151:14,24 152:25
155:23,24 156:1,3,5,13,
17,19,22 157:5,11
176:3 182:11 183:1
193:4 194:17 211:8
218:4,22 220:24 221:3,
13 222:15,17,18,23,24
223:8,10,15,17,21
224:3,11 225:21
228:14,19 229:3,6
231:13 232:16 234:23
241:5 243:8 245:15
247:5 263:14 293:15
295:13

**forces** 73:23

**foregoing** 132:10

**form** 5:19 10:14 19:12
20:14,23 22:2 23:1,12
28:7,18 29:17 32:17
37:17 38:1 39:5,17
42:8,10 43:1 44:17,18
45:18 46:24 49:7,19
50:16 51:9 53:7 54:11
55:5,19 56:12,15 57:3,
20 58:17 59:18 60:5
61:1 62:7,21 63:20
64:9,21 65:24 66:2,15
67:8 68:11 69:12 70:6
71:14 72:7 73:3,13
75:11,24 76:8 78:16
79:3 80:13 83:2,3 84:23
85:12 86:10 91:19
92:14 93:2 94:21 95:25
96:7 97:11 99:11
100:25 103:3 104:9
105:5 106:17,19 108:24
109:8 110:5,19 118:1
120:23 121:23 122:9
123:11,20,22 126:17
127:14 128:23 129:18
130:13 135:8 137:25
144:13 145:25 148:1,25
150:19 151:16 153:7,17
156:6 157:6 160:3,11
161:1 169:21 172:22
173:5,14 175:20 177:13
178:9 179:7 180:14
183:4 184:1,14 186:5
187:24 189:6 200:7,25
202:4 205:11,22 208:21
210:5,14,23 211:13
216:6 217:9 218:7
219:6 220:2 221:20

Elizabeth Gallo
COURT REPORTING, LLC

Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 93 of 110
Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                                          January 13, 2021

223:1 225:23 226:10
228:20 229:19 230:18
231:20 233:1,23 234:6,
14,19 235:5,18 236:15,
24 242:8,20 243:16
244:5,13,24 245:19
246:14,16 248:20
249:13 250:3 251:22
253:15 254:2,6,18,22
255:11 256:14 257:11
258:14 259:20 260:12
261:3 265:18 267:6,18
268:10 270:5 271:24
282:5 284:5 286:14,21,
23,25 287:7 289:16
291:22,25 294:23 296:7
297:2 298:5 299:5
300:23 302:19

**formal** 147:12,13

**Forty-one** 168:1

**Forum** 18:7

**forward** 254:17 256:21
300:2,3

**forwarding** 263:11

**found** 58:12 189:3
231:11 233:14 302:25

**foundation** 174:11

**four-day** 263:14

**Fourteen** 213:17
214:14 238:7

**Fourth** 32:7,10,15,23
33:3,8,12,17 35:19
36:25 37:14,22 38:7,11

**frame** 217:17 284:18
289:22

**framework** 147:5
176:25 201:4,7 217:24

**free** 209:1

**freedom** 242:1

**front** 131:15 233:5,8
259:25 291:3

**frozen** 82:4,5 190:1,3,
11

**frustrating** 131:25
134:5 141:12

**fudge** 181:4

**full** 11:18 28:13 29:12
48:11 169:7 179:19

**fully** 180:22

**funky** 191:14

### G

**Gallo** 2:18 307:4,6,10

**game** 204:20

**gas** 74:17,18 283:11,12,
18

**gauged** 219:14

**gave** 61:23 63:3 73:10
132:2 140:23 147:8
157:4 203:5,14 204:11
235:17 280:13 291:20
298:4

**general** 4:11 195:25
196:13,23

**generalities** 33:16

**generality** 35:23

**generally** 92:24 93:10
104:23,24 106:8 201:17
216:21

**genesis** 21:10

**gentleman** 229:9

**George** 2:10 3:2,9,12,
14,16,18,19,21,22,24
4:3 8:1 9:6,18,21 10:2
11:20 48:7 51:2 84:4
114:25 154:21 308:18

**Georgia** 2:6,14 6:23
10:7 17:20,22,24 18:6
35:14 36:22 41:22 67:6
147:2 149:18 183:14,21

**give** 10:1 14:22 15:12
23:21 28:6,13 29:12
36:17 52:8 57:8 73:22
74:3 81:17 94:16
111:14 131:16 176:3
177:19 181:4 220:17
253:22 268:17 269:10

**giving** 16:14 61:23
219:22 253:13

**glasses** 162:14

**glean** 260:1

**gleaned** 49:17 51:5
96:22 97:19 98:16

**goal** 169:17 285:5
286:8

**goals** 207:7 209:21
210:13 218:11,17

**good** 9:25 11:17 14:22
58:1 118:8 161:22
162:14 174:16 191:25

**governed** 40:4

**grab** 72:16

**gracious** 254:4

**Graham** 223:18

**grain** 114:8

**graphs** 306:16

**Great** 11:15

**grievance** 183:9

**ground** 14:16

**group** 305:5

**guarantee** 112:21

**guess** 11:9 74:8 76:22
122:3 201:11 289:13
290:17,25 292:21
301:24

**guests** 147:24

**guilty** 6:21 71:22

**gun** 74:1

**guy** 31:10 85:4 154:9

**guys** 30:12 63:22 73:23
99:14 120:21 143:3
190:7 191:18 200:21,23
284:25 300:20 302:3,14

### H

**half** 276:4

**half-truths** 180:22
181:4

**hall** 10:4 45:5,9,17
54:18 110:1 115:1

131:17 132:24 139:22
222:22 294:21 295:9

**Hall's** 3:15,17 81:10
131:20 276:9

**HALL-FC013236** 5:16

**HALL-FC013249** 5:16

**Halls** 43:10

**hand** 72:16 288:19

**handcuffed** 59:16,25
60:20,21 61:10 63:5,17
64:3 71:11 72:4,12,22
75:20,22 76:25 77:22
80:7 157:1 182:10
231:16 232:17,19
234:4,24 239:22 240:3
255:7 256:10

**handled** 256:18 257:4

**handling** 147:24

**hands** 61:10 74:6,16
168:20

**handwriting** 264:1

**happen** 63:7,10 226:6
248:10 254:4

**happened** 44:1 63:22
102:6 181:18 217:16
247:3,20 249:22,23,24
250:1 251:1 259:4
265:4 266:15 287:20
288:2,4 289:20 291:17,
20 292:9 295:6,10

**happy** 204:20

**harm** 59:2 61:9 72:5,23
74:9 75:21

**hats** 84:15

**Hawks** 12:15,21 17:6
204:19

**head** 39:9 301:5

**hear** 60:10 127:22
191:3,5,8,11,19 192:1
281:5 291:9,10

**heard** 123:9 282:13
285:14 287:21 291:1

**hearing** 47:19 96:23
97:19 98:11,17 99:5
100:20,23 101:21,24

**Elizabeth Gallo**
COURT REPORTING, LLC

Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 94 of 110
Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner
January 13, 2021

102:5,13 112:16,19
124:20 175:15 207:17
226:5 227:15 232:13
259:12,14,18 260:9
264:4 280:15 282:10,14
283:8 284:11,16,20
285:15 286:11 287:4,16
288:3,5,12,22 289:7
290:7,10,23 291:1,6,9,
16,21 292:7,9,13,16
293:5 295:15,17,22,25
298:3,11 305:14,17,20

**hearings** 305:2

**held** 41:22 166:14
167:9 268:6

**helpful** 204:18

**Hey** 29:21 119:5 145:3
212:17 237:11 240:9
263:18 285:24

**hide** 180:21

**high** 17:10

**higher** 79:11,20,22

**hire** 120:22 121:9,10,17
122:5

**hired** 44:11 122:16

**hiring** 39:1,13 40:8
121:1,12,14 123:4
284:25

**Historically** 65:2

**history** 5:24 20:11,22
112:11 113:4,8,14,17
123:7 143:12 175:16
179:5 188:22 200:15,23
208:16 227:21 229:18
230:3

**hit** 73:1

**hits** 60:2 61:11 63:3
64:4

**hitting** 75:21

**hold** 17:17,21 50:10
77:9 105:18 141:23
142:5,12,17 150:4
167:16 219:5 232:7
246:15 250:13 267:5
269:8,22 280:16

**holding** 247:21

**honest** 16:18 26:10
27:23 91:15 140:11,15
180:21 181:8,17 182:1
192:20

**honestly** 237:11
257:14

**honesty** 147:19 164:6,
14

**hour** 276:4

**hours** 111:11 215:20
308:13

**hypothetical** 60:18
71:23 156:25 232:10
233:17,19 234:7,9,11,
16,17 235:7,8,17,20,21
236:3,7,17,18 237:1
243:12

**hypothetically** 59:24
62:12 232:9

---

**I**

**i.e.** 59:15

**identification** 31:2
47:25 80:21 114:22
115:15 116:14 139:15
153:25 162:3 170:1
195:19 197:8 206:9
214:8

**identified** 207:5 276:17

**identify** 88:4 131:4
210:11 282:24

**illegal** 131:19 132:25

**imagine** 125:15 126:7
156:21 158:10 220:12
273:24 289:6 302:1

**immediately** 143:14
286:3

**imminent** 224:4

**impartial** 174:20 175:5,
17 193:19

**implemented** 90:6
219:11

**important** 90:16
114:13 122:4,6 144:8
179:16

**imposes** 199:2

**inappropriate** 255:1

**incident** 5:15 42:24
43:10,25 44:5 45:4,8
46:14,19,23 47:2,12
53:19 61:20 75:3
139:25 156:4 211:9
222:21 230:1 231:17
233:14 235:10 238:18
259:4 260:8 264:3
267:14 271:1 279:14
283:23 293:15 295:2,5,
9,11,18,22 298:4
305:10,12

**include** 48:23 49:2,16
184:18 221:24

**included** 197:2 208:2,5
296:21

**includes** 200:13

**including** 19:9 128:13
149:16 158:3 169:14
184:8 192:24 224:2

**inclusive** 172:16

**indemnification** 129:4

**independent** 25:23
47:11,12,14,18 51:16,
20 65:15 68:7 69:20
70:2 71:8 87:2 110:16,
24 117:2,21 127:8
129:7 138:25 231:4
235:1 248:7 249:4
267:13 277:13

**independently** 65:17
231:18 233:9

**INDEX** 3:1,6 4:1 5:1 6:1
7:1

**Indictment** 6:22

**individual** 2:10 5:13
54:23 64:3 84:5,16
120:4 199:11 232:17
245:11

**individuals** 99:16,19
146:7 283:13

**indulge** 185:18

**industry** 106:9

**indy** 234:25

**information** 19:13
22:14,23 25:4,23 27:16,
24 49:16 51:4 67:19
69:7,18 72:18 80:8
81:21,22 82:25 83:4
85:19 86:5 90:14 91:7
92:4 93:22 96:13 98:16
100:12,15,17,18,19
101:2,8,11,15,19,20,22,
23,25 102:7,10,11,12
104:11 105:7 106:21,24
113:8 116:10 117:8
121:13 124:17,19 126:9
132:12,18 141:2
143:12,14 169:1 177:19
179:4,18 207:16,23
208:9,11,18 225:3
227:3 230:12 232:20,
21,22 233:8 245:13
247:11,16,25 249:17
255:19,22,25 258:19
260:2,8,23 261:2
274:15,17 275:8 278:10
281:15 282:16 283:9,15
284:10,16,19 285:14
286:19,22 287:3,6,12
288:19,23,24,25 289:1,
5,7,11 290:22,23 291:2
293:1 297:25 300:14
305:18

