IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Noel Hall and Christina Hall | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| City of Atlanta, a municipal corporation of | ) | CIVIL ACTION |
| the State of Georgia; GEORGE N. | ) | |
| TURNER, in his individual capacity as | ) | FILE NO.: 1:18-cv-4710-CAP |
| former Chief of Police of the City of Atlanta | ) | |
| Police Department and MATHIEU | ) | |
| CADEAU, in his individual capacity as | ) | |
| former Police Officer of the City of Atlanta | ) | |
| Police Department, | ) | |
| | ) | |
| Defendants. | ) | |

## RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON BEHALF OF DEFENDANTS CITY OF ATLANTA AND GEORGE N. TURNER

COME NOW, City of Atlanta (hereinafter "COA"), a municipal corporation of the State of Georgia, and George N. Turner ("Turner"), in his individual capacity as former Chief of Police of the City of Atlanta Police Department (collectively "Defendants"), Defendants in the above-captioned action, and pursuant to Fed. R. Civ. Pro. 56 and L.R. 56, hereby files this, their Response to Plaintiffs' Partial Motion for Summary Judgment, showing this Honorable Court as follows:

## I.      INTRODUCTION

Plaintiffs Noel and Christina Hall filed the instant action on October 10,

2018, pursuant to 42 U.S.C. § 1983 and 1988 and the Fourth and Fourteenth

Amendments of the Constitution. See Complaint for Damages, ¶1.  Specifically,

Plaintiffs allege their Constitutional rights were violated when former Sgt. Mathieu

Cadeau, a defendant in this action, fired his service weapon into their vehicle while

he was conducting a traffic detail at the intersection of Northside Drive and Ivan

Allen Jr. Boulevard. Id. at ¶14.  However, as set forth in further detail below, neither

Turner nor COA are liable to Plaintiffs because Turner, who had retired from the

COA prior to the subject shooting, did not violate Plaintiff's Constitutional rights

and COA adequately trained and supervised its officers, including Defendant

Cadeau.  As such, Plaintiff's Motion for partial summary judgment should be denied.

## II.     STATEMENT OF MATERIAL FACTS

This action stems from an officer-involved shooting that occurred on February

25, 2017, at the intersection of Northside Drive and Ivan Allen Jr. Boulevard. See

Complaint for Damages, ¶14. On that date, Atlanta Police Department Officer

Mathieu Cadeau was performing an authorized job where he was providing traffic

direction and control detail at the intersection of Northside Drive and Ivan Allen Jr.

Boulevard following a motocross event at the Georgia Dome. Id. ¶14. Plaintiff Noel

Hall and members of his family attended the event to watch Michael Hall (Noel's son) participate in the motocross event. Id. at ¶16. Following the event, Noel Hall drove back towards the Georgia Dome and approached the intersection of Northside and Ivan Allen. Id. at ¶17. Initially, Mr. Hall engaged in conversation, which quickly escalated to an argument, with Officer Nathan Evans, who was also patrolling the intersections. Id. at ¶18. Officer Cadeau witnessed this argument and approached Mr. Hall. Id. Officer Cadeau informed Mr. Hall that he could not enter. Id. Suddenly and without warning, and in direct contradiction to Officer Cadeau's verbal commands, Noel Hall ignored Officer Cadeau and Officer Evans and attempted to drive around the officers and into the designated pit area. Id. Officer Cadeau pulled his weapon and fired into the vehicle, striking Mr. Hall's left arm, shoulder, and chest. Id. at ¶19.

Defendant Turner

Interestingly, Plaintiffs have included former Atlanta Police Chief George Turner in this litigation, despite the fact he was no longer Chief of Police at the time of the subject incident. Chief Turner served as the City's Chief of Police from January 2010 through December 2016. (See Dep. of G. Turner, [hereinafter "Turner Dep."], 34:23-35:8, Jan. 13, 2021.) During his tenure as Chief of Police, Chief Turner was ultimately responsible for the management and operation of the Atlanta

Police Department.  (Id.)  Moreover, during his tenure as Chief of Police, Chief Turner was ultimately responsible for the development and implantation of the department's policies and procedures.  (Id. at 38:6-25.)  Furthermore, Chief Turner was ultimately responsible for the hiring, training, supervision, and termination of departmental employees, including Defendant Cadeau.  (Id. at 40:6-41:3.)  Notably, at the time of the subject incident, Chief Turner was no longer employed by the City, as he had retired in December 2016.  As such, he was a private citizen, with no authority or responsibility for the City's police department. (See Dep of S. DeFoe, [hereinafter "DeFoe Dep."], 111:4-8, Feb. 26, 2021.)  He was also not involved with the decision to allow Cadeau to work a city-approved extra job on the date of the subject incident.  (See Turner Dep., 43:18-22.)

