UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NOEL HALL and CHRISTINA HALL, | |
| Plaintiffs, | CIVIL ACTION NO. |
| v. | 1:18-CV-4710-CAP |
| CITY OF ATLANTA, a municipal corporation of the State of Georgia, GEORGE N. TURNER, in his individual capacity as former Chief of Police of the City of Atlanta Police Department, and MATHIEU CADEAU, in his individual capacity as a former Police Officer of the City of Atlanta Police Department, | |
| Defendants. | |

## ORDER

This action stems from an incident on February 25, 2017, in which former City of Atlanta police officer Mathieu Cadeau fired his service weapon into a vehicle containing the plaintiffs Noel Hall and Christina Hall while he was conducting a traffic detail in downtown Atlanta, Georgia.  On October 10, 2018, the plaintiffs filed a complaint against Cadeau, the City of Atlanta ("the City"), and George N. Turner, a former police chief for the City, pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violation of their constitutional rights.  Specifically, the plaintiffs allege that Cadeau violated

their constitutional rights by employing excessive and deadly force in violation of due process.  They have also brought state law claims against Cadeau for assault, battery, intentional infliction of emotional distress, and loss of consortium.  They allege that Turner, as Cadeau's supervisor, was liable for the constitutional violation.  They have also brought a municipal liability claim against the City, alleging that its customs and policies were a contributing and driving force to the constitutional violation.  Turner and the City have moved for summary judgment on the claims against them.  [Doc. No. 265].  The plaintiffs have moved for partial summary judgment against all three defendants.  [Doc. No. 270].  Turner and the City have also moved to exclude the opinions, testimony, and report of Jeffrey J. Noble, one of the plaintiffs' experts.  [Doc. No. 266].  The plaintiffs have moved to limit the testimony and opinions of W. Ken Katsaris, an expert for Turner and the City.  [Doc. No. 264].  These four motions have been fully briefed and are now before the court for consideration.

## I.    Background

The basic facts of this case are undisputed.[1]  On February 25, 2017, the plaintiffs Noel Hall and Christina Hall attended a motocross event that their

---

[1] This order adjudicates two motions for summary judgment.  The court labels facts taken from the City of Atlanta and Turner's statement of

son was participating in at the Georgia Dome in downtown Atlanta, Georgia.[2]

[DSMF ¶3].  After the motocross event concluded, the Halls obtained their

van and drove back to the Georgia Dome, approaching the intersection of

Northside Drive and Ivan Allen Jr. Boulevard, where Atlanta Police Sergeant

Mathieu Cadeau and Officer Nathan Evans were working authorized jobs

conducting traffic.  [DSMF ¶¶2, 4, PSMF ¶3].  At the intersection, Noel Hall,

who was driving the van, wanted to make a left turn. [PSMF ¶4].  Hall

_____

material facts [Doc. No. 265-2] in relation to their summary judgment motion
as "DSMF" for "Defendants' Statement of Material Facts."  The plaintiffs
have filed a separate motion for partial summary judgment.  [Doc. No. 270].
The court therefore labels facts taken from their statement of material facts
[Doc. No. 284-1] as "PSMF" for "Plaintiffs' Statement of Material Facts."
Pursuant to the Local Rules of this court, each of the proponents' facts will be
deemed admitted unless the other side "(i) directly refutes the [proponents']
fact with concise responses supported by specific citations to evidence
(including page or paragraph number); (ii) states a valid objection to the
admissibility of the [proponents'] fact; or (iii) points out that the [proponents']
citation does not support the [proponents'] fact or that the [proponents'] fact
is not material or otherwise has failed to comply with the provisions set out
in LR 56.1 B(1)." LR 56.1B(2), NDGa. Where a factual assertion or portion
thereof is properly disputed, the  court will cite to the paragraph appearing in
the proponents' statement of material fact; will view the material evidence
and factual inferences in the light most favorable to the non-moving party;
and will, where appropriate, also cite directly to the evidence supporting the
court's resulting factual recitation.  "[T]he court may choose not to consider
[a] fact as undisputed, particularly if the court knows of record materials that
show grounds for genuine dispute."  Fed. R. Civ. P. Advisory Notes, 2010
Amendments, Subdivision (e).
[2] The Georgia Dome has since been torn down and replaced with Mercedes-
Benz Stadium.

engaged in a verbal exchange with Officer Evans.  [DSMF ¶¶4, 5, PSMF ¶4].

Cadeau witnessed this exchange and approached Hall's van.  [DSMF ¶6].

Cadeau informed Hall that he was not allowed to make the left turn.  [DSMF

¶7].  As Hall was operating the vehicle, Cadeau fired his service weapon into

the vehicle.  [DSMF ¶9, PSMF ¶7].  The bullet struck Noel Hall in his left

arm, shoulder, and chest.  [DSMF ¶9, PSMF ¶7].  Hall was transported to

Grady Hospital for medical treatment.  [PSMF ¶9].  At the hospital, Atlanta

Police Sergeant Zachary Kramer asked Cadeau what charges were to be

placed on Hall.  Cadeau responded that Hall was to be charged with making

an improper left turn and failing to obey an officer directing traffic.  [PSMF

¶11].

The police department conducted an investigation into the shooting and

concluded that the evidence did not support any articulable threat of either

physical violence or deadly force by Hall against Cadeau or anyone else

present at the scene.  [PSMF ¶17].  The investigation also concluded that

Cadeau had violated the department's policy regarding the use of reasonable

force.  [PSMF ¶¶15, 18-20].  The department subsequently fired Cadeau.

[PSMF ¶16].  Cadeau was later indicted on four counts related to the

shooting:  one count of aggravated assault, in violation of O.C.G.A. § 16-5-21,

two counts of violating an oath of public office, in violation of O.C.G.A. § 16-

10-1, and one count of reckless conduct, in violation of O.C.G.A. § 16-5-60(B). [PSMF ¶16].  He pled guilty on February 26, 2020, to all four counts.  [PSMF ¶26].

Turner served as Atlanta's Chief of Police from January 2010 through December 2016.  [DSMF ¶10].  During this period, he was ultimately responsible for the operation and management of the Atlanta Police Department, as well as the implementation of the department's policies and procedures.  [DSMF ¶¶11, 12].  He was also ultimately responsible for the hiring, training, supervision, and termination of employees, including Cadeau.  [DSMF ¶13].  At the time that the shooting occurred, Turner was no longer police chief, and was thus not involved in authorizing Cadeau to work traffic control outside the Georgia Dome on February 25, 2017.  [DSMF ¶15].