**informed** 12:4 142:3
207:11,13 248:24

**infraction** 200:18
204:1

**infractions** 199:2

**initial** 54:5 100:23
153:2 305:16

**initially** 299:19

**initials** 262:11

**initiative** 93:13

**input** 48:21,23 49:2,14
99:8 304:22 305:25

**inquire** 33:7 51:22
81:20 82:11,24 117:7
271:15 275:16,25
278:6,20

**inquired** 21:16,24
22:13 49:11 116:6
276:5,15 302:18



Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 95 of 110

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                                          January 13, 2021

inquiries 82:22 132:18 133:2,3,7,11,15

inquiry 22:22 24:8,12, 13 25:3 29:15 48:23 49:3 82:21 95:14 116:9 117:3,22 132:22 135:5 138:7 156:17 165:15 282:19

inside 176:19

instance 220:9

institute 244:21

instruct 83:6 99:12 275:15 277:24 279:1

instructed 74:24 99:24 259:5

instructs 15:16 16:3

insufficient 132:20

insurance 128:20

integrity 149:23 164:10

intent 200:14 242:15

intentionally 241:21 242:14 243:1 249:10

interesting 171:2 174:5

interests 150:8,14 151:23 152:6,18 172:11 174:8,12

internal 145:1

International 18:9

Internet 119:6 189:24, 25

interrogatories 3:15, 18 25:14,17 27:16,19 28:3 81:10 82:12,15 83:13 115:2

interrogatory 26:10,23 27:7,13 28:14 29:13 81:15,22 83:1 86:15 87:8,24 89:13 91:10 93:19 94:7,9,16,22 95:13 96:14,17 112:7 113:19 119:15,24 125:4,8

interrupting 77:14

intersection 41:20

intervention 209:19

introduce 213:15,21 214:4

introduced 213:21,22 214:17

investigate 82:20 171:10 245:3

investigated 171:24 172:4 182:25 183:7 236:5

investigates 68:5

investigating 114:20 169:14 171:4

investigation 43:9,13 45:16 63:12,14 64:6,18 65:6,12 67:2,22,25 69:4,6,9,17,20,22 70:3, 21 71:8 82:11,14 95:14 96:20 97:17 100:14 102:4 103:10 114:14 117:4,22 121:16,21 122:1,5,6,21,22 123:3 134:22,23 135:14 169:14 203:24 211:22 230:10 231:12 235:1,9 238:7 241:16,17 245:6, 13,25 246:12 248:7,11, 13,17 249:4,7 250:25 255:15,18 256:20,24 259:9,24 260:4 262:16 263:3 265:5 266:11 267:13 279:14 284:3,14 285:3,5,6,13,19,23 286:5 288:8 290:21 292:12 299:4 300:1,5,9, 13 303:12,18

investigations 284:9 299:25

investigative 114:19, 20 121:9 147:12,13 204:5 205:1 233:12 238:14 303:19

investigator 65:1 67:23,25 70:1 101:9 219:14 288:21

investigators 178:14 287:19 292:15 300:15, 18 303:17

involved 43:12,19 46:15 98:5 130:6,7 169:1 207:10 271:16,21 272:9 275:4,7 276:1,13, 21,25 280:23 281:10 283:19 293:14 294:6 305:13

involvement 20:19,21 21:23 86:7

involves 20:20

involving 42:24 43:10, 25 45:5,9 47:13 54:18 94:18 130:7 139:23 140:17 222:21 238:11 263:4 264:4 294:5,21 295:5,9,11

issue 113:22,24 122:25 159:21 209:24 212:5 218:5 228:18,19 229:5 230:16 231:4 233:15 268:7 271:12 280:23 299:14,23,24 304:21 305:10

issued 264:17

issues 16:14 44:4 92:25 143:7 219:17 235:13 286:4 298:24 299:8,17

issuing 202:13

Ivan 41:21

J

James 139:23

January 8:2 9:4 35:6 38:21 39:15 40:19,25 88:1 105:19,20 115:21 129:12 131:12 164:18 197:21 272:19

Jay-z 295:14

job 14:22 41:19 42:17 43:21 57:10 129:25 130:21 134:1 152:23 153:5,14 157:25 186:21 189:22 215:22 216:1,5, 10 217:1 218:20 295:7, 10,14,19

jobs 4:16 215:16

jointly 51:21

Jones 166:3 272:21 273:8

Jones' 273:10

Jr 41:21

Judge 261:9

judged 219:14

July 206:14 214:25 215:1

jump 15:13 112:1

jumps 214:10

June 238:8

jury 26:22 28:12 102:19 114:2 131:15 140:16,19 160:8

justice 17:14

justification 59:3

justified 131:19 185:15

K

keeping 175:10

Kennedy 2:13

kick 72:15

killed 139:24

kind 32:8 141:6 238:19 240:17,18

knew 158:18 232:20 261:2 283:17 292:6,11

knowing 45:3 61:4 104:17 146:22

knowingly 102:3

knowledge 25:22 26:1, 2 27:4,24 29:4,5,8 76:14 80:8 117:17 132:15 138:13,20,25 141:4 146:22 243:5

knowledgeable 141:21



Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 96 of 110
Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                         January 13, 2021

## L

**lack** 40:12 132:11

**laid** 56:21 61:5 66:19
72:19 232:3 236:4
264:6

**large** 92:17 93:4

**larger** 81:5

**late** 144:4,6

**law** 10:18 18:5 36:23
67:14 71:2 79:10,11,25
80:9 90:18 97:23 98:2,
5,20,24 100:8 110:17,
25 120:1 123:10 126:14
140:6 151:13 168:22
183:13 232:4 254:1
270:3 297:20

**lawful** 174:19 175:4
193:18

**laws** 35:12,18 65:9,21
66:23 67:5 89:18
148:15 149:19 155:12
183:15,21 184:7,8,11

**lawsuit** 12:3,6 19:17,18
21:9,11 33:2 41:6,7
42:25 43:12,16,25 44:3,
6,13,15 54:1 127:11
128:9 136:12 272:10
304:8

**lawsuits** 129:24
296:12,19

**lawyer** 85:7 86:3 99:2
232:8 250:6 275:18,24
276:3 280:4,6

**lawyers** 47:16 48:13
81:17 83:20,25 84:14
85:20 86:3,4 125:6

**learn** 230:25

**learned** 71:9 73:10
141:20 142:3 175:14,15
230:11 231:14,16
233:10 259:17

**learning** 260:8

**leave** 26:1 29:5 91:7
303:21

**left** 43:18,21 44:1 52:10

**legal** 25:19,23 99:7
110:11 117:16 281:15
304:22 305:11,23

**Leo's** 17:13

**lets** 232:4

**letter** 180:12 181:3

**level** 148:7 236:6

**liability** 128:20

**license** 17:21

**licenses** 17:18

**lie** 123:10

**lied** 296:2

**lieutenant** 40:24
165:22 239:7 241:11,13
244:1 258:10,25 265:6,
8

**life** 18:6,7,8 32:22 74:5,
7 222:11

**light** 210:3 223:22
244:11

**limit** 278:3

**limited** 224:2 249:17

**limits** 151:13

**lineup** 47:23

**list** 23:21 176:3 199:24

**listed** 113:19 243:21
263:8

**listen** 277:1

**listened** 287:18

**listening** 282:8

**litany** 166:6

**literally** 283:17

**litigation** 21:19 84:14

**LLP** 2:13

**loan** 13:9,17 16:21,24
17:4

**local** 89:18 149:19
183:15

**log** 278:5

**long** 12:17 76:16 111:9,
10 118:24 220:19
270:12

**longer** 119:4 141:11,12
200:1 243:12

**looked** 24:5 43:13
47:22 69:8 85:5 87:4,7
94:11 95:15 183:12
235:22 236:7 244:2

**lost** 33:13 91:6 167:2

**lot** 33:24 173:13

**Lou** 262:5

**loud** 239:11

**low** 300:20 301:8,14

**lower** 72:14

**lunch** 111:6

## M

**M.paige@tkstlaw.
com** 2:16

**made** 22:22 24:7,12
26:6,11,12 65:16 68:18
71:12 99:9 100:12,22
102:3 132:17,23 133:2,
23 134:21 135:5,13,19,
22 136:3,6,10,13,24,25
137:8,10,17 139:9
150:10,16 160:19
166:23 178:6 219:23
226:8 228:2,5 235:24
236:8 252:2 257:17
259:4 260:24 265:6
272:7 274:2 277:14
282:3,10,11,14,21,25
283:7,20 289:10 290:7,
21 293:23 295:18
299:21 301:9 302:1
305:22

**Main** 2:14

**maintain** 85:10 155:11

**maintaining** 85:19

**major** 18:8 165:9
174:14 225:15,16
239:6,7,8 259:1

**majority** 108:12 188:16

**make** 14:18 16:11
24:13 25:3 26:16 27:22
34:15 52:17,18 57:25
67:18 68:25 80:10 81:4
82:22 100:11,21
110:16,24 111:4 120:3
129:13 130:20 132:2
133:2,6,10,15 135:5
138:7 141:1 146:14
154:25 161:13,24
166:20 167:6 177:9
179:1,19 198:22 207:24
212:18 230:15 232:23
238:4 240:16 252:3,21
253:3 254:25 255:18
262:24 272:8,10 280:25
282:14 283:1 286:12
303:13 307:3,9

**maker** 151:7 202:3,9

**making** 61:18 79:24
98:12,14 104:2 113:9,
14,17 167:21 179:14
209:13 229:14 230:1,3
276:13 277:12 280:10
286:20 288:9

**maltreatment** 263:13

**man** 21:6 72:4,21

**man's** 74:5

**manage** 168:5

**management** 35:1

**manager** 141:19 142:2
165:12 167:16

**managers** 40:1,24
170:19 206:25

**mandated** 159:10

**mandatory** 299:22

**manner** 107:20 174:21
175:18 176:2 178:24
182:4 193:9,19

**March** 81:12

**marked** 31:1,5 47:24
80:20 114:21 115:14,18
116:13 139:14 153:24
154:3 162:2,6 169:25
195:18,24 197:7 206:8,
12 214:8

**marker** 158:24



Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 97 of 110
Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner
January 13, 2021

**Marriah** 2:13 9:16

**master's** 17:15

**Mathieu** 6:21,23 20:4 88:2 93:25 96:24 98:7 131:19 134:21 263:4

**matter** 9:11 97:15 138:23 262:10 278:1

**matters** 22:9

**meaning** 59:3 264:16

**means** 29:8 102:20,21 148:16 167:15 173:2 183:20 184:11,21 206:1 207:5 208:6 218:18

**meant** 59:9

**measure** 151:12

**medical** 185:9,11,16

**medications** 16:12,17

**meet** 142:24 223:18

**meeting** 36:22 204:1 304:10,13

**meetings** 142:25

**member** 17:25 18:4,6, 7,8,11

**membership** 18:12,14

**memo** 239:6 250:23 261:21,24 262:15,19 272:21

**Memorandum** 5:15,21

**memory** 16:14 116:6

**mentally** 130:21

**mere** 254:9 275:21

**messed** 199:19

**met** 11:17 49:23 114:15

**Mid-year** 5:19

**middle** 233:14

**midyear** 217:20

**mind** 42:10

**mine** 190:8 192:5 281:13

**minimal** 170:15

**minor** 199:2,15 206:22

**minute** 113:12 161:7 190:3 308:13

**minutes** 11:16,23 112:2 212:25

**mischaracterizations** 246:18

**mischaracterizes** 229:21 265:19

**mischaracterizing** 245:21

**misdemeanor** 255:21

**missed** 84:3

**missing** 163:14

**mission** 4:7 150:2 162:7,17,18,24 163:3,4, 11,17,21,25 175:11

**mistaken** 276:9

**misunderstood** 290:17

**mitigate** 131:8

**mitigating** 199:5

**modest** 197:23

**modifications** 201:20

**modify** 198:8 202:24

**moment** 15:20 85:18 143:11

**Monday** 142:25 308:1, 9,10

**monitoring** 209:19 210:2

**month** 13:21,22

**monthly** 226:19

**morning** 9:25 11:17

**motocross** 41:22

**move** 34:20 38:18 41:24 52:11 88:7 97:3 158:19 191:2 196:8 214:18 240:24

**moved** 238:20 255:25 256:20

**moving** 190:25 262:20

**multiple** 13:18 36:21 72:14 108:15 252:20,23 253:3 296:19 300:19

**mute** 240:10

**muted** 191:13,14

---

## N

**named** 129:24

**names** 9:8

**nation** 76:21

**national** 18:4 36:23 109:18

**nature** 122:1 146:21 181:5 202:11

**necessarily** 68:17 112:13,14 238:23

**needed** 21:14 59:10 75:2 101:21,24 150:3 160:16 173:3 178:19 180:3

**negative** 298:20

**negligent** 131:18 132:24

**networks** 237:13

**night** 165:2 187:2

**Noel** 3:15 81:10 109:25

**nonlethal** 74:11,15,22 75:14

**nonsustained** 204:22 206:1

**normal** 79:17

**Norman** 11:20

**Northern** 10:7 253:24

**Northside** 41:20

**notary** 10:24

**notes** 268:5

**notice** 3:8 10:3 30:9,23 225:2 259:13

**notification** 209:20

**notified** 276:21 301:10

**notwithstanding** 43:23 230:15 232:24

**November** 36:17,18 115:4 217:5

**number** 14:12 33:13 42:16 47:24 48:2 50:5 56:18 80:20 82:16 84:8 86:14,17 87:8,25 93:19 113:20 114:21,24 115:12,14 116:4,13,16 118:22 119:15,25 120:6 130:4 131:11,13 132:6, 17 133:19 134:7 135:24 138:9,15 139:1,14 153:24 154:3 157:23 158:5 162:2,6 169:25 174:21 195:10,18 197:7,10,19 198:12,21, 23 206:8,12,21 213:16 214:22 216:3 217:3 224:16,23 237:4,25 240:22 262:17 263:3 272:20 291:19 299:17 301:2