Use of Force Training

Most importantly, for purposes of this litigation, officers employed with the Atlanta Police Department, including Defendant Cadeau, received appropriate training on use of force.  There is no dispute that Atlanta police officers, prior to 2016, received at least 20 hours of training annually, including at least one hour specifically devoted to the use of deadly force, as mandated by the Georgia POST. (See Dep. of P. Fite [hereinafter "Fite Dep.," 40:8-12, Sept. 29, 2020.)  Further, in 2017, following Chief Turner's tenure, Georgia POST required an additional hour

of training on de-escalation techniques.  (Id. at 40:12-14.)  Notably, COA's police

department, under the leadership of Chief Turner, was already training its officers

on de-escalation techniques prior to the Georgia POST mandate.  (Id. at 40:19-24.)

Moreover, as attested to by Defendant Cadeau, not only did he, and other APD

officers, receive training on O.C.G.A. § 17-4-20, Georgia's use of force statute, he

was provided a copy of the statute.

> Q:    Have you ever received any training on
>        O.C.G.A. 17-4-20 while at APD?
> A:    I recall during in-service.
> Q:    In-service?
> A:    In in-service, in-service training.
> Q:    Were you ever given a copy of that? Do
>        you remember getting a copy of that?
> A:    I believe so.

(See Cadeau Dep. 219:23 – 220:5.)  Further, Defendant Cadeau testified, under oath,

that, in addition to receiving the statute, he also received scenario- based training on

use of force.

> Q:    Now, let's talk about some of the
>        Training.  Did you receive training in when to use
>        Deadly force?
> A:    Yes, sir.
> . . .
> Q:    Did you receive specific training
>        On shooting into moving vehicles or to vehicles?
> A:    Yes.
> Q:    When did you receive that training?
> A:    I can't recall the year.
> Q:    What were you told regarding when you

> can – were you told you can shoot into moving
> vehicles?
> A:     What I recall is a scenario-based
>        incident.

(Id. at 122:4-7; 124:10-19.)

Because the record clearly shows that neither Turner nor the COA violated

Plaintiffs' Constitutional rights, Plaintiffs are not entitled to summary judgment.

## III.   STANDARD OF REVIEW

The summary judgment standard, as applied by Courts of this jurisdiction, is

well-settled.

> Summary judgment is appropriate only when the pleadings,
> depositions, and affidavits submitted by the parties show that no
> genuine issue of material fact exists and that the movant is entitled to
> judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view
> the evidence and any inferences that may be drawn in the light most
> favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S.
> 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking
> summary judgment must first identify grounds that show the absence
> of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S.
> 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then
> shifts to the nonmovant, who must go beyond the pleadings and present
> affirmative evidence to show that a genuine issue of material fact does
> exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S.Ct.
> 2505, 91 L.Ed.2d 202 (1986).

Weems v. Coca-Cola Co., No. CIVA 1:02CV2893 TWT, 2006 WL 2523019, at *2

(N.D. Ga. Aug. 24, 2006).  Here, viewing the evidence and any inference that may

be drawn therefrom in the light most favorable to Turner and the COA, Plaintiffs

are not entitled to judgment as a matter of law.  As discussed in detail below, the facts and evidence in this case clearly show that neither Turner nor the COA violated Plaintiffs' rights under the U.S. Constitution or 42 U.S.C. § 1983.