## II.    Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure authorizes summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156 (1970); *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).  The moving party's burden is discharged merely by "'showing' – that is, pointing

out to the district court – that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson*, 74 F.3d at 1090. Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In deciding a motion for summary judgment, it is not the court's function to decide issues of material fact but to decide only whether there is such an issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). The applicable substantive law will identify those facts that are material. *Id.* at 247. Facts that in good faith are disputed, but which do not resolve or affect the outcome of the case, will not preclude the entry of summary judgment as those facts are not material. *Id.* Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* "Genuine" factual issues must have a real basis in the record. *See Matsushita*, 475 U.S. at 586. "Where the record

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (citations omitted).

## III.   Standard for motions to exclude

Federal Rule of Evidence ("Evidence Rule") 702, which governs the admission of expert testimony in federal courts, states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The district court acts as a gatekeeper to the admission of expert testimony.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).  To do so, the court engages in a three-part inquiry derived from Evidence Rule 702 to determine the admissibility of expert testimony.  *Quiet Technology DC–8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1340–41 (11th Cir. 2003).  More specifically, the court considers whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Id.* Thus, the proponent of the expert must show that the expert "is qualified to render an expert opinion, that the opinion is reliable, and that the opinion would assist the trier of fact in resolving a disputed issue of material fact." *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004).

When making its analysis, the court must focus "solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the evidence." *Quiet Technology*, 326 F.3d at 1341. Nor is the court's gatekeeper role "intended to supplant the adversary system or the role of the jury." *Id.* Just the opposite. *Id.* "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The goal of the court's gatekeeping function is to make sure that an expert—whether based on professional studies or personal experience—provides "the same level of

intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

## IV. Analysis

### A. The motion to exclude the opinions, testimony, and report of the plaintiffs' expert Jeffrey J. Noble [Doc. No. 266]

The City and Turner have moved to exclude the opinions, testimony, and report of Jeffrey J. Noble "on the grounds that (1) Mr. Noble lacks the necessary knowledge, skill, experience, training, or education to opine about the reasonableness of Chief Turner's actions in his capacity as Chief of Police, and (2) Mr. Noble's opinion, as it relates to the patterns, practices, and customs of the Atlanta Police Department is not based on sufficient facts or data." [Doc. No. 266 at 1].   They emphasize that, although Noble has twenty-eight years of experience as a police officer, the highest rank he achieved was Deputy Chief of Police for the Irvine, California Police Department.  [Doc. No. 266-1 at 4].  He held that position for two years, during which time "the Chief of Police [ ] was responsible for the overall organization, and the Chief of Police was the decision maker for the Irvine Police Department."  [*Id.* at 5].  The City and Turner further contend that Noble has not identified any evidence that the police department violated any

of its policies, thus he does not have sufficient facts or data to support his opinions.  [*Id*. at 13].

The plaintiffs respond that Noble also served as the interim deputy chief of police at the Westminster, California Police Department for nine months.  [Doc. No. 273 at 5].  They emphasize that he has "extensive experience conducting internal administrative investigations."  [*Id*.].  In addition to his police department experience, Noble has served as a consultant for police organizations and has been an expert witness in over 300 cases.  He has also published twenty-one articles and is the co-author of a textbook on Internal Affairs investigations.  [*Id*. at 6].  The plaintiffs contend that Noble reviewed extensive materials from the record of this case, including the deposition testimony of numerous individuals, the plaintiffs' complaint, numerous Atlanta Police Department operating procedures, and internal investigation files.  [*Id*. at 7-8].

The court finds that Noble is sufficiently qualified to offer his opinions. He has almost thirty years of experience as a police officer, several years of which were spent in the upper echelons of management.  As the deputy chief for two police departments, he had to be prepared to step into the role of chief at any time, if needed. As the deputy chief in Irvine, he imposed discipline

and made recommendations to the chief concerning terminations.  [Doc. No. 273-5 at 9, Noble Dep. 33:15 – 33:22].

Noble also holds a law degree from Western State University College of Law and is admitted to practice law in California.  He has a bachelor's degree in criminal justice from California State University at Long Beach.  He is also a graduate of the Senior Management Institute for Police.  Since 2019, he has been the federally appointed monitor of the Santa Clara, California Sheriff's Department, and as such, is responsible for reviewing the "policies, procedures and use of force applications in the Santa Clara County Jails as part of a federal court consent decree."  [Doc. No. 273-1 at 1].  He has co-authored two books, one entitled "Evaluating Police Uses of Force" and the other entitled "Managing Accountability Systems for Police Conduct: Internal Affairs and External Oversight."  He has given several presentations on police misconduct at The International Association of Chiefs of Police Annual Conference spanning the years from 2004 to 2014.  This is in addition to a litany of other presentations he has given at state, national, and international conferences.  Prior to his retirement from the police force, he had an advanced P.O.S.T.[3] certification, a supervisory certificate, and a

---

[3] Peace Officer Standards and Training Council

management certificate.  [Doc. No. 273-5 at 11, Noble Dep. 39:1 – 39:9].

Noble has been a consulting or expert witness in several hundred cases since

2016.   His experience is a sufficient basis for the opinions he espouses.

As for Noble's testimony, the court finds that it is based on sufficient

facts and data.  The list of materials that he indicates he reviewed spans two

and a half pages.  [Doc. No. 273-2 at 4-6].  This material includes deposition

testimony, discovery response, operating procedures for the Atlanta Police

Department, Cadeau's disciplinary history, the Atlanta Police Department

Policy Manual, letters from that Atlanta Citizen Review Board, and

numerous files from the Office of Professional Standards ("OPS") within the

Atlanta Police Department ("APD").  His report references these documents

in depth to support the opinions that he expresses.

In their reply brief, the City and Turner set forth two additional

arguments for excluding Noble's report and testimony.  These arguments are

(1) that Noble's opinion is unreliable, and (2) that it would confuse or mislead

the jury.  [Doc. No. 279 at 5].  However, "arguments made for the first time in

a reply brief are not properly before the Court." *Fogade v. ENB Revocable*

*Tr.,* 263 F.3d 1274, 1296 n.19 (11th Cir. 2001) (citing *United States v. Oakley,*

744 F.2d 1553, 1556 (11th Cir. 1984)).  *See also Randolph v. Green Tree Fin.*

*Corp.*, 244 F.3d 814, 816 (11th Cir. 2001) ("[W]e note that issues that clearly

12

are not designated in the initial brief ordinarily are considered abandoned.")
(internal quotation omitted).  For the reasons explained above, the court
DENIES the motion to exclude the opinions, testimony, and report of the
plaintiffs' expert Jeffrey J. Noble.  [Doc. No. 266].