**Numbered** 4:19 5:13, 15,18,19,21,24 6:3,5,7, 9,11,13,17,19 7:3

**numbers** 31:1 33:13 214:7

**numerous** 130:4 291:16

**NW** 2:5

---

## O

**O.C.G.A.** 5:5 308:17

**oath** 5:17 16:7 21:24 50:4 65:9,18 66:12,21 79:10,16,19,22 80:10 88:9,11 91:16 92:1 94:15 95:12 96:18 97:16 118:19 135:18,20 136:6 137:14 140:8,10 236:11 243:25 245:16 276:12

**Obama's** 92:8

**obey** 149:18 183:12,14


Elizabeth Gallo
COURT REPORTING, LLC

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner

January 13, 2021

**object**  19:12 20:14,23
22:2 23:1,12 28:7,18
29:17 32:17 37:17 38:1
39:5,17 42:8,10 43:1
44:17,18 45:18 46:24
49:7,19 50:11,16 51:9
53:7 54:11 55:5,19
56:12 57:3 58:17 59:18
60:5 61:1 62:7,20 63:20
64:9,21 65:24 66:1,14
67:8 68:11 69:12 70:6
71:14 72:7 73:3,13 74:6
75:11,24 76:8 78:16
79:3 80:13 83:2,3 84:23
85:12 86:10 91:19
92:14 93:1 94:20 95:25
96:7 97:11 99:11 103:3
104:9 105:4 106:17,20
108:24 109:8 110:5,19
120:23 121:23 122:9
123:11,20,22 126:17
127:14 128:23 129:18
130:13 135:8 137:25
144:13 145:25 148:1,25
150:19 153:7,17 156:6
157:6 160:1,11 161:1
169:19 172:22 175:20
177:13 178:9 179:7
180:14 184:14 186:5
187:24 189:6 200:7,25
202:4 205:11 208:21
210:5,14,23 211:13
216:6 217:9 218:7
219:6 220:2 221:20
225:23 226:10 228:15,
20 229:19 230:18
231:20 233:1,23 234:6,
14 235:5,18 236:15,24
242:8,20 243:16 244:5,
13,24 245:19 246:14,16
247:7,9 248:20 249:12,
14 250:2 251:22 253:14
254:2,6,17,18 255:11
256:14 257:11 258:14
259:20 260:12 261:3
265:18 267:5,18 268:10
270:5 271:24 274:13
282:5 284:5 286:14
287:7 289:16 291:22
294:23 297:2 298:5
299:5 300:23

**objected**  300:8

**objecting**  254:22

**objection**  19:15 23:4
38:1 50:24 51:12 52:2
57:15,17,25 58:9 61:14
62:1 70:23 85:25 86:10
93:1 95:2,17 106:19
118:1 123:21 130:16
132:10 149:11 151:16,
25 152:10 157:15
173:5,14,23 183:4
184:1 186:15 187:4,10
189:14 205:22 212:6
223:1 230:4 231:7
246:16 247:14,23
250:13,14 251:3,15
253:6,12 254:11,16,21,
25 257:23 266:1 272:13
291:24 296:5 302:19

**objections**  3:14,23
10:14 15:11 81:9
106:23 116:17 208:24
253:14

**objective**  130:17

**objectively**  223:22

**objectives**  209:21
210:13

**objects**  15:16 132:7

**obligation**  68:24 70:10
233:12

**obligations**  79:6

**Observe**  194:1

**obtain**  25:4

**OC**  74:17,18 75:4 77:7
78:5 149:8,9 182:9,12
223:12 238:18 239:23
240:2,4 241:21 242:14
243:1 249:10 256:8
267:15 271:1 283:11,18
295:6

**occurred**  91:4 294:22
295:3 305:13,17

**occurs**  222:16

**Ocean**  255:4

**OCGA**  86:18,20 87:2,
11 88:3,13 89:24 92:6

**October**  36:17 154:6,
13 215:14 220:25 238:9
261:25 262:15 264:24

**odd**  302:25

**off-duty**  295:10,19

**offense**  62:17 78:21
109:15 189:10 202:12

**office**  5:17 8:18 17:22
48:3 65:2,18 66:12,21
67:23 68:1,9,18 69:1,8
70:5 71:19 79:10,19
80:11 114:18 121:16
125:14 126:6,13 130:18
134:23 168:13 171:3
183:24 233:20 235:13
236:12 238:23 244:3
255:23 258:13,20
259:7,12 260:4 264:11
266:24 267:12 305:3

**officer**  5:11,13,24
17:19,24 36:1 38:8
39:13 40:22 43:11
46:10,20 47:22 55:9,14,
25 56:4,6,10 58:12,14,
22 59:9,13,15,24,25
60:1,19,21 61:11 62:15
63:3,11,15 64:4,16,19
66:9,13,22 67:3,12,14
68:5,6,7,15,16,18,23,24
69:5,7,24 70:4,10,19
71:9,12,21 72:3,24,25
73:8,11,12,24 75:1,9,23
76:3,15,18 77:3,5,7,25
78:3,5 79:2,9 80:4,5
86:21 88:20 89:2,16,20,
24 90:18 102:2 104:21,
22 105:1,3 106:1,3,14
108:23 110:4 112:10,11
113:25 114:3 121:7,9,
10,13,14,17,20,22
122:5,16 123:18 124:6
129:15 131:8 139:9
141:16,20,21,24 142:3,
5 143:13,19,24 144:12,
17 145:18,21,22,24
146:5,9,10,12,16,17,24,
25 147:9,14,16,19,23
148:23 149:9 150:7,13,
25 151:11,14,21,24
152:4,9,15,20,22,24
153:4,6,12,16 155:18
159:20 160:10,16,20
167:17 171:9,18 172:7
173:19,21,22 174:11,
17,25 175:3,7,13,16,19
176:2,10,23 179:2,15,

17 180:11 181:15,16,
21,22,23 182:3,9,18,19,
21 183:22 185:8,15
186:22 187:13 188:8
189:3,4 192:18,24
193:8 194:23,25 195:5,
7 202:12,17 203:3
207:4 215:20 216:1,4,
24 218:12 219:13
220:15 222:4,14,18
223:14,17,23 224:12
225:4 229:2,10 230:13
231:1,5 234:19,22
235:16,25 236:8 238:11
241:1,15,20,23 243:3,6
246:3,4,5,8,10 248:6,14
249:1 251:1 255:6,9,22
256:2,4,9,24,25 258:18
259:14 263:4,13 273:11
282:18 283:11,16,20
285:10 291:14,15
296:18 298:16,21 299:3
305:19

**officer's**  55:2,3,17
58:22 60:3 69:21 70:17
79:19 106:13 124:4
139:11 179:5 183:8
219:17 224:10 283:9

**officers**  32:16 35:11
39:3,15 40:9 62:12
67:1,18 71:2 74:23
79:25 86:6 90:13 107:4
108:14 114:10 121:1
131:5 143:4 144:2
147:1 148:6,10 149:16,
22 150:4 155:4,22
157:24 158:3 162:24
164:3 170:19 172:15,17
173:3 176:8,20 178:17,
19 179:22 180:2,20
184:8 187:8,16,22
188:5,12,13,16,24
197:3 202:11 207:2
215:23 220:7 221:7,25
244:1 247:21,24 258:4
270:1 286:10 292:12
296:20 299:19,22,25

**official**  174:19 175:4
182:4

**Olympics**  13:11

**one-day**  263:16

**one-year**  211:8



Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 99 of 110
Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner
January 13, 2021

online 214:5,10

OP 239:2

open 249:8

operate 147:2 194:20

operating 52:14 171:9
175:13 219:15

operation 35:1 39:22
90:7 225:14 265:7
279:17

operations 40:1,8
165:4 168:6 171:19
266:8 274:1,3

opinion 147:11 229:12
253:16 280:9,14 282:16
305:11

opinions 304:22

opportunity 111:14
122:19 140:23 305:2

opposed 11:10 241:17
286:10 290:8

opposite 206:2

OPS 5:24 6:3,9,11,13,
15,17,19 7:3 24:13 29:9
43:9 45:16 49:24 54:22
64:16 65:1,12 67:2,22
69:4,6,21 70:1 90:7
93:24 94:1,3,8,11,18
95:16 96:19,23 97:1,5,
9,17 98:7 99:10 100:13,
17,23,25 102:6,13,16
112:11,17,18 113:2,3,4,
8,9,13,17 122:21,25
129:14 134:22 135:13,
19 136:25 137:18,19
139:11 142:20,25
143:3,8,12,14 164:2
168:19 169:6,9,13,14,
18 171:8 175:14,15
178:14 181:12 182:25
183:8,23 188:23 205:8,
19 209:6,9,11,13,25
210:1 218:21,22 219:2
221:10,16 226:22 238:1
241:12,17 243:13
244:11,20 246:25
248:16,19 249:4 259:5
262:16 263:2,11 264:24
265:6 266:11 271:11,16
272:8 273:25 274:4

279:17 283:5 284:9,18
285:6,18,21 286:22
287:19 288:8 289:5,7,
14,25 290:3,13,24
291:3 292:15 293:7
300:2,6,12 301:13
303:12 305:6

oral 199:12

order 149:25 196:13,
14,19 214:13,15 286:5

ordered 286:11

orders 183:17

ordinance 35:13
301:20

ordinances 151:13

organization 4:7 18:5
36:23 39:9,20 162:7,17

organizations 18:1

original 7:7,8 264:19

others' 173:4

outlined 171:5 263:7

outstanding 218:6,18,
22 219:2,20 220:1,17

overcome 38:14 59:11
74:24 156:4

overly 132:9

overturned 176:25

---

P

p.m. 308:15

package 208:18

pages 247:10 258:9
302:17 306:25

Paige 2:13 9:16 190:12

Pannell 253:4 261:9

para 123:17

paragraph 34:3,7,8,9
38:16,17 41:4,17 42:16
45:24 52:7 53:15,23
54:2,3

paramilitary 39:8,20

paramount 113:24
123:17 147:18

part 29:2 33:1 34:21
69:3 74:22 125:7,18
127:11 128:8 153:2
159:15 161:5 208:14,17
209:13 210:22 211:11,
18,20 222:12 226:22
227:1,24 228:6,10
229:18 239:21 240:12
271:21 281:12,14 285:3
292:21 293:9

participated 93:12
248:6

participating 8:19

parties 128:4,12

partnership 163:24
164:5

partnerships 163:7

parts 38:18

party 12:2 43:17 44:16
129:23

pass 159:10

past 36:13 199:20
200:14 208:16 239:21

patience 31:9 161:23
190:19 306:7

pattern 207:5 210:12

paying 126:25 127:2

payment 308:6

peace 5:11 17:19,22,23
76:17 86:21

Peachtree 2:5

penalties 16:9

pending 10:6 296:12
297:10

Pennington 109:14

people 8:17 65:20 70:1
142:12,17 148:14 166:7
174:13 178:15,21 184:8
188:24 210:11 238:25
265:16 266:5 269:23
277:5 287:5,24 288:13
290:9 292:12 293:6
294:5

people's 148:11

pepper 74:19,20 75:9,
14,18,23 76:24 77:7,21
78:6,11,25 80:7 102:2
157:3 231:15 232:16,18
234:3,23 282:20

perceived 223:23

percent 303:5

percentage 93:5
301:14

perfect 119:20

Perform 193:18

performance 4:18
200:14 217:4 218:19
221:15 222:6

performing 41:18,19
42:16 174:19

performs 176:2

period 13:10 35:9 39:1
40:19,25 105:19,21
166:9,11 199:22 211:9,
22 217:21 218:5 219:15
220:9 225:22

periods 199:25

perjury 16:9

person 40:15,17 59:9
63:17 64:15 72:12 73:1
75:20 77:8 78:6 102:22
113:3 121:16 141:16
144:7 150:9,15,24
152:15 153:3 157:1
159:21 169:2 174:1
176:15 178:1,6 182:20
183:1 185:5 189:13,19
194:5 199:15 203:8
230:16 231:15 234:3,24
235:3 236:9 243:21
265:13 273:3 275:24
280:4,6,13

person's 74:7 151:23
152:6,17 182:12 222:6,
11 236:13 245:18 280:9

personal 133:7,11
135:5 138:13,20,25
139:5 203:18 222:10

personally 22:23
165:16 218:14



Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 100 of 110
Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                    January 13, 2021