## IV.    ARGUMENT AND CITATION OF LEGAL AUTHORITY

Plaintiffs' rights were not violated by either Turner or the COA.  Therefore, a grant of partial summary judgment in their favor is inappropriate

### A. Plaintiffs are not entitled to partial summary judgment against Chief Turner.

Plaintiffs argue that they are entitled to partial summary judgment against Chief Turner because "Chief Turner's routine and systematic rejection of officer discipline and training recommendations from the ACRB, and failure to require OPS to use CVSA exams during internal affairs excessive force investigations, demonstrate his deliberate indifference to the constitutional rights of citizens to be free from excessive force." However, such an argument not only ignores the well-settled law of this jurisdiction, it also dismisses the plain language of APD policies.

#### 1. Qualified Immunity

As an initial matter, Turner is entitled to qualified immunity for any and all claims asserted by Plaintiffs in this case.  As such, summary judgment in Plaintiffs' favor is unwarranted.

a.  The Qualified Immunity Standard

It is clear, courts in our circuit, in determining whether to allow suits against government officials in their individual capacities to proceed, have routinely and consistently applied the defense of qualified immunity.  This defense

> completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir.2002) (internal citation and quotation omitted).

Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003).  "A government official acts within her discretionary authority if the actions were (1) 'undertaken pursuant to the performance of [her] duties' and (2) 'within the scope of [her] authority.' Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir.1988)."  Lenz v. Winburn, 51 F.3d 1540, 1545 (11th Cir. 1995).

b.  Chief Turner is entitled to Qualified Immunity.

Applying the above-stated rules to the facts of the present case, Chief Turner is entitled to the protections afforded under qualified immunity because he acted

within his discretionary authority.  There is no dispute that at all relevant times, Chief Turner's actions were within his discretionary authority, as they were "undertaken pursuant to the performance of his duties" as Chief of Police and "within the scope of his authority." See Lenz, 51 F.3d at 1545.  From January 2010- December 2016, Chief Turner served as the Chief of Police for the Atlanta Police Department. (See Turner Dep., 34:23-35:8.) In that capacity, Chief Turner was ultimately responsible for the management and operation of the Atlanta Police Department.      (Id.) Moreover, during his tenure as Chief of Police, Chief Turner was ultimately responsible for the development and implantation of the department's policies and procedures.  (Id. at 38:6-25.)  Furthermore, Chief Turner was ultimately responsible for the hiring, training, supervision, and termination of departmental employees, including Defendant Cadeau.  (Id. at 40:6-41:3.)   All of Plaintiffs allegations involve decisions and or actions/inactions that Chief Turner made while acted within the scope of his discretionary authority.  Thus, this element is easily satisfied, and the burden now shifts to Plaintiff to show that qualified immunity is not appropriate.

2.  Moreover, Chief Turner cannot be held liable under a supervisory liability cause of action pursuant to § 1983.

a.  The supervisory liability cause of action pursuant to § 1983.

For decades, the U.S. Supreme Court, in Bivens v. Six Unknown Named

Agents of Fed. Bureau of Narcotics, 403 U.S. 488 (1971) and its progeny have articulated that supervisory government officials are not liable for the unconstitutional acts of subordinate employees.  "It is well established in this circuit that supervisory officials are not liable under [*Bivens*] for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.' Id. at 1269 (quoting Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir.1994))." Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003).

Importantly,

"The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." Braddy v. Florida Dep't of Labor & Employment Sec., 133 F.3d 797, 802 (11th Cir.1998). Supervisors "can be held liable under [Bivens] when a reasonable person in the supervisor's position would have known that his conduct infringed the constitutional rights of the plaintiffs, and his conduct was causally related to the constitutional violation committed by his subordinate." Greason v. Kemp, 891 F.2d 829, 836 (11th Cir.1990) (citations and footnote omitted).
"Supervisory liability [under Bivens*] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation." Braddy, 133 F.3d at 802 (quoting Brown v. Crawford, 906 F.2d 667, 671 (11th Cir.1990)). A causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Id., or when the supervisor's improper "custom or policy ... resulted in deliberate indifference to constitutional rights," Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir.1991). A causal connection can also be established by facts which support an inference that the supervisor directed the

subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. See Post v. City of Fort Lauderdale, 7 F.3d 1552, 1561 (11th Cir.1993) (finding no supervisory liability in the absence of such an inference).