### B. The motion to limit the opinions of the City and Turner's expert W. Ken Katsaris [Doc. No. 264]

The plaintiffs have moved to limit the opinions and testimony of W.
Ken Katsaris, a rebuttal expert for the City and Turner.[4]  The plaintiffs
contend that "some of the rebuttal opinions of Mr. Katsaris are based on
irrelevant and flawed [ ] interpretations of the law and evidence, and include
improper legal conclusions, speculation, and credibility determinations that
are without factual or evidentiary support in the record."  [Doc. No. 264 at 5].
They claim that his opinions will be unhelpful to the jury.  In support, they
cite seven federal cases in which Katsaris' testimony and opinions have been
limited because they contained legal conclusions or speculation.  [*Id*. at 6-7].

The court will address the plaintiffs' specific objections individually.
The first objection is to Katsaris' Opinion No. 2:

> Katsaris' Opinion No. 2: All of the listed subject matters in
> Defoe's opinion number seven indicates that he believes, and
> opines, that the COAPD [City of Atlanta Police Department] did

---

[4] Katsaris' expert report is in rebuttal to that of the plaintiffs' expert Scott
DeFoe.  Katsaris refers to DeFoe as "Defoe" in his report.

> not provide effective training. These opinions were all, in my opinion, covered by the COA Police Academy and/or the COAPD in-service training. My review of Cadeau's Individual Officer Profile, provided by the State of Georgia Peace Officer Standards and Training Commission, reflect adequate and reasonable training preparation for the deployment of Cadeau as an officer who is adequately and reasonable prepared to confront and handle police matters, certainly of Use of Force and Deadly Force. It is my opinion that Cadeau, and all of the officers I evaluated in this file received reasonable training in each of the areas Defoe was critical of, which are specifically meant for patrol officer assignment. All less-lethal options are not specifically designed for training officers on patrol, such as the 40mm less lethal launcher, normally reserved for Special Weapons and Tactics teams (SWAT) ....

[*Id.* at 12].  The plaintiffs argue that Opinion No. 2 mischaracterizes the law in Georgia concerning certification of police officers because it equates compliance with P.O.S.T.[5] training as providing adequate and reasonable training "to confront and handle police matters, certainly Use of Force and Deadly Force."  [*Id.* at 13].  They cite to a portion of the Eleventh Circuit decision in *Favors v City of Atlanta*, 849 F. App'x 813 (2021), that written policies alone are not sufficient to show that a city has adequately trained its police officers and that "some training" is not sufficient to undercut a finding of deliberate indifference as the training must be specific to the area of need, for example shooting into moving vehicles.  They aver that "Officer Cadeau's

[5] Peace Officer Standards and Training Council

Georgia P.O.S.T. certification does not establish that his training on the legal and constitutional limits for use of deadly force was adequate." [*Id*. at 16]. Lastly, the plaintiffs argue that by characterizing the training as "effective" and "reasonable," Katsaris has invaded the province of the jury.

The City and Turner respond that the *Favors* case has no application to Katsaris' opinion because that decision is based on specific facts in that case that are not present in the instant action. [Doc. No. 271 at 6]. Indeed, they contend that "[h]ere, the City was able to develop and present the exact evidence that was missing in <u>Favors</u>." [*Id*. at 7]. This argument, however, goes more to the defendants' summary judgment motion than it does the plaintiffs' objections to Katsaris' Opinion No. 2.

The plaintiffs' expert Scott DeFoe has opined that the City failed to provide Cadeau with "effective and adequate" training in certain areas. [Doc. No. 271-2 at 20]. Katsaris' Opinion No. 2 is squarely in rebuttal. He may present his opinion that the P.O.S.T. training and police department training is adequate. As for Katsaris' contention that the training was "reasonable," however, the court finds that to be a legal conclusion. Katsaris may not opine that the training received by Cadeau and other City of Atlanta police officers was "reasonable." Doing so could confuse the jury because they will hear testimony about the reasonable use of force and how a reasonable police chief

would have responded to various use of force and rule violation incidents

concerning Cadeau.  The term "reasonable" has specific legal connotations in

other areas of this case.  Allowing Katsaris to refer to training as

"reasonable" when the appropriate standard is "adequate" can lead the jury

to confuse the issues in this case.

The plaintiffs' second objection is to Katsaris' Opinion No. 3:

Katsaris' Opinion No. 3: All COAPD officers must meet all
standards of training required by the State of Georgia Peace
Officers Standards and Training Commission (POST), which
requires a rigorous twenty-one (21) week long recruit academy,
followed by an even more intense one-on-one Field Officers
Training Program. This program provides for individual
observation, evaluation, and verbal feedback from a COAPD
trained Field Training Officer (FTO). Furthermore, the State of
Georgia requires all officers, including COAPD officers, to
complete twenty (20) hours of Annual In-Service Training, and
the COAPD exceeds this. Georgia POST, Annotated Code 35-8-
16, requires this in-service training, and no more, but the
COAPD, conscious of training needs, and wanting to exceed the
minimum in-service yearly training requirements, has exceeded
the POST requirements for years. In fact, this file record reflects,
and Defoe agrees, that Cadeau received one hundred eight (108)
hours of additional in-service training just in the year before the
Hall incident (2017). Cadeau received eight (8) hours of Defensive
Tactics in 2016, and even Scenario Based Training on
shootings involving "Moving vehicles" on February 9th, 2016,
which included a critique of his performance and remedial
training to correct deficiencies. And Cadeau received de-
escalation training just days before the Hall incident. Defoe
agrees in his deposition testimony that Cadeau did receive
Scenario Based Training involving vehicles and deadly force. But,
because it was not using "Live" ammunition rounds, Defoe is
critical. I vehemently disagree. Scenario training is contemporary

16

> and a viable training/learning tool, and live-fire training would
> not improve the learning environment.