**persons** 172:12 174:8

**persons'** 193:12

**perspective** 224:12

**pertinent** 128:1 212:20

**Pete** 166:3

**philosophy** 199:3,9

**phrases** 217:25

**physical** 72:23 75:21
141:16 148:16 241:2

**physically** 130:21
185:20 186:12 283:11

**pick** 47:22

**piece** 16:21 114:16
120:5

**pillar** 174:14,16

**pin** 11:13

**place** 50:16 51:12
53:17 56:20,22 90:12
135:24 159:24 160:9
195:5 200:4 204:3
206:13,17 209:6 218:12
221:19 227:22 244:19
247:13

**placement** 87:15
192:12 216:15 224:20
237:9 270:20

**placing** 307:1

**plaintiff** 3:15,17 24:1,
21 25:13 26:25 60:19
131:17 132:23 308:8

**Plaintiff's** 115:1

**plaintiffs** 2:2 9:10,13
10:24 28:16 31:14,18
43:11

**plaintiffs'** 3:12,20,23
8:13 115:19 116:17
128:17 132:16

**platform** 123:2

**Plea** 6:21

**pleasure** 165:21

**PLF000003** 5:25

**PLF000004** 5:25

**plug** 269:1

**poaches** 278:2

**point** 15:9 22:13 32:22
33:7 68:23 125:5,6
126:5,7,12 136:23
160:15 166:1 194:23,24
200:6 202:16 221:23
222:1 252:2,3 255:9
256:22 257:20 278:21
288:20 302:13

**pointed** 282:25

**points** 305:1

**police** 2:11 4:5,6,9,10,
12,14,16,17,20,22,23
5:3,23 18:7,9,10,12,15
20:12 29:8 32:13,15
34:24 35:1,11,15 38:8,
21 39:2,10 40:18 46:16
54:25 56:20 58:15
62:24 65:8,22 66:8
67:18 68:15 70:19 71:2
76:15 78:12 79:19,24
88:1 89:15 93:23 98:10
105:16 106:7 107:3,8
108:5,8,12,17,19
109:12,15,17,20,23
113:24 114:11 121:8
123:18 130:20 131:6
132:14 133:3,23 134:20
139:8 141:20,21 142:4,
7,17,24 143:19,24
144:2,12 145:18,22,24
146:9,17 147:7,16
148:9,10 151:1 154:16
155:7,13 156:2 163:4,
21 164:17,20,22
165:20,23 166:1 168:2,
15 174:11,16 175:12
176:19,20 184:12
201:22 202:21 208:17
215:2 223:7 243:6,7
245:14 257:15,16 286:1
296:14,20,21 298:21
299:11 300:3,9

**policies** 24:16 29:10
35:15 38:20 40:4 55:8,
15 56:9 60:24 61:13
103:22 106:7 107:19,24
108:2 120:18 122:20
142:8 146:23 155:12
182:22 184:18 231:3
243:9,25 244:19,21

251:2 258:11 267:2

**policing** 92:9,13 93:5,
13,14

**policy** 61:24 75:5
105:13,24 106:11
109:12 113:2 142:4
151:7 154:19 157:22
162:11 168:18 170:23
171:22 172:15 173:22
177:1 188:18 195:25
196:4,5,6,23 197:5,19
198:5 199:2 200:22
201:12,14,17 202:2,9
203:5 204:4 205:9,20
206:16,20 207:1 208:14
212:2 214:24 215:4,5,9,
11,17 216:11,20 217:7
220:24 221:3,7,18
222:24 223:5 229:17
243:13 247:20 257:5,6,
20 298:11 299:21

**polygraph** 5:3 120:11

**portion** 41:25 128:1
134:11 212:20

**posed** 51:4

**poses** 224:4

**position** 12:20 52:25
108:21 146:8,10 164:19
166:8,16 167:12 277:7
301:12

**possession** 24:14
49:5 50:1 116:11 117:9

**possibility** 64:13

**POST** 36:4 37:1,5
155:11

**POST-CERTIFIED**
17:23 36:1

**potential** 60:19 64:18
144:7 244:12 245:16
267:14 297:10

**potentially** 206:22

**power** 111:8 203:13,15

**practice** 160:23 221:18
268:9

**practices** 38:20

**precinct** 165:7 225:17

**preclude** 121:12

**preference** 91:2,3

**preparation** 18:20
19:11 271:14

**prepared** 130:21

**preponderance**
102:16,19,25 103:2
105:25 106:12 107:25
114:15 204:23 205:7
234:22,25 273:17 284:3
302:9

**prerequisite** 155:10

**present** 8:13 9:7 19:6
21:13 72:13 99:3
275:13 304:10,13,23,24

**presented** 38:14 59:11
74:25 75:2 96:13 98:15
100:19 101:20,24
102:12 110:15 112:20
120:8 224:13 229:12
232:21 280:15 282:9,17
283:6,15 284:10,16,20
289:11 290:7,22 291:13
292:16 293:2,22
306:24,25

**presenting** 77:2,25
96:13 112:18 234:8

**presently** 125:19

**preserved** 307:2,12

**president** 12:22 92:8

**pretense** 35:12

**pretty** 76:20 85:4
105:14 170:13,17
206:19,21 276:22
300:20

**prevent** 16:17 121:14

**preventing** 176:14

**print** 238:4

**prior** 14:3 19:20,25
31:19 48:18 113:17
115:25 116:24 136:23
143:13 156:10 227:4
268:5 271:6 272:11
300:6

**private** 68:4 70:18
71:10 182:4



Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 101 of 110
Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                                    January 13, 2021

**privilege** 19:15 83:5
99:17 100:1 104:12
105:8 106:22 215:22
274:16,18 275:2,6,9,17,
20,25 277:9 278:3,4,5,
11,13,20

**privileged** 18:18

**privileges** 216:1

**privy** 207:16 232:3
259:1

**probable** 59:4

**problem** 60:13 77:16
159:12 188:23 278:16,
18

**problems** 16:13 131:8
204:19 275:16

**procedure** 10:11,18
27:1 51:17 90:7 113:2
146:11 308:17

**procedures** 4:22 24:17
29:11 55:8 60:24
103:22 106:7 109:13
120:18 142:8 146:16,23
152:19 155:12 184:19
231:3 243:10,25 244:19
247:20 251:2 258:11
267:2 298:11

**proceed** 248:1

**proceedings** 244:22

**process** 4:13 74:23
147:5,6 159:9,12,15
160:9,10 161:5 168:16
171:5 177:1,4,8,11,25
178:7 179:23 195:6,8
199:14,23 201:24
202:23 203:17,21
211:21 217:12 218:13
219:18 222:13 246:3,23
281:15 293:9

**processes** 176:21
299:25

**produced** 9:22 93:6
128:11,16 162:16 225:2
271:1

**production** 25:14,17
26:12,24 27:8 28:4,14
29:14 128:18

**productivity** 220:10

**professional** 17:17,25
114:18 134:23 149:22
168:14 171:3 198:4
201:23 202:22 260:5

**professionalism**
108:10 164:10

**Profile** 5:13

**program** 207:4

**progressive** 199:4,10,
14

**progressively** 200:4

**prohibition** 37:23

**prompt** 194:14

**promptly** 184:25
192:25

**proof** 302:3,7,9,12,13

**propensity** 144:4,10
145:16,22 146:18 147:9
151:12,22 152:5,16
175:4 227:20

**proper** 146:11 209:19

**properly** 50:25 253:21

**propose** 10:13

**proposed** 21:21

**propounded** 22:1,8,16
24:1 26:13,25 28:16

**propounding** 81:14

**prosecute** 67:20

**prosecuting** 68:20

**prosecution** 255:24
258:5

**protect** 79:21 124:7
172:18 186:3 254:12

**protected** 19:14 83:4
99:16 100:2 104:11
105:7 106:21 155:20
274:15,18 278:10,24

**protecting** 144:3

**proves** 90:24

**provide** 26:9 27:15
28:22 59:4 82:25 88:2

100:18 125:9 130:17,22
160:23 185:4,11 193:15
194:4,14

**provided** 25:13 27:4,7,
10,12 54:24 86:22 88:5,
9,12,20,25 89:3,4 91:17
92:3,5 93:15 98:11
100:13 108:8 112:17
116:23 128:6,7,12
157:10 207:20 247:25
249:17 255:23 283:9
284:8 287:4 288:13
289:5 290:24 291:2
298:1 305:18

**providing** 49:15
182:18

**prudent** 272:6

**public** 13:10 16:22
17:4,10,14,16 185:1
294:16 304:11

**pull** 87:12 145:3 158:14
170:4 216:11,12,13
224:17

**punches** 60:21

**punctual** 194:9

**purpose** 130:11,12
131:1 210:10 294:18

**purposes** 10:10,12
123:5 233:13 289:18

**pursuant** 10:2 27:1
159:18 231:3 251:1
308:16

**pushed** 90:8

**put** 13:16 23:3 50:4
54:2 79:19 85:24 86:9
90:12 110:3 123:21
124:10 138:6 162:14
181:13 182:9,12 195:9
206:16 207:16 209:6
219:10 225:19 226:4
232:9 239:23 253:6
267:14

**puts** 79:22 168:18
227:21

**putting** 52:2 95:1
172:14

---

**Q**

**qualified** 303:12

**qualify** 36:7 146:3,4

**question** 10:15 15:4,6,
15,21,22 16:1 19:13
22:5,7 23:19 26:14 29:3
33:18 34:21 41:16 42:5,
12,13,19 44:9 49:1,12,
14 50:17 51:3,10 54:7
58:6 59:22 60:9,11,23
61:6 63:24,25 66:18
70:7,14 72:11,17,19
77:17,20 82:10,18 83:7,
11 85:23 86:2,14,17
87:18,24 91:3 95:3,15,
23 98:12,18 99:13,20,
22 101:16 105:5,10,12
106:19 107:1,3 108:18,
25 109:1,3,9 110:6,20
111:2 112:24 113:5,16
114:6 120:24 121:24
122:10 123:12,22
126:4,18 127:15 128:24
129:19 131:2,22,23
133:19 136:4,5,20
137:12,13 138:1 139:3,
4 141:13 143:21 144:14
145:12 146:1,14,20
148:2 149:1 150:12
151:17 152:13 153:2,8,
18 156:7,10,14,16,18
157:7,17 159:17 160:3,
12 161:2 163:25 169:22
172:23 173:6,15 175:21
177:14 178:10 179:11
180:18 183:5 184:2,3,
15 187:18,19,25 188:21
189:7,12,18 196:19
198:18 200:8,9 201:1
202:5 205:12,16,23
207:21 208:22 209:1
210:6,24 211:2,3,14
212:13,16,18 215:1,5,9,
16 217:7,10 218:8,9
219:6 220:3,4 221:21
223:2 224:6 225:24
228:6,21,23 229:1,20,
25 230:5,19,22 231:21,
24 232:10 233:2,24
234:7,15 235:6,19
236:10,16,25 239:13
242:9,21 243:17 244:6,

Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 102 of 110
Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner
January 13, 2021

14,25 245:20 246:15,17 247:9,19 248:21,22 249:13 250:3,8,12,17, 19 251:4,7,11,13,18 252:13,19 253:18,19,21 254:3,8,16,23,25 255:12,13 256:15 257:12,19 258:15 259:21 260:14,20 261:4,13,15 265:19 267:6,9,19 268:11,14 269:9,16,19 270:6 271:25 272:5,6 274:14, 23 275:14 276:5 277:1, 2,3 278:2,9,14,19,25 279:1,4,5,6,19,20 280:18 281:2,25 282:6 283:10 286:15 287:8 288:11 289:3,17,24 290:4 291:23,25 292:3, 4 293:11,25 294:24 296:8 297:3,7,15,16,19 298:6 299:6 300:24 302:20,21 304:19 305:8

**questioning** 51:13 276:6 283:10

**questions** 15:20 21:22 22:9,11,15,24 24:2 26:23,24,25 27:7 29:7 48:6 57:12 81:15 102:8 117:4 133:11,14 156:20 215:9 254:12 280:22 306:2,14

**quick** 48:5

**quicker** 34:20 158:19 161:24 214:18

**quickest** 74:9

**quickly** 57:13

---

**R**

**rang** 31:15

**rank** 165:22

**rapidly** 132:19

**rate** 300:21 301:8,15

**rated** 220:19

**rating** 218:17,23 220:10,11

**reach** 25:10 56:22

**reacted** 255:25

**read** 10:21 31:22 34:19, 20 50:8 52:8 57:19 76:11 77:17,19 88:16 89:1 96:16 127:25 131:24 132:1,5 134:17 140:23 145:12 212:17, 19 239:6,10,11,17,19 241:1 242:25 243:3 262:14,19 263:1 264:21,22 271:15 273:12 280:18 294:20

**readily** 132:19

**reading** 51:6 76:5 86:24 295:2

**reads** 172:3

**ready** 29:22 52:22,23

**realize** 186:24 194:25

**reask** 85:22 207:21 290:4

**reason** 21:12 42:22 67:22 69:19 70:16 97:4 101:18 141:15 174:6 229:1 254:5 290:11 301:24

**reasonable** 37:7,15 38:7,13 72:3,25 75:6 76:2 82:11,14 85:6,11, 15 94:14,17 95:11,13, 14,24 96:5 102:22 103:25 104:4,6,16,19, 21 105:2 107:7 108:18, 22 117:3,22 132:18,22 138:7 147:15 152:22 156:23 159:20 174:20 175:6 179:19 187:8,13, 17,23 188:5,7,8,14,17, 25 193:4,19 223:22 224:12 227:22 243:8

**reasons** 234:18 271:22 284:24

**recall** 13:6,15,16,19,21 14:11 22:11 33:4,16 35:24 37:19 38:3 41:9 46:9,12,14,19 47:21 49:22,23 75:12,16 81:14 90:3 93:18 94:10, 13 96:10 99:7,8 113:18

119:22 124:12,13 125:23 126:8,10 129:17,21 130:3,10 137:2 139:19,24 140:2, 24 166:11 222:2 238:17 264:20,22 266:18 269:24 272:2 273:10 286:24 287:23 292:14 293:18 295:1,14,17,22, 25 304:25

**recalling** 16:13

**receive** 17:5 143:8 155:4,19,23 202:14 286:19

**received** 17:1,12,15 63:23 89:17,20 90:14 199:11 226:25 238:8 286:21 296:25

**receiving** 60:9

**recent** 13:12

**recertified** 36:12

**recess** 30:3 118:13 161:17 190:15 213:9 304:2

**reckless** 131:18 132:24

**reckoning** 199:22,25 211:21

**recognize** 115:21

**recognized** 76:20

**recollection** 35:22 47:12,15,18 87:2 117:18

**recommend** 73:18

**recommendation** 99:8 100:8 129:13,14 137:21 150:10,16 160:19 174:1 235:11 238:20 259:16 263:6,8, 12 265:2,6 266:3 273:13 274:2 279:24 281:12 293:4,8

**recommendations** 92:12,22 93:24 96:23 98:7,14 99:10 175:11 259:10 280:11 291:7 299:2

**recommended** 264:25 265:9,17,25 266:6,11 273:25 274:4,5,6

**recommending** 272:21

**record** 8:4,25 9:2,4 11:3,18,19 14:25 15:11 23:4,8 24:7 26:17 29:23 30:2,5 50:25 51:12,15, 19,23 52:2 57:15,25 77:11 86:10 95:2 96:17 118:15,18 123:22 128:1 132:6 161:16,19 190:6, 14,17 191:17 192:10 195:12,15,17,21 212:20 213:6,8,11,15 214:3 237:18,21 247:14 253:7 254:11,13 262:14 263:1 268:22,24 269:10,11,18 270:10,12,15,16,18 277:21 278:22 303:18 304:1,4 306:9,10,12 307:13,14,16,18

**recorded** 306:20

**recording** 289:9 306:20,23 307:2,11

**recruit** 146:8

**reducing** 163:5,22

**reduction** 264:19

**refer** 64:17 65:1 66:11 67:6 68:8 70:5 158:16

**referral** 185:6

**referring** 33:14 53:16, 17,18,21,25 65:17 73:20 89:21 158:11 249:5

**reflected** 134:22 137:19

**reflects** 257:21

**refute** 102:11

**regular** 285:6 301:3

**regulated** 40:5

**regulates** 203:20

**regulations** 35:13 38:20 40:4 51:17



Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 103 of 110
Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                    January 13, 2021

**reject** 129:13

**rejected** 93:24 96:23

**rejecting** 99:9

**related** 51:13 106:24
228:13 229:17 231:12

**relates** 16:22 19:25
20:12 38:12 45:8 46:6,
15 81:23 107:3 108:19
110:4 112:7 113:9,24
116:8 122:24 129:24
133:2,5 138:15 143:18,
23 151:4,8 172:15
201:8 202:8 215:19
221:12 272:16 276:8,14
290:13

**relating** 20:4 88:3
232:16

**relation** 272:25

**relationship** 158:12

**relative** 227:13

**relevant** 34:20,23
38:17 141:9 200:19
227:16 229:4 262:10

**relied** 25:19 26:22
27:12 45:23 87:9 93:23
96:19 97:8,16 112:16
113:12 116:5 119:23
120:6 125:8 151:3
261:1 277:12 280:11
281:15

**rely** 25:16,22 26:2,6,9
98:13 100:7 110:10
116:2 124:8,16 135:15
137:22 140:19 227:8
280:9

**relying** 46:2

**remain** 176:3 186:18
254:21

**remained** 198:7

**remaining** 41:25

**remedial** 158:8,12
159:3,5,10,14

**remember** 32:11 46:22
47:2,7,9 99:2 130:5
138:8 140:8 268:4
269:21 284:17 294:9

301:1

**remind** 32:9,23

**reminded** 47:3 60:18

**remotely** 8:7,8

**repeat** 63:25 128:10
136:20,22 137:11
143:20 153:2 178:22
230:21 274:22

**repercussions** 304:14

**rephrase** 15:21

**replace** 30:13,19

**report** 4:24 5:6,8,9,12
6:3,5,7,9,11,13,15,17,
19 7:3 68:25 70:20 94:3
97:6 142:21 143:9
168:14 183:23 186:19
188:8,11 222:19,24
223:8,15 226:16,18,23,
25 227:19 228:1 238:1,
22,24 244:3,10 301:7
303:3

**reported** 245:17

**reporter** 8:5,12,22 9:20
14:24 29:23 57:17,18,
19 58:4 77:18,19 87:14
119:8 127:22,24,25
161:6 163:19 192:8,11
195:11 212:19 216:14
224:19 237:5,8,15
253:10 270:19 274:22
280:18 307:7,13,19,24
308:3

**reporting** 185:20

**reports** 4:24 169:6
181:13 192:23,25
194:14 223:10

**represent** 9:8,10 25:9
27:4 48:6 83:20,22,24
84:1,16 85:21 214:25
215:14 217:3 225:1
278:23

**representation** 45:11
84:20 97:22

**representative** 283:9,
14 286:11 291:10,14
305:19

**representative's**
292:22

**represented** 12:9
83:20 140:5 297:13,17

**representing** 22:20
84:1,4,6,15 85:7 125:20
126:14 297:9 298:22

**represents** 83:23

**reprimand** 199:13

**request** 3:23 24:12,21
25:15 26:12,24 27:8
28:14,15 65:4 100:21
115:19 116:3,18
117:14,15 120:14
128:17 131:13 132:6,8,
11,16,21 133:4,7,18,19
135:6 138:16,24 139:1
276:10 285:15 306:15
307:1,3,10 308:2

**requested** 225:3
284:21

**requesting** 100:25
101:1

**requests** 3:20 25:5,14,
17,18 26:11,23 28:4,14
29:13,14 81:22 117:25
131:11 133:5

**require** 66:22 81:21
148:22 149:8 155:10,18

**required** 65:18 75:15
114:12 141:23 148:11
157:24 159:6,7,11
162:24 164:1 170:18
171:13,17,18 174:25
178:23 192:24 193:9
197:4 203:17 205:21
206:25 215:10,20
216:4,25 221:6,11
222:1 231:17 233:16,18
235:1 244:21 246:4
298:12

**requirement** 36:9
106:2 108:3 152:8
300:11

**requirements** 75:6
155:10 193:5

**requires** 75:7 86:21
90:19 94:22 164:6

180:11

**research** 18:7 87:10

**reserve** 10:13

**reserved** 308:19

**reside** 11:21,25

**resisted** 224:6

**resource** 285:9

**respect** 148:15,16
228:4

**respectful** 204:18

**respond** 21:13 25:5,16
26:20 27:16 32:24
55:10 82:12,25 87:8
116:3 125:4 193:9
212:13 253:12 288:3,7
300:12

**responded** 284:18

**responding** 52:3 82:15
91:10 271:5

**responds** 181:24

**response** 3:14,17,20
19:18 41:7,8,14 79:18
81:18 88:6,8 94:7,16
95:12 96:17 113:20
114:25 117:13 119:14,
24 125:7 128:17 131:25
132:1,3,5 133:17
134:25 135:2 145:19
272:16 276:7,17

**responses** 3:23 14:22
19:21 22:25 24:2,25
25:13 26:10 27:18
28:13,23 29:12 41:11
48:17,21 51:7 81:9
83:13,16 115:11,18
116:17,23 125:10
128:5,6 131:11 138:5,
21 271:6 301:22

**responsibilities** 29:9
144:2 158:1 218:20

**responsibility** 79:12,
20 167:20 168:5,19
176:22 186:12 200:19
209:5 285:21

**responsible** 34:25
35:10 38:19 39:1,13,22,



Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 104 of 110
Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                        January 13, 2021

25 40:6,7,15 68:20
79:18 101:10 113:3
142:12 168:9,15 170:24
171:3 185:19 198:3
201:22 202:13,21
209:18 269:23 299:21

**responsive** 120:6

**responsiveness**
10:15

**restate** 22:5 26:19
42:12,13 50:24 60:14
85:23 150:12 152:12
179:11 212:9 228:23
267:8 268:13 269:16
279:20

**restating** 269:19

**restrained** 174:20
175:5,17 193:18

**result** 159:11,12 297:22
304:15

**resume** 85:5

**retained** 188:13

**retainer** 126:23

**retains** 202:23

**retired** 13:5 94:12
132:13 135:25 136:2

**retirement** 13:7

**retrained** 159:21
160:17,20

**retraining** 160:9,24
161:4

**review** 5:8,9,19 24:8
27:18 28:22 41:11
45:16 49:3 84:22 94:22
95:24 96:6 113:1,13,16
115:4,24 116:10,24
117:8 141:1 198:8
202:24 249:25 263:5,12