Gonzalez v. Reno, 325 F.3d 1228, 1234–35 (11th Cir. 2003).  Therefore, a plaintiff, seeking to establish supervisor liability under § 1983, must show either that "the supervisor personally participate[d] in the alleged unconstitutional conduct" or that "there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation."  White v. Hiers, No. 1:13-CV-2404-SCJ, 2013 WL 12171079, at *2 (N.D. Ga. Oct. 29, 2013).

The requisite causal connection exists only if:

> (1) the supervisor was on notice, by a history of widespread abuse, of the need to correct a practice that led to the alleged deprivation, and he failed to do so; (2) the supervisor's policy or custom resulted in deliberate indifference; (3) the supervisor directed the subordinate to act unlawfully; or (4) the supervisor knew the subordinate would act unlawfully and failed to stop the unlawful action.

White v. Hiers, No. 1:13-CV-2404-SCJ, 2013 WL 12171079, at *2 (N.D. Ga. Oct. 29, 2013).

    b.  Chief Turner's actions do not give rise to supervisory liability under § 1983.

      i.  Chief Turner did not personally participate in the unconstitutional conduct.

11

There is no dispute that Chief Turner did not personally participate in the alleged unconstitutional conduct, i.e., Defendant Cadeau shooting into Plaintiffs' vehicle on February 25, 2017.  In fact, Chief Turner was not even employed by the City of Atlanta on February 25, 2017.  There is no dispute, Chief Turner retired from his position as Chief of Police in December 2016, thereby making him a private citizen at the time of the subject incident.  (See DeFoe Dep. 111:4-8.)  There is no allegation that Chief Turner personally participated in the subject incident.  Therefore, this element is also easily satisfied.

ii.  <u>There is no casual connection between Chief Turner's actions and the alleged constitutional deprivation.</u>

Additionally, there is no casual connection between Chief Turner's actions and the alleged constitutional deprivation.  The record is completely devoid of any evidence to suggest that Chief Turner "directed the [Defendant Cadeau] to act unlawfully" or that he "knew [Defendant Cadeau] would act unlawfully and failed to stop the unlawful action."  <u>See</u> <u>White v. Hiers</u>, No. 1:13-CV-2404-SCJ, 2013 WL 12171079, at *2 (N.D. Ga. Oct. 29, 2013).  As such, two of the four methods Plaintiffs can demonstrate a causal connection are easily negated.

Instead, Plaintiffs rely on the remaining two methods, i.e. (1) the supervisor was on notice, by a history of widespread abuse, of the need to correct a practice that

led to the alleged deprivation, and he failed to do so, [and] (2) the supervisor's policy or custom resulted in deliberate indifference, to establish the requisite causal connection.  However, their reliance is misplaced.

First, the alleged "history of widespread abuse of the need to correct a practice that led to the alleged deprivation," as set forth in Plaintiffs' brief, relates to the "systemic/routine rejection of officer discipline" as recommended by the ACRB and Turner's failure to require OPS to use CVSA exams to constitute demonstrate deliberate indifference.  (See Pls.' Br., p. 22.)  However, this argument ignores the facts developed in this case.

It should be noted that nothing in the record mandates that Turner accept officer discipline recommendations from the ACRB.  APD SOP 2300, signed by Turner as Chief of Police on September 4, 2013, with an effective date of September 15, 2013, specifically states that while the ACRB has the power to recommend that the Chief take certain actions related to discipline and reform, nothing mandates that the Chief implement any ACRB recommendations.  (A copy of APD SOP 2300 was filed as Exhibit 8 to Plaintiffs' Complaint.)    In fact, the SOP expressly and unequivocally states that "[t]he Chief of Police will retain full and ultimate authority, power, discretion, right privilege, and responsibility to set disciplinary policies, or take other lawful actions he or she deems appropriate relative to the Department

(under the provisions of the City of Atlanta Code of Ordinances.)  (Id. at p. 4, Sec. 4.3.2.)  Turner cannot be held liable for failing to accept recommendations of the ACRB because he was required to do so.