[Doc. No. 264 at 17-18]. Part of the plaintiffs' objection to this opinion is the same as their objection to Katsaris' Opinion No. 2, namely that they believe the P.O.S.T. training "is not relevant to Plaintiffs' theory of liability regarding the City's failure to train." [*Id*. at 18]. As explained above, Katsaris shall be allowed to refer to the P.O.S.T. training. A second part of the plaintiffs' objection concerns Katsaris' statement that the police department was "conscious of training needs, and wanting to exceed the minimum in-service yearly training requirements." [*Id*. at 19]. The court finds this part of the opinion to be speculation. It goes to the motivation and intentions of the City and its police department, and, as such, is speculation on the part of Katsaris and accordingly prohibited.

The plaintiffs also object to Katsaris' Opinion No. 4:

> Katsaris' Opinion No. 4: It is my opinion that Cadeau was
> properly trained in all aspects of Force, De-escalation, and
> Deadly Force imposition. I had reviewed all the training
> documents in Attachment A-l, which included power point
> presentations and curriculum that was reasonable for the
> training on the constitutional standards (Graham v Connor,
> 1989, U.S. Supreme Court), policies of the COAPD and the
> Georgia Law Title 17, Code 17-4-20, Use of Deadly Force, and
> Title 16, Code 16-3-21, Use of Force. In addition, it was testified
> to that all COAPD officers have digital access to all Georgia laws,
> including 17-4-20.

[*Id.* at 19].  The plaintiffs object to the statement that Cadeau was properly trained as being a legal conclusion and invading the province of the jury.  It is true that "testifying experts may not offer legal conclusions."  *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1112 n.8 (11th Cir. 2005).  However, Katasaris' opinion goes to the ultimate issue of the adequacy of the training provided by the City, and in that respect, would be permissible.  Yet, there are several issues with this opinion as expressed by Katsaris. He again characterizes the training as "reasonable," and that is not permitted, as the court has explained above.  The parties also devolve into an argument about whether Katsaris should be allowed to say "that all COAPD officers have digital access to all Georgia laws, including 17-4-20."  Both sides focus on whether the evidence shows that Cadeau received a copy of the statute.  As the court explains in Section C(2), *infra*, the evidence is in dispute on that.  Katsaris does not point to any evidence in the record that supports his statement.  The statement is a generalization that does not directly rebut DeFoe's opinion and thus is excluded.  Katsaris may present his opinion without this statement and without the characterization of the training as "reasonable."

Next, the plaintiffs object to Katsaris' Opinion No. 6:

Katsaris' Opinion No. 6: It is my opinion that the "Deadly Force

18

> Judgmental Training" provided to officers by the COAPD requiring an assessment of the potential for death or serious injury, coupled with the policy provisions in the COAPD "Pursuit Policy," and the "Scenario Based Training," is reasonable training for officers to receive and ultimately make proper deadly force decisions.
>
> As a matter of fact the Commission on Accreditation for Law Enforcement Agencies (CALEA) does not have, or require, a policy statement specific to shootings involving vehicles. Georgia POST does not require specific training, whether policy or practical training, on the subject specific to shootings involving vehicles . . . . The issue in my opinion is not if the COAPD could do more on training involving Deadly Force and vehicles, it is, rather, whether the COAPD training and policy on Deadly Force involving Deadly Force when vehicles are involved, is reasonable. It is, in my opinion, that the training and policy of the COAPD on this subject is reasonable and sufficient to deploy officers to the field and expect reasonable decisions to be made.

[Doc. No. 264 at 21-22].  The plaintiffs aver that this opinion contains legal conclusions.  The City and Turner respond that the opinion goes to the heart of the plaintiffs' claims against the City.  Both sides are correct.  The opinion squarely takes on the issue of the adequacy of the training provided by the City.   However, it is an improper legal determination in that it attempts to define the issue for the jury.  It is the role of this court, not a testifying expert, to instruct the jurors.  Furthermore, this court has already ruled that Katsaris may not refer to any training as "reasonable" because it will likely confuse the jury.  The opinion is excluded.

Lastly, the plaintiffs object to Katsaris' Opinion No. 7:

>Katsaris' Opinion No. 7: I firmly disagree with Defoe that
>Computer Voice Stress Analysis (CVSA) should have been used
>in any of the OPS case files listed in my or Defoe's list of
>materials reviewed. I have been trained as a user of the CVSA,
>and like Defoe, I am aware of its limitations and benefits. Defoe
>admits the CVSA is not accurate and not admissible in court.
>Also, while the CVSA can be a useful tool to assess truthfulness,
>using it as a tool for issues involving policy deviations should not
>occur.
>
>None of the OPS files I reviewed were candidates for the use of
>the CVSA because, while there were disputes of facts, none were
>of the type of clear indications of lying about an outright criminal
>matter, as opposed to a policy, legal interpretation of the totality
>of the circumstances, or outright perception. I know of no
>agencies that apply the polygraph or CVSA to policy deviations or
>determination of potential policy deviations involving Use of
>Deadly Force. The polygraph nor the CVSA is recommended
>anywhere in the nation, that I know of, to reconcile policy issues.
>If there was an outright criminal violation, not involving the
>decision to use deadly force, which of course, can be criminal,
>there is a potential for its use as a tool. I found that none of the
>OPS Investigations cited in this file were a candidate for CVSA
>analysis of the officers [sic] actions.

[Doc. No. 264 at 24]. The court agrees with the defendants that

Katsaris is permitted to opine on the proper use of the CVSA and

polygraphs in rebuttal to DeFoe's Opinion No. 9. Katsaris states that

he "knows of no agencies" that use the polygraph or CVSA in

determinations involving the use of deadly force. This is different from

stating unequivocally that no agencies use it. The plaintiffs have not

objected to Katsaris' qualifications as an expert. He "served as the

Force and Deadly Force and Police Pursuit Policy and Procedures Advisor for thirteen (13) years to the Director of the [Florida] Highway Patrol." [Doc. No. 271-1 at 3]. He has been an instructor on the use of deadly force for over thirty years, and trains agency administrators on disciplinary procedures. The court finds that his opinion, although based in part on his personal knowledge, is permitted and reliable. The plaintiffs' objections are overruled.

For the reasons explained above, the court grants in part and denies in part the plaintiffs' motion to limit the expert testimony of the W. Ken Katsaris. [Doc. No. 264].

### C. The motions for summary judgment [Doc. Nos. 265, 270]

The plaintiffs and the City and Turner have filed cross-motions seeking summary judgment on the plaintiffs' claims against the City and Turner. The plaintiffs have also moved for summary judgment against Cadeau on the federal claim against him.[6]

---

[6] At the end of their motion for partial summary judgment, the plaintiffs state that if the motion is granted, only the issue of damages will be left for the jury. However, in Count I of their amended complaint, they include state law claims against Cadeau of assault, battery, intentional infliction of emotional distress, and loss of consortium on the part of Christina Hall. [Doc. No. 35 at 12,15-17, Am. Comp. ¶¶41-46]. There is no indication that these state law claims have been dismissed.