**reviewed** 19:10,20,25
20:3 23:9,22,24 24:11,
16,20,25 34:5 42:7,23
43:8 45:15 48:17 94:17
95:19 128:15 289:14,25
290:3,12

**reviewing** 28:17 49:17
70:1 175:14 263:5

**revoke** 198:8 202:24

**right-to-work** 146:6

**rights** 32:16 33:3
148:12 151:23 152:6,17
155:20 172:11 174:7,12
176:21 193:12 236:14,
20 245:18

**Rogers** 139:24 140:17

**rogs** 276:10

**role** 34:24 133:22
134:20 137:17 164:23
165:1,6,8 296:14

**roles** 40:2

**rolling** 239:16

**room** 101:10

**roomful** 99:15,19

**rude** 173:12,20

**rule** 15:3 172:10 174:3,
6 175:11 180:10 188:10
193:5 233:13 238:14
241:7 263:13 268:7
308:16

**rules** 4:9 10:10,17
14:16 27:1 51:17 74:20,
23 81:20 142:13,14
144:8 147:3,6,7 148:23
151:13 152:17 170:8,
11,13,25 171:11,23
184:12 188:18,25
194:1,18,24 232:8
251:14 252:4 253:23,24
254:19 266:23 267:16
269:23,24 308:17

## S

**safe** 186:2

**safer** 163:5,22

**safety** 12:22 13:10
16:22 17:4 163:6,23
224:4 294:16 304:11

**salary** 17:5

**salt** 114:8

**Sam** 9:12 144:22 192:6

**Sam's** 192:4

**Sampson** 2:13

**SAMUEL** 2:3

**sat** 47:4 53:19,20

**satisfied** 141:8

**scenario** 61:5,16 63:2,
11 64:2 71:17 73:6,9,22
80:18 157:4

**scenarios** 72:11 80:17,
18

**school** 17:10,11

**scope** 53:2 54:9,19
55:4,17 56:2

**scopes** 56:21

**score** 218:6

**scoring** 217:23

**screen** 11:10 30:20,22
34:9 52:11 119:17
167:7 191:1 213:19
239:15 240:17 306:16,
19 307:11

**scroll** 33:21 48:3,10
115:20 119:4 138:17
240:12

**SD** 269:1

**search** 37:7,15 81:21,
24

**section** 5:5 53:22
86:18 87:5 88:3 94:2
97:2 104:6 164:22
165:10 167:17,25
175:14 181:8 239:10,
11,14 263:10

**sections** 39:21 219:12

**security** 12:23

**sees** 68:5 185:8

**seizure** 37:8,16

**Sellers** 2:12 8:10 9:14
10:19,22,25 11:4 19:12
20:14,23 22:2 23:1,3,
12,17 28:7,18 29:17
30:7,10,14,18,25 32:17
34:7,13 37:17,25 39:5,
17 42:8 43:1 44:17
45:18 46:24 49:7,19
50:10,15,23 52:1 53:7

54:11 55:5,19 56:12
57:3,5,9,16,20,23,24
58:9,17 59:18 60:5
61:1,14 62:1,7,20 63:20
64:9,21 65:24 66:1,14
67:8 68:11 69:12 70:6,
23 71:14 72:7 73:3,13
75:11,24 76:8 77:9,12
78:16 79:3 80:13 82:3
83:2 84:23 85:12,24
86:9 91:19 92:14 93:1
94:20 95:1,7,17,25 96:7
97:11 99:11,18,22
100:4 103:3 104:9
105:4 106:17 108:24
109:8 110:5,19 111:15,
21 112:5 118:1 120:23
121:23 122:9 123:11,20
126:17,21 127:14,18,21
128:2,23 129:18 130:13
135:8 137:25 144:13
145:25 148:1,25 149:11
150:19 151:16,25
152:10 153:7,17 156:6
157:6,15 160:1,3,11
161:1,12 169:19,21
172:22 173:5,14,23
175:20 177:13 178:9
179:7 180:14 183:4
184:1,14 186:5,15
187:4,10,24 189:6,14,
24 190:7,11,22,25
191:7,13,20,23 192:3
200:7,25 202:4 205:11,
22 208:21 210:5,14,23
211:13 212:6 213:4,18,
22 214:2,9,20 216:6,9
217:9 218:7 219:5
220:2 221:20 223:1
225:23 226:10 228:15,
20 229:19 230:4,18
231:7,20 233:1,23
234:6,14 235:5,18
236:15,24 237:17
240:11,15 242:8,20
243:16 244:5,13,24
245:19 246:14 247:7,23
248:20 249:12 250:2,13
251:3,10,15,17,23
252:1,7,12,18,23,25
253:5,13 254:21 255:11
256:14 257:11,23
258:14 259:20 260:12,
14 261:3,8,12 265:18
266:1 267:5,18 268:10,

Elizabeth Gallo
COURT REPORTING, LLC

Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 105 of 110
Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                            January 13, 2021

15,20 269:6,12,17
270:5,11 271:24 272:13
274:13,21 275:10 276:2
277:16,19,22 278:8,17
279:3,11,18 280:16,24
281:23 282:5 284:5
286:14 287:7 289:16,22
291:22,24 294:23
296:5,7 297:2 298:5
299:5 300:23 302:19
303:24 306:5,13 307:9
308:4,5,8

**semantics**  68:22 274:9

**send**  233:12,17,19

**sending**  203:9

**senior**  12:22

**sentence**  88:19

**separate**  249:3 283:13
293:19

**September**  13:23
36:16 170:8 196:1
215:15

**sergeant**  112:18

**serve**  79:21 124:7
165:21 172:18 186:3

**served**  12:5 27:20
115:5 116:25 125:21
127:11 128:4 164:21,24
166:7

**service**  193:16 296:25

**services**  164:22,25
165:10 204:20

**session**  47:21 101:13
207:14

**sessions**  18:21 19:3,9,
10

**set**  3:15,17 22:24 45:4
48:18 54:9 55:7,15
81:10 82:16 94:2 97:2,5
102:21 104:17 107:6,20
115:1 116:6 119:23
133:6 157:22 162:18,25
170:16 171:17 175:12
177:1,4 179:23 188:18
193:5 197:19 206:20
218:12 221:11 223:18
258:8 303:16

**sets**  25:16

**settle**  294:3

**settled**  294:2,13 304:9

**settlement**  294:15
304:11,15

**Seventeen**  213:18

**severity**  200:18 224:5

**shackled**  239:22,24
240:3 255:7 256:10

**shallow**  238:3

**share**  192:6 259:6
306:16

**shared**  129:9

**Shawn**  166:3

**Shean**  2:4 9:9 11:12
23:14 34:8 50:10 77:14
99:19 189:24,25 190:2
191:1,2,7,24 214:10
234:7 251:10,23 252:7,
19 274:23 279:4

**sheet**  143:6 263:7

**Shields**  196:5

**shift**  195:5

**shoot**  185:14

**shooting**  131:20
294:21 297:22

**short**  13:10 111:17

**shorten**  141:6

**shot**  139:23 222:22

**show**  31:4 115:17
131:10 135:1 154:2
162:5 182:21 186:12
194:11 195:23 206:11
220:21 261:18

**showed**  103:10 104:5
147:14 151:21 226:25
234:22 270:25

**showing**  11:10 144:3
146:18 238:13 249:14
260:3 306:23

**shown**  227:20 247:13
280:2

**shows**  104:20 105:1
106:1,12 107:25 144:10
145:15,22 147:9 151:11
152:5,16 175:3 225:19
230:13 263:12

**side**  16:20 154:22
262:6,22

**Sideways**  226:17

**sifting**  253:22

**sign**  10:21 83:9,12
126:23 140:24 144:7
145:23

**signature**  262:6
263:18,23 308:18

**signed**  48:13 154:5,18
170:8 206:14 215:14
217:5,17 220:25 221:1
262:5,11

**significance**  32:15

**significant**  56:23 59:1,
4 174:16 217:15

**significantly**  215:7
217:8

**signing**  264:15

**signs**  144:10 145:16
146:18 147:9

**similar**  104:1 107:21
196:6,20 197:20 224:13

**simultaneous**  65:5
67:24

**simultaneously**  67:21

**sir**  11:17 12:18 13:13
14:13 25:21 27:10 28:1
33:23 36:3,8 37:3,6,10,
12 38:18 40:5 41:6,23
43:18 44:21 45:14
47:14 48:6 49:1,12 50:6
52:21,24 53:4,21 54:6
55:23 58:11 59:22 62:5
66:21 68:3 70:16 71:6
76:7 79:7 80:16 81:3,
13,24 82:2 83:11,18
85:2,4,23 87:3 88:9
89:9 90:5,15 91:14,15
92:7,18,23 93:8,20 94:6
98:3,17,19 100:25
101:17 103:13,21 104:4

105:16,21 107:11
109:11,24 111:9 112:13
115:6,10 116:22 118:9
119:13 120:9,13 121:18
122:4 125:2 126:8
127:9 128:10,14,19
131:23 132:4 133:20
134:7 135:3 136:15
137:6,13 138:10 139:21
140:1,9 141:11,13
143:7 145:3,11 147:21
152:12 154:4,14,15
155:2,16 156:15 158:2,
6,16,23,25 159:4,16
161:22 162:10,15,21
164:12,15 167:1,14,19,
24 168:3,17 169:11
170:4,6,10 171:7,15,20
172:1,13,21 174:23
175:8,24 176:19 177:17
178:25 179:14 183:19
185:3,23 186:1 187:20
189:1 192:17,22 193:2
196:2,17 197:12 198:6,
13,24 199:8 200:17
201:5,16,25 202:8,18
203:11,16 204:18,24
205:5 206:15,18,23
207:3,8,21 208:8
209:16,23 210:22
212:24 215:3,12 216:18
217:2,22 218:3,24
221:2,5,9 223:13,16,20,
25 224:25 225:10,11
226:2,13,17,20 227:7,
11 228:8,12,24 229:7
232:3,7 234:5 235:4
236:14,23 237:7,25
238:3,10,12,16,19
239:4,9 240:20 241:4,8,
25 242:19,23 243:3,12
245:5,9 247:19 256:6
257:6 258:7 260:18,25
261:21,24 262:19
263:18,21,24 264:7,9,
13,23 265:3,14 267:9
268:14 269:25 270:24
271:10,17 279:10 281:9
285:24 286:2 288:5,25
290:4 292:2 293:10
294:11 295:16,21
296:1,17 297:7 298:18
301:2,11,25 302:7,10,
15,23 303:8 304:7
306:1,3 308:3

Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 106 of 110
Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                    January 13, 2021

sit 17:18 33:15 44:12 46:9 97:15 124:10,21, 22 135:18 207:9 266:18 267:25 287:23

sitting 59:17 72:24

situation 55:10 71:23 73:19 91:4 112:8,9 129:16 148:7,21 149:7 157:9 175:24 176:1,7, 24 182:18 234:18 235:9,22,23 236:3,5,7, 19 256:6,7 293:19 295:7,10

situations 222:11 258:3

size 52:18

skill 303:16

skim 115:2

skipped 240:13

SL 272:21

sleep 185:18 194:7

sleeping 181:23,25 185:25 186:11,22,23, 24,25 189:9 192:16,19 295:23,24 296:3 298:16

sleepy 186:13

slide 262:21

slightly 215:19

slow 118:23 119:7 144:22 237:14 246:24

small 52:14 142:18 166:21 201:20

smaller 52:17 154:25 167:2 262:24

smart 85:4

software 89:16,23 90:2,4,23 91:11

sole 63:8 168:18

somebody's 182:10

someone's 75:10 186:23

son 8:20

sooner 14:19

SOP 4:5,7,9,11,12,14, 16,18,21,22,24 5:3 55:16 56:7,9 106:3 152:8 153:15 154:4 162:25 167:23 170:7 177:4 179:24 180:1 197:2,10 201:4,7,8,10 203:20 215:15 217:17