Similarly, Turner is not liable to Plaintiffs for failing to utilize CVSA exams during internal affairs investigations on excessive force cases because nothing in that policy mandates the use of such exams in internal investigations.  While APD SOP 3120 authorizes the use of CVSA exams, the policy does not mandate its use.  (A copy of APD SOP 3120 is attached to Plaintiffs' Complaint as Exhibit "7".)  Section 4.2.1- 4.2.3 specifically provides that these exams "may" be used in administrative investigations; however, they cannot be the "sole determinant" in the disposition of an investigation.  (Id. at p. 2-3.)  Moreover, Plaintiff's expert, Jeffery Noble, agreed with this interpretation of the policy and attested to the fact that APD's policies do not mandate the use of CVSA exams in internal investigations.  (See Dep. of J. Noble, ["Noble Dep."], 93:8- 94:1, Feb. 19, 2021.) Interestingly, in the City of Irvine, California, where he served as Deputy Chief of Police, the police department did not even use CVSA exams in internal investigations.  Thus, Plaintiffs' assertion that Turner is somehow liable because he did not mandate the use of CVSA exams in internal investigation is factually meritless.

Therefore, because Turner is entitled to qualified immunity and cannot be held

liable under a theory of supervisory liability, Plaintiffs' Motion for Partial Summary Judgment as to Turner must be denied.

B. Plaintiffs are not entitled to partial summary judgment on its claims against COA.

Likewise, Plaintiffs are not entitled to summary judgment against Defendant COA in this case because Plaintiffs cannot satisfy all the elements necessary to maintain a cause of action against it under the standard articulated in under Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S. Ct. 2018 (1978).

1. The Monell Standard

It is clear- "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983." City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989).  Further, "[i]t is only when the 'execution of the government's policy or custom ... inflicts the injury' that the municipality may be held liable under § 1983." Id., quoting Springfield v. Kibbe, 480 U.S. 257, 267 (1987).  Thus,

> to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that

constitutional right; and (3) that the policy or custom caused the violation. See Canton, 489 U.S. at 388, 109 S.Ct. 1197.

McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004).  Because Plaintiffs cannot satisfy all the elements of a claim against COA under this three-prong test, summary adjudication in favor of Plaintiffs is inappropriate.

      2.   Plaintiffs cannot satisfy all the elements necessary to set forth a claim under Monell.

Plaintiffs base their theory of recovery against COA on the City's alleged failure "to adequately train and supervise its officers regarding the legal and tactical circumstances that justify shooting into a moving or fleeing vehicle."  However, as demonstrated below, there is no dispute that Plaintiffs cannot satisfy prongs two and three of the test articulated in McDowell, and as applied to such failure to train cases. As such, they are not entitled to summary judgment.

      a.   COA did not have a custom or policy that constituted deliberate indifference to a constitutional right.

There is no evidence to suggest that COA had a custom or policy that constituted deliberate indifference to a constitutional right.  The case law is clear-

> the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. This rule is most consistent with our admonition ... that a

> municipality can be liable under § 1983 only where its policies are the
> "moving force [behind] the constitutional violation." Only where a
> municipality's failure to train its employees in a relevant respect
> evidences a "deliberate indifference" to the rights of its inhabitants can
> such a shortcoming be properly thought of as a city "policy or custom"
> that is actionable under § 1983.... "[M]unicipal liability under § 1983
> attaches where-and only where-a deliberate choice to follow a course
> of action is made from among various alternatives" by city
> policymakers. Only where a failure to train reflects a "deliberate" or
> "conscious" choice by a municipality-a "policy" as defined by our prior
> cases-can a city be liable for such a failure under § 1983.  City of
> Canton, 489 U.S. at 388–89.

Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).  Stated differently,

"[t]o establish a 'deliberate or conscious choice' or such 'deliberate indifference,' a

plaintiff must present some evidence that the municipality knew of a need to train

and/or supervise in a particular area and the municipality made a deliberate choice

not to take any action."  Id.

Here, there is no dispute that COA properly trained its employees, including

Defendant Cadeau, on the proper use of deadly force, including shooting into a

moving vehicle.  COA complied with, and even exceeded, the Georgia POST

requirements regarding the total number of overall training hours provided to

officers annually.  (See Fite Dep., 40:8-14.)  Moreover, Defendant Cadeau admitted

that, prior to the subject shooting, he received a copy of Georgia's use of force

statute, O.C.G.A. § 17-4-20, as well as training on the appropriate use of force,

including deadly force, as set forth in that statute.  (See Cadeau Dep. 122:4-7; 219:23- 220:5.)  Most notably, Defendant Cadeau attested, under penalty of perjury, that he received training through COA's police department, on the specific scenario presented in the subject incident- shooting into a moving vehicle.  (Id. at 124:10-19.) Finally, it is undisputed that on February 23, 2017, just two days before the subject incident, Defendant Cadeau received additional training through COA's police department, on de-escalation techniques, which included training on shooting into a moving vehicle.