### 1. The federal claim against Cadeau

The Fourth Amendment provides that individuals have the right to be free from unreasonable seizure.  Furthermore, "[u]sing deadly force in a situation that clearly would not justify its use is unreasonable under the Fourth Amendment." *Mercado v. City of Orlando*, 407 F.3d 1152, 1160 (11th Cir. 2005).  The Supreme Court has provided a framework for analyzing whether the force applied in making a seizure complies with the Fourth Amendment. *See Graham v. Conner*, 490 U.S. 386 (1989).  "[T]he question is 'whether the totality of the circumstances justifie[s] a particular sort of . . . seizure.'" *Id* at. 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

The City found that the force used by Cadeau in firing into the plaintiffs' vehicle was unreasonable under this standard.  "[T]o determine whether the amount of force used by a police officer was proper, a court must ask whether a reasonable officer would believe that this level of force is necessary in the situation at hand." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). "[R]easonableness is always the touchstone of Fourth Amendment analysis." *Birchfield v. North Dakota,* 136 S.Ct. 2160, 2186 (2016).

The situation that Cadeau faced is similar to that faced by another Atlanta police officer in 2002.  In *Arnold v. Bunn*, 565 F. App'x 812 (11th Cir.

2014), the Eleventh Circuit affirmed this court's denial of that officer's motion

for summary judgment on the basis of qualified immunity and official

immunity. The Eleventh Circuit summarized that situation as follows:

> Viewing the evidence in the light most favorable to the Appellees,
> as we must at this stage of the proceedings, *see Morton*, 707 F.3d
> at 1280, Bunn was beside the SUV at the time of the shooting,
> the vehicle was not being driven at a high rate of speed, was not
> accelerating or heading toward any person either prior to or
> during the shooting, and was not being used as a deadly
> weapon. *See Terrell*, 668 F.3d at 1255. An objectively reasonable
> officer would not have used deadly force under these
> circumstances, and therefore Bunn's actions violated Ward's
> clearly established Fourth Amendment right to be free from
> excessive force. *See Tennessee v. Garner*, 471 U.S.1, 11 (1985)
> (holding a police officer can use deadly force to prevent the escape
> of a fleeing non-violent felony suspect only when the suspect
> poses an immediate threat of serious harm to the police officer or
> others); *Morton*, 707 F.3d at 1282-83. (footnote omitted)

[*Id*. at 813-14]. Cadeau testified at his deposition that no person was in front

of the plaintiffs' van at the time he fired his weapon. [Doc. No. 265-6 at 182,

Cadeau Dep. 182:2 – 182:9]. He pleaded guilty to aggravated assault and

reckless conduct. Cadeau lacked probable cause to believe that the occupants

of the van posed a threat of harm to anyone at the intersection. Thus, when

Cadeau shot into the vehicle, he violated the plaintiffs' constitutional right to

be free of excessive force.  The court therefore GRANTS the plaintiffs' motion

for partial summary judgment on the federal claim against Cadeau.[7]

## 2. The claims against the City

The plaintiffs contend that the City is also liable under 42 U.S.C. § 1983

for violating their constitutional rights.  Specifically, they contend that the

City has failed to adequately train, supervise, and discipline its police

officers.  They aver that these failures led to the City engaging in a custom of

ratifying egregious conduct by its officers and subsequently constituted

---

[7] Cadeau frames the plaintiffs' motion for partial summary judgment against
him as seeking only a judgment against him on the issue of qualified
immunity.  [Doc. No. 277-1 at 3].  He makes the argument that the jury could
find he is entitled to qualified immunity, however, "qualified immunity is an
affirmative defense that must be pleaded by the defendant official and is
otherwise deemed waived."  *Hartwell v. City of Montgomery, AL*, 487
F.Supp.2d 1313, 1328 (M.D. Ala. 2007) (citing *Harlow v. Fitzgerald*, 457 U.S.
800, 815 (1982)).  Cadeau did not raise this defense in his answer, nor did he
file his own motion for summary judgment asserting a qualified immunity
defense.  He has waived the defense, and even had he not, the court finds
that he is not entitled to qualified immunity.  The plaintiffs seek more than
just a determination of qualified immunity, however.  They expressly seek
summary judgment on the claim that Cadeau violated their constitutional
rights.  [Doc. No. 270 at 1].  Although Cadeau argues that the plaintiffs' van
can be considered a deadly weapon, he has not pointed the court to any
evidence that the van was utilized as a weapon.  Although Cadeau points out
that he testified at his deposition that the van was moving at the time he
shot into it, he clarifies that no individuals were in front of the van at the
time that he shot.  A reasonable jury could not find in favor of Cadeau on this
issue.

deliberate indifference to the likelihood that its officers, such as Cadeau, would engage in excessive force in the future.

Municipalities are "persons" subject to liability under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). While the Supreme Court has stated that municipalities do not receive qualified immunity from suit, *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993), municipal liability under Section 1983 is strictly limited. *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003). In *Monell*, the Supreme Court held that municipalities are not subject to § 1983 liability on the theory of respondeat superior. 436 U.S. at 690. That is, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

Thus, to impose § 1983 liability on a municipality, a plaintiff must show that a municipal employee or agent committed a constitutional violation and did so based on a municipal policy or custom. "Random acts or isolated incidents" are usually insufficient to demonstrate a policy or custom;

the plaintiff must instead show a "persistent and wide-spread practice." *Depew v. City of St. Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986). In addition, the plaintiff must show that the "policy or custom of the city 'subjected' him, or 'caused him to be subjected' to the deprivation of constitutional rights." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 828 (1985). A "single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality." *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1311 (11th Cir. 2011).

The failure of a municipality to train its police officers may be properly thought of as a city 'policy or custom' that is actionable under § 1983 only when the failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Accordingly, a claim for failure to train is predicated on the deficiency of the training program and its application "over time to multiple employees." *Bd. of the Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997). "Mere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to prove liability." *Miller v. Calhoun Cty.*, 408 F.3d 803, 816 (6th Cir. 2005)

To show deliberate indifference in the application of a facially valid municipal policy, "a plaintiff must present some evidence that the

municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. Miami,* 151 F.3d 1346, 1350 (11th Cir. 1998).  Deliberate indifference can also be shown by the municipality's "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees." *Brown,* 520 U.S. at 407.  Either way, "[t]his high standard of proof is intentionally onerous for plaintiffs; imposing liability on a municipality without proof that a specific policy caused a particular violation would equate to subjecting the municipality to respondeat superior liability— a result never intended by section 1983." *Gold,* 151 F.3d at 1351 n.10. "To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *City of Canton,* 489 U.S. at 391-92 (1989).

In Section C(1), *supra*, the court has granted the plaintiffs' motion for summary judgment on their claim that Cadeau violated their fourth amendment right to be free from excessive force.  Thus, the analysis turns to whether the City had a custom or policy that constituted deliberate indifference to that right and whether that policy or custom caused the

violation.  Clearly, there is a need to train officers with respect to the constitutional limitations regarding the use of deadly force.  *City of Canton,* 489 U.S. at 390 n.10. Yet, the Eleventh Circuit "repeatedly has held that without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train or supervise." *Gold* at 1351.

The record establishes that the City was on notice that it needed to train its officers on using deadly force against suspects in vehicles.  The Atlanta Police Department analyzed use of force incidents for the years 2013, 2014, and 2015.  These reports show that incidents of its officers shooting into vehicles increased significantly over these years.  In the 2013 Report, only two of fifteen reported use of force incidents involving firearms concerned shooting into vehicles.  [Doc. Nos. 269-25 – 265-30].   In the 2015 Report, six of fifteen reported use of force incidents involving firearms concerned shooting into vehicles.  [Doc. Nos. 269-37- 269-48].

The City was thus on notice as of 2015 that its officers were encountering markedly more situations where they were using deadly force by shooting into vehicles.  The district court in another case involving an Atlanta police officer shooting into a vehicle by an Atlanta police officer found

likewise based on a similar record.[8]  In *Favors v. City of Atlanta*, Civil Action

No. 1:17-cv-3996-SDG (N.D. Ga), the district court analyzed use of force

reports from 2013, 2014,and 2015, and determined that "the City should

know to a 'moral certainty' that its officers will be required to deal with

suspects attempting to flee in vehicles and need to know when the use of

deadly force is appropriate."  Indeed, in the instant action, the City's Rule

30(b)(6) representative, Officer Patrick Fite, testified that the City permits its

officers to fire into moving vehicles in certain circumstances.  [Doc. No. 260-

16 at 11, Fite 30(b)(6) Dep. 113:7 – 113:21].

In 2016, another Atlanta police officer shot into a moving vehicle,

killing the driver.  That incident, too, is the subject of a lawsuit in this court.

*Rogers v. City of Atlanta*, Civil Action No. 1:16-cv-2578-MLB (N.D. Ga.).  The

officer in that case was indicted on August 31, 2016, on five counts for his

actions:  felony murder in violation of O.C.G.A. § 16-5-1, aggravated assault

with a deadly weapon in violation of O.C.G.A. § 16-5-21, false statement in

violation of O.C.G.A. § 16-10-20, and two counts of violation of oath by public

officer in violation of O.C.G.A. § 16-10-1. That case is currently

---

[8] "A court may take judicial notice of its own records and the records of inferior courts."  *United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987).

administratively closed pending completion of the criminal proceedings against the officer.  Like the events in the *Favors* case, the events in the *Rogers* case occurred in the two years preceding the shooting in the instant action.

Yet, the City did not take any action to train its officers regarding the use of deadly force in such situations.  Officer Patrick Fite, the police department's primary trainer on the use of deadly force, testified that there had been no substantial changes in the training provided on the use of force or firearms since 2011.  [Doc. No. 265-7 at 78, Fite Dep. 80:10 – 80:19].  Fite testified that officers were shown a video of another officer, Emmanuel Thompson, shooting at a moving vehicle approximately four or five times as it drives out of a parking lot.[9]  However, this video was shown to officers only one time and no training was developed based on the video.  [*Id*. at 22-23, Fite Dep. 85:13 – 87:3].  At his deposition, Cadeau testified repeatedly that by shooting into the plaintiffs' van, he believed that he was acting consistently with the training he had received.  [Doc. No. 265-6 at 145-46, 173, 183, 217-19, 287].  He stated that he believed his actions were reasonable.  [*Id*. at 167, Cadeau Dep. 167:15 – 167:21].  He further asserted

---

[9] *See Favors v City of Atlanta*, 849 F. App'x 813 (2021).

that he believed his action would have been justified had he killed Hall.  [*Id.*

at 171, Cadeau Dep. 171:8 – 171:14].  He described the training he received

on shooting into a moving vehicle as follows:

> Q    So you were trained in order to stop the threat of a moving
>      vehicle, if you feel that your life or someone else's life is in
>      danger, you need to shoot at the person driving to stop that
>      threat?
>
> A    To save the lives of others from harm, yes.

[*Id.* at 173, Cadeau Dep. 173:1 – 173:7].  He then proceeded to testify that

when he shot into the vehicle, there was nobody in the pathway in front of it.

[*Id.* at 174-79, Cadeau Dep. 174:19 – 179:1].

Georgia law establishes the parameters for the use of deadly force by

police officers.  O.C.G.A. § 17-4-20.  Every police officer must be provided with

a copy of this statute.  O.C.G.A. § 14-4-20(e).  Cadeau has provided conflicting

testimony concerning whether or not he ever received a copy of this statute.

During his deposition, he at first states that he had never seen the statute

prior to being handed it by plaintiffs' counsel during his deposition.  [Doc. No.

265-6 at 219, Cadeau Dep. 219:20 – 219:22].  He then states that he believes

he may have been given a copy of the statute during in-service training.  [*Id.*

at 220, Cadeau Dep. 220:1 – 220:5].  He then describes this training as

concerning the use of force but cannot recall whether the training included

discussion of the statute nor could he recall specifically getting a copy of the

statute.  [*Id*. at 220-21, Cadeau Dep. 220:10 – 221:2].  The testimony provided

by both Fite and Cadeau raise questions about the adequacy of the City's

training.  The plaintiffs have also submitted the report of their expert Scott

DeFoe.  DeFoe opined that:

> there was a failure by the Atlanta Police Department to provide
> effective and adequate training to Sergeant Elish Mathieu
> Cadeau, No. 4844, on the following subject matters: Shooting at
> or from Moving Vehicles, Vehicle Deployment Tactics, Working
> as a Team, Use of Available Cover and Concealment, Contact and
> Cover Officers, Verbal Strategies, Defusing and De-Escalation
> Techniques, Less Lethal Force Options (ASP Baton, Oleoresin
> Capsicum Spray, Taser Electronic Device, 40mm Less Lethal
> Launcher *(Foam* Rubber Baton Rounds), 870 Remington "Super
> Sock" Less Lethal Shotgun, Tactical Retreat, and Tactical
> ReDeployment).

[Doc. No. 269-50 at 19-20].  This opinion was based on Cadeau's deposition

testimony as well as that of Office Nathan Evans, the other officer at the

intersection at the time of the shooting, who stated that "he does not recall if

he ever received training regarding the use of deadly force that deals with the

scenario of shooting into a moving vehicle." [*Id*. at 20].  For their part, the

City of Atlanta and Turner have submitted a report from their expert, W.

Ken Katsaris that states Cadeau received "Scenario Based Training on

shootings involving 'Moving vehicles' on February 9th, 2016, which included a

critique of his performance and remedial training to correct deficiencies."

[Doc. No. 264 at 17-18].  The facts are in dispute regarding the adequacy of the training.

In *Depew v. City of St. Marys*, 787 F.2d 1496, 1501 (11th Cir. 1986), the Eleventh Circuit held that the City of St. Marys could be liable under *Monell* because it had "implicitly ratified a custom or policy permitting the police to use excessive force against its citizens" because "[t]he evidence revealed sufficient prior incidents where the police had used excessive force to put the city on notice. Yet, the city failed to take proper remedial action."  "A municipality's failure to correct the constitutionally offensive actions of its police department may rise to the level of a custom or policy if the municipality tacitly authorizes these actions or displays deliberate indifference towards the police misconduct," but there must at least "be evidence that city officials were aware of past police misconduct" in order to find liability. *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) (citations omitted).

The plaintiffs have provided evidence that the City declined to engage in remedial steps despite a number of instances involving the use of unreasonable and excessive force by its officers in violation of its written rules.  The plaintiffs have presented Cadeau's disciplinary history showing several use of force incidents and violations of police department policies.

[Doc. No 269-10]. In 2013, Cadeau was involved in an incident that subsequently came before this court in litigation in 2015. *See Carr et al. v. Cadeau et al*, Civil Action No. 1:15-cv-3837-CAP (N.D. Ga.) The Eleventh Circuit described the events in that case as follows:

> [The plaintiffs] Carr and Gibson live in the Castleberry Hill neighborhood of downtown Atlanta. On the evening of October 5, 2013, the street in front of their home was closed to car traffic for a public arts event called the Flux Festival. The City of Atlanta had granted a permit for the event and arranged for off-duty police officers to provide security. Carr and Gibson were returning from the Flux Festival late at night when they heard Officer Cadeau tell them to get off the street. Officer Cadeau did not identify himself as a police officer. At the time Officer Cadeau yelled at them, Carr and Gibson were walking about 20 to 30 feet from the entrance to their home. Carr responded "what, what the fuck." She then pointed at her door and said, "I live here. This is my home." The couple then continued walking toward their home.
>
> When they reached their home, Gibson began to open the garage door by entering a code into a keypad next to the door. As he entered this code, "a bright flashlight was shined into his face." Gibson looked around the street but couldn't see who was holding the light. He then walked through the garage door and hit the button to close the door behind him. Once he entered the garage, he saw that Officer Cadeau was in the garage chasing his wife into their home. Officer Cadeau began "grabbing Plaintiff Carr and twisting her arm violently behind her, shoving her head-first into a parked car in the garage, then dragging her backwards, passing Plaintiff Gibson, out onto the street area." Officer Cadeau then told another police officer to arrest Gibson "while continuing to drag Plaintiff Carr to his police vehicle where she was arrested."

658 F.App'x 485, 486-87 (11th Cir. 2016).[10]   Cadeau testified that he was not

disciplined as a result of the incident with the Carrs:

> Q     Am I correct that the fact that you didn't get any
>       disciplinary action as a result of what happened with the
>       Carrs, that you took that to mean that you were doing what
>       you were trained and told to do pursuant to the APD
>       policies and procedures?
>
> A     Yes.

 [Doc. No. 265-6 at 33, Cadeau Dep. 33:14 – 33:20].   The next year, 2014, he

was investigated by the department for the use of excessive force in four

separate incidents.  [Doc. No. 269-11].   In one incident, he pepper-sprayed a

detainee in the face who was handcuffed and shackled to a bench in the police

precinct.  In another incident, he deployed his pepper spray after responding

to a fight at a bar.  He initially advised his superiors that he had not

deployed his pepper spray but recanted once patrons of the bar made

statements that they had been pepper-sprayed.

The department designated him for its Early Warnng System in

August 2014.  This program "establish[es] policies and procedures for

identifying employees with a pattern of behavior that may be detrimental to

---

[10] The Eleventh Circuit affirmed this court's denial of Cadeau's motion to
dismiss the Carr's complaint on the basis of federal qualified immunity or
official immunity under Georgia law.   After the Eleventh Circuit issued its
order, the parties engaged in mediation and settled the case.

the achievement of the goals and objectives of the Department, and initiate[s]

a process for the provision of appropriate corrective action." APD.SOP.2022,

¶1 [Doc. No. 269-13 at 1]. In January 2015, Cadeau's commander

recommended that he be fired. [Doc. No. 269-19]. Yet, instead of being

fired, he was subsequently promoted to sergeant. [Doc. No. 265-6 at 34-35,

Cadeau Dep. 34:2 – 35:6].

The City's failure to take remedial steps concerning the misconduct of

its officers was not limited to just Cadeau, however. The plaintiffs have also

submitted the expert report of Jeffrey J. Noble, a former police officer with

twenty-eight years of experience who also served as a Deputy Chief of Police

prior to retirement. [Doc. No. 269-53]. That report opines that the "Atlanta

Police Department demonstrated a pattern, practice, or custom of failing to

follow their own policies design[ed] to identify officers who engage in serious

misconduct." [*Id*. at 16]. The plaintiffs have submitted files from the Atlanta

Citizen Review Board ("ACRB") recommending sustaining complaints of

excessive force in nineteen incidents involving officers other than Cadeau

prior to August 2015. [Doc. No. 275-45]. The ACRB was created in 2007 to

"to provide citizen oversight of misconduct accusations against sworn

members of the police and corrections departments in the City of Atlanta and

to provide a credible, independent forum where complainants and

36

accusations can be addressed." [Doc. No. 269 at 11].   Turner, as chief of the police department, rejected the recommendations of the ARCB concerning these nineteen incidents. However, the plaintiffs have not pointed the court to any evidence that Turner was required to accept these recommendations. In fact, APD SOP 2300 states that Turner had ultimate authority over disciplinary policies.