SOPS 27:5 56:1 89:18

speak 114:5 242:5,18

speaking 181:12,15 251:9 253:14

specific 21:21 49:2 55:10,15 92:19 101:23 143:4 159:8 160:17,20 168:18 277:1,2 282:24 285:25 305:4

specifically 26:3,6 32:10 73:20 75:16 87:3 105:24 138:14 171:22 197:24 252:5 288:15 301:7

specifics 40:3 61:4 96:11

speculate 188:20

speech 242:1

speed 53:25

spent 283:18

Spillane 225:12,13 262:2,5,8 265:8 272:20

spirit 180:13,17 181:1,8

spit 72:15

spoke 18:21 176:21

spoken 180:7,23 193:21

spray 74:19,20 75:4,9, 10,14,17,18,23 77:7 78:6 102:2 149:8,10 182:9,12 223:12 234:24 238:18 239:23 240:2,4 241:21 242:14 243:1 249:10 255:4 256:8 267:15 271:1 282:20 295:6

sprayed 76:24 77:7,21 78:5,11,12 232:18

242:17 283:11

spraying 79:1 80:7 231:15 232:17 234:3

sprays 157:3

squads 219:12

Squire 239:22 240:3 241:2,21 242:5 243:1 249:11 255:5,7 256:8

sstarks@ cochranfirmatl.com 2:7

St 17:13

staff 143:1 206:24

stand 80:24 83:17 115:11

standalone 197:1

standard 78:24 79:1, 12,20,23 90:6 102:14, 25 103:1,8,12,13,14,17, 20 104:24 106:16 109:18,19,22,23 110:2, 3 114:14 121:19 204:21 205:8 224:11 260:5 273:18 302:3,6,12,14, 18

standards 5:11 106:8, 9 108:3 114:19 134:23 141:23 168:14 171:3 218:19 221:11 223:18 247:21

standing 254:11,15

Starks 2:3 9:12 119:2 144:23 154:9 307:23,25 308:7

start 8:5 70:21 194:25 244:22 268:7 270:2

started 30:15 299:18

starts 34:6 171:17

state 6:22 9:8 11:18 12:16 17:15,24 35:12, 14 65:10 66:23 67:5 71:3 89:18 93:22 146:5, 6 149:17,19 155:10 183:14,15 193:16

stated 10:17 107:5 140:10 241:2,20 249:10

255:4 267:17

statement 35:3,16 41:25 88:14 97:9,13 102:3 137:16 141:15, 18,25 142:9,16 143:20 148:20 153:1 163:3,9, 11 184:18 264:22 292:22

statements 93:15 169:9 283:23 286:9 291:8,19 292:8

states 108:2 149:18 183:14 195:25

status 86:22,23 87:10 89:5

statute 76:6,12 87:7 88:5 90:25

stay 11:14 187:2

stem 20:11

stemmed 20:7

stepped 283:17

stipulations 11:2

stop 87:19 111:25 237:15,18 240:8 254:5 280:16,17

stopped 40:13 202:1 213:25

straight 139:7

Street 2:5,14

Stress 5:4

strike 41:16 45:2 72:2 222:16 258:10

strives 198:25

structure 183:9 258:18,23

structured 166:16 167:11

struggle 283:19

stuck 247:10

stuff 133:16 291:1

subject 19:15 77:2,24 106:22 132:9 134:21 137:18 224:3,6

Elizabeth Gallo
COURT REPORTING, LLC

Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 107 of 110
Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner
January 13, 2021

**submit** 67:23 68:1
192:25 203:18

**submitted** 19:21 52:9
80:25 258:12,19

**submitting** 192:23

**subpoenaed** 184:21

**subsequent** 290:23

**successfully** 159:7,9

**sued** 21:6 33:7 44:3
130:8 271:22 272:7
293:15,16 297:17

**sufficient** 204:5 205:1,
6,18 206:2 234:12
273:16,22 274:11 284:2
287:1

**suggest** 276:19

**suggested** 289:4

**suggests** 92:4,5

**suit** 293:19,21

**Suite** 2:5

**summary** 95:19,20
96:6,12 112:16 124:20,
23,25 125:3 208:3,12

**super** 13:11,12,25 14:3
16:22 188:9

**superior** 186:25 187:1

**superiors** 164:2 210:1

**supervising** 220:15

**supervision** 20:7 39:2,
14 40:9 150:5

**supervisor** 80:4
141:19,23 142:2,6
165:12 167:16 181:16,
24 186:20 187:14 188:9
198:9 219:22 222:19,25
223:11 295:24 296:2

**supervisor's** 202:25

**supervisors** 40:1,23
79:23 149:16 150:3
162:23 170:19,23
178:16 181:12,22
209:18 221:10

**support** 164:21 204:6
205:2

**supporting** 110:11

**supposed** 188:11
191:2

**surprise** 303:2

**surprised** 271:18

**surrounding** 43:9 44:5
224:1 229:5

**surveillance** 96:20
97:17

**suspect** 135:16,17,23

**suspension** 263:14,16

**sustain** 130:19 205:19
260:10 273:22,25
274:12 287:1 290:8

**sustained** 63:18 64:7
65:13,14 69:23 71:12
107:8 108:16 160:10,
22,24 182:25 203:22,23
204:10,22,25 205:9
206:5,6 218:4,21 219:1,
24 220:14 221:24
232:15 235:11 236:5
245:6,15 247:4 248:19
263:9 284:1 295:12
299:3 300:21 301:9,15
303:4

**swear** 8:7 9:20

**swilliams@
cochranfirmatl.com**
2:8

**switch** 144:23

**swore** 140:11

**sworn** 76:17 79:21
124:6 130:22 150:25
172:18

**system** 4:15 5:12 17:10
90:11 120:11 124:9,11
130:12 131:1,3,4 200:3
203:19 206:13 207:10,
17 208:1,7 209:5,6,12
210:1,4,11,19,21 211:6,
25 214:24 222:5 225:20
226:4,8 227:1,9,21,24
229:3

**systems** 91:5

---

**T**

**T.sellers@tkstlaw.
com** 2:16

**table** 281:21 305:7

**tablet** 52:14,18

**takes** 199:17 256:11
269:3

**taking** 16:12,16 118:24
119:4 139:20 141:11,12
216:1 252:1

**talk** 40:3 105:17 108:18
172:10 240:10 242:5
278:22 288:20 301:7
305:4

**talked** 18:23 156:25
157:18 204:17 241:18
267:3

**talking** 15:6 16:21
100:15 104:22,23
105:18 107:11,16
127:23 159:2 177:11
192:16 213:20 243:2
245:10,12 258:23 288:4
289:17

**talks** 32:10 158:8

**tardy** 144:4,6

**Tase** 148:22,24

**task** 92:9,12

**team** 12:21,23 25:19,24

**tech** 154:9

**telephone** 31:15

**telling** 30:22 229:10
237:22 246:10 286:9
288:2

**ten** 94:16 95:13 96:17
97:1 111:16,22

**tendency** 151:11

**tenure** 49:5 56:9 58:14
60:25 61:13,24 62:12,
18,25 66:8,22 68:14
71:7 74:12 87:25 89:15,
22 90:21 112:16 142:23
149:22 150:2 159:25
162:19 166:5 168:10

169:10 170:13,17
171:14 173:3 187:21
188:13,17 193:8 195:1,
6 196:7 197:18,20
198:3 201:18 206:20
215:6,17 216:5,22
217:8 221:4,8,12,19
222:16 224:10 258:1,4
296:22 299:1 300:22
302:13

**terminate** 40:24 73:11
104:22 105:3 108:22
109:6,7 110:12,17,25
122:8 129:15 146:24
147:8 150:25 152:8
153:16 175:18 176:8,10
195:7 200:6 205:21
211:12 212:4 227:5
229:15 232:14,23
235:25 236:8 244:22
245:2 246:10 256:24
273:11,18 279:25 281:6
283:20

**terminated** 40:18
58:15 63:11 104:7
106:4,14 147:16 150:9,
15 152:20 176:15
178:2,17,20,24 179:15
210:20 231:6,19 235:3,
16 236:10 248:14 251:1
256:5 297:23

**terminating** 109:15
146:24 189:10

**termination** 56:11,22
57:1 60:4 62:13,17,23
63:6,9,19 64:8 73:18
151:8 153:23 159:13
179:2 180:3 207:18,24
226:9 231:2 246:1
260:1 271:9 272:22
273:13,22 274:4,5,6
283:1

**terminology** 306:18

**testified** 9:23 34:5
140:20 141:3 257:4
276:12 277:10 291:16

**testify** 91:16,25 115:7
136:5 299:20

**testifying** 16:18 246:9

**testimony** 15:1 16:6
21:23 48:16 55:1,16



Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 108 of 110

Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                                                  January 13, 2021

56:2 90:21 91:1 98:16
114:5 124:4 140:20
229:21 245:21 246:18
260:7 265:20 271:8
287:14 291:12,13

**thing** 14:21 15:9 38:17
63:6 118:23 156:21
177:24 201:21 209:14
259:19 277:24 284:21
287:19 292:20,23

**things** 46:5 53:14
56:18 74:3 93:7,10
117:10 138:12 141:5,7,
9 142:18 143:23 158:7
163:2 181:5 199:19,24
231:1

**thinks** 242:4

**Thomas** 2:13

**thought** 14:1 27:11
75:1 84:3 156:11
160:16 204:12 212:11
213:22 269:12,14
274:23 290:9

**thoughtful** 179:20

**thoughts** 305:11

**thousand** 157:22
169:3

**threat** 38:15 60:1,20
61:9 63:17 64:3 72:5,13
75:22 77:3,8,25 78:7
156:4,23,24 157:2,19
182:11 224:4 241:3

**threats** 182:19

**ticking** 237:19

**tied** 78:11

**Tiffany** 2:12 9:14 11:10
23:16 30:6 34:12 57:14
77:16 111:19 161:10
190:18 191:6 213:14
214:19 240:9 251:8,16
253:12,13 269:5 270:9
274:25 277:20 280:20
281:22

**time** 9:5 13:2 14:16
15:12 16:23 17:12
24:14,17,18 26:20 30:2
35:24 36:11 37:1 38:15,
25 39:4 40:19,25 48:4

49:23 50:8 55:14 57:9
59:11 75:3 87:3,4 89:15
93:18 96:12 98:11,16
99:4 100:10,20,22
101:6,7,11,12,15,19,25
102:3,12 104:7 105:15,
19,21 109:17,24 110:15
112:15,19 114:10
118:10,14,24 119:20
120:8 122:16 124:20
129:11 133:14 135:21,
24,25 136:11,12 140:3
143:18,22 146:21 156:4
161:16,18 165:11
166:1,8,11,24 167:3
170:9 185:19 190:14,16
195:16,20 196:7,20,24
197:16,25 198:1 204:17
207:25 212:24 213:5,10
217:14,17 220:8
222:15,17 223:6,14
225:13,17 227:14,25
228:2 229:13 231:14
232:15,22 235:15
239:23 240:4 241:12,16
257:24 258:1 261:6
268:15,19 269:4,7,10
270:13,17 282:19
283:8,15,23 284:11,18,
20 287:15 288:22
289:22 290:21,23 291:6
292:16 293:2 294:14,17
296:21 300:14 302:22
304:1 306:3,7,8,11
307:24

**timely** 90:15

**times** 14:10 35:6 180:8
194:2 217:14 230:6
250:17 251:7,11,13
252:20 253:3 291:16
298:23 305:1,5

**tired** 186:13

**title** 196:9,12

**today** 17:18 19:20
31:20 44:12 46:9 47:23
83:17 124:10 214:11
266:19 267:3,17 271:7
272:12 289:17 308:14

**today's** 9:4 18:20
19:11,25

**told** 29:4 47:17 111:12
227:17 266:22 287:19,

25 288:1,3,7,12,20

**tolerance** 108:7,13

**Tom** 29:21 30:23 58:2,5
77:17 81:7 87:12
118:25 119:5 154:10
190:1,4 192:7 195:9
212:17 216:13 237:11,
21 307:23 308:11