> Q:   On Exhibit No. – I think its 5 –
>       it says you got some de-escalation technique training
>       and firearm training, on February 23rd, 2017, do you
>       see that?
> A:   Yes, sir.
> Q:   Do you believe in that training, that
>       you were given the training you just recited to us,
>       About when to use force regarding moving vehicles?
> A:   During that – within that time I
>       believe so.

(Id. at 125:11-20.)  Based on the evidence set forth above, COA not only knew of its need to train its officers on the appropriate use of deadly force, but unequivocally and undoubtedly took appropriate action and trained its officers, including Defendant Cadeau, on the appropriate use of deadly force.

   b.  There is no casual connection between COA's use of force

<u>training program and the alleged violation of Plaintiffs'</u>

<u>Constitutional rights.</u>

Finally, there is no causal connection between COA's use of force training program and the alleged violation of Plaintiffs' Constitutional rights. The case law is clear- "for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury." <u>City of Canton, Ohio</u>, 489 U.S. at 391. In other words, the causation prong asks whether the injury would have been avoided "had the employee been trained under a program that was not deficient in the identified respect." <u>Id.</u>

In this case, as set forth above, the City's training program regarding the appropriate use of force was not deficient and included more hours than required by Georgia POST. Further, the training program specifically included training techniques related to de-escalation, a course which Defendant Cadeau availed himself of just two days before the subject shooting. Defendant Cadeau had the requisite training but choose not to use it at the time of the subject incident. As such, he was terminated by APD.

Plaintiffs cannot satisfy all the elements of a municipal liability claim under <u>Monell</u>. Therefore, they are not summary judgment.

**V.    CONCLUSION**

**WHEREFORE**, for the reasons set forth above, Defendants City of Atlanta and George Turner respectfully request this Honorable Court DENY Plaintiffs' Partial Motion for Summary Judgment, and for any other appropriate relief.

<u>CERTIFICATION PURSUANT TO LOCAL RULE 7.1D</u>

Pursuant to L.R.7.1D, this certifies that this document was prepared using the New Times Roman font in 14 point. These font and point selections are approved by L.R.5.1C.

This 20th day of September, 2021.

Respectfully submitted,

THOMAS KENNEDY SAMPSON & TOMPKINS LLP

<u>*/s/ Ebonei B. Simpkins*</u>

THOMAS G. SAMPSON, II
Georgia Bar No. 623601
TIFFANY CARTER SELLERS
Georgia Bar No. 152850
EBONEI B. SIMPKINS
Georgia Bar No. 837066
Attorneys for Defendants
City of Atlanta and George N. Turner

3355 Main Street
Atlanta, Georgia 30337
Telephone: (404) 688-4503

e.simpkins@tkstlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed this RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON BEHALF OF DEFENDANTS CITY OF ATLANTA AND GEORGE N. TURNER with the Clerk of Court using the CM/ECF system, which will automatically send an e-mail notification of such filing to the following attorneys of record:

> Counsel for Plaintiffs
> Shean D. Williams, Esq.
> Samuel L. Starks, Esq.
> The Cochran Firm – Atlanta
> 100 Peachtree Street, N.W.
> Suite 2600
> Atlanta, Georgia 30303
>
> Counsel for Defendant Mathieu Cadeau
> Chad Plumley, Esq.
> The Plumley Law Firm, P.C.
> 110 Evans Mill Drive
> Suite 303
> Dallas, Georgia 30157

This 20th day of September, 2021.

> *s/ Ebonei B. Simpkins*
> Georgia Bar No. 837066
> Attorney for Defendants

City of Atlanta and George N. Turner

THOMAS KENNEDY
SAMPSON & TOMPKINS LLP
3355 Main Street
Atlanta, Georgia 30337
Telephone: (404) 688-4503
e.simpkins@tkstlaw.com