The facts are in dispute concerning the adequacy of the training given to the Atlanta police officers, including Cadeau, and whether there is a causal connection between this training and the violation of Hall's constitutional rights.  The court therefore denies both sides' motions for summary judgment as to the plaintiffs' claim against the City.

### 3.  The claim against Turner

The plaintiffs have brought a claim against Turner in his individual capacity for supervisor liability under 42 U.S.C. § 1983. It is well established that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999).  In fact, "the standard by which a supervisor is held liable in [his or] her individual capacity for the actions of a subordinate is extremely rigorous." *Braddy v. Florida Department of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th

Cir. 1998).  Supervisory liability under Section 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).  Moreover, to establish the necessary causal connection, a plaintiff must show "a history of widespread abuse [that] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Braddy*, 133 F.3d at 802.  Alternatively, the causal connection may be established when a supervisor's "custom or policy . . . result[s] in deliberate indifference to constitutional rights" or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991); *see also Hartley*, 193 F.3d at 1263.

Here, the plaintiffs do not contend that Turner personally participated in or directed activity that resulted in constitutional violations.  The City and Turner argue that Turner is entitled to qualified immunity because there is no causal connection between Turner's actions and the violation of Hall's constitutional rights.  They stress that "it is undeniably clear that none of Chief Turner's policies or customs could have resulted in deliberate

indifference towards these Plaintiffs because Chief Turner was not Chief of Police at the time of the alleged indifference." [Doc. No. 265-1 at 14]. The plaintiffs respond that Turner (1) "was aware of a history of widespread abuse by Officer Cadeau but failed to take action to correct his behavior; (2) that he acted with deliberate indifference by encouraging and creating a custom of condoning and ignoring the issue of excessive and unreasonable force by APD officers, and (2) that he knew APD officers, including Officer Cadeau, were using excessive or unreasonable force, including shooting into moving or fleeing vehicles without justification and failed to take action to stop them from doing so." [Doc. No. 275 at 26].

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The standard for qualified immunity is objective, "and an officer's subjective intent or beliefs

are irrelevant to the inquiry." *Moreno v. Turner*, 572 F. App'x. 852, 855 (11th Cir. 2014).

To claim qualified immunity, a defendant must first show he was performing a discretionary function. *Id.* at 855. The term "discretionary authority" includes "all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." *Id.* (internal quotations omitted). The court "must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Maughon v. City of Covington*, 505 F. App'x 818, 822 (11th Cir. 2013) (quotations omitted). There is no dispute that Turner was acting in his discretionary authority.

"Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)). A plaintiff demonstrates that qualified immunity does not apply by showing that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Moreno*, 572 F. App'x at 855. The court must look at the specific facts of the case in determining whether a

constitutional right was clearly established. *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012). A plaintiff "can demonstrate that the contours of the right were clearly established in one of three different ways." *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012). A plaintiff may (1) show that a case with materially similar facts has already been decided, (2) demonstrate that there is a clearly established legal principle that applies to the facts of his case, or (3) point out that the conduct of the defendants in his case so clearly violates the constitution that it is unnecessary to cite prior case law. *Id.* at 1255, 1256.

"The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). The facts underpinning the City's liability are the same facts that underpin Turner's liability, because as Chief of the Atlanta Police Department, he was key decision maker for the City in matters concerning the police department. A reasonable jury could reach a verdict in the plaintiffs' favor. Turner was aware of Cadeau's use of excessive force and violations of department policy on several occasions prior to the shooting that is the subject of this case. Turner rejected or lessened recommendations of punishment for these violations. He also rejected the recommendation from

41

Cadeau's supervisor that he be fired, and instead promoted Cadeau to the rank of sergeant.  A reasonable jury could find a causal connection between Turner's action and the deprivation of the plaintiffs' constitutional rights.

The court has ruled in Section C(1), *supra*, that Cadeau violated Noel Hall's constitutional rights.  The plaintiffs have produced evidence supporting a causal connection between Turner's decisions to reduce discipline, reject the recommendation to fire, and ultimately, the decision to promote Cadeau and the shooting of Hall.  They have submitted the expert report of Jeffrey J. Noble, and Noble's opinion that "[a]ny reasonable Chief of Police would have referred Cadeau for criminal prosecution and terminated his employment for engaging in the intentional physical abuse of a prisoner" [Doc. No. 275-47 at 7] when he pepper-sprayed a handcuffed detainee who was shackled to a bench inside the police precinct.  Noble also opined that Turner should have terminated Cadeau for untruthfulness after the incident in which Cadeau denied deploying his pepper spray at a bar while responding to calls of a fight.  [*Id*. at 9].  Had Cadeau been terminated at either of these times (or when his supervisor recommended he be terminated) he would not have been able to shoot into the Hall's vehicle on February 25, 2017.  The fact that Turner was not chief of police on the date of actual shooting is irrelevant to this analysis.

While this is sufficient to deny Turner qualified immunity, it does not mean that the plaintiffs are automatically granted summary judgment on their claim against Turner. As explained above, Turner was not required to accept the recommendations of the ACRB. He also was not required to utilize the CVSA exams during internal investigations into instances of excessive force. *See* APD SOP 31.20. Thus, the court denies both sides' motions for summary judgment as to the plaintiffs' claims against Turner.

## V. Conclusion

For the reasons expounded above, the court DENIES the motion for summary judgment filed by the City and Turner [Doc. No. 265] and GRANTS IN PART AND DENIES IN PART the plaintiffs' motion for partial summary judgment as to all three defendants [Doc. No. 270]. The court DENIES the motion to exclude the opinions, testimony, and report of the plaintiffs' expert Jeffrey J. Noble. [Doc. No. 266]. The plaintiffs' motion to limit the expert testimony of the W. Ken Katsaris is GRANTED IN PART AND DENIED IN PART. [Doc. No. 264]. The parties are DIRECTED to file their proposed consolidated pretrial order within thirty days of the entry date of this order.

**SO ORDERED**, this 16th day of December, 2021.

/s/CHARLES A. PANNELL, JR.
CHARLES A. PANNELL, JR.
United States District Judge