**Tompkins** 2:13

**tool** 120:17,25 169:13
284:24 285:10,21

**tools** 74:14 121:6

**top** 48:9 134:11 154:13,
25 170:5 238:2 239:14
240:1

**total** 121:8,15,21 122:4,
6 208:18 268:19

**totality** 116:9 282:9,
17 284:2

**totally** 111:7

**touch** 255:8

**touching** 75:22

**tour** 185:21 186:19

**Traditionally** 64:24

**traffic** 41:19 295:20

**trained** 158:4 244:18

**training** 4:5 5:12 29:10
36:6,9,19,25 37:4 39:1,
14 40:3,8 54:24 55:2,8,
12,15 56:1,8 79:7 90:18
154:4 155:4,6,9,19,23
158:8 159:3,5,8,10,11,
14 304:17

**trainings** 36:21 37:10

**transcribed** 141:3
287:18 307:20,22

**transcript** 4:3 7:8
139:18

**transpired** 8:3 9:1
287:15 307:17

**trauma** 74:6

**treat** 148:14

**treated** 223:11

**tremendous** 91:7

**trial** 131:14

**true** 35:16 42:6,20
45:25 46:7 53:6 65:23
66:13 68:10 70:22 71:4
79:2 80:1,12 83:14
86:16 97:8,9,13 102:2
136:15 143:9 146:15
150:11 235:2 250:24
258:9 286:6

**trust** 163:6,24 164:5

**trusted** 22:20 25:9
28:21

**trustworthiness**
164:7,14

**trustworthy** 147:20

**truth** 140:11 169:18
227:17 229:10 285:7,
10,16 286:9

**truthful** 16:18 26:10
27:23 81:18 91:16
103:11 115:9 123:6
140:16 141:2 180:7,22
181:2,11,17,24 182:1
192:20 193:21 283:22
285:1

**truthfully** 136:6 193:1

**truthfulness** 56:15
57:1 94:2 97:2 98:1
104:6 105:13,23 106:2
107:9 108:1,7,9,14,15,
23 109:14 110:3
113:22,23 114:7,8,9
120:22 123:1,16 124:18
181:8 209:14,24 211:10
212:4,5 227:5,10
228:13,19 229:4,5
230:2,10,13,16,25
231:4,12 232:25
259:19,24 260:10,18
271:9,12 273:14 274:12
283:21 295:6 296:4
305:12

**Turner** 2:10 3:2,9,18,
21,24 4:3 8:1 9:7,18,21
10:2,21 11:7,20,21
19:16 20:15 23:23
26:21 30:24 31:4 34:18,
24 38:19 48:3 51:3,4,
10,16 57:8 58:8,12 71:6



Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner                                          January 13, 2021

78:15 83:6 84:4 87:21
89:3 96:19 111:6
118:17 119:12 132:7,
10,13 154:21 161:10,21
190:19 192:16 195:23
213:13 214:23 224:23
249:21 253:17 254:7,23
255:3 261:5,13 270:23
276:11 281:5 282:1
304:6 306:6,14,21
308:18

**Turner's** 3:12,14,16,
20,22 48:7 114:25

**Twenty** 145:11

**two-month** 225:22

**tying** 78:25

**type** 73:22 82:21
100:24 129:3 173:21
195:4 226:18 264:25

---

**U**

**UAF** 97:7 262:18 263:4

**ugly** 173:12

**ultimate** 39:13 65:20
169:17 265:12 285:5
286:8

**ultimately** 34:25 38:19
40:13 90:7 114:7 151:4
168:9 169:2 177:12,25
195:6 203:7,8 282:21
283:19 300:7

**unable** 186:18

**unapproved** 56:17
59:7

**unauthorized** 211:7

**undergraduate** 17:13

**underlining** 44:4

**underlying** 44:14

**underneath** 265:16
273:21 290:9 293:6

**understand** 15:20,22
16:1,2,5,6 20:6,10 29:2
31:11,24 33:1 35:25
45:7 46:18 54:5 85:6,17
86:3,7 105:9 107:18

118:18 127:7,12 130:25
137:15 158:20 180:23
181:3,6 198:18,20
228:4 254:8 278:8
304:20 305:9

**understanding** 26:1
27:5 32:6,14 37:13,21
38:6,11 46:1 60:16
181:22 188:4 204:10
222:23 243:7,8 292:23
295:7 298:10 306:22

**understood** 148:10
158:18

**undiscipline** 144:11

**undisciplined** 145:16,
23 146:19 147:10,15

**unenforced** 225:21

**unexpected** 218:19

**Unfortunate** 219:4

**unfounded** 206:5

**uniformly** 171:24

**union** 18:12,15

**United** 108:2 149:18
183:14

**units** 219:12

**University** 17:11,13,16

**unlawful** 175:16 176:2

**unlawfully** 231:14

**unnecessary** 56:17
59:7,12,14 60:4,16
147:23 156:5,13,19,22
157:5,11,20 183:1
234:23 241:6 263:14

**unreasonable** 153:4,
13 175:17 241:7

**untruthful** 58:13
104:21 105:1 114:4
282:19 284:4

**untruthfulness**
205:20

**uphold** 149:17 183:13,
20 184:7

**upholding** 184:11

**usual** 307:24

**utilized** 26:4 59:10
125:7

**utilizing** 114:18

---

**V**

**vague** 132:8

**vaguely** 47:21 139:21

**values** 162:19,25
164:9,13

**vehicle** 131:20 222:22

**vehicles** 194:20

**verbal** 14:22

**verbally** 241:3

**verification** 83:9,12
115:8,9 120:11

**verified** 86:16 96:18

**versus** 10:4 223:18

**vice** 12:22

**video** 3:8 8:3 9:1
118:15 161:19 269:2
287:13,14 291:12
292:11,15,24 303:25
306:16 307:17

**videos** 169:9

**videotape** 9:6

**view** 56:11 79:13 174:7
218:6 254:18

**viewpoint** 188:14

**violate** 60:24 108:23
142:13 148:11 194:24
269:24

**violated** 33:3 94:1 97:1
104:6 106:1,13 107:25
155:20 174:2 199:19
236:11,13,19

**violates** 55:14

**violating** 142:4

**violation** 56:6,9 61:12,
24 103:21 141:22
142:6,7,12 182:21
199:12,16,21 204:7

205:3 206:4 218:22
219:2,24 232:16 241:7
244:23 245:15,17
248:19 254:19 268:6
296:4

**violations** 54:22 56:8
171:4,10,23 172:4
199:18 221:16 238:14
300:21 301:9,15

**virtual** 8:21

**vision** 150:2 162:19,25
163:3,9,13

**voice** 5:4 169:15

**volunteering** 254:15

---

**W**

**wait** 136:4

**Waited** 259:9

**waiving** 132:10

**walks** 60:3

**wanted** 21:5 28:25
34:15 57:24 111:4,14
143:11 208:10 271:2
284:15 285:13

**wanting** 285:16

**Warning** 4:15 124:8,
11,16 130:12,17 131:1,
2,4 203:19 206:13
207:10,17,25 208:7
209:6,12 210:1,4,11,19,
21 211:6,23,25 214:24
222:5,10,12 225:3,19
226:8,15 227:1,9,19,21,
24 228:1 229:2

**warrant** 56:11 57:1
62:13 64:8 182:11

**warranted** 63:19 231:2

**watch** 241:14

**ways** 215:25 256:18
257:3

**weapons** 74:14

**wearing** 84:15

**weekly** 142:24 143:8
226:19



Case 1:18-cv-04710-CAP   Document 260-3   Filed 08/16/21   Page 110 of 110
Noel Hall and Christina Hall vs City of Atlanta, et al.
George N. Turner
January 13, 2021

**Wet** 96:21 97:18 271:12 295:5 298:4

**who're** 70:1

**Williams** 2:4 3:4 8:9, 17,23,24 9:9,10,25 10:20,23 11:1,6,15,16 19:19 20:18 21:3 22:6 23:7,15,18,20 28:11 29:1,21,25 30:6,8,11, 16,21 31:3,16 32:25 34:11,17 37:20 38:5 39:11,24 42:14 43:4 44:22 45:22 47:6 48:1 49:13 50:2,14,20 51:15 52:3,5 53:12 54:15 55:13,24 56:24 57:7,14 58:2,5,7,21 59:23 60:12 61:7,21 62:3,10 63:1 64:1,14 65:7 66:6,20 67:16 69:2,15 70:11 71:1,25 72:20 73:7,21 75:19 76:4,13 77:16 78:8,9,23 79:8 80:22 81:6,8 82:9 83:8 85:3, 16 86:1,13 87:12,17,20 91:24 92:20 93:9 94:24 95:4,5,9,22 96:4,15 97:14 99:14,21,24 100:6 103:7 104:15 105:11 107:10 109:4,21 110:9,23 111:18,22 112:4,6 114:23 115:16 116:15 118:5,8,16,24 119:3,10,11 121:2 122:2,14 123:15 124:1 126:22 127:17,20 128:3 129:2,22 130:24 135:11 138:4 139:16 144:19, 21,25 145:2 146:13 148:5 149:4,14 150:23 151:20 152:3,14 153:11,20 154:1,12 156:12 157:12,21 160:7,21 161:6,8,14,20 162:4 163:20 170:2 173:1,10,18 174:4 175:25 177:21 178:13 179:12 180:19 183:11 184:5,20 186:9,17 187:7,15 188:3 189:11, 17 190:18,20,23 191:18,22 192:1,4,14 195:9,14,22 197:9 200:12 201:6 202:7

205:15,25 206:10 209:3 210:9,17 211:4,17 212:15,17,22 213:12, 14,20,25 214:3,16,21 216:8,10,17 217:19 218:16 219:21 220:20 222:3 223:9 224:17,22 226:3,12 228:17,25 229:24 230:9,23 231:10,25 233:6 234:2, 9,10,20 235:14 236:1, 21 237:3,6,11,20,24 240:9,14,16,19 242:12, 22 243:23 244:9,17 245:4 246:6,22 247:18 248:3 249:2,19,20 250:9,18,20 251:8,12, 16,20,25 252:4,10,15, 21,24 253:2,9,11 255:2, 16 257:2,18,25 258:21 260:6,19 261:8,10,17 265:22 266:4 267:10,22 268:17,23 269:4,8,20 270:9,22 272:4,18 274:20,25 275:12 276:23 277:18,20,23 278:16,18 279:6,9,12, 22 280:20,25 281:4,21, 24 282:12 284:12 286:18 287:11 289:19, 23 292:5 295:4 296:11 297:8 298:9 299:13 301:4 302:24 303:1,22 304:5 306:2,6 307:19, 21

**Willie** 271:12 295:5 298:4

**Willie's** 96:21 97:18

**wing** 114:19

**wise** 271:20

**witnessed** 141:20 142:2

**word** 40:12 58:13 121:15 124:4 180:23 193:21 277:3

**words** 180:7

**work** 4:9 13:7 17:4 55:15 81:17 130:19 143:17,22 170:7,11,12, 25 171:10,23 172:10 174:3,6 175:11 180:10

184:12 185:20 186:12, 13 189:5 193:5 194:1, 11,12,18,24 215:21 241:7 257:1 263:7,13 268:6

**worked** 13:9 178:15

**working** 27:4 43:20 62:24 67:21 80:17 108:17 117:17,18 153:6 175:7 185:25 189:13,19 195:1 220:12

**works** 41:6 213:3

**write** 114:6 117:13 137:3

**writing** 4:24 100:21,22 134:12 281:19,20

**written** 124:4 180:7,12, 13,23 193:21 199:13 206:6 257:3,8,19

**wrong** 10:2 30:11 118:25 179:3 191:8 213:23 214:13 283:7

**wrote** 58:23 268:5

---

### Y

**year** 13:13,20 14:5 36:10,13

**years** 14:15 47:20 199:25 204:14 256:11

**yes-or-no** 211:3

**you-all** 77:12 90:12 121:15 122:16 192:1 224:9 257:9 283:7 301:8 302:16

**you-all's** 52:25 103:22 105:13,23 106:3,6 120:18 212:2 231:3

**your-all's** 243:13

**youth** 165:9

---

### Z

**zone** 165:7 178:15 225:17 241:15

**zoom** 33:22 34:1 306:19,23 307:11

